# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MCARTHUR GRIFFIN § | |
| § | |
| Plaintiff § | CIVIL ACTION NO.: 3:20-92-BAJ-EWD |
| § | |
| *Versus* § | |
| § | |
| REC MARINE LOGISTICS LLC, ET AL. § | **TRIAL BY JURY DEMANDED** |
| § | |
| Defendants § | |

## FIRST SUPPLEMENTED AND AMENDED JOINT STATUS REPORT

**A.     JURISDICTION**

What is the basis for the jurisdiction of the Court?

Plaintiff does not believe there is subject matter jurisdiction under 9 U.S.C. § 205 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") (the sole basis asserted for removal) because (a) the narrow arbitration agreement between Defendant QBE Insurance (Europe) Limited ("QBE") and REC Marine Logistics LLC ("REC Marine"), GOL LLC ("GOL"), Gulf Offshore Logistics LLC ("Gulf Offshore"), Offshore Transport Services LLC ("Offshore Transport")(collectively, the "Non-Insurance Defendants") pertains solely to disputes between them, and cannot conceivably affect the outcome of this case; and (b) under the terms of the insurance policy containing the arbitration agreement (to which Plaintiff is not a signatory), such a dispute can only arise after liability payments have been made, and any subsequent arbitration of some theoretical dispute over reimbursement (which does not currently exist) between QBE and the Non-Insurance Defendants cannot conceivably affect any aspect of Plaintiff's case.

However, the parties believe that this case could have been originally filed in Federal Court under the Jones Act (46 U.S.C. § 688) or General Maritime Law (28 U.S.C. § 1333). Accordingly, there is no dispute that subject matter jurisdiction exists.

**B.     BRIEF EXPLANATION OF THE CASE**

1.     Plaintiff claims:

This is a personal injury case involving a Jones Act seaman. On or about May 2018, Plaintiff suffered injuries to his shoulder, neck, back, legs, and other body parts aboard the *M/V Dustin Danos* when the vessel was allowed to move dramatically during a man-lift operation (the "Incident"). Plaintiff was violently struck by the lift, the vessel, and/or other items on the

vessel as a result of how the operations were improperly planned and executed, the conditions, the conduct of the captain, and the other circumstances. Plaintiff has and continues to receive medical treatment as he attempts to recover from the injuries sustained during the Incident.

Plaintiff seeks recovery against the Non-Insurance Defendants and QBE for injuries he sustained as a "seaman" under the Jones Act at 46 U.S.C. § 30104 et seq. and related Jones Act provisions. Plaintiff is also bringing claims against these defendants under general negligence, gross negligence, and general maritime law. In addition to claims for personal injuries sustained, Plaintiff also seeks damages for failure to pay maintenance and cure and for punitive damages. Direct lawsuits against insurers (such as QBE Insurance (Europe) Limited) are authorized by LA Rev. Stat. 22:1269.

Following the incident, the Non-Insurance Defendants and/or QBE failed to provide Plaintiff with the medical treatment he needed to recover from the injuries sustained aboard the *M/V Dustin Danos*. These Defendants continue to refuse to provide Plaintiff medical treatment.

On information and belief, following the Incident, the Non-Insurance Defendants and/or QBE began coordinating Plaintiff's treatment with an insurance adjuster and/or investigator named Drew Aucoin. REC Marine, GOL, Gulf Offshore, and/or Offshore Transport willfully and wantonly terminated Plaintiff's maintenance and cure benefits.

Plaintiff alleges that Defendants (including current parties and any later-added defendants) are negligent and grossly negligent and liable under applicable statutory and common law for the following reasons:

- Failure to pay maintenance and cure and withholding maintenance and cure intentionally and wantonly and in such a manner as to give rise to punitive damages;
- Failure to observe the lift and properly focus on the work at hand;
- Failure to conduct a safe operation considering all the circumstances;
- Failure to use the proper tools and equipment and personnel for a safe operation;
- Failure to safely and properly plan the job;
- Failure to focus on the task at hand;
- Failure to provide proper tools and equipment;
- Failure to properly supervise their crew;
- Failure to properly train their employees;
- Failure to provide adequate safety equipment;
- Failure to watch/man the controls of the vessel;
- Operating the vessel with an inadequate crew;
- Failure to provide a safe work environment;
- Failure to protect crew members from unnecessary risks;
- Failure to maintain a proper lookout;
- Failure to make adequate repairs;
- Failure to provide a seaworthy vessel and crew;
- Vicariously liable for their employees' negligence;

- Failure to ensure the vessel was adequately maintained;
- Violating applicable Coast Guard, OSHA, and/or MMS rules; and,
- Other acts deemed negligent and grossly negligent.

Plaintiff initially brought suit in the Parish of East Baton Rouge. Plaintiff has propounded discovery to REC Marine, GOL, Gulf Offshore, and Offshore Transport. The discovery was not answered properly, Plaintiff filed a motion to compel discovery responses from REC Marine, and the state court judge compelled the discovery. REC Marine and their counsel have been ordered to respond to discovery, but have been ignoring a court order for months.

As a result, Plaintiff reserves the right to bring additional claims against these defendants for sanctions and spoliation.

Further, as a result of lack of discovery, Plaintiff is still in the early stages of investigating potential other parties and claims, and reserves the right to add additional parties and claims supported by discovery. Plaintiff has sought discovery as to whether other third-parties involved in the operations committed liable acts and omissions. Defendant REC Marine refuses to identify potential third parties despite being previously ordered to respond to Plaintiff's Requests for Production and Interrogatories. Defendants' GOL, Gulf Offshore, and Offshore Transport have refused to respond to Plaintiff's Requests for Production and Interrogatories and will not identify potential third parties. A motion to compel discovery responses from GOL, Gulf Offshore, and Offshore Transport is currently pending with this Court. *See* Dkt. 15.

2. Defendants' claims:

Defendants, REC Marine Logistics, LLC, and Offshore Transport Services, LLC, and QBE Insurance are the only potentially viable defendants as any other Defendants listed or sued by Plaintiff are improper parties and dismissal will be sought in due course.

The plaintiff in this matter was a Jones Act employee (deckhand) working on the M/V Dustin Danos, an offshore tug, which was bareboat chartered to another company not listed as a party. This defendant denies that it has any responsibility to Plaintiff as it had no relationship to plaintiff or the vessel during the charter, as the charterer was solely responsible for operational and navigational matters involving the chartered vessel. REC Marine was the payroll and sole Jones Act employer of Plaintiff and operated the vessel under a monthly, paid operating agreement. REC Marine denies that Plaintiff had an accident on board the vessel, and that any injury or medical problem that Plaintiff had during the time period, occurred the vessel during his personal time. Offshore Transport was the bare owner, non-operator, of the vessel, having chartered same to a third party never named in the plaintiff's suit. Offshore transport has nothing to do with, or control, over Plaintiff's employment or work.

In early evening of 4/25/2018, the vessel was transiting enroute to a destination directed by its charterer. Plaintiff came to the Captain Josh Winhaver and reported that while he was straightening gear inside the main cabin, that he had bumped into a fire extinguisher mounted

on the wall, as required by Coast Guard regs. He claimed to have hurt his left shoulder but declined an offer to seek medical attention. He did not miss any work and continued his normal activity.

After working several additional weeks without any complaint or apparent physical problems, Plaintiff again complained to Capt. Winhavur that his left shoulder was painful. Again there was no indication that any specific accident or injury had occurred and none was witnessed. This time he was directed to Dr. Casey in Houma, La. where he was provided with medical care that included conservative care and physical therapy, and eventually he had left shoulder surgery.

Defendants deny that Plaintiff suffered any actual injury, and the evidence will show he suffered pre-existing medical problems with his left shoulder. Griffin was paid maintenance and cure in addition to his medical care. He was found to have reached maximum medical improvement and was able to resume his normal seaman duties by March 29, 2019, but immediately filed suit against his employer, and did not return to work.

Plaintiff attempted to file litigation in East Baton Rouge Parish, but there was no venue or jurisdiction there, and after a lengthy period of various attempts by Plaintiff to have exceptions overruled, the case was removed to federal court by a newly added foreign insurance company.

QBE Insurance is a foreign insurance company that provided insurance coverage to REC Marine, Gulf Offshore, and Offshore Transport during the period of Plaintiff's alleged injury. QBE Insurance was added as a defendant via a claim under the Louisiana Direct Action Statute (LDAS) included in Plaintiff's First Supplemental and Amended Petition for Damages filed November 4, 2019. As a plaintiff suing under the LDAS, Plaintiff is bound by all terms and conditions of the policy of insurance on which his claims rely, including but not limited to the arbitration provision contained therein. QBE Insurance has reserved all rights and defenses available to it under its policy and governing law.

**C.    PENDING MOTIONS**

List any pending motion(s), the date filed, and the basis of the motion(s):

Plaintiff contends his Motion to Enforce, Compel, and Sanctions for Failure to Comply with Court Orders is the only pending motion before the Court. *See* Dkt. 15. This motion was filed on May 14, 2020.

Plaintiff's Motion to Enforce, Compel, and Sanctions for Failure to Comply with Court Orders seeks the following relief:

1. Against and/or from Defendant Rec Marine Logistics LLC:
    a. Sanctions including the striking of pleadings and the establishment of negligence liability against Rec Marine Logistics, LLC for violating the written order of Judge Trudy White issued on October 13, 2019 ordering

    Rec Marine Logistics, LLC to respond to Plaintiff's requests for production and interrogatories served August 9, 2019 by October 23, 2019;
  b. Enforcement of the aforementioned prior outstanding order;
  c. Order compelling complete Rule 26 disclosures; and
  d. Order requiring payment of attorneys' fees.

2. Against and/or from Defendant Gulf Offshore Logistics LLC:
  a. Order compelling Gulf Offshore Logistics LLC to provide disclosures mandated by Rule 26, which Gulf Offshore Logistics LLC has wholly failed to provide;
  b. Order compelling Gulf Offshore Logistics LLC to respond to requests for production and interrogatories sent January 9, 2020, which were not objected or responded to within 30 days (a period that expired before removal on February 17, 2020); and
  c. Order requiring payment of attorneys' fees.

3. Against and/or from Defendant GOL LLC:
  a. Order compelling GOL LLC to provide disclosures mandated by Rule 26, which GOL LLC has wholly refused to provide;
  b. Order compelling GOL LLC to respond to requests for production and interrogatories sent January 9, 2020, which were not objected or responded to within 30 days (a period that expired before removal on February 17, 2020); and
  c. Order requiring payment of attorneys' fees.

4. Against and/or from Defendant Offshore Transport Services LLC:
  a. Order compelling Offshore Transport Services LLC to respond to requests for production and interrogatories sent January 9, 2020, which were not objected or responded to within 30 days (a period that expired before removal on February 17, 2020);
  b. Order compelling complete Rule 26 disclosures; and
  c. Order requiring payment of attorneys' fees.

The Non-Insurance Defendants claim they have pending motions before this Court which were pending when this case was removed from state court (East Baton Rouge Parish) and will re-raise and set the these for hearing at the appropriate date.

Plaintiff disputes the Non-Insurance Defendants' claim that other motions are pending based on the Court's April 16, 2020 status conference report and Order. *See* Dkt. 13 (April 16, 2020 status conference report and Order)("Regarding motions that were pending in the state court at the time of removal, the Court practice requires that those motions be re-filed if they are to be considered by this Court.").

No defendant has filed a motion for reconsideration, a motion for rehearing, or an appeal of Judge White's Order with this Court. "REC, *et. al*" filed a response to Plaintiff's Motion to

Enforce, Compel, and Sanctions for Failure to Comply with Court Orders. Plaintiff assumes that the Response filed by "REC, *et. al*" (see Dkt. 28 pg. 1) was filed on behalf of the Non-Insurance Defendants. Plaintiff filed a Reply to the Non-Insurance Defendants' Response.

**D.     ISSUES**

List the principal legal issues involved and indicate whether or not any of those issues are in dispute:

The parties assert that the following are legal issues involved in this matter, all of which are in dispute:

1. Whether Defendants failed to pay maintenance and cure or withheld maintenance and cure intentionally and wantonly and in such a manner as to give rise to punitive damages;
2. Whether Defendants failed to observe the lift and properly focus on the work at hand;
3. Whether Defendants were negligent or violated and standards of care or duties;
4. Whether Defendants were grossly negligent;
5. Whether the negligence of Defendants proximately caused Plaintiff's injuries;
6. Whether the Defendants failed to conduct a safe operation considering all the circumstances;
7. Whether the Defendants failed to use the proper tools and equipment and personnel for a safe operation;
8. Whether the Defendants failed to safely and properly plan the job;
9. Whether the Defendants failed to focus on the task at hand;
10. Whether the Defendants failed to provide proper tools and equipment;
11. Whether the Defendants failed to properly supervise their crew;
12. Whether the Defendants failed to properly train their employees;
13. Whether the Defendants failed to provide adequate safety equipment;
14. Whether the Defendants failed to watch/man the controls of the vessel;
15. Whether the Defendants operated the vessel with an inadequate crew;
16. Whether the Defendants failed to provide a safe work environment;
17. Whether the Defendants failed to protect crew members from unnecessary risks;
18. Whether the Defendants failed to maintain a proper lookout;
19. Whether the Defendants failed to make adequate repairs;
20. Whether the Defendants failed to provide a seaworthy vessel and crew;
21. Whether the Defendants are vicariously liable for their employees' negligence;
22. Whether the Defendants failed to ensure the vessel was adequately maintained;
23. Whether the Defendants violated applicable Coast Guard, OSHA, and/or MMS rules;
24. Whether Plaintiff's actions or conduct bar or alternatively reduce his right of recovery;
25. Whether Plaintiff failed to make reasonable efforts to mitigate his damages, if any;
26. The nature, scope, and extent of the damages sustained by Plaintiff, if any;
27. Whether Plaintiff can prove all of the required elements of his tort claims;
28. Whether Defendants owed any responsibility or duty to Plaintiff;
29. The extent to which any other entity or person, whether or not a party, caused or contributed to Plaintiff's alleged accident or injuries, and whether that entity or person's

fault should be quantified by the jury;
30. Whether Plaintiff was contributorily negligent and/or comparatively at fault;
31. Whether Plaintiff is entitled to any damages against Defendants; and,
32. Whether coverage for the particular claims asserted by Plaintiff exists under QBE Insurance's policy of insurance;
33. Whether Plaintiff is entitled to a direct action against QBE Insurance under the Louisiana Direct Action Statute;
34. Whether Plaintiff's claims are subject to mandatory arbitration in London.
35. All factual questions implicit in or raised by the disputed issues or law.

### E.    DAMAGES

Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:

1.    Plaintiff's calculation of damages:

Plaintiff seeks recovery of all compensatory damages, actual damages, consequential damages, past and future medical expenses, lost wages in the past and future, impaired earning capacity in the past and future, pain and suffering in the past and future, mental anguish in the past and future, impairment in the past and future, disfigurement in the past and future, loss of household services in the past and future, loss of consortium in the past and future, interest on damages (pre- and post- judgment), Court costs, expert witness fees, deposition costs, attorneys' fees (where provided by agreement, law, statute, and/or agreement), exemplary damages, and all other damages available under the applicable law.

Plaintiff intends to rely on expert testimony to calculate his future losses in income, earning capacity, and the reasonable cost of the medical care his injuries will require in the future. Plaintiff continues to treat and is not working, and it is premature to provide a calculation of damages. Plaintiff was making $140 per day at the time of the incident. His pay was expected to rise. He has not worked since the incident, and as of now cannot return to work. Depending on when trial occurs, Plaintiff estimates that the sum of his past-medical expenses and lost wages will exceed $500,000.00. Plaintiff will ask the jury to apportion the amounts of this non-economic damages, which Plaintiff estimates will be in excess of $10 million.

2.    Defendant's calculation of offset and/or plaintiff's damages:

Defendants do not have sufficient information at this time to calculate Plaintiff's damages, if any, or any offset to Plaintiff's damages.

3.    Counterclaimant/cross claimant/third party's calculation of damages:

N/A

### F.    SERVICE:

Identify any unresolved issues as to waiver or service of process, personal jurisdiction, or venue:

> Plaintiff's Response: No issues as to service of process, personal jurisdiction, or venue.

> Non-Insurance Defendants' Response: There was never any proper service of process or suit on REC, *et.al.* as service was attempted in East Baton Rouge Parish, Louisiana, in an improper jurisdiction and venue under Louisiana Law.[1]

> Defendant QBE's Response:

> Regarding venue, QBE Insurance's policy of insurance contains a clause requiring that any and all dispute be resolved by mandatory arbitration in London, which clause is enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq*. QBE Insurance reserves its right to compel arbitration. QBE has engaged with Plaintiff's counsel in an effort to come to agreement on enforcement and/or preservation of QBE's right to arbitration in a manner that serves judicial economy. In the absence of an agreement, QBE will in due course file a motion to enforce its right to arbitration.

**G.     DISCOVERY**

1.     Initial Disclosures:

A.     Have the initial disclosures required under FRCP 26(a)(1) been completed?

[ ] YES     [X] NO

REC Marine and OTS have provided incomplete disclosures. GOL and Gulf Offshore have not provided Rule 26 disclosures. QBE has not provided Rule 26 disclosures. QBE has indicated their disclosures would mirror that of the Non-Insurance Defendants.

In accordance with Local Rule 26(b), the parties shall provide their initial disclosures to the opposing party no later than 7 days before the date of the scheduling conference, unless a party objects to initial disclosures during the FRCP 26(f) conference and states the objection below.

B.     Do any parties object to initial disclosures?

---

[1] Plaintiff disputes this claim. There is ample evidence that the Non-Insurance Defendants have been properly served, that the Court has personal jurisdiction over them, and that venue is proper. Plaintiff incorporates his Motion to Enforce, Compel Discovery, and Sanctions for Violating Court Orders (the "Motion"), the evidence attached to the Motion, and his Reply in Support of the Motion. *See* Dkt. 15 and Dkt. 31.

[ ] YES   [X] NO

For any party who answered *yes*, please explain your reasons for objecting.

2. Briefly describe any discovery that has been completed or is in progress:

By plaintiff(s):

Plaintiff's Discovery to REC Marine, GOL, Gulf Offshore, and Offshore Transport
Plaintiff has submitted Requests for Production, Interrogatories, and Requests for Admission to Defendants REC Marine, GOL, Gulf Offshore, and Offshore Transport.

No documents have been produced in response to Plaintiff's Requests for Production, no interrogatories have been answered, and these defendants have "declined" to individually respond to requests for admission. These defendants continue to argue that they do not need to respond to any discovery despite the objection being overruled and being ordered to respond to discovery by the state court judge before removal occurred.

REC Marine and Offshore Transport have produced approximately 34 pages of documents with their Rule 26 disclosures.

GOL and Gulf Offshore refuse to provide Rule 26 disclosures.

The above generally outlines the discovery in progress between Plaintiff and REC Marine, GOL, Gulf Offshore, and Offshore Transport. *See also* Plaintiff's Motion to Enforce, Compel, and Sanctions for Failure to Comply with Court Orders (Dkt. 15).

The Non-Insurance Defendants contend that Plaintiff's statement found in Section G.B.2. is simply an untrue statement by Plaintiff and they contend that any discovery that was attempted by Plaintiff was not served and was prevented under the Louisiana Rules pertaining to pending Exceptions to Venue and Jurisdiction.[2]

Plaintiff's Discovery to QBE

Plaintiff submitted narrow Requests for Production and Interrogatories to QBE on subject matter jurisdiction issues. QBE responded to those Requests for Production and Interrogatories with objections.

Non-Insurance Defendants to Plaintiff:

"REC, *et al.*" served interrogatories on Plaintiff.[3]

---

[2] Defendants' exceptions to venue and jurisdiction were denied in the state court proceedings. The Non-Insurance Defendants have not refiled those claims in this Court.
[3] Plaintiff assumes that the discovery served by "REC, et. al" was served on behalf of the Non-Insurance Defendants.

QBE

No discovery has been directed to any party. QBE was served with discovery limited to the issue of subject matter jurisdiction by Plaintiff. QBE objected where necessary, but responded to the full extent responses were possible. Plaintiff subsequently stipulated that subject matter jurisdiction is proper, rendering that discovery moot.

3. Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery. (For example: are there any confidential business records or medical records that will be sought? Will information that is otherwise privileged be at issue?)

Plaintiff: None.

Non-Insurance Defendants: No items present at this time.

Defendant QBE Insurance (Europe) Limited: None at this time.

4. Discovery from experts:

Identify the subject matter(s) as to which expert testimony will be offered:

By plaintiff(s): Plaintiff intends to offer expert testimony on all aspects of liability (if necessary), past-and-future economic losses, and past-and-future medical treatments, injuries, diagnoses, causations (and all associated medical issues) and medical expenses. Plaintiff is still treating for the injuries he sustained on or about May 2018.

By defendant(s):

Plaintiff has no damages. He was paid in full for M&C, and demonstrated no actionable Jones Act or General Maritime claims of any kind. To the extent necessary, however, Defendants intend to offer expert testimony on issues of liability (marine safety) and causation; medical causation and the extent of Plaintiff's injuries, if any; and economic causation and quantum of any damages.

## H. PROPOSED SCHEDULING ORDER[4]

---

[4] The parties have agreed on the above dates with the understanding that the COVID-19 pandemic may necessitate any party to seek leave of Court to extend deadlines as appropriate.

1.	If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline: April 9, 2020.

2.	Recommended deadlines to join other parties or to amend the pleadings:[5] November 18, 2020.

3.	Filing all discovery motions and completing all discovery except experts: April 21, 2021.

4.	Disclosure of identities and resumés of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

Plaintiff(s): January 20, 2021.

Defendant(s): February 19, 2021.

5.	Exchange of expert reports:

Plaintiff(s): February 19, 2021.

Defendant(s): March 22, 2021.

6.	Completion of discovery from experts: April 21, 2021.

7.	Filing dispositive motions and Daubert motions: June 7, 2021.

8.	All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's schedule, within the following general parameters.[6] The parties should not provide any proposed dates for

---

[5] Any proposed amended pleading shall be comprehensive and include all relevant allegations as revised, supplemented or amended such that it will become the operative pleading without reference to any other document in the record. Any amendment sought under Fed.R.Civ.P. 15(a)(2) requires leave of court whether or not the opposing party consents even if filed before this deadline, however the movant shall advise whether the opposing party consents.  See LR 7(e).

[6] The date ranges provided for the new deadlines, pre-trial conference, and trial date are a general guideline only.  The actual dates may vary depending on the complexity of a particular case.  All

these remaining deadlines.

    a. Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

    b. Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline).

    c. Deadline to file responses to motions in limine (approximately 22-24 weeks after dispositive motion deadline).

    d. Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

    e. Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

    f. Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

    g. Trial date (approximately 27-29 weeks after dispositive motion deadline).

**I.     TRIAL**

1.  Has a demand for trial by jury been made?

    [X] YES     [ ] NO

2.  Estimate the number of days that trial will require.

    Plaintiff estimates that it will take 5-7 days to effectively try this case. The materials and testimony obtained through discovery may require an upward or downward adjustment of this estimate.

**J.     OTHER MATTERS**

Are there any specific problems the parties wish to address at the scheduling conference?

---

requests for subsequent changes to the deadlines set in the scheduling order under paragraph numbers 7 or 8 must be by motion directed to the presiding judge.

    [X] YES    [ ] NO

i.    If the answer is *yes*, please explain:

If not addressed prior to the scheduling conference, Plaintiff and Defendants would like to argue the merits of the following pending motions:

Plaintiff's Motion to Enforce, Compel, and Sanctions for Failure to Comply with Court Orders. See Dkt. 15.

**ii.**    If the answer is *no*, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES.**

    [ ] YES    [X] NO

**K.**    **SETTLEMENT**

1.    Please set forth what efforts, if any, the parties have made to settle this case to date.

The Non-Insurance Defendants have been involved in a dispute over basic jurisdictional and venue issues, but would not be involved in settlement discussions at this juncture, as their insurance coverage has been exhausted; and settlement discussions would now pass to Underwriters.[7]

QBE has requested medical records from Plaintiff in order to preliminarily evaluate this claim for potential settlement, but has not received any records at this time.

2.    Do the parties wish to have a settlement conference:

    [X] YES    [ ] NO

If your answer is *yes*, at what stage of litigation would a settlement conference be most beneficial?

    After the exchange of expert reports.

**L.**    **CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

---

[7] Plaintiff does not know what or who "Underwriters" refers to. QBE has provided Plaintiff with a Policy of Insurance numbered 02077000001 (an 18 page document) and a 39 page document titled "Protection & Indemnity – Marine Liability, Protection and Legal Expenses Terms and Conditions." The Non-Insurance Defendants have not disclosed any insuring agreements.

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge.

Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court: [ ]  YES       [X] NO

First Amended Report Dated: August 13, 2020.

*/s/Daniel E. Sheppard*
Daniel E. Sheppard
Bar Roll No. 38076
John D. Sheppard
*Admitted Pro Hac Vice*
MORROW & SHEPPARD LLP
3701 Kirby Dr, Ste 1000
Houston, TX  77098
713.489.1206 tel
713.893.8370 fax
All E-Service To:
msfiling@morrowsheppard.com
dsheppard@morrowsheppard.com
jsheppard@morrowsheppard.com

COUNSEL FOR PLAINTIFF

*/s/Alan R. Davis* (with permission)
Alan R. Davis
Bar Roll No.  31694
Miles C. Thomas
Bar Roll No.  31342
Lorin R. Scott
Bar Roll No.  38888
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
2772 Pan-American Life Center
601 Poydras Street
New Orleans, LA 70130
504.568.1991 tel
504.310.9195 fax
All E-Service To:
adavis@lawla.com
mthomas@lawla.com

lscott@lawla.com
cgaillard@lawla.com

COUNSEL FOR QBE INSURANCE (EUROPE) LIMITED

*/s/Fred E. Salley* (with permission)
Fred E. Salley
Bar Roll No. 11665
SALLEY & ASSOCIATES
77378 Highway 1081
Covington, LA 70435
985.867.8830 tel
All E-Service To:
fsalley@acadiacom.com

COUNSEL FOR REC MARINE LOGISTICS LLC; GULF OFFSHORE LOGISTICS LLC; GOL LLC; AND OFFSHORE TRANSPORT SERVICES LLC

**CERTIFICATE OF SERVICE**

This document was served on all counsel of record electronically via CM/ECF on the date it was filed.

*/s/Daniel E. Sheppard*
Daniel E. Sheppard

**CERTIFICATE OF CONFERENCE**

The parties have conferred prior to the filing of this document and file it jointly.

*/s/Daniel E. Sheppard*
Daniel E. Sheppard