**Page 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

REC MARINE LOGISTICS, LLC   CIVIL ACTION
                            NO. 19-11149
VERSUS
DEQUINCY R. RICHARD        SECTION: 1(3)

JUDGE LANCE M. AFRICK
MAGISTRATE DANA M. DOUGLAS

Video Deposition of REC Marine Logistics, LLC, taken on December 30, 2019, commencing at 10:15 a.m. and concluding at 2:20 p.m., at the offices of REC Marine Logistics, LLC, 810 Crescent Avenue, Lockport, Louisiana.

**Page 2**

APPEARANCES:

SALLEY & ASSOCIATES
BY: FRED E. SALLEY, ESQ.
77378 Highway 1081
Covington, Louisiana 70434
   Attorney for the Plaintiff

SPAGNOLETTI LAW FIRM
BY: ERIC J. RHINE, ESQ.
401 Louisiana Street
8th Floor
Houston, Texas 77002
   Attorney for the Defendant

REPORTED BY:
Trina M. Graves
Certified Court Reporter

EXHIBIT 11

**Page 3**

INDEX

                                    PAGE

Title                                 1
Appearances                           2
Stipulations                          4
Examination by Mr. Rhine              5
Examination by Mr. Salley           250
Reporter certificate                255

EXHIBIT INDEX

Exhibit number 1 - Logs              18
Exhibit number 2 - Not. of Deposition 20
Exhibit number 3 - Motion Filed      71
Exhibit number 4 - Answer            99
Exhibit number 5 - Counterclaim     117
Exhibit number 6 - Interrogatories  129
Exhibit number 7 - Interrogatories  129
Exhibit number 8 - Accident Report  132
Exhibit number 9 - Memorandum       208
Exhibit number 10 - Boat Logs       221
Exhibit number 11 - Personnel File  236

**Page 4**

STIPULATION

   It is stipulated and agreed by and between counsel that the deposition of REC Marine Logistics, LLC is hereby being taken in accordance with Fed.R.Civ.P. 30(b)(6), of the Federal Rules of Civil Procedure for all purposes in accordance with law;
   That the formalities of filing, reading, signing and certification are hereby waived;
   That all objections, except those as to the form of the question and/or responsiveness of the answer, are hereby reserved until such time as this deposition or any part thereof may be used in evidence.

        * * * * * * * *

   TRINA M. GRAVES, Certified Court Reporter, in and for the State of Louisiana, officiated in administering the oath to the witness.

41

1  A  We operate their vessel.
2  Q  Is the -- what vessel is that, in
3  this case?
4  A  The DUSTIN DANOS.
5  Q  Is the DUSTIN DANOS the only vessel
6  that REC Marine operates on behalf of Offshore
7  Transport Services?
8  A  To my knowledge, yes.
9  Q  Does REC Marine operate other vessels
10 that are owned by Todd Danos --
11     MR. SALLEY:
12        Objection.
13 Q  -- for any other entities?
14     MR. SALLEY:
15        Objection.  Todd Danos has
16     nothing to do with the case.
17 BY MR. RHINE:
18 Q  You can answer my question.
19 A  Yes.
20 Q  Okay.  How many vessels of Todd Danos
21 does REC Marine operate?
22     MR. SALLEY:
23        Let me object because you're
24     asking him for material that has not
25     been requested.  He does not know the

42

1  legal relationship with Todd Danos
2  and any company that he may be
3  involved in.  So I'd object to your
4  trying to mislead the witness.
5      THE WITNESS:
6        I don't know, maybe, four or
7      five.
8  BY MR. RHINE:
9  Q  Sir, did you understand my question?
10     MR. SALLEY:
11        Objection.
12     THE WITNESS:
13        I believe you asked how many
14     vessels he's involved with, Todd
15     Danos, is involved with for the
16     company.
17 BY MR. RHINE:
18 Q  Yeah.  Did you understand that?
19 A  Repeat what you were -- can you --
20 Q  Did you understand my prior question
21 that you answered?
22 A  After -- after this, I don't remember
23 what the question was.
24     MR. SALLEY:
25        Do you want it read back?  She

43

1  can --
2      THE WITNESS:
3         No.  That -- that's not a
4      problem.
5  BY MR. RHINE:
6  Q  Is there a contract between REC
7  Marine and Offshore Transport Services?
8  A  Not to my knowledge, no.
9  Q  Are there any agreements between the
10 two entities?
11 A  If there is, I'm not aware of it.
12 It's something I wouldn't be involved with.
13 Q  Who would, at REC Marine, be able to
14 fully answer that question?
15 A  I'm sure Ronald Chaddock and Todd
16 Danos.
17 Q  Who was the employer of Dequincy
18 Richard?
19 A  REC Marine Logistics, LLC.
20 Q  Were all of the crew members that
21 were onboard the DUSTIN DANOS, at the time of
22 the incident, employed by REC Marine?
23 A  Correct.
24 Q  Who is in charge of safety on the
25 vessel?  By that, I mean, which of these

44

1  companies that we've talked about was in
2  charge of the safety policies that applied to
3  the vessel, at the time of the incident?
4  A  GOL, LLC manuals were onboard the
5  vessel.
6  Q  Who is GOL, LLC?
7  A  It is the, I guess, the invoicing,
8  the marketing and invoicing company.
9  Q  Who owns GOL,LLC?
10     MR. SALLEY:
11        Objection.  Only if you know.
12     THE WITNESS:
13        I think Ronald Chaddock, Todd
14     Danos, and Joel Broussard.
15 BY MR. RHINE:
16 Q  Okay.  When Captain McCain is
17 operating the DUSTIN DANOS, which company's
18 safety policies is he following?
19 A  The manual says GOL, LLC.
20 Q  Okay.  Does REC Marine also have a
21 safety manual?
22 A  No.
23 Q  Does REC --
24 A  Those were expired.  Those were
25 expired when we introduced the GOL, LLC

45

1  manuals.
2     Q   Okay.  When was the GOL, LLC manual
3  introduced?
4        MR. SALLEY:
5           Objection, unless you know.
6        THE WITNESS:
7           I don't know the exact --
8        MR. RHINE:
9           Stop saying, "Unless you know."
10       Just note your objection, please.
11       Stop trying to guide the witness.
12       MR. SALLEY:
13          Would you quit trying to tell me
14       how to practice law.  I will make my
15       objections as required.
16       MR. RHINE:
17          Okay.  I guess we're gonna keep
18       getting improper objections.  Is that
19       it?
20       MR. SALLEY:
21          If you think they're improper,
22       you can think they're improper.  I
23       don't think they're improper.  I
24       think your deposition is out of
25       order, because you sent me a list of

46

1        over 30 items.  And you haven't asked
2        about a one, so far.  Maybe, you did
3        one.  Your list has 34 items that you
4        were alleged to be wanting
5        information about.  You haven't asked
6        about but one.
7        MR. RHINE:
8           Anything else, Fred?
9        MR. SALLEY:
10          Not at present.  But when I have
11       more, I will offer it.
12       MR. RHINE:
13          I'm sure you will.
14 BY MR. RHINE:
15    Q   Okay.  When was the GOL, LLC safety
16 manual placed on the vessel?
17    A   I would say, sometime after we moved
18 to that office, maybe, the fall of -- I think
19 we moved in in '15.
20    Q   Okay.  Prior to that, did REC Marine
21 have a safety manual that was in place on the
22 vessel?
23    A   Yes.
24    Q   What changes, if any, were made to
25 safety manual when it was swapped out for the

47

1  one from GOL, LLC?
2        MR. SALLEY:
3           Exception.  Vague.
4        THE WITNESS:
5           That, I can't do this.  I can't
6        tell you exactly what that is.
7  BY MR. RHINE:
8     Q   Okay.  Does REC Marine have a copy of
9  the safety manual that is in place on the
10 vessel?
11    A   A GOL, LLC manual, yes.
12    Q   Okay.  Besides the GOL, LLC safety
13 manual, were there any other policies that the
14 captain and crew of the DUSTIN DANOS were
15 supposed to follow on the date of the
16 incident?
17       MR. SALLEY:
18          Objection.  Vague.
19       THE WITNESS:
20          No, I don't know.?
21 BY MR. RHINE:
22    Q   Okay.  So the sole safety guidance in
23 place on the vessel, at least, in written
24 form, was the safety manual that REC Marine
25 implemented but was written by GOL, LLC.  Is

48

1  that fair?
2        MR. SALLEY:
3           Objection.  Objection to form.
4        THE WITNESS:
5           That would be correct.
6  BY MR. RHINE:
7     Q   Why didn't REC Marine just issue
8  their own safety manual?
9        MR. SALLEY:
10          Objection.
11       THE WITNESS:
12          We took over.  When we became
13       involved with the company, Gulf
14       Offshore Logistics' safety manual was
15       more in depth for -- to work for
16       larger offshore companies.  And so we
17       used their manual and changed the
18       name to GOL, LLC on the manuals.
19 BY MR. RHINE:
20    Q   Why didn't you just change the name
21 to REC Marine on the manuals?
22       MR. SALLEY:
23          Objection.  That's a matter
24       that's not requested by your Exhibit
25       A.

```
                                                     49
 1        THE WITNESS:
 2           Some of or documentation for the
 3        vessels is listed under GOL, LLC.
 4   BY MR. RHINE:
 5     Q   What training did REC Marine provide
 6   to Dequincy Richard?
 7     A   I'm not exactly sure.
 8     Q   Who would know what training was
 9   provided to Dequincy Richard?
10     A   Brian Harris.
11     Q   Does Mr. Harris still work for REC
12   Marine?
13     A   Yes.
14     Q   Prior to today's deposition, did you
15   ask Mr. Harris anything about the training
16   that Mr. Richard had received while working
17   for REC Marine?
18     A   No.
19     Q   Do you know, sitting here today,
20   whether or not Mr. Richard ever received a
21   copy of the GOL, LLC safety manual?
22     A   I do not know that.
23     Q   Who would know that?
24     A   Oh, I'm sorry.  Scratch that.  I was
25   thinking of the Incident Report when you said
```

```
                                                     50
 1   that.
 2     Q   Okay.  Let me reask the question,
 3   then.  We'll make sure we're clear.
 4     A   Okay.
 5     Q   Do you know if my client, Dequincy
 6   Richard, ever received a copy of the GOL, LLC
 7   safety manual?
 8     A   It's made available to them on the
 9   vessel.
10     Q   What does that mean?
11     A   The vessel -- the book -- the vessel
12   each has a safety manual onboard, you know,
13   that they're able to read any time they feel a
14   need to.  It's at their access to review.
15     Q   Okay.  Do you know if my client ever
16   reviewed the manual?
17        MR. SALLEY:
18           Objection.
19        THE WITNESS:
20           No.  He's -- if he has, that's
21        at his discretion.
22   BY MR. RHINE:
23     Q   Does REC Marine have any policies and
24   procedures in place regarding the review of
25   the GOL safety manual?
```

```
                                                     51
 1     A   I believe that we do for orientation.
 2     Q   What are those policies?
 3     A   It goes through a list of orientation
 4   procedures, videos.  They sign off saying that
 5   they were shown.  I don't know the exact
 6   videos or documents that they sign.  I'm
 7   really not involved day-to-day with that.
 8     Q   Okay.  Who is involved day-to-day
 9   with that?
10     A   Between personnel and safety.
11     Q   What individuals at REC Marine?
12     A   Now, it would be Mandy Melancon.  And
13   Brian Harris has done it a few times.
14     Q   Who would it have been specifically
15   at the time that Mr. Richard was --
16     A   I'm guessing Alex Griffin, who no
17   longer works for us.
18     Q   Okay.  All right.  What was Alex
19   Griffin's position?
20     A   Personnel manager.
21     Q   For REC Marine?
22     A   Correct.
23     Q   Did he work for any of the other
24   companies we're talking about?
25     A   No.  REC Marine Logistics.
```

```
                                                     52
 1     Q   Okay.  When did Alex Griffin leave
 2   the company?
 3     A   Thirty days ago.
 4     Q   Okay.  Was he fired?
 5     A   No.
 6     Q   What happened?
 7        MR. SALLEY:
 8           If you know.
 9        THE WITNESS:
10           He took a job with another
11        company.
12   BY MR. RHINE:
13     Q   All of my questions today, if you
14   don't know, just tell me you don't know.  I'm
15   not trying to ask you information you don't
16   know.  I'm just trying to identify what you do
17   and do not know and try to get the information
18   that REC Marine is aware of.  Okay.
19     A   Understood.
20        MR. SALLEY:
21           Counsel, the problem is that you
22        listed 35 items you wanted to ask.
23        MR. RHINE:
24           Then, you should have objected,
25        Fred.
```

41

```
 1    A    We operate their vessel.
 2    Q    Is the -- what vessel is that, in
 3  this case?
 4    A    The DUSTIN DANOS.
 5    Q    Is the DUSTIN DANOS the only vessel
 6  that REC Marine operates on behalf of Offshore
 7  Transport Services?
 8    A    To my knowledge, yes.
 9    Q    Does REC Marine operate other vessels
10  that are owned by Todd Danos --
11         MR. SALLEY:
12             Objection.
13    Q    -- for any other entities?
14         MR. SALLEY:
15             Objection.  Todd Danos has
16         nothing to do with the case.
17  BY MR. RHINE:
18    Q    You can answer my question.
19    A    Yes.
20    Q    Okay.  How many vessels of Todd Danos
21  does REC Marine operate?
22         MR. SALLEY:
23             Let me object because you're
24         asking him for material that has not
25         been requested.  He does not know the
```

42

```
 1  legal relationship with Todd Danos
 2  and any company that he may be
 3  involved in.  So I'd object to your
 4  trying to mislead the witness.
 5       THE WITNESS:
 6           I don't know, maybe, four or
 7       five.
 8  BY MR. RHINE:
 9    Q    Sir, did you understand my question?
10       MR. SALLEY:
11           Objection.
12       THE WITNESS:
13           I believe you asked how many
14       vessels he's involved with, Todd
15       Danos, is involved with for the
16       company.
17  BY MR. RHINE:
18    Q    Yeah.  Did you understand that?
19    A    Repeat what you were -- can you --
20    Q    Did you understand my prior question
21  that you answered?
22    A    After -- after this, I don't remember
23  what the question was.
24       MR. SALLEY:
25           Do you want it read back?  She
```

43

```
 1       can --
 2       THE WITNESS:
 3           No.  That -- that's not a
 4       problem.
 5  BY MR. RHINE:
 6    Q    Is there a contract between REC
 7  Marine and Offshore Transport Services?
 8    A    Not to my knowledge, no.
 9    Q    Are there any agreements between the
10  two entities?
11    A    If there is, I'm not aware of it.
12  It's something I wouldn't be involved with.
13    Q    Who would, at REC Marine, be able to
14  fully answer that question?
15    A    I'm sure Ronald Chaddock and Todd
16  Danos.
17    Q    Who was the employer of Dequincy
18  Richard?
19    A    REC Marine Logistics, LLC.
20    Q    Were all of the crew members that
21  were onboard the DUSTIN DANOS, at the time of
22  the incident, employed by REC Marine?
23    A    Correct.
24    Q    Who is in charge of safety on the
25  vessel?  By that, I mean, which of these
```

44

```
 1  companies that we've talked about was in
 2  charge of the safety policies that applied to
 3  the vessel, at the time of the incident?
 4    A    GOL, LLC manuals were onboard the
 5  vessel.
 6    Q    Who is GOL, LLC?
 7    A    It is the, I guess, the invoicing,
 8  the marketing and invoicing company.
 9    Q    Who owns GOL,LLC?
10       MR. SALLEY:
11           Objection.  Only if you know.
12       THE WITNESS:
13           I think Ronald Chaddock, Todd
14       Danos, and Joel Broussard.
15  BY MR. RHINE:
16    Q    Okay.  When Captain McCain is
17  operating the DUSTIN DANOS, which company's
18  safety policies is he following?
19    A    The manual says GOL, LLC.
20    Q    Okay.  Does REC Marine also have a
21  safety manual?
22    A    No.
23    Q    Does REC --
24    A    Those were expired.  Those were
25  expired when we introduced the GOL, LLC
```

45

1  manuals.
2    Q   Okay.  When was the GOL, LLC manual
3  introduced?
4       MR. SALLEY:
5          Objection, unless you know.
6       THE WITNESS:
7          I don't know the exact --
8       MR. RHINE:
9          Stop saying, "Unless you know."
10      Just note your objection, please.
11      Stop trying to guide the witness.
12      MR. SALLEY:
13         Would you quit trying to tell me
14      how to practice law.  I will make my
15      objections as required.
16      MR. RHINE:
17         Okay.  I guess we're gonna keep
18      getting improper objections.  Is that
19      it?
20      MR. SALLEY:
21         If you think they're improper,
22      you can think they're improper.  I
23      don't think they're improper.  I
24      think your deposition is out of
25      order, because you sent me a list of

46

1  over 30 items.  And you haven't asked
2  about a one, so far.  Maybe, you did
3  one.  Your list has 34 items that you
4  were alleged to be wanting
5  information about.  You haven't asked
6  about but one.
7       MR. RHINE:
8          Anything else, Fred?
9       MR. SALLEY:
10         Not at present.  But when I have
11      more, I will offer it.
12      MR. RHINE:
13         I'm sure you will.
14 BY MR. RHINE:
15   Q   Okay.  When was the GOL, LLC safety
16 manual placed on the vessel?
17   A   I would say, sometime after we moved
18 to that office, maybe, the fall of -- I think
19 we moved in in '15.
20   Q   Okay.  Prior to that, did REC Marine
21 have a safety manual that was in place on the
22 vessel?
23   A   Yes.
24   Q   What changes, if any, were made to
25 safety manual when it was swapped out for the

47

1  one from GOL, LLC?
2       MR. SALLEY:
3          Exception.  Vague.
4       THE WITNESS:
5          That, I can't do this.  I can't
6       tell you exactly what that is.
7  BY MR. RHINE:
8    Q   Okay.  Does REC Marine have a copy of
9  the safety manual that is in place on the
10 vessel?
11   A   A GOL, LLC manual, yes.
12   Q   Okay.  Besides the GOL, LLC safety
13 manual, were there any other policies that the
14 captain and crew of the DUSTIN DANOS were
15 supposed to follow on the date of the
16 incident?
17      MR. SALLEY:
18         Objection.  Vague.
19      THE WITNESS:
20         No, I don't know.?
21 BY MR. RHINE:
22   Q   Okay.  So the sole safety guidance in
23 place on the vessel, at least, in written
24 form, was the safety manual that REC Marine
25 implemented but was written by GOL, LLC.  Is

48

1  that fair?
2       MR. SALLEY:
3          Objection.  Objection to form.
4       THE WITNESS:
5          That would be correct.
6  BY MR. RHINE:
7    Q   Why didn't REC Marine just issue
8  their own safety manual?
9       MR. SALLEY:
10         Objection.
11      THE WITNESS:
12         We took over.  When we became
13      involved with the company, Gulf
14      Offshore Logistics' safety manual was
15      more in depth for -- to work for
16      larger offshore companies.  And so we
17      used their manual and changed the
18      name to GOL, LLC on the manuals.
19 BY MR. RHINE:
20   Q   Why didn't you just change the name
21 to REC Marine on the manuals?
22      MR. SALLEY:
23         Objection.  That's a matter
24      that's not requested by your Exhibit
25      A.

### Page 49

```
 1        THE WITNESS:
 2            Some of or documentation for the
 3        vessels is listed under GOL, LLC.
 4   BY MR. RHINE:
 5      Q   What training did REC Marine provide
 6   to Dequincy Richard?
 7      A   I'm not exactly sure.
 8      Q   Who would know what training was
 9   provided to Dequincy Richard?
10      A   Brian Harris.
11      Q   Does Mr. Harris still work for REC
12   Marine?
13      A   Yes.
14      Q   Prior to today's deposition, did you
15   ask Mr. Harris anything about the training
16   that Mr. Richard had received while working
17   for REC Marine?
18      A   No.
19      Q   Do you know, sitting here today,
20   whether or not Mr. Richard ever received a
21   copy of the GOL, LLC safety manual?
22      A   I do not know that.
23      Q   Who would know that?
24      A   Oh, I'm sorry.  Scratch that.  I was
25   thinking of the Incident Report when you said
```

### Page 50

```
 1   that.
 2      Q   Okay.  Let me reask the question,
 3   then.  We'll make sure we're clear.
 4      A   Okay.
 5      Q   Do you know if my client, Dequincy
 6   Richard, ever received a copy of the GOL, LLC
 7   safety manual?
 8      A   It's made available to them on the
 9   vessel.
10      Q   What does that mean?
11      A   The vessel -- the book -- the vessel
12   each has a safety manual onboard, you know,
13   that they're able to read any time they feel a
14   need to.  It's at their access to review.
15      Q   Okay.  Do you know if my client ever
16   reviewed the manual?
17         MR. SALLEY:
18            Objection.
19         THE WITNESS:
20            No.  He's -- if he has, that's
21         at his discretion.
22   BY MR. RHINE:
23      Q   Does REC Marine have any policies and
24   procedures in place regarding the review of
25   the GOL safety manual?
```

### Page 51

```
 1      A   I believe that we do for orientation.
 2      Q   What are those policies?
 3      A   It goes through a list of orientation
 4   procedures, videos.  They sign off saying that
 5   they were shown.  I don't know the exact
 6   videos or documents that they sign.  I'm
 7   really not involved day-to-day with that.
 8      Q   Okay.  Who is involved day-to-day
 9   with that?
10      A   Between personnel and safety.
11      Q   What individuals at REC Marine?
12      A   Now, it would be Mandy Melancon.  And
13   Brian Harris has done it a few times.
14      Q   Who would it have been specifically
15   at the time that Mr. Richard was --
16      A   I'm guessing Alex Griffin, who no
17   longer works for us.
18      Q   Okay.  All right.  What was Alex
19   Griffin's position?
20      A   Personnel manager.
21      Q   For REC Marine?
22      A   Correct.
23      Q   Did he work for any of the other
24   companies we're talking about?
25      A   No.  REC Marine Logistics.
```

### Page 52

```
 1      Q   Okay.  When did Alex Griffin leave
 2   the company?
 3      A   Thirty days ago.
 4      Q   Okay.  Was he fired?
 5      A   No.
 6      Q   What happened?
 7         MR. SALLEY:
 8            If you know.
 9         THE WITNESS:
10            He took a job with another
11         company.
12   BY MR. RHINE:
13      Q   All of my questions today, if you
14   don't know, just tell me you don't know.  I'm
15   not trying to ask you information you don't
16   know.  I'm just trying to identify what you do
17   and do not know and try to get the information
18   that REC Marine is aware of.  Okay.
19      A   Understood.
20         MR. SALLEY:
21            Counsel, the problem is that you
22         listed 35 items you wanted to ask.
23         MR. RHINE:
24            Then, you should have objected,
25         Fred.
```