UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>   **Plaintiff**<br><br>**VERSUS**<br><br>**REC MARINE LOGISTICS, LLC, ET AL**<br>   **Defendants** | **CIVIL ACTION NO: 3:20-cv-00092**<br><br>**DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON**<br><br>**MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

## MEMORANDUM IN SUPPORT OF GULF OFFSHORE LOGISTICS, LLC AND GOL, LLC'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Gulf Offshore Logistics, LLC ("Gulf Offshore") and GOL, LLC ("GOL") respectfully submit that there is no legal or factual basis for any claim by the plaintiff against these entities, and that summary judgment in their favor is therefore appropriate for the reasons set forth below.

### PERTINENT BACKGROUND

*Procedural History*

The Plaintiff, McArthur Griffin, was employed by REC Marine Logistics, LLC ("REC Marine") as a deckhand. He alleges that in May of 2018 he was injured while working onboard an offshore supply vessel named the M/V DUSTIN DANOS. More particularly, Griffin claims he sustained injuries to his shoulder, neck, back, legs, and other body parts when the captain of the M/V DUSTIN DANOS "allowed the vessel to move suddenly during a man-lift operation, resulting in Plaintiff being violently struck by the lift." On April 22, 2019, Plaintiff filed an Original Petition for Damages (the "Original Petition") in the 19th Judicial District Court for East Baton Rouge Parish against REC Marine, GOL, Gulf Offshore, and an alleged insurer of these

entities.[1] The Original Petition asserted claims for Jones Act negligence, unseaworthiness, and maintenance and cure.

On September 5, 2019, Griffin filed a First Supplemental and Amended Petition for Damages (the "Amended Petition") in the above-referenced state court action.[2] The Amended Petition simply added two new parties, Offshore Transport Services, LLC ("OTS") and QBE Insurance (Europe) Limited. All substantive allegations of the Amended Petition were identical to those in the Original Petition. More particularly, Griffin alleged (in the alternative) that he was employed by either REC Marine, GOL, Gulf Offshore, and/or OTS (hereinafter sometimes collectively referred to as the "Vessel Defendants").[3] He further alleged (again in the alternative) that each of the Vessel Defendants was the owner and/or operator of the M/V DUSTIN DANOS.[4] With respect to his Jones Act negligence claims, plaintiff avers that the Vessel Defendants were negligent in the following respects: failure to properly supervise their crew; failure to properly train their employees; failure to provide adequate safety equipment; failure to watch/man the controls of the vessel; operating the vessel with an inadequate crew; failure to provide a safe work environment; failure to protect crew members from unnecessary risks; failure to maintain a proper lookout; failure to make adequate repairs; failure to provide a seaworthy vessel and crew; vicariously liable for their employees' negligence; failure to ensure the vessel was adequately maintained; and violating applicable Coast Guard, OSHA, and/or MMS rules.[5]

On February 17, 2020, Plaintiff's state court case was removed to this Court by QBE. On April 29, 2020, the Vessel Defendants filed an Answer.[6] At the time the Answer was filed, the

---

[1] See Original Petition, attached hereto as Exhibit A.
[2] See Amended Petition, attached hereto as Exhibit B.
[3] Exhibit B, paragraph V
[4] Exhibit B, paragraph V
[5] Exhibit B, paragraph VI
[6] See Answer to Complaint, Rec. Doc. 14.

2

Vessel Defendants were represented by another attorney. Their prior attorney filed separate Motions for Summary Judgment on behalf of Gulf Offshore and GOL on September 4, 2020.[7] On September 25, 2020, plaintiff filed a Motion to Strike the Affidavit of Blaine Russell, which was used in support of the Motions for Summary Judgment. This Honorable Court recently granted the Motion to Strike, finding that there was insufficient information to show Russell had personal knowledge of the business and operational activities of Gulf Offshore or GOL.[8] Because the Affidavit was stricken, Court further held that "Defendants have not demonstrated 'that there is no genuine dispute as to any material fact and that [Defendants] [are] entitled to judgment as a matter of law.'"[9] As such, the Motions for Summary Judgment were denied.

On October 5, 2020, undersigned counsel filed a Motion to Substitute as counsel of record for the Vessel Defendants. The Motion was granted on October 6, 2020.[10] Since that time, additional discovery has taken place, including the deposition of the plaintiff and the corporate depositions of the Vessel Defendants. The record evidence now clearly supports summary dismissal of Gulf Offshore and GOL. Accordingly, these defendants file the instant Motion for Summary Judgment by the court-ordered deadline for dispositive motions (September 30, 2021).

*Relationship Amongst the Parties*

Proper consideration of this Motion requires an explanation of the relationship amongst the various Vessel Defendants and their connection (or lack thereof) to the plaintiff. The corporate deposition of the Vessel Defendants took place on May 12, 2021. Brian Harris served as the corporate representative for each of the Vessel Defendants. Harris is currently the HSE manager

---

[7] Rec. Doc. Nos. 37 and 38.
[8] Rec. Doc. 57.
[9] Rec. Doc. 57.
[10] Rec. Doc. 46.

for REC Marine, a position which he has held since 2016.[11] Prior to that time, he had been employed by a company named JNB Operating, LLC ("JNB") since 2012.[12] JNB served as a vessel operating company for Gulf Offshore.[13] Gulf Offshore was a boat brokerage which marketed vessels operated by JNB to various oil and gas companies that regularly chartered vessels in connection with their offshore activities.[14] Ultimately, Gulf Offshore was the entity which had contracts with the oil and gas companies.[15] Gulf Offshore did not own or operate any vessels, and did not have any maritime employees.[16] Rather, any vessels chartered through Gulf Offshore were operated by JNB and crewed by JNB employees.[17] Furthermore, JNB was responsible for hiring and training of all vessel crewmembers.[18]

Just like Brian Harris, the plaintiff was initially an employee of JNB, having also been hired in 2012.[19] In 2016, JNB merged with REC Marine, and JNB ceased to operate.[20] The former employees of JNB, including the plaintiff and Brian Harris, became employees of REC Marine.[21] At the time of the merger, a company named GOL, LLC was formed to be the new boat brokerage in place of Gulf Offshore.[22] With the formation of GOL, LLC, Gulf Offshore ceased operations.[23]

Defendant OTS was and is the record owner of the M/V DUSTIN DANOS.[24] However, OTS had no involvement with operating the vessel. The DUSTIN DANOS was operated by REC

---

[11] See transcript of Corporate Deposition, attached hereto as Exhibit C, pg. 14.
[12] Exhibit C, pg. 31-33
[13] Exhibit C, pg. 122-123
[14] Exhibit C, pg. 122-125
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] See employment application for JNB Operating, LLC, attached hereto as Exhibit D, indicating plaintiff's date of hire as March 8, 2012.
[20] Exhibit C, pg. 125
[21] Exhibit C, pgs. 32-33, 125
[22] Exhibit C, pg. 126-127
[23] *Id.*
[24] Exhibit C, pg. 129

Marine.[25] REC Marine employed all crewmembers of the vessel, was responsible for training those crewmembers, and for ensuring the DUSTIN DANOS was properly equipped.[26] On the date of plaintiff's alleged accident, the vessel was working for an oil and gas company through GOL, which brokered the vessel.

## **LAW AND ARGUMENT**

### *Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] "An issue is material if its resolution could affect the outcome of the action."[28] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[29] All reasonable inferences are drawn in favor of the nonmoving party.[30] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[31]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue

---

[25] Exhibit C, pg. 129-131
[26] *Id.*
[27] Fed. R. Civ. P. 56
[28] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005)
[29] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d, 395, 398 (5th Cir. 2008)
[30] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)
[31] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002)

of material fact warranting trial.³² In such a scenario, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.³³ The nonmovant cannot satisfy its burden with "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."³⁴

*Essential Elements of Plaintiff's Causes of Action*

Griffin has asserted claims against each of the Vessel Defendants for negligence under the Jones Act, unseaworthiness pursuant to the general maritime law, and for maintenance and cure. The elements of a Jones Act claim are (1) that the claimant is a seaman; (2) that he or she suffered injury or death in the course of his or her employment; (3) that the seaman's employer was negligent; and (4) that the employer's negligence caused the injury at least in part.³⁵

A claim for unseaworthiness requires a plaintiff to show 1) a vessel, equipment, or crew not reasonably fit and safe for the purposes required (*i.e.,* an unseaworthy condition), 2) that unseaworthiness actually caused or played a substantial role in causing injury, and 3) that the injury was "the direct result or reasonably probable consequence of that unseaworthiness."³⁶ The duty to provide a seaworthy vessel is an "incident of vessel ownership," and "[t]o be held liable for breach of the duty, the defendant must be in the relationship of an owner or operator of a vessel."³⁷ The one exception to this general rule is that a bareboat or demise charterer who assumes

---

³² *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994)
³³ *Little*, 37 F.3d at 1075
³⁴ *Little* at 1075 (internal quotations omitted)
³⁵ Thomas J. Schoenbaum, Admiralty & Maritime Law § 6:21 (6th ed.); *Martin v. Harris*, 560 F.3d 210 (4th Cir. 2009)
³⁶ *Oliver v. Weeks Marine, Inc.*, 509 Fed. Appx. 353, 355, 2013 A.M.C. 2701 (5th Cir. 2013)
³⁷ *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 181 (5th Cir. 1981); See also *Daniels v. Florida Power & Light Co.*, 317 F.2d 41, 43 (5th Cir. 1963) ("The idea of seaworthiness and the doctrine of implied warranty of seaworthiness arises out of the vessel, and the critical consideration in applying the doctrine is that the person sought to be held legally liable must be in the relationship of an owner or operator of a vessel.")

full possession and control of a vessel may owe a duty of seaworthiness with respect to that vessel.[38]

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel."[39] "Maintenance is a daily stipend for living expenses, whereas cure is the payment of medical expenses."[40] Under the general maritime law, a seaman is entitled to maintenance and cure from his employer, for injuries incurred or aggravated in the service of the vessel, while incapacitated, until the seaman reaches maximum medical recovery.[41] A "seaman may claim maintenance and cure only from its employer."[42]

### *Jones Act Negligence and Maintenance and Cure Claims*

Plaintiff's Original Petition and Amended Petition assert claims against the Vessel Defendants collectively for Jones Act negligence and maintenance and cure. As discussed above, only the employer of a seaman can be held liable for negligence under the Jones Act. Moreover, the duty to provide maintenance and cure to an injured seaman is solely that of the seaman's employer. Likely realizing that an employment relationship was a necessary predicate for these two causes of action, Griffin's Original and Amended Petitions allege that each of the Vessel Defendants (in the alternative) was his employer. However, the record evidence in this case establishes that plaintiff was employed by REC Marine at the time of his alleged accident. The corporate representative for the Vessel Defendants specifically confirmed that Griffin was never employed by Gulf Offshore.[43] In fact, it would have been impossible for plaintiff to be employed

---

[38] *Baker*, 656 F.2d 173, 181-82 (5th Cir. 1981)
[39] *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015)
[40] *Meche*, 777 F.3d at 244 (internal quotations omitted)
[41] *Mullen v. Daigle Towing Service, LLC*, 432 F.Supp.3d 676, 681 (E.D. La. 2020)
[42] *In the Matter of the Complaint of Liberty Seafood, Inc.*, 38 F.3d 755, 758 (5th Cir. 1994) (emphasis added)
[43] Exhibit C, pg. 33

by Gulf Offshore at the time of his accident in 2018, because Gulf Offshore ceased operations in 2016 upon the merger between JNB and REC Marine.[44] Furthermore, prior to ceasing operations, Gulf Offshore was simply a boat brokerage company that did not employ mariners such as the plaintiff.[45] GOL was the boat brokerage company formed to take the place of Gulf Offshore in 2016, and therefore also would not have employed the plaintiff.[46]

The undisputed evidence shows that plaintiff was hired as a deckhand by JNB in 2012.[47] When JNB merged with REC Marine in 2016, plaintiff was hired by and became an employee of REC Marine.[48] Perhaps most telling of all is that REC Marine admitted in response to Requests for Admission that it was the employer of plaintiff on the date of his alleged accident.[49]

In sum, plaintiff was not at the time of his accident, nor has he ever been, an employee of Gulf Offshore or GOL. An essential element of any claim for Jones Act negligence or maintenance and cure is the establishment of an employment relationship. Because plaintiff cannot prove such a relationship with Gulf Offshore or GOL, these two entities are entitled to summary judgment dismissing any claim under the Jones Act or any claim for maintenance and cure.

*Unseaworthiness Claim*

Just as with plaintiff's Jones Act and maintenance and cure claims, neither Gulf Offshore nor GOL is a proper party to a claim based on unseaworthiness. As reflected on the Certificate of Inspection issued by the United State Coast Guard, OTS was at all pertinent times the owner, and REC Marine was the operator, of the M/V DUSTIN DANOS.[50] The corporate representative for these parties further confirmed under oath that OTS was the owner of the vessel and paid an

---

[44] Exhibit C, pg. 125-127
[45] Exhibit C, pg. 124-125
[46] Exhibit C, pg. 124-127
[47] Exhibit D
[48] Exhibit C, pg. 33
[49] See REC Marine's response to plaintiff's Request for Admission No. 5, attached hereto as Exhibit E
[50] See Certificate of Inspection, attached hereto as Exhibit F

operating fee to REC Marine to operate the vessel.[51] Case law from the U.S. Fifth Circuit is clear that the proper defendant to an unseaworthiness claim is either the owner or operator of the vessel in question.[52] Gulf Offshore and GOL were neither with respect to the M/V DUSTIN DANOS. As noted above, under certain circumstances a bareboat or demise charterer can owe a duty of seaworthiness. A bareboat or demise charter "requires complete transfer of possession, command, and navigation of the vessel from the owner to the charterer."[53] "[A] demise is tantamount to, though just short of, an outright transfer of ownership."[54] Clearly, neither Gulf Offshore nor GOL would qualify as a bareboat or demise charterer of the DUSTIN DANOS, as neither ever possessed, operated, or crewed the vessel. Accordingly, because Gulf Offshore and GOL were not the owners, operators, or bareboat charterers of the DUSTIN DANOS, they owed no duty of seaworthiness, and any claim against these entities for unseaworthiness should be dismissed.

*Third-Party Negligence Under General Maritime Law*

Apart from maintenance and cure (which is a contractual form of compensation) a seaman has only three potential causes of action for injuries sustained in the course of their employment: (1) Jones Act negligence against an employer; (2) breach of the warranty of seaworthiness against an owner or operator of a vessel; and (3) a claim against a third party for general maritime law negligence.[55] The first two have already been addressed above. With respect to the third, Gulf Offshore and GOL aver that plaintiff has not asserted a claim against them for third-party negligence. As reflected in paragraphs V and VI of Griffin's Original Petition and Amended Petition, his allegations of liability are clearly premised on the contention that each of the Vessel

---

[51] Exhibit C, pg. 129-131
[52] *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 181 (5th Cir. 1981); See also *Daniels v. Florida Power & Light Co.*, 317 F.2d 41, 43 (5th Cir. 1963)
[53] *Walker v. Braus*, 995 F.2d 77, 81 (5th Cir. 1993) (quoting *Agrico Chemical Co. v. M/V Ben Martin*, 664 F.2d 85 (5th Cir. 1981))
[54] *Walker*, 995 F.2d at 81
[55] *Becker v. Tidewater, Inc.*, 335 F.3d

9

Defendants was either his employer and/or the owner, operator, or manager of the M/V DUSTIN DANOS. Paragraph V of the Amended Petition specifically states:

> On or about this date, Plaintiff was employed by Defendant REC Marine Logistics, LLC ("REC Marine"), Offshore Transport Services, LLC ("Offshore Transport Services"), GOL, LLC ("GOL") and/or Gulf Offshore Logistics, LLC ("Gulf Offshore"), and was aboard the M/V Dustin Danos vessel owned, operated, and/or managed by Defendants. While the vessel was deployed on navigable waters, Plaintiff sustained serious injuries to his shoulder, neck, back, legs, and other body parts when the vessel's captain allowed the vessel to move suddenly during a man-lift operation, resulting in plaintiff being violently struck by the lift and the vessel and/or items on the vessel.[56]

In paragraph VI of the Original and Amended Petitions, plaintiff alleges that the Vessel Defendants were negligent or grossly negligent, and then provides a list of 13 duties which were allegedly breached by the Vessel Defendants. Careful examination of this list shows that each of the duties would have been those owed by his employer and/or the owner/operator of the M/V DUSTIN DANOS, not by some third party. Simply put, plaintiff's pleadings do not allege that if one of the Vessel Defendants such as Gulf Offshore or GOL turns out not to be his employer or the owner/operator of the M/V DUSTIN DANOS, that these entities nevertheless owed him some duty of care under the general maritime law that was breached.

Even if this Court were to construe plaintiff's Original or Amended Petitions as having asserted a claim against Gulf Offshore or GOL in a capacity other than as his employer or the owner/operator of the vessel, summary judgment would still be warranted. In order to recover on a claim for negligence under the general maritime law, a plaintiff must demonstrate that: (1) there was a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) an injury; and (4) a causal connection between the defendant's conduct and the plaintiff's injury.[57] Plaintiff could not

---

[56] Exhibit B
[57] *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 211 (5th Cir. 2010)

conceivably have a valid claim for negligence against Gulf Offshore, as Gulf Offshore ceased operations in 2016, well over a year before his alleged accident.[58] Accordingly, Griffin cannot establish that Gulf Offshore owed him a duty, much less that any such duty was breached resulting in him being injured.

As previously discussed, GOL was a boat brokerage company formed in 2016 when plaintiff's original employer, JNB, merged with REC Marine.[59] It did not own or operate the M/V DUSTIN DANOS and did not employ the plaintiff or any crewmembers on the vessel. Simply because an entity brokers a vessel owned by one party for charter to another party does not imbue the boat broker with liability as if it was the charterer, owner, or operator of the vessel.[60] Where the broker is just that—a broker with no care, custody, or control over the vessel, the broker is not liable for claims relating to the vessel.[61]

Several courts which have interpreted the general maritime law have held that a boat broker does not become liable for a tort committed relating to the vessel unless the broker took on some obligations or duties to the plaintiff. In *Oceaneering International v. Black Towing*, the Louisiana Supreme Court confirmed that where a vessel broker merely brokered a vessel it did not own to another company it could not be liable for damages in tort.[62] The U.S. Eastern District of Louisiana has similarly held that a boat broker is not liable for tort damages when the boat broker simply acts as the middleman between a vessel owner and a vessel charterer.[63] In *Can Do Inc.*, Diamond Offshore requested OTI provide a tug and OTI, acting as a broker, procured a tug owned and operated by Can Do Inc.[64] As the *Can Do* court explained, in order to establish negligence and a

---

[58] Exhibit C, pg. 125-127
[59] Exhibit C, pg. 124-127
[60] *Rojas v. Robin*, 90 So. 2d 58, 63 (La. 1956); *Oceaneering Int'l v. Black Towing, Inc.*, 491 So. 2d 1 (La. 1986).
[61] *Id.*
[62] *Oceaneering Int'l*, 491 So.2d at 4-5
[63] *See Can Do Inc. I*, 2012 WL 2216529 (E.D. La. Sept. 30, 2004)
[64] *Id.* at *11.

cause of action under the general maritime law, the plaintiff must establish that there was a duty owed by the defendant, a breach of that duty, an injury, and causation for that injury.[65] The court reasoned that the plaintiff could not point to any facts that would establish that OTI, the broker, owned or exercised any control over the tug that allegedly caused the damage.[66] Further, the plaintiff could not establish that OTI, as a vessel broker, owed a duty to the plaintiff; and, even if such a duty existed, there was no evidence that a breach of such duty caused the damages alleged by the plaintiffs.[67] As such, OTI was not responsible for the tort damages alleged in the suit. Similarly, in the instant case, the plaintiff cannot show that GOL, as a mere boat broker, owed him any duty that was breached. Therefore, to the extent plaintiff's Original Petition or Amended Petition could be construed to assert a claim against GOL for third-party negligence under the general maritime law, such claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Gulf Offshore Logistics, LLC and GOL, LLC respectfully submit that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. Accordingly, these defendants respectfully request that plaintiff's claims against them be dismissed, with prejudice.

Respectfully submitted,

*/s/ Kyle A Khoury*
Salvador J. Pusateri, T.A. (#21036)
Kyle A. Khoury (#33216)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163

---

[65] *Id.*
[66] *Id.*
[67] *Id.*

Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
**ATTORNEYS FOR GULF OFFSHORE LOGISTICS, LLC AND GOL, LLC**