# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| MCARTHUR GRIFFIN | § | |
| --- | --- | --- |
| Plaintiff | § § § | |
| | § | CIVIL ACTION NO.: 3:20-92-BAJ-EWD |
| *Versus* | § § § | |
| REC MARINE LOGISTICS LLC, ET AL. | § | **TRIAL BY JURY DEMANDED** |
| Defendants | § § § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO GULF OFFSHORE LOGISTICS, LLC AND GOL, LLC'S MOTION FOR SUMMARY JUDGMENT

Plaintiff files this Response in opposition to Gulf Offshore Logistics, LLC ("Gulf Offshore") and GOL, LLC ("GOL") Second Motion for Summary Judgment ("Gulf Offshore and GOL's Second Motion for Summary Judgment").

### I.   SUMMARY OF ARGUMENT

This is a personal injury tort case. As will be shown, through no fault of his own, Plaintiff was injured as a deckhand aboard the *M/V Dustin Danos* maritime vessel on or about May 2018, during a personnel basket transfer operation when he was violently struck by a personnel transfer basket (the "Incident").

Although not entirely clear, Gulf Offshore and GOL allege in their Second Motion for Summary Judgment that: (a) Plaintiff's Jones Act claim against Gulf Offshore and GOL fails because they did not employ Plaintiff; (b) Plaintiff's unseaworthiness claim against Gulf Offshore and GOL fails because they did not operate the *M/V Dustin Danos* and therefore did not owe Plaintiff a duty; and (c) Plaintiff's negligence claims under general maritime law against Gulf Offshore and GOL fail because Plaintiff will not be able to show duty and/or breach of a duty

because Gulf Offshore ceased operations in 2016 and GOL was a boat brokerage company. Gulf Offshore and GOL are correct that Plaintiff's Jones Act claim does not apply to them since they did not employ Plaintiff. Plaintiff's Jones Act claims are not asserted against Gulf Offshore and GOL. However, as to unseaworthiness and negligence, the evidence will show that Gulf Offshore and GOL owed Plaintiff a duty and that duty was breached. Plaintiff does not address the other elements for Plaintiff's unseaworthiness and negligence claims against Gulf Offshore and GOL because they are not contested by Gulf Offshore or GOL.

Gulf Offshore and GOL's motion for summary judgment should be denied because:

1. Gulf Offshore and GOL have failed to comply with Local Rule 56(h), which requires them to seek leave of court and demonstrate good cause prior to filing a second motion for summary judgment.

2. The sole evidence relied upon by Gulf Offshore and GOL is based upon the statements made by Brian Harris ("Harris"), a person who has never worked for Gulf Offshore or GOL (and who had to be coached by Gulf Offshore and GOL's attorney—on the record—to render his opinions). Moreover, Harris' testimony is contradicted by documentary evidence obtained by Plaintiff.

3. Gulf Offshore and GOL hold themselves out as operators of the *M/V Dustin Danos*. Gulf Offshore and GOL concede that operators must provide a seaworthy vessel and can be held responsible for Plaintiff's injuries due to their negligent failure to provide Plaintiff with a safe place to work, including a competent crew.

## II. PROCEDURAL HISTORY

Almost a year ago, Gulf Offshore and GOL filed virtually identical motions for summary judgment. *See* Dkt.'s 37 and 38 (Gulf Offshore and GOL's First Motions for Summary Judgment).

Gulf Offshore and GOL were represented by counsel when they chose to file their first motions for summary judgment. *See* Dkt. 37 and 38 (Gulf Offshore and GOL's First Motions for Summary Judgment). In support of their first motions for summary judgment, Gulf Offshore and GOL submitted the affidavit of Blaine Russell. *Id.* The Court struck Blaine Russell's affidavit given his "lack of personal knowledge." *See* Dkt. 57 at p.4 (Order Denying Gulf Offshore and GOL's Motions for Summary Judgment). Notably, there was no evidence Russell ever worked for Gulf Offshore and/or GOL. *Id.* Ultimately, on April 16, 2021 the Court denied Gulf Offshore and GOL's First Motions for Summary Judgment. *See* Dkt. 57 (Order Denying Gulf Offshore and GOL's Motions for Summary Judgment).

Without seeking leave of Court (which they were required to do), Gulf Offshore and GOL filed a second motion for summary judgment. *See* Gulf Offshore and GOL's Second Motion for Summary Judgment. In support of their second motion for summary judgment, Gulf Offshore and GOL rely on the statements made by Brian Harris ("Harris"), an individual that, like Russell, has never worked for Gulf Offshore and GOL. *See generally* Gulf Offshore and GOL's Second Motion for Summary Judgment.

The arguments in Gulf Offshore and GOL's Second Motion for Summary Judgment, while more fleshed out, are essentially the same arguments made in their first motions for summary judgment. Notably, in response to Gulf Offshore and GOL's First Motions for Summary Judgment, Plaintiff presented evidence refuting the claims Gulf Offshore and GOL make (again) in their Second Motion for Summary Judgment:

| **Gulf Offshore and GOL's False and and/or Misleading Statements Contained Within Their Second Motion for Summary Judgment[1]** | |
|---|---|
| Gulf Offshore did not own or operate any vessels and did not have any maritime employees. *See* Gulf Offshore and GOL's Second Motion for Summary Judgment at p.4. | **WHY THIS IS FALSE AND/OR MISLEADING** <br><br> Gulf Offshore does not explain why their own documents list Gulf Offshore as an operator of the *M/V Dustin Danos*. Gulf Offshore represents to the world that it manages the *M/V Dustin Danos*. *See* Exhibit 1 (Gulf Offshore Brochure). |
| GOL brokered the *M/V Dustin Danos* | **WHY THIS IS FALSE AND/OR MISLEADING** <br><br> When GOL first sought to dismiss Plaintiff's claims against it, GOL submitted an affidavit executed by Blaine Russell. *See* Exhibit 2 (Russell Affidavit). Russell, on behalf of GOL, claimed that GOL had "no operational or management functions for REC…and it is only utilized to process payments for services among various parties." *See* Exhibit 2 (Russell Affidavit). GOL's story has changed from what it once was. Moreover, the Gulf Offshore/GOL Health, Safety, and Environmental Manual is utilized by REC Marine Logistics, LLC ("REC Marine"), the company that employed Plaintiff at the time of the Incident. *See* Exhibit 3 (Excerpt from Deposition Transcript of Blaine Russell). <br><br> Moreover, GOL represents that it operates the *M/V Dustin Danos*. *See* Exhibit 4 (GOL Brochure). |
| Gulf Offshore has ceased operations. *See* Gulf Offshore and GOL's Second Motion for Summary Judgment at p.4. | **WHY THIS IS FALSE AND/OR MISLEADING** <br><br> Evidence shows that Gulf Offshore is an active company. *See* Exhibit 5 (Information Certificate from Louisiana SOS for Gulf Offshore). Gulf Offshore has been in business since April 23, 2003, is in good standing, and filed a report with the Louisiana Secretary of State on March 24, 2021. *See* Exhibit 5 |

---

[1] This is just a handful of claims that are false and/or misleading. GOL also claims it was not formed until 2016. The Louisiana Secretary of State states GOL was formed in 2011. *See* Exhibit 6 (Louisiana Secretary of State Certificate for GOL).

|  | (Information Certificate from Louisiana SOS for Gulf Offshore). Further, Gulf Offshore's sign remained firmly planted outside of its offices until (at least) November 2018, which was several months *after* Plaintiff's incident. *See* Exhibit 7 (Google Street View). Gulf Offshore/GOL's manual is utilized by both GOL and REC Marine. *See* Exhibit 8 at 128:9-25 (Harris Deposition).<br><br>The foregoing demonstrates that Gulf Offshore has not ceased operations. Gulf Offshore has taken steps to remain in good standing with the State of Louisiana. Therefore, any claim otherwise is false and misleading. |
|---|---|
| Gulf Offshore does not manage the *M/V Dustin Danos*. *See* Gulf Offshore and GOL's Second Motion for Summary Judgment at p.11. | **WHY THIS IS FALSE AND/OR MISLEADING**<br>Gulf Offshore is listed as the manager on the *M/V Dustin Danos* on the Equasis website. *See* Exhibit 9 (Equasis Printout). |
| GOL does not manage any vessel, including the *M/V Dustin Danos*. *See* Gulf Offshore and GOL's Second Motion for Summary Judgment at p.11. | **WHY THIS IS FALSE AND/OR MISLEADING**<br>GOL also holds itself out to the world as the operator of the *M/V Dustin Danos*. *See* Exhibit 4 (GOL's Brochure).<br><br>GOL's claim that it does not manage the *M/V Dustin Danos* is disproven by its own documents. |

Blaine Russell has offered testimony in in *REC Marine Logistics LLC v. Richard*; Cause Number 2:19-cv-11149; in the U.S. District Court for the Eastern District of Louisiana that contradicts the position taken by Gulf Offshore and GOL here.[2] In *Richard*, Russell was asked what company is responsible for the of safety of crewmembers aboard the M/V Dustin Danos. *See* Exhibit 3 at 43:24-44:3 (Excerpt of Deposition Transcript of Blaine Russell). Russell responded by explaining that GOL manuals were on the *M/V Dustin Danos*. *See* Exhibit 3 at 44:4-5 (Excerpt of Deposition Transcript of Blaine Russell). Russell was asked whose safety policies REC Marine

---

[2] The *Richard* case concerns another seaman that was injured aboard the *M/V Dustin Danos.*

Captains follow and pointed to the author of the safety policies REC Marine follows—GOL. *See* Exhibit 3 at 44:16-19 (Excerpt of Deposition Transcript of Blaine Russell). The reason REC Marine captains follow GOL's safety manual is because REC Marine does not have a safety manual of its own. *See* Exhibit 3 at 44:20-22 (Excerpt of Deposition Transcript of Blaine Russell). Russell even admitted some vessel documentation is "under GOL." *See* Exhibit 3 at 48:10-49:3 (Excerpt of Deposition Transcript of Blaine Russell).

It does not make sense for vessel documentation to be under GOL if GOL is not involved in the operation of the *M/V Dustin Danos*. Moreover, Gulf Offshore and GOL's own documents represent that they are both operators of the *M/V Dustin Danos*. This alone is the death knell for their second motion for summary judgment.

Gulf Offshore and GOL's Second Motion for Summary Judgment should be denied.

## I.    ARGUMENT AND AUTHORITY

A. SUMMARY JUDGMENT STANDARD

Summary judgment is only proper if the movant shows that there are no genuine disputes of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Tolan v. Cotton,* 572 U.S. 650, 657, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014); *Rogers v. Bromac Title Servs., L.L.C*., 755 F.3d 347, 350 (5th Cir. 2014). The purpose of summary judgment is to pierce the pleadings and to assess the proof offered by the parties to determine whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). It is designed to isolate and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

A defendant moving for summary judgment must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the

existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); *see Celotex Corp.*, 477 U.S. at 324-25. Only if Defendant meets this burden is Plaintiff required to respond by summary-judgment proof to show genuine disputes of material fact. *See* FED. R. CIV. P. 56(e)(3).

In determining whether there are genuine disputes of material fact that prevent summary judgment, the Court must consider all evidence and inferences in the light most favorable to plaintiffs as the nonmovant. *Rogers*, 755 F.3d at 350; *Garcia v. Pueblo Cty. Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). Similarly, the Court must resolve all reasonable doubts about the acts in favor of plaintiffs as the nonmovant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005). If, however, the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Also, a court may make no credibility determinations, weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not *required* to believe. *Rivas de Rios v. Wal-Mart Stores Texas, L.L.C.*, No. 1:15-217, 2017 WL 1032118, at *2 (S.D. Tex. Feb. 8, 2017) (emphasis added).

Summary judgment may be appropriate when the questions to be decided are issues of law. *Flath v. Garrison Pub. Sch. Dist.*, 82 F.3d 244, 246 (8th Cir. 1996). However, the line between legal issues and factual disputes can be difficult to draw. *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982). When the application of a rule of law depends on the resolution of disputed facts, the motion presents a mixed question of law and fact. In that situation, the granting of summary judgment is not appropriate. *See*, *e.g.*, *Lujan v. National Wildlife Fed'n*, 479 U.S. 871, 889 (1990)

(plaintiff's standing to sue depended on disputed activities of plaintiff); *St. Romain v. Indus. Fabrication & Repair Serv., Inc.*, 203 F.3d 376, 378 (5th Cir. 2000).

A. INDEPENDENT BASIS #1 TO DENY GULF OFFSHORE AND GOL'S SECOND MOTION FOR SUMMARY JUDGMENT: GULF OFFSHORE AND GOL HAVE FAILED TO COMPLY WITH THE LOCAL RULES FOR THE MIDDLE DISTRICT OF LOUISIANA

As a threshold matter, Plaintiff objects to Gulf Offshore and GOL's Second Motion for Summary Judgment and requests that it (and all accompanying exhibits/evidence) be stricken as Gulf Offshore and GOL have failed to comply with Local Rule 56(h). *See* LR 56(h). Local Rule 56(h) is as follows:

> **Number of Motions for Summary Judgment**. As a general rule, a party may file only one motion for summary judgment that addresses all issues for which that party seeks summary judgment. A party may submit multiple motions for summary judgment only after seeking leave of Court and demonstrating good cause.

*See* LR 56(h) (emphasis in original). Here, Gulf Offshore nor GOL failed to seek leave of Court and demonstrate good cause prior to filing their second motion for summary judgment. Moreover, there is no evidence of good cause—all of the information relied upon by Gulf Offshore and GOL was available to them when the filed their first motions for summary judgment.

For this reason alone, Gulf Offshore and GOL's Second Motion for Summary Judgment should be stricken and/or denied.

B. INDEPENDENT BASIS #2 TO DENY GULF OFFSHORE AND GOL'S MOTION FOR SUMMARY JUDGMENT: BRIAN HARRIS LACKS PERSONAL KNOWLEDGE AND THE DOCUMENTARY EVIDENCE DEVELOPED CONTRADICTS HARRIS' TESTIMONY

Gulf Offshore and GOL previously filed motions for summary judgment on these exact issues. *See* Dkt. 37 and 38 (Gulf Offshore and GOL's Motions for Summary Judgment). Gulf Offshore and GOL made the decision to seek summary judgment based on an affidavit executed by Blaine Russell, an individual that lacked personal knowledge of the business and operational activities of Gulf Offshore and GOL. *See* Dkt. 57 (Order Denying Gulf Offshore and GOL's

Motion for Summary Judgment). The Court denied Gulf Offshore and GOL's First Motions for Summary Judgment because the "evidence" submitted was insufficient. *See* Dkt. 57 (Order Denying Gulf Offshore and GOL's Motion for Summary Judgment). Notably, there was no evidence that Russell ever worked for Gulf Offshore and/or GOL.

Gulf Offshore and GOL elected to have Brian Harris ("Harris") testify on their behalf. *See* Exhibit 8 (Harris Depo). Gulf Offshore and GOL admit that Harris never worked for Gulf Offshore and/or GOL. *See* Gulf Offshore and GOL's Second Motion for Summary Judgment. Harris admits this himself. *See* Exhibit 8 at 31:24-32:7 (Harris Depo).[3] Like Russell, Harris lacks personal knowledge to testify on behalf of Gulf Offshore and/or GOL. Harris' lack of knowledge became readily apparent when counsel for Gulf Offshore and GOL began questioning Harris with leading questions while Plaintiff's counsel was examining Mr. Harris:

```
 4    Q   Okay.  And, then you went to Gulf Offshore
 5   Logistics and then to REC Marine?
 6    A   No, I never worked for Gulf Offshore
 7   Logistics.
 8    Q   Okay.
 9    A   Gulf Offshore Logistics was just a brokered
10   company.  They had the contracts.
11       MR. KHOURY:
12           JNB was to Gulf Offshore Logistics what
13       REC Marine now is to GOL.
14       THE WITNESS:
15           Correct.
16       MR. KHOURY:
17           It's the operating arm of the company
18       that runs all the boats; is that fair?
19       THE WITNESS:
20           Yes.
```

---

[3] At one point in Harris' deposition, he suggests that he worked for Gulf Offshore. *See* Exhibit __ at 12:21-25 (Harris Depo). Harris later testifies that he never worked for Gulf Offshore. *See* Exhibit __ at 32:4-7 (Harris Depo).

*See* Exhibit 8 at 32:6-20 (Harris Depo). Later in the deposition, counsel for Gulf Offshore and GOL began asking Harris whether GOL brokered vessels. *See* Exhibit 8 at 127:9-15 (Harris Depo). This questioning came during Plaintiff's examination of Mr. Harris. *Id.*

    C. GULF OFFSHORE AND GOL HOLD THEMSELVES OUT AS OPERATORS OF THE *M/V DUSTIN DANOS*—OPERATORS (AS GULF OFFSHORE AND GOL CONCEDE) OWE A DUTY TO PROVIDE PLAINTIFF WITH A SAFE PLACE TO WORK AND A SEAWORTHY VESSEL

Gulf Offshore and GOL attempt to avoid liability by: (a) claiming Gulf Offshore ceased operations in 2016 (it did not); (b) claiming GOL is merely a brokerage company (it is not); and (c) implying Gulf Offshore and GOL are not operators of the *M/V Dustin Danos* (which is inconsistent with the public representations Gulf Offshore and GOL have made). *See* Gulf Offshore and GOL's Second Motion for Summary Judgment at p. 8-11. As a threshold matter, Gulf Offshore has been in business since April 23, 2003, is in good standing, and filed a report with the Louisiana Secretary of State on March 24, 2021. *See* Exhibit 5 (Information Certificate from Louisiana SOS for Gulf Offshore). Further, Gulf Offshore's sign was firmly planted outside of its offices (and GOL, OTS, and REC Marine's offices) until (at least) November 2018, which was several months *after* Plaintiff's incident. *See* Exhibit 7 (Google Street View). Gulf Offshore and GOL hold themselves out as operators of the *M/V Dustin Danos*. *See* Exhibit 1 (Gulf Offshore Brochure); *see also* Exhibit 4 (GOL Brochure). As operators, Gulf Offshore and GOL owe duties to the Plaintiff. They must provide Plaintiff with a safe place to work, which includes, *inter alia*, providing an adequate crew. *Orient Mid-E. Lines, Inc. v. Shipment of Rice on Bd. S.S. Orient Transporter*, 496 F.2d 1032, 1040 (5th Cir. 1974). Crew inadequacy can be the result of insufficient manning or incompetence. *Id.*

The crew aboard the *M/V Dustin Danos* was incompetent. Specifically, Captain Haglund (the captain on duty aboard the *M/V Dustin Danos* at the time of the Incident), was incompetent.

As discussed *supra*, on or about May 2018, Plaintiff was injured during a personnel basket transfer operation aboard the *M/V Dustin Danos*. Captain Haglund (the captain on duty at the time of the Incident) was required to observe and supervise the personnel basket transfer operation from start to finish. *See* Exhibit 10 at 11:25-12:2 (Badeaux Depo). Captain Hagland chose to propel the *M/V Dustin Danos* forward during a personnel basket transfer operation. *See* Exhibit 10 at 25:16-26:1 (Badeaux Depo). Then, instead of supervising and observing the personnel basket transfer operation, Captain Haglund stepped away from the controls (while they were still engaged and propelling the *M/V Dustin Danos* forward) and started operating a phone.[4] Walking away from a vessel's controls during a personnel basket transfer operation is dangerous. *See* Exhibit 10 at 135:8-11 (Badeaux Depo). Using a cell phone during a personnel basket transfer operation is dangerous. *See* Exhibit 10 at 135:12-15 (Badeaux Depo). Predictably, while Captain Haglund was doing these things (while simultaneously failing to supervise and observe the basket transfer operation), Plaintiff was seriously injured when he was violently struck by the personnel transfer basket. It cannot be reasonably disputed that Captain Haglund's decision to (a) propel the *M/V Dustin Danos* forward during a basket transfer operation; (b) step away from the controls while the *M/V Dustin Danos* was being propelled forward; (c) operate a cell phone during a personnel basket transfer operation and (d) not observe and supervise the personnel basket transfer operation is grounds for immediate termination. *See* Exhibit 8 at 62:20-63:20 (Harris Depo). Captain Haglund's actions and inactions were incredibly dangerous and amount to gross incompetence.

Gulf Offshore and GOL had a duty to provide Plaintiff with a safe place to work, including an adequate crew. Gulf Offshore and GOL failed to do so. By failing to provide Plaintiff with a

---

[4] It is common knowledge that operating a cell phone while driving a car is dangerous. It is without question that driving a vessel while operating a cell phone is substantially more dangerous.

safe place to work and an adequate competent crew, Plaintiff suffered significant injuries to his body, including his shoulder, and underwent surgery. *See* Exhibit 11 at 296:1-6; 301:7-15 (Griffin Depo).

For this reason alone, Gulf Offshore and GOL's Second Motion for Summary Judgment should be denied.

## II. CONCLUSION AND PRAYER

Plaintiff respectfully requests that this Court deny Gulf Offshore and GOL's Second Motion for Summary Judgment and for any other relief Plaintiff may be justly entitled.

Respectfully submitted,

MORROW & SHEPPARD LLP

/s/*Daniel E. Sheppard*
Daniel E. Sheppard
Bar Roll No. 38076
John D. Sheppard
*Admitted Pro Hac Vice*
msfiling@morrowsheppard.com
dsheppard@morrowsheppard.com
jsheppard@morrowsheppard.com
5151 San Felipe Street
Houston, Texas 77056
Telephone: (713) 489-1206
Facsimile: (713) 893-8370

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF filing system. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system.

*/s/Daniel E. Sheppard*
Daniel E. Sheppard