UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>　　　　　　　　　**Plaintiff**<br><br>**VERSUS**<br><br>**REC MARINE LOGISTICS, LLC, ET AL**<br>　　　　　　　　　**Defendants** | **CIVIL ACTION NO: 3:20-cv-00092**<br><br>**DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON**<br><br>**MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

### GULF OFFSHORE LOGISTICS, LLC AND GOL, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Gulf Offshore Logistics, LLC ("Gulf Offshore") and GOL, LLC ("GOL") (hereinafter sometimes collectively referred to as "defendants") hereby file this Reply Memorandum in support of their Motion for Summary Judgment (the "Motion"). Defendants take this opportunity to respond to the arguments made by plaintiff in his Opposition to the Motion, and will address each of those arguments in turn.

Plaintiff, McArthur Griffin, first argues that the Motion should be denied because defendants did not seek leave of court to file multiple motions for summary judgment. Admittedly, defendants did not initially seek leave of court as required by Local Rule 56(h). However, defendants have now filed a Motion for Leave and demonstrated good cause for the filing of a successive Motion for Summary Judgement. Good cause exists given that the currently pending Motion is based on a vastly expanded record which did not exist at the time Gulf Offshore and GOL filed their original Motions for Summary Judgment. Defendants hereby incorporate the arguments set forth in the Motion for Leave as if same were set forth herein in their entirety.

Griffin next claims that the corporate deposition testimony of Brian Harris cannot be used as support for summary judgement because Harris was never employed by Gulf Offshore or GOL and therefore "lacks personal knowledge to testify on [their] behalf…"[1] This argument is misplaced. The U.S. Fifth Circuit has specifically held that "[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved."[2] Furthermore, a Rule 30(b)(6) designee does not have to be an employee of the corporate entity being deposed. In *Hunsberger v. Toyota Motor Corp.*, the U.S. District Court for the Eastern District of Louisiana addressed this issue as follows:

> The plaintiffs contend that the production of a non-employee would violate Rule 30(b)(6), but they do not cite any authority for this proposition. The rule is not so limited. It provides that the organization "shall designate one or more officers, directors, or managing agents or other persons who consent to testify on its behalf...." Fed. R. Civ. P. 30(b)(6) (emphasis added). "The corporation may designate persons other than officers, directors, and managing agents, but only with their consent."[3]

Given this explanation, the Court allowed a non-employee to testify as the defendant's corporate representative. As demonstrated by the above-referenced case law, Harris was not required to be an employee of defendants in order to provide testimony on their behalf.

Plaintiff further contends that summary judgement in favor of Gulf Offshore and GOL on his claims for unseaworthiness and third-party negligence (to the extent a third-party negligence claim was made) should be denied because "documentary evidence" contradicts the assertion that Gulf Offshore and GOL were not the operators of the M/V DUSTIN DANOS. As explained in the Motion for Summary Judgment, REC Marine Logistics, LLC was the operator of the M/V

---

[1] Rec. Doc. 83, pg. 9.
[2] *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006)
[3] *Hunsberger v. Toyota Motor Corp.*, 2005 WL 8171342, *2 (E.D. La. 2005)

2

DUSTIN DANOS. This was confirmed through Harris's sworn testimony as the corporate representative of REC Marine, Gulf Offshore, and GOL.[4] It is also confirmed through the official Certificate of Inspection for the DUSTIN DANOS issued by the United States Coast Guard which lists REC Marine (and no other entity) as the operator of the vessel.[5] Moreover, since the filing of the Motion for Summary Judgment, REC Marine has located and produced as part of its supplemental discovery responses the Operating Agreement for the M/V DUSTIN DANOS.[6] This further confirms that Offshore Transport Services, LLC was the owner and REC Marine was the operator of the vessel.[7] Section 6 of the Operating Agreement states that "The operation, navigation, and management of the Vessel shall be under the exclusive control and command of Operator [REC Marine] and its servants and its Master and crew."[8] The sum total of this record evidence could not be more clear that REC Marine was the sole operator of the DUSTIN DANOS.

In an effort to prove that Gulf Offshore and/or GOL were also operators of the DUSTIN DANOS, plaintiff submits two marketing brochures—one bearing the name of Gulf Offshore and the other GOL. The purported brochure from Gulf Offshore is unauthenticated, undated, from an unknown origin, and is not a part of the record in this case. Whatever may be contained in this marketing brochure, it certainly does not establish that Gulf Offshore was the operator of the vessel at the time of plaintiff's 2018 accident. This is because Gulf Offshore ceased business operations in 2016 upon the merger of REC Marine and JNB Operating.[9] Griffin alleges that Gulf Offshore did not stop conducting business in 2016, and argues that it still maintains its registration with the Louisiana Secretary of State as a limited liability company. Of course, the fact that Gulf Offshore

---

[4] See Motion for Summary Judgment, Exhibit C, pg. 129-131
[5] See Motion for Summary Judgment, Exhibit F
[6] See REC Marine's Supplemental Response to Request for Production of Documents, and Operating Agreement produced therewith, attached hereto as Exhibit A.
[7] Exhibit A
[8] Exhibit A, pg. 2.
[9] See Motion for Summary Judgment, Exhibit C, pg. 125-127

is still registered with the Secretary of State does nothing to refute the sworn testimony establishing that Gulf Offshore ceased conducting business in 2016. Many entities cease operations but nevertheless maintain registration with the Secretary of State to prevent others from using their corporate name. Griffin also attaches to his Opposition an unauthenticated, undated photo from Google Street View which he says shows that, as of November 2018, the physical office in Raceland, Louisiana occupied by REC Marine and GOL, LLC still bore signage reflecting the Gulf Offshore name. Even if this photograph were competent summary judgment evidence, which it is not, it still does not refute the record evidence (in the form of sworn deposition testimony) that Gulf Offshore stopped conducting business in 2016. And it certainly does not establish that Gulf Offshore was the operator of the DUSTIN DANOS in 2018. Lastly plaintiff submits an unauthenticated, undated printout from a website called Equasis (again not part of the record in this case) to support his contention that Gulf Offshore was an operator of the DUSTIN DANOS. According to the printout, the Equasis website is hosted in France by the French Ministry for Transport. It is unclear why plaintiff believes information from this unverified website would supersede official documentation from the United States Coast Guard as to the entity which operated the vessel. Furthermore, even if this printout were accepted as evidence, it does not support the proposition for which plaintiff cites to it. Griffin points to a portion of the printout entitled "Management Detail" in which Offshore Transport Services, LLC is listed as the registered owner.[10] Gulf Offshore is also referenced with a description that its "Role" is "Ship manager/Commercial Manager."[11] Perhaps most confusing is that the "Date of Effect" is listed as "During 11/2000." This unauthenticated document does not show that Gulf Offshore was ever the operator of the DUSTIN DANOS, much less that it was the operator in 2018.

---

[10] See Exhibit 9 to Plaintiff's Opposition
[11] *Id.*

4

The GOL marketing brochure was produced in discovery and could be considered part of the record in this case. It was produced because it contains a photograph of the DUSTIN DANOS and plaintiff had issued Requests for Production seeking any photographs of the vessel. Although the brochure lists GOL, LLC as the operator of the vessel, there is a clear reason for this which was explained during the defendants' corporate deposition. Incidentally, it also explains why Gulf Offshore may have been listed as the operator of the DUSTIN DANOS in a marketing brochure prior to 2016. As discussed in the defendants' corporate deposition, Gulf Offshore was a boat brokerage which marketed vessels operated by JNB Operating to various oil and gas companies.[12] Although Gulf Offshore did not technically own or operate any vessels, it was the entity that had contracts with the oil and gas companies and was essentially the face of the marketed vessel.[13] With the merger of JNB and REC Marine, GOL took the place of Gulf Offshore as the new boat brokerage entity.[14] As boat brokers marketing numerous vessels under the same umbrella, it is understandable why GOL (and Gulf Offshore before it), would nominally list itself as the vessel operator on a marketing brochure despite the fact that neither was technically the operator of the vessel or the employer of its crew.

In sum, the evidence establishes that REC Marine alone was the operator of the M/V DUSTIN DANOS in 2018. This evidence includes corporate deposition testimony, the official Certificate of Inspection from the U.S. Coast Guard listing REC Marine as the operator, and the Operating Agreement attached to this Reply Memorandum showing that the operation of the DUSTIN DANOS was under the "exclusive control" of REC Marine. Defendants also wish to note that plaintiff does not dispute the testimony of REC Marine's corporate representative that REC

---

[12] See Motion for Summary Judgment, Exhibit C, pg. 122-25
[13] *Id.*
[14] See Motion for Summary Judgment, Exhibit C, pg. 126-27

Marine employed all crewmembers of the DUSTIN DANOS.[15] It is unclear how plaintiff could argue that the vessel was operated by Gulf Offshore or GOL when the only individuals onboard the vessel were employed by REC Marine.

The anecdotal and largely unauthenticated evidence submitted by the plaintiff is insufficient to refute the undisputed record evidence showing that REC Marine was the operator of the DUSTIN DANOS. Griffin cannot defeat summary judgment by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[16] To be clear, the plaintiff admits that REC Marine was the operator of the vessel.[17] He simply argues that Gulf Offshore and/or GOL might have *also* been operators. Defendants aver that the indirect evidence submitted by plaintiff in support of this argument, which requires multiple inferences to reach the conclusion that Gulf Offshore or GOL might have been additional operators, precisely describes a "scintilla of evidence" which is insufficient to overcome summary judgment.

Defendants wish to address an additional issue raised in the Plaintiff's Opposition. Although not dispositive of any issues in the Motion, Griffin points out that, although GOL's corporate representative testified the company was not formed until 2016, the Louisiana Secretary of State's website lists a registration date of 2011. As stated in the attached Declaration from GOL's corporate representative, Brian Harris, he clarifies that his testimony was meant to convey that GOL began actively engaging in business in 2016.[18] Mr. Harris's Declaration further states as follows:

> [t]he name GOL, LLC was technically registered with the Louisiana Secretary of State in 2011. However, based upon documentation in

---

[15] See Motion for Summary Judgment, Exhibit C, pg. 129-31
[16] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)
[17] See plaintiff's Opposition to Statement of Fact Not in Dispute, No. 11.
[18] See Unsworn Declaration of Brian Harris, attached hereto as Exhibit B

6

> the possession of GOL, LLC, including documentation showing GOL, LLC was not issued a tax identification number until 2016, my testimony remains accurate that GOL, LLC did not actively engage in business until 2016.[19]

Attached hereto is the pertinent documentation from the IRS issuing GOL's tax identification number.[20]

In conclusion, there is no genuine issue of material fact that Gulf Offshore and GOL did not employ the plaintiff and did not own or operate the M/V DUSTIN DANOS. Accordingly, his claims for Jones Act negligence, unseaworthiness, and maintenance and cure against these entities should be dismissed. Defendants note that plaintiff has admitted he was never employed by Gulf Offshore or GOL and that he therefore has no Jones Act negligence claim against them. Plaintiff does not even mention the maintenance and cure claim he has asserted against Gulf Offshore and GOL in his Opposition. However, clearly these causes of action must be dismissed because "a seaman may claim maintenance and cure only from [their] employer."[21] Lastly, to the extent plaintiff can be said to have asserted a claim for third-party negligence against Gulf Offshore or GOL, such claims should be dismissed because he cannot show that either of these entities owed him a duty under the general maritime law.

---

[19] Exhibit B
[20] See documentation from the IRS, attached hereto as Exhibit C
[21] *In the Matter of the Complaint of Liberty Seafood, Inc.*, 38 F.3d 755, 758 (5th Cir. 1994) (emphasis added).

Respectfully submitted,

*/s/ Kyle A Khoury*
Salvador J. Pusateri, T.A. (#21036)
Kyle A. Khoury (#33216)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
**ATTORNEYS FOR GOL, LLC, AND GULF OFFSHORE LOGISTICS, LLC**