**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>                              **Plaintiff**<br><br>**VERSUS**<br><br>**REC MARINE LOGISTICS, LLC, ET AL**<br>                         **Defendants** | **CIVIL ACTION NO:  3:20-cv-00092**<br><br>**DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON**<br><br>**MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

**REC MARINE LOGISTICS, LLC'S SUPPLEMENTAL RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFF**

**NOW INTO COURT**, through undersigned counsel, comes defendant, REC Marine Logistics, LLC (hereinafter sometimes referred to as "REC Marine" or "Defendant"), which hereby supplements its responses to the Requests for Production of Documents propounded by Plaintiff, McArthur Griffin ("Plaintiff"), as follows:

**REQUEST FOR PRODUCTION NO. 12:**

Produce all contracts between the Defendants named in this lawsuit governing the work or relationships at the time of the Incident, as well as all such contracts with any other parties governing the work at the time of the Incident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

See attached Operating Agreement between REC Marine Logistics, LLC and Offshore Transport Services, LLC pertaining to the M/V DUSTIN DANOS which was in effect at all pertinent times.

EXHIBIT A

Respectfully submitted:

Salvador J. Pusateri T.A. (#21036)
Kyle A. Khoury (#33216)
PUSATERI, JOHNSTON, GUILLOT
& GREENBAUM
1100 Poydras Street
Energy Centre – Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
ATTORNEYS FOR GOL, LLC, REC
MARINE LOGISTICS, LLC, and
OFFSHORE TRANSPORT SERVICES, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November, 2021, I served the foregoing document by electronic means (email) upon all counsel of record in this case.

OPERATING AGREEMENT



This operating agreement entered into effective the 1st day of ____May____, 2016, by and between **Offshore Transport Services, LLC**, a Louisiana limited liability company with its principal business address at P O Box 309, Raceland, LA 70394 (hereinafter called "Owner"), and **REC Marine Logistics, LLC**, a Louisiana limited liability company with its principal business address at P O Box 309, Raceland, LA 70394 (hereinafter called "Operator").

RECITALS

Whereas, Owner and Operator wish to enter into an arrangement for the Operator to operate the Vessel of the Owner based upon a cost plus operating arrangement.

Whereas, in order to evidence the terms of such arrangement, the Owner and Operator wish to execute this Agreement.

WITNESSETH

In consideration of the mutual undertaking herein set forth, the parties do hereby agree as follows:

**Section 1.    Definitions:**    The following terms shall have the following meanings when used in this agreement.

**Agreement** shall mean this Operating Agreement as this Agreement may be amended or modified from time to time.

**Operator** shall mean REC Marine Logistics, LLC

**Owner** shall mean Offshore Transport Services, LLC.

**Costs** shall mean all direct out of pocket costs incurred by Operator and associated with the operation of the Vessel in accordance with the Operator's obligations under this Agreement, including but not limited to costs to man, insure, operate, victual, maintain, repair, supply, manage, and navigate the Vessel.

**Section 2.    Independent Contractor Status. Operator** shall, at the cost and expense of the **Owner**, but in all instances as an independent contractor, man, insure, operate, victual, maintain, and supply the **M/V Dustin Danos**, Official Number 1096385 (the "Vessel").

**Section 3.    Term.** This operating agreement shall continue for a period of twelve (12) months and then thereafter until terminated as herein below provided. The commencement date for the Agreement shall be May 1, 2016. After the initial twelve (12) month term, either party may terminate this agreement by thirty (30) days written notice.

**Section 4.    Compensation.**    The compensation under this agreement to the **Operator** shall be based upon a cost plus basis. For each month or part thereof that **Operator** performs the services contemplated herein, **Owner** shall pay **Operator** for its services, the sum of Seven Thousand Five Hundred ($7,500.00) DOLLARS per month (the "Operator Fee") plus all costs; such payments to continue until this agreement is terminated as herein provided. The Operator Fee for the first month of this Agreement (period from May 1, 2016 to May 31, 2016) shall be payable with the execution of this

1

REC 2037

Agreement and the Operator Fee shall be payable thereafter on a semi-monthly basis at the end of each payroll period.

The Operator Fee and any costs incurred will be invoiced to the Owner on a monthly basis to coincide with Operator's payroll period ending. Owner shall, within five (5) days from the date of the payroll invoice, pay such invoice to **Operator** for the purpose of reimbursing payroll expenses and any costs incurred associated with the operation of the Vessel in accordance with the Operator's obligations under this Agreement, including but not limited to costs to man, insure, operate, victual, maintain, repair, supply, manage, and navigate the Vessel.

With regard to expenditures associated with the operation of the Vessel, **Operator**, in its sole discretion, shall have the option of incurring such expenditures for the account of and by direct billing from the vendor to the **Owner** ("Direct Bill Costs") or for the account of the **Operator** to be invoiced to the **Owner** as Costs.

Payment for Costs invoiced directly to the **Owner** will be made upon presentation of weekly invoices by **Operator** to **Owner**. Payments for Direct Bill Costs shall be made by Owner to the respective vendors in accordance with the terms of the invoices for such Direct Bill Costs.

**Section 5.    Activities and Location.**    The Vessel shall be employed in lawful activities in connection with oil well drilling production, petroleum exploration, and other allied activities in the water of the GULF OF MEXICO and adjoining inland waters pursuant to charter agreements by and between **Owner** and third parties other than **Operator**.

**Section 6.    Control of Vessel.**    The operation, navigation, and management of the Vessel shall be under the exclusive control and command of **Operator** and its servants and its Master and crew. Subject to the sole right of the Master of the Vessel to determine whether the movement by be undertaken, the Vessel will be operated and the services herein described will be rendered at times as requested by **Operator** and the boat will make the voyages between port and the site of operations as requested by **Operator**. It is expressly understood and agreed that **Operator** is an independent contractor and that neither it nor its employees nor the Master nor the crew of the Vessel are servants, agents, or employees of the **Owner**. The actual performance and operation, navigation, management, and control of the Vessel shall be at all times done by **Operator**, under its command and control and under the supervision and direction of **Operator** as to the details of the work. **Owner** being interested only in the complete performance of the services herein provided.

**Operator**, at the cost of the **Owner**, will employ a skilled, licensed boat captain and complete crew as required for the operation of the Vessel. Without impairing or lessening the obligations and duties undertaken by the **Operator** in the last preceding paragraph, the **Operator** agrees to promptly replace the Master or any officer or any member of the crew upon the request of the **Owner**.

**Section 7.    Maintenance of Vessel.    Operator**, at the cost and expense of the **Owner**, will maintain the Vessel in the same good order and condition as when received, ordinary wear and tear excepted, and shall cause all necessary repairs to be made. **Operator** shall not make any structural changes or alterations in the Vessel without first procuring written permission of the **Owner**.

**Section 8.    Liens.**    Neither **Operator** not the Master of the Vessel shall have any right, power, or authority to create, incur or permit to be imposed upon the Vessel any liens whatsoever except for the Operators Fee, the Costs, crew's wages, and salvage.

2

**Section 9.    Laws.**    Except to the extent that this agreement may be exempt therefrom **Operator** agrees to comply with the provision of all applicable State and Federal requirements and regulations on hiring practices and employment.

**Section 10.    Taxes.    Operator** shall not be responsible for any transportation, use, sales, or other such Federal or State taxes due, resulting from the operation and use of this equipment during the period of this agreement such as taxes to be for the account of **Owner**, if and when any such taxes or charges are determined to be due by proper authority.

**Section 11.    Insurance.    Operator**, at the cost of **Owner**, shall furnish hull insurance by acceptable companies in the amount of $24,000,000.00 and P & I insurance in the amount of $24,000,000.00 with contractual liability coverage. **Operator** shall in no instance be responsible for the solvency or ability to pay of the insurance company issuing the policies of insurance provided for in the Section 11. The **Owner** shall be responsible for all insurance deductible amounts provided for in the policies of insurance procured by **Operator** in accordance with this Section 11.

All such policies shall be in form and with companies as approved by **Owner**, shall name **Owner** as additional assured and shall waive subrogation against **Owner**.

**Section 12.    Re-negotiation.**    It is understood and agreed that the fee herein provided for the operation of this vessel is based on such operating costs and expectations of **Operator** and as a result of a change in **Operator's** cost of operating this vessel are affected then, **Operator**, shall have the right not to exceed twice annually, to re-negotiate the fee to reflect such changed operating costs. In the event that **Owner** fails to agree to a re-negotiated fee reflecting the changed operating costs, then upon thirty (30) days written notice, the **Operator** shall have the privilege of canceling this contract.

**Section 13.    Miscellaneous Provisions.**

**Amendment.** No amendment, modification, consent or waiver of any provision of this Agreement shall be effective unless the same shall be in writing signed by a duly authorized officer of Operator and Owner, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Caption Headings.** Caption headings of the sections of this Agreement are for convenience purposes only and are not to be used to interpret or to define their provisions. In this Agreement, whenever the context so requires, the singular includes the plural and the plural also includes the singular.

**Attorney Fees.** If **Operator** is forced to bring an action or proceeding to enforce the collection of any amounts owed under this Agreement, it is hereby agreed that the **Owner** shall pay all reasonable expenses including legal fees of the successful party.

**Governing Law**. This Agreement shall be governed and construed in accordance with the substantive laws of the State of Louisiana.

**Severability.** If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Agreement shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added

3

REC 2039

automatically as a part of this Agreement, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**Successors and Assigns Bound.**    Each party's obligations and liabilities under this Agreement shall be binding upon their successors, heirs, legatees, devisees, administrators, executors and assigns.

**IN WITNESS WHEROF, Owner** and **Operator** have caused this Agreement to be duly executed by their respective representatives thereunto duly authorized on the day and year first written with the agreement that it shall take effect and become operative as of 12:01 a.m. on the 1st day of May 2016.

WITNESSES:

Linda R. Plaisance

**OWNER: Offshore Transport Services, LLC**

BY: _____

Todd Danos, Member

**OPERATOR: REC MARINE LOGISTICS, LLC**

BY: _____

Rec Chaddock, Member

4

REC 2040