`UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MCARTHUR GRIFFIN                                         CIVIL ACTION NO.

VERSUS                                                   20-92-BAJ-EWD

REC MARINE LOGISTICS,
LLC, ET AL.

## RULING AND ORDER

Before the Court[1] is a Motion for Leave to Amend Answer (the "Motion"), filed by REC Marine Logistics, LLC ("REC"), GOL, LLC ("GOL"), Gulf Offshore Logistics, LLC ("Gulf Offshore"), and Offshore Transport Services, LLC ("OTS") (the "Vessel Defendants").[2] In the Motion, the Vessel Defendants seek leave to add the affirmative defense enumerated in *McCorpen v. Cent. Gulf S. S. Corp.*,[3] as well as to make several other minor amendments to clarify their prior Answer.[4] Plaintiff McArthur Griffin ("Plaintiff") opposes the Motion to the extent it seeks to add the *McCorpen* defense.[5] Because the balance of factors to be considered weigh in support of amendment of the Scheduling Order to permit the Vessel Defendants to clarify their prior Answer and to permit REC to assert the *McCorpen* defense, the Motion will be granted in part.

I. **BACKGROUND**

Plaintiff filed his original Complaint on April 23, 2019 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge against REC, GOL, Gulf Offshore, and the since-dismissed American Steamship Owners Mutual Protection and Indemnity Association, alleging

---

[1] A motion for leave to amend is not among the motions expressly excluded from direct ruling by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). Further, although the Fifth Circuit has not ruled on the issue, the weight of authority appears to be that motions for leave to amend are generally considered nondispositive in nature. *See, e.g.*, *Bona Fide Demolition and Recovery, LLC v. Crosby Construction Co. of Louisiana, Inc.*, 07-3115, 2010 WL 4176858, *1 (E.D. La. Oct. 20, 2010) (collecting cases).
[2] R. Doc. 77.
[3] 396 F.2d 547 (5th Cir. 1968).
[4] R. Doc. 77, pp. 2-4.
[5] R. Doc. 78.

claims under the Jones Act, 46 U.S.C. § 30104, and under general maritime law, arising out of injuries he allegedly sustained due to the negligence/gross negligence of the Vessel Defendants while Plaintiff was employed as a seaman in navigable waters aboard the vessel the *M/V Dustin Danos*. The Vessel Defendants allegedly owned and/or operated the *M/V Dustin Danos*.[6] In connection with these claims, Plaintiff sought maintenance and cure, among other personal injury damages, as well as lost wages and punitive damages.[7] On September 5, 2019, Plaintiff filed his First Supplemental and Amended Petition for Damages, alleging the same claims but adding Defendants OTS, an additional employer of Plaintiff and owner and/or operator of the vessel, and insurer QBE Insurance (Europe) Limited ("QBE").[8]

On February 17, 2020, QBE removed the proceeding to this Court, contending that its insuring agreement with the Vessel Defendants contains an arbitration clause requiring arbitration in London, England, "that arises out of a commercial relationship between a U.S. insured [the Vessel Defendants][9] and a foreign insurer [QBE], both of whom are citizens of signatories to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"), codified in the Convention Act at 9 U.S.C. § 201 *et seq.*"[10] QBE contended that since Plaintiff's Complaint "relates to an arbitration agreement or award falling under the Convention" within the meaning of 9 U.S.C. § 205,[11] which is broadly construed,

---

[6] R. Doc. 77-1, pp. 1-3.
[7] R. Doc. 77-1, pp. 3-4.
[8] R. Doc. 77-1, pp. 7-8.
[9] According to the parties' Supplemental Status Report, QBE provided insurance to REC Marine, Gulf Offshore, and Offshore Transport, all of which are Louisiana-domiciled limited liability companies based on information on the Louisiana Secretary of State website. R. Doc. 32, p. 4.
[10] R. Doc. 1, pp. 3-4. 9 U.S.C. § 205 provides: "Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court… The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal…."
[11] QBE also averred that Plaintiff is bound by the terms of the arbitration agreement because he has asserted claims against QBE pursuant to the Louisiana Direct Action Statute, La. R.S. § 22:1269. R. Doc. 1, p. 3 and R. Doc. 32, p. 4 (amended status report).

it was entitled remove the case pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1331,[12] despite Plaintiff's Jones Act claim.[13] Therefore, a basis for this Court's jurisdiction was adequately pleaded.[14]

On April 29, 2020, the Vessel Defendants filed their Answer, which does not contain the *McCorpen* defense.[15] *McCorpen* provides for an affirmative defense whereby an employer can seek to avoid liability for maintenance and cure damages by showing that the plaintiff/seaman willfully concealed a pre-existing injury that was reactivated or aggravated during a later voyage.[16] On September 9, 2020, this Court issued its initial Scheduling Order, which established November 18, 2020 as the deadline to amend the pleadings.[17] On June 3, 2021, the Court granted the parties'

---

[12] 9 U.S.C. § 203 provides: "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

[13] R. Doc. 1, pp. 4-5. As the record reflects, numerous telephone conferences were held with the parties regarding various scheduling, discovery and jurisdictional issues, including removal pursuant to the Convention. *See* R. Docs. 13, 17, 23, 40, 52, 65, 75. Plaintiff disputes the propriety of removal based on the Convention, contending that the arbitration agreement does not pertain to Plaintiff's claims and is not applicable until there is a dispute as to reimbursement for a liability payment made (R. Doc. 25, R. Doc. 1, p. 1); however, QBE correctly asserts that the provisions of 9 U.S.C. § 205 are broadly construed in favor of removal if an arbitration agreement merely "relates to" the Convention, and persuasive authority suggests that the Court has jurisdiction based on the Convention. *See Beiser v. Weyler*, 284 F.3d 665, 671 (5th Cir. 2002) (holding that § 205 permits removal on the basis of a federal defense, and further holding: "…an arbitration clause under the Convention 'relates to' the plaintiff's suit in the plain meaning of the phrase 'relates to' whenever the clause could conceivably have an affect on the outcome of the case. As a result, absent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim.") and *Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, No. 08-1195, 2011 WL 1226464, at **6, 10 (upholding application of the Convention despite that the plaintiff had not signed the arbitration agreement).

[14] There may also be subject matter jurisdiction because Plaintiff's Jones Act and admiralty claims could have been brought in this Court originally, Plaintiffs did not object to removal of those claims, and Plaintiffs have extensively litigated the claims here. *See, e.g., Lirette v. N.L. Sperry Sun, Inc.*, 820 F.2d 116, 117-18 (5th Cir. 1987) ("The en banc court now determines that § 1445(a)'s bar to removal may be waived by a litigant's failure to object to such removal in district court. In *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, [] (1972), the Supreme Court held that when an action is improperly removed to a federal district court, the case is tried on the merits without objection, and the court enters a final judgment, 'the issue in subsequent proceedings is not whether the case was properly removed, but whether the federal district court would have had jurisdiction of the case had it been filed in that court.' *Id.* at 702, []. In the case at bar, Lirette could have filed his cause of action in the United States district court. He did not object to removal. Rather, he fully participated in the proceedings in the federal forum. The district court entered judgment dismissing his Jones Act and unseaworthiness claims on the merits. *Grubbs* teaches that Lirette's actions waived his statutory right to object to the exercise of subject matter jurisdiction by the United States district court.").

[15] R. Doc. 14.

[16] 396 F.2d at 548.

[17] R. Doc. 41, p. 1.

3

joint motion for an extension of deadlines, *not* including the already-expired amendment deadline.[18]

On April 28, 2021, Plaintiff moved to compel REC's responses to discovery requests regarding the *McCorpen* defense, or alternatively, moved to strike the *McCorpen* defense to the extent REC was considered to have asserted it.[19] The original Motion to Compel was denied because the Vessel Defendants ultimately responded to the discovery requests and the parties had not fully complied with their Fed. R. Civ. P. 37 obligations.[20] A month later, on May 12, 2021, Plaintiff re-urged his Motion to Compel *McCorpen*-related discovery responses.[21] After a telephone conference, the re-urged Motion to Compel was also denied because the Vessel Defendants had not affirmatively alleged the *McCorpen* defense in a pleading.[22]

On July 7, 2021, 70 days after the filing of Plaintiff's original Motion to Compel and 56 days after the filing of the re-urged Motion to Compel, the Vessel Defendants filed the instant Motion, seeking leave to amend their Answer to assert the *McCorpen* defense, as well as to clarify several prior responses in their Answer, *i.e.*: (1) that the Answer filed post-removal was meant to serve as an Answer to both the original and Amended Complaints; (2) to specify that the denial of the allegations in Paragraph X was intended as a denial of the allegations in both paragraphs labeled as "X;" and (3) to deny the allegations contained in Paragraph XI because their response to same was inadvertently omitted due to the mis-numbering of the Complaint.[23] Plaintiff appears to oppose the Motion only to the extent it seeks leave to assert the *McCorpen* defense.[24]

---

[18] R. Docs. 68, 70.
[19] R. Doc. 63.
[20] R. Doc. 65. Plaintiff's disputes as to the deficiencies in the Vessel Defendants' responses was a different issue than the lack of any responses, as raised in the original Motion to Compel.
[21] R. Doc. 67.
[22] R. Doc. 75.
[23] R. Doc. 77, pp. 4-7, *and see* R. Doc. 77-1, p. 40-41, ¶¶ 1-3.
[24] R. Doc. 78.

## II. LAW AND ANALYSIS

### A. Legal Standards

Fed. R. Civ. P. 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires."[25] Because the Vessel Defendants seek leave to amend their Answer after the deadline for filing amendments and adding parties has passed,[26] the Court must first analyze the Motion under Fed. R. Civ. P. 16. "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."[27] "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[28] In determining "good cause," a court must consider the following four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.[29]

If the movant demonstrates good cause, then the more liberal standard of Fed. R. Civ. P. 15(a) applies; however, "leave to amend is by no means automatic" and the "decision lies within the sound discretion of the district court."[30] A court should consider the following five factors to determine whether to grant a party leave to amend a complaint under Rule 15: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4)

---

[25] Fed. R. Civ. P. 15(a).
[26] R. Docs. 41 & 70.
[27] *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).
[28] *Id*. at 535, quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990).
[29] *S&W Enterprises, L.L.C.*, 315 F.3d at 536 (citations omitted).
[30] *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (citations omitted).

undue prejudice to the opposing party; and (5) futility of the amendment.[31] Absent any of these factors, the leave sought should be freely given.[32]

B. **The Vessel Defendants Have Shown Good Cause to Modify the Scheduling Order to Permit Clarification of Their Prior Answer**

Plaintiff does not oppose the Motion to the extent it seeks leave to amend to specify that the Vessel Defendants' denial of the allegations in Paragraph X was intended as a denial of the allegations in both paragraphs labeled as "X," and to deny the allegations contained in Paragraph XI, which denial was inadvertently omitted.[33] It is unclear if Plaintiff objects to the amendment that seeks to clarify that the Answer was filed in response to both the original and Amended Complaints.[34] However, good cause exists pursuant to Fed. R. Civ. P. 16 to modify the Scheduling Order to permit all three amendments because they clarify prior responses, and thus will streamline the litigation and promote judicial efficiency. Permitting these amendments causes no prejudice to Plaintiff, who does not oppose at least two of the three amendments. Turning to the Fed. R. Civ. P. 15 factors, there has been no showing of bad faith or dilatory motive regarding these amendments, as two were caused by incorrect numbering in the Complaints. Further, these amendments will not unduly delay this matter as they clarify prior allegations and defenses.

C. **The Vessel Defendants Have Shown Good Cause to Support Modifying the Scheduling Order to Permit the Assertion of the *McCorpen* Defense**

The Vessel Defendants argue that all four Fed. R. Civ. P. 16(b) factors support a modification of the Scheduling Order to permit REC, as Plaintiff's employer, to plead the

---

[31] *Smith v. EMC Corp*, 393 F.3d 590, 595 (5th Cir. 2004), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).
[32] *Smith*, 393 F.3d at 595. Regarding the fifth factor, an amendment is "futile" if it would fail to survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).
[33] R. Doc. 78, p. 1, n. 2.
[34] *See* Plaintiff's opposition memorandum, which avers: "…Plaintiff does not object to the amendments contained in paragraph 2, 3, and 4" of the proposed Amended Answer. R. Doc. 78, p. 1, n. 2. However, paragraph 4 in the proposed Amended Answer is compromised of the *McCorpen* defense; therefore, the reference to a lack of opposition to the *McCorpen* amendment in paragraph 4 appears to be an error.

*McCorpen* defense.[35] The Vessel Defendants' argue that the amendment is untimely due to the oversight of their prior counsel, which oversight was not realized by current counsel (who enrolled in October 2020) until recently.[36] The Vessel Defendants allege that their conduct establishes that they believed that they had timely asserted the defense, as evidenced by a "Status Conference Report" sent from prior counsel to Plaintiff one month after the original Answer was filed, *i.e.*, in May 2020, which references the *McCorpen* defense.[37] The Vessel Defendants assert that they have participated in discovery regarding the defense, including responding to discovery requests specifically regarding the *McCorpen* defense in April 2021, which indicated that they intended to assert the defense; responding to requests for admission that implicate the defense; and designating a Fed. R. Civ. P. 30(b)(6) corporate deponent in response to deposition topics regarding the defense.[38] Second, the Vessel Defendants argue that, as previously noted by the Court, the *McCorpen* defense is important, as the defense is "pleaded in nearly every Jones Act case in which a seaman is asserting entitlement to maintenance and cure benefits," because when the elements of a *McCorpen* defense are met, it has the effect of barring a claim for maintenance and cure.[39] Third, the Vessel Defendants claim that there is no prejudice to Plaintiff in allowing the amendment because Plaintiff has been aware for over a year that REC was asserting the defense, Plaintiff has assumed the defense was being asserted, and Plaintiff has engaged in significant discovery related to the defense. Relatedly, the Vessel Defendants argue that, at the time of the

---

[35] R. Doc. 77, p. 4.
[36] R. Docs. 45-46.
[37] R. Doc. 77-1, pp. 12-14 (Status Conference Report emailed by prior defense counsel to Plaintiff, as well as improperly emailed to the Orders mailbox of the undersigned, which was not received by the undersigned nor apparently filed with the Court).
[38] R. Doc. 77, pp. 2-3, 5; R. Doc. 77-1, pp. 33-39 (REC's discovery responses to Plaintiff's *McCorpen* discovery), R. Doc.77-1, pp. 15-23, and particularly, Requests 21-22 at p. 19 (Plaintiff's Requests for Admissions to REC), and R. Doc. 77-1, pp. 24-26 (Plaintiff's Amended Notice of Deposition) (and *see* R. Doc. 78-12 (deposition transcript of REC's corporate deponent, Brian Harris, who was deposed on May 12, 2021)). REC contends in brief that it responded to Plaintiff's Request for Admission No. 22 regarding the defense; however, REC's response is not in the record.
[39] R. Doc. 77, pp. 5-6 *citing* R. Doc. 75, p. 4.

filing of the Motion, the trial date and various deadlines had been continued such that Plaintiff had additional time to conduct *McCorpen* discovery, which obviated any prejudice to Plaintiff, and further extensions of the discovery deadline were possible (at that time) in light of the continued trial date.[40]

In response, Plaintiff argues that the Vessel Defendants did not act diligently in seeking amendment, as this matter had been pending for 807 days in total, and 203 days since the expiration of the amendment deadline, at the time the Motion was filed. Further, Plaintiff argues that Plaintiff's April 28, 2021 (and May 12, 2021) Motions to Compel/to strike the *McCorpen* defense put the Vessel Defendants on notice that they had not asserted the defense, yet this Motion was not filed until 70 days after the former.[41] Relatedly, Plaintiff contends that REC has not shown good cause for its failure to seek leave in a timelier fashion. While the Vessel Defendants contend that their failure to assert the defense was due to an oversight, they were put on notice by Plaintiff's Motions to Compel that they failed to assert the defense, and yet they still waited another 70 days to seek leave to assert it, without providing a sufficient explanation.[42] Next, Plaintiff argues that the *McCorpen* defense is not important to this case because in order for REC to prevail on the defense, REC would have to prove that facts not disclosed by Plaintiff were material to its decision to hire Plaintiff; however, REC's corporate deponent "admitted" that REC was not Plaintiff's employer.[43] Rather, Plaintiff was only "transferred" to REC. Regarding the third and fourth Fed. R. Civ. P. 16 factors, Plaintiff contends that permitting REC to assert a non-applicable defense is prejudicial to Plaintiff because it will require Plaintiff to conduct additional discovery and file an

---

[40] R. Doc. 77, p. 6, and *see* R. Doc. 75, p. 4, noting the lack of prejudice to Plaintiff because Plaintiff had time to conduct discovery on the *McCorpen* defense.
[41] R. Doc. 78, pp. 3-4 and *see* Motions to Compel at R. Docs. 63, 67.
[42] R. Doc. 78, p. 5.
[43] R. Doc. 78, p. 6 *citing* the Fed. R. Civ. P. 30(b)(6) testimony of Brian Harris on behalf of REC at R. Doc. 78-12, p. 24 and *see* p. 2 (noting that the deposition was of the corporate representative of REC).

unnecessary dispositive motion, as well as could potentially require another continuance of the deadlines. Plaintiff avers that the Vessel Defendants have already caused unnecessary delays in this case, and permitting the assertion of a non-applicable defense will only create further delays.[44]

In Reply, the Vessel Defendants contend that Plaintiff's reliance on his Motions to Compel as putting the Vessel Defendants on notice that the defense had not been asserted fails to recognize that those same Motions to Compel actually sought to compel discovery on the *McCorpen* defense, which shows that Plaintiff was aware that REC intended to assert the defense.[45] The Vessel Defendants argue that Plaintiff cannot claim unawareness of the defense because it was asserted in the Vessel Defendants' Status Conference Report, and Plaintiff has propounded discovery to the Vessel Defendants specifically directed to the defense (and then sought to strike the defense).

In response to Plaintiff's contention that REC is not Plaintiff's employer, the Vessel Defendants explain that in 2016, REC merged with the company who initially hired Plaintiff, JNB Operating, LLC ("JNB"), which was the entity that operated and staffed the vessels. JNB ceased operations as the result of the merger, and REC became the operator and staffer of the vessel. The Vessel Defendants contend that Plaintiff has previously acknowledged that REC was his employer, and "the fact that two companies merged and plaintiff 'transferred' from being an employee of JNB to being an employee of REC Marine does not mean REC Marine didn't 'hire' him," as evidenced by the fact that Plaintiff was required to fill out an employment application for REC after the merger.[46] Furthermore, during REC's corporate deposition, Plaintiff's counsel referred to REC having "still hired [Plaintiff]," despite Plaintiff's past conviction for fighting.[47] Thus, REC argues that it can assert the *McCorpen* defense as Plaintiff's employer.

---

[44] R. Doc. 78, p. 7.
[45] R. Doc. 81, p. 2.
[46] R. Doc. 81, p. 3 and *see* Plaintiff's REC employment application at R. Doc. 81-1.
[47] R. Doc. 81, pp. 2-3.

9

The balance of the Fed. R. Civ. P. 16 factors weigh in favor of permitting a modification of the Scheduling Order to allow REC to assert the *McCorpen* defense. As noted during the parties' telephone conference with the Court, the defense is important, because, if proven, the defense would bar Plaintiff's claim for maintenance and cure. Plaintiff's newly-raised argument that REC was not Plaintiff's employer, and therefore cannot assert the defense, is not persuasive. As the Vessel Defendants point out, Plaintiff has previously represented otherwise, having referred to REC in various documents and REC's corporate deposition as Plaintiff's employer, as well as during a conference with the Court.[48] Further, the fact that Plaintiff was transferred to REC from JNB is not mutually exclusive with REC being Plaintiff's employer. REC required Plaintiff to complete an employment application after the merger, which suggests that REC may have re-hired Plaintiff after the transfer and therefore was Plaintiff's employer.[49] As such, it does not appear that REC is clearly precluded from asserting the defense, which weighs in favor of amendment.[50]

Consideration of prejudice to Plaintiff is ultimately neutral. On the one hand, it is unclear how Plaintiff can contend that he is surprised by REC's assertion of an affirmative defense that Plaintiff treated as asserted. The Vessel Defendants are correct that the defense is referenced as far back as the May 2020 Status Conference Report.[51] Similarly, Plaintiff served discovery requests on REC directed to the defense, including requests for admission that were served on REC in February 2020, which REC contends it answered,[52] and most recently, explicit *McCorpen*

---

[48] R. Doc. 75, p. 2. *See* Plaintiff's deposition topics for the corporate deposition of REC at R. Doc. 77-1, p. 25, No. 7: "All compensation and benefits paid to or otherwise available to McArthur Griffin ("Griffin") **as an employee** of Rec Marine Logistics LLC…as of the year of his accident," and No. 34: "All actions taken by or on behalf of you in connection with your hiring of Plaintiff." (emphasis added) *See also* R. Doc. 78-12, p. 23, REC corporate deposition transcript, wherein Plaintiff posed a question thusly: "Q. 'Okay. So when REC made the decision to hire Mr. Griffin on in 2016, right?' A. 'Yes.'"
[49] R. Doc. 81-1, 1-7.
[50] This Ruling and Order does not pass on the ultimate viability of the *McCorpen* defense or of Plaintiff's argument that REC was not Plaintiff's employer.
[51] R. Doc. 77-1, pp. 12-14.
[52] R. Doc. 77-1, pp. 15-23. Plaintiff does not dispute that REC responded to these requests.

discovery requests that REC answered on April 28, 2021 (although Plaintiff disputes the adequacy of some of the responses).[53] The parties also participated in REC's Fed. R. Civ. P. 30(b)(6) corporate deposition on May 12, 2021, during which some questions relating to the defense were posed by Plaintiff.[54] Moreover, Plaintiff also sought to strike the defense, which belies any suggestion that Plaintiff was unaware that the defense was at issue.[55] Thus, by his actions, Plaintiff knew that REC intended to assert the defense and has not shown how official assertion of it now would cause undue prejudice to Plaintiff.

On the other hand, while the parties have engaged in some discovery regarding the *McCorpen* defense, discovery on the defense is likely not complete. Specifically, and as set forth in Plaintiff's amended Motion to Compel, Plaintiff sought to compel REC to respond to a request for production and interrogatory regarding the defense.[56] That motion was terminated because the defense had not yet been officially asserted; however, the Court's Order anticipated this scenario, and provided that Plaintiff would be permitted to re-urge the Motion to Compel as to the disputed *McCorpen* discovery, if the Vessel Defendants were permitted to assert the defense but refused to adequately respond to related discovery.[57] Therefore, some limited additional discovery will likely be necessary, which can be accommodated by a continuance of some of the pretrial and trial deadlines, but which will result in some delays in the case and thus some prejudice to Plaintiff.

---

[53] R. Doc. 77-1, pp. 33-39 and *see* Plaintiff's Amended Motion to Compel at R. Doc. 67-1.
[54] R. Doc. 77-1, pp. 25-26 (Exhibit A to deposition notice) and R. Doc. 78-12, p. 23 (questions regarding Plaintiff's pre-existing injuries, REC's hiring of Plaintiff in relation to pre-existing injuries, Plaintiff's physical) and p. 36 (cross examination regarding whether REC would want to know about Plaintiff's pre-existing injuries and why).
[55] R. Doc. 63. The original Motion to Compel/Motion to Strike was terminated for the reasons set forth in the Court's May 5, 2021 Order. R. Doc. 65.
[56] R. Doc. 67.
[57] R. Doc. 75. The Court provided guidance to the parties regarding the outstanding *McCorpen* discovery requests, including narrowing the scope of the requests. The parties were also ordered to attempt to amicably resolve any issues regarding the discovery requests, as well as the issues raised in this Motion, *i.e.*, whether Plaintiff would agree to the amendment and the Vessel Defendants would agree to provide additional, relevant *McCorpen* discovery. *Id.* at p. 4. Although the parties did not reach any agreements following the conference, they are instructed to confer again regarding outstanding discovery related to the *McCorpen* defense considering this Ruling and Order and the prior guidance provided regarding discovery.

At the end of the day, the prejudice to Plaintiff caused by delays is offset by the lack of prejudice to Plaintiff as a result of Plaintiff's awareness of REC's intention to assert the defense and the related discovery that already has already been conducted.

The factor that weighs most heavily against amendment is REC's lack of explanation for its failure to assert the defense in a timelier fashion. While the initial failure to assert the defense may be satisfactorily explained by the likely oversight of prior counsel, who apparently mistakenly believe he had asserted the defense,[58] more troubling is the lack of an explanation for why current counsel waited 70 days after Plaintiff's April 28, 2021 Motion to Compel to assert the defense, despite clear notice of the oversight—at the latest—in that motion. The Vessel Defendants have not given much explanation for their most recent delay in asserting the defense. They did not convey an intent to seek leave to assert the defense during the May 5, 2021 telephone conference during which the Court denied Plaintiff's attempt to strike the *McCorpen* defense because it had not been formally pleaded.[59] In their opposition memorandum to Plaintiff's amended Motion to Compel (seeking production of *McCorpen* defense-related discovery), the Vessel Defendants substantively opposed the Motion—but again—failed to specifically state their intent to seek leave to assert the defense. It was not until the June 24, 2021 telephone conference with the Court that the Vessel Defendants finally conveyed that they would be filing a motion for leave to amend.[60] The failure to clearly convey their intent to seek leave, and the failure to seek leave in a timelier fashion, unreasonably delayed the case and caused the parties and the Court to waste resources, which is grounds for the exercise of the Court's inherent power to issue sanctions. Accordingly, counsel for the Vessel Defendants will be sanctioned $1,000 in attorney's fees to

---

[58] The Vessel Defendants' Status Conference Report emailed to Plaintiff's counsel about three months after removal indicates that prior counsel believed he asserted the defense. R. Doc. 77-1, pp. 12-14.
[59] R. Doc. 65.
[60] R. Docs. 69, 75.

Plaintiff for unnecessary costs and delays associated with the failure to timely indicate an intent to assert the *McCorpen* defense, despite multiple opportunities to do so after notice that the defense was not contained in the Vessel Defendants' Answer.[61]

Because the balance of the other Fed. R. Civ. P. 16 factors weighs in favor of amendment, and particularly, the lack of prejudice to Plaintiff and the discovery conducted already, REC has demonstrated that good cause exists to modify the Scheduling Order such that the Court must apply the more liberal standard of Fed. R. Civ. P. 15(a) to determine whether leave to amend the Complaint should be granted or denied. The balance of the Fed. R. Civ. P. 15 factors, which overlap somewhat with the Fed. R. Civ. P.16 factors, also favors amendment, as there is no showing of failure to cure deficiencies or bad faith by the Vessel Defendants, and the Vessel Defendants' responses to *McCorpen* discovery shows good faith. There has also been no showing of futility, as the record at this point tends to support REC's contention that it was Plaintiff's employer (an issue not previously disputed by Plaintiff) and therefore, REC's attempt to assert the defense is not clearly futile. The amendment does not seek to add any new parties. Moreover, as mentioned, prejudice to Plaintiff in the form of delay is balanced by Plaintiff's awareness that the defense was going to be asserted, and a brief continuance of pretrial deadlines will permit limited discovery and motion practice (if necessary) as to the defense. Therefore, the balance of the Fed. R. Civ. P. 15 factors favors amendment.

---

[61] *See, e.g., In re Saldana,* 531 B.R. 141, 166 (Bankr. N.D. Tex. May 22, 2015), *aff'd in part, remanded in part,* 534 B.R. 678 (N.D. Tex. July 20, 2015) (noting: "the Supreme Court has recognized that courts have the inherent power to issue sanctions against litigants for their bad faith conduct and that a court may assess attorney's fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."). This sanction applies only to counsel for the Vessel Defendants as the continued failure to make clear the intent to assert the *McCorpen* defense appears to lie with counsel, rather than with the client.

Accordingly, the Motion will be granted in part, permitting REC to assert submit a comprehensive, Amended Answer, that contains all their defenses and allegations, as revised, supplemented and/or amended, and as allowed by this Ruling and Order.[62]

## III. CONCLUSION

Consistent with the standard set forth in Fed. R. Civ. P. 16 and the liberal standard for amending pleadings under Fed. R. Civ. P. 15(a), the Vessel Defendants have shown that good cause exists for the Court to modify the Scheduling Order to allow the Vessel Defendants to file an Amended Answer that: (1) specifies that the original Answer was an Answer to both the original and Amended Complaints; (2) specifies that the denial of the allegations in Paragraph X was intended as a denial of the allegations in both paragraphs labeled as "X;" (3) denies the allegations contained in Paragraph XI, which denial was inadvertently omitted, and (4) affirmatively asserts the *McCorpen* defense on behalf of REC.[63]

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Leave to File First Amended Answer[64] is **GRANTED IN PART. By no later than January 21, 2022,** Defendants REC Marine Logistics, LLC, GOL, LLC, Gulf Offshore Logistics, LLC, and Offshore Transport Services, LLC shall file a comprehensive, Amended Answer that contains all their allegations, as revised, supplemented, and/or amended, which comports with this Ruling and Order, and which will become those Defendants' operative answer in this matter without reference to any other document in the record.

**IT IS FURTHER ORDERED** that counsel for Defendants REC Marine Logistics, LLC, GOL, LLC, Gulf Offshore Logistics, LLC, and Offshore Transport Services, LLC are

---

[62] The Motion is granted in part because the attached proposed amended Answer is not comprehensive.
[63] R. Doc. 77, pp. 4-7, *and see* R. Doc. 77-1, p. 40-41, ¶¶ 1-3.
[64] R. Doc. 77.

**SANCTIONED** $1,000, payable to Plaintiff, for attorney's fees incurred due to unnecessary delays caused by counsel's failure to clearly acknowledge an intent to assert the *McCorpen* defense once on notice that they had failed to do so. Counsel shall remit payment to Plaintiff, through Plaintiff's counsel, and shall file a notice of compliance in the record by no later than **January 21, 2022**.

**IT IS FURTHER ORDERED** that a telephone scheduling conference is set for **January 24, 2022 at 10:00 a.m.** before the undersigned to discuss any necessary amendments to current scheduling order deadlines in light of this Ruling and Order. Counsel participating in the telephone conference shall call 877-336-1839 using access code 9565780 five minutes prior to the conference.

Signed in Baton Rouge, Louisiana, on January 14, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**