UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MCARTHUR GRIFFIN | CIVIL ACTION |
| VERSUS | |
| REC MARINE LOGISTICS LLC, ET AL. | NO. 20-00092-BAJ-EWD |

### RULING AND ORDER

Before the Court is Defendants Gulf Offshore Logistics, LLC and GOL, LLC's second **Motion for Summary Judgment. (Doc. 82)**. The Court notes that this Motion was filed without leave of Court as required by Local Rule 56(h). However, Defendants subsequently requested leave of court to remedy the issue. (Doc. 84). The Motion is opposed. (Doc. 83). Defendants filed a reply Brief. (Doc. 85). For the reasons stated herein, Defendants' Motion is **GRANTED**.

### I. BACKGROUND

On April 22, 2019, Plaintiff filed suit in the 19th Judicial District Court for East Baton Rouge Parish against Gulf Offshore Logistics, LLC; GOL, LLC; REC Marine Logistics; and the American Club, to recover for alleged injuries he incurred while aboard the M/V Dustin Danos, "a vessel owned, operated, and/or managed by Defendants." (Doc. 1-1, p. 53). On November 4, 2019, Plaintiff filed an Amended Petition for Damages, adding QBE Insurance and Offshore Transport Services, LCC, as Defendants. (Doc. 1, p. 3). Plaintiff alleges that he was employed by either REC

1

Marine, Offshore Transport Services, GOL, or Gulf Offshore when he sustained "serious injuries to his neck, back, legs, and other body parts," due to Defendants' negligence. (Doc. 1-1, p.2). Defendants removed the case to this Court on February 17, 2020. (Doc. 1).

On September 4, 2020, GOL and Gulf Offshore separately moved for summary judgment. *See* (Docs. 37, 38, 39). The motions were denied. (Doc. 57). GOL and Gulf Offshore now move for a second summary judgment asserting that neither entity employed Plaintiff and therefore his claims against them under the Jones Act, or other asserted theories of liability, must be dismissed. (Doc. 82-1, p. 6).

Plaintiff argues that Defendants' motion should be denied because they failed to comply with Local Rule 56(h), that the motion relies upon the testimony of a person who never worked for Defendants, and that Defendants held themselves out to be the operators of the M/V Dustin Danos in contrast to their argument. (Doc. 83, p. 2).

## II. LEGAL STANDARD

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When

2

ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of Defendant's Motion, and therefore, the Court could grant Defendant's Motion for Summary Judgment on this basis alone.").

### III. DISCUSSION

#### a. Jones Act Claim

Defendants assert that Plaintiff cannot meet the essential elements of his Jones Act claim because neither Defendant employed him. (Doc. 82-1, p.6). In fact,

3

Plaintiff affirms this assertion noting that his "Jones Act claims are not asserted against Gulf Offshore [or] GOL" because they did not employ him. (Doc. 83).

Under the Jones Act, which creates a statutory cause of action for damages in favor of a seaman injured in the course of his employment, a seaman has a cause of action against his *employer* for injuries sustained because of his *employer's* negligence. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (emphasis added). A seaman may recover damages under the Jones Act if his employer's negligence was the legal cause, in whole or in part, of his injury. *Id.* At trial, Plaintiff must establish that Defendant's had a duty to provide him a reasonably safe place to work, breached that duty, and their negligence caused his injuries. *Id.*

Here, Plaintiff cannot meet this burden. The record evidence, including Plaintiff's own admissions, makes clear that Plaintiff was employed by REC Marine at the time of the alleged accident. (Doc. 82-2, p. 25). In fact, in its response to Plaintiff's request for admissions, REC Marine readily admitted that it was Plaintiff's employer on the date of the alleged accident. *See* (Doc. 82-2, p.28-31). Moreover, the corporate representative for GOL and Gulf Offshore confirmed that Plaintiff was never employed by either entity. (Doc. 82-2, p. 15). Accordingly, Plaintiff's Jones Act claims asserted against Defendants GOL and Gulf Offshore are **DISMISSED WITH PREJDUCE.**

b. **Unseaworthiness**

Defendants assert that they are not the proper parties for Plaintiff's unseaworthiness claims because they were neither the owner nor the operator of the

4

M/V Dustin Danos at the time of the alleged accident. (Doc. 82-1, p.6). Plaintiff asserts that Defendants had a duty to provide him with a safe work environment because they held themselves out as the operators of the M/V Dustin Danos. (Doc. 83, p. 10).

The United States Court of Appeal for the Fifth Circuit has held that to be liable for the breach of the duty of seaworthiness, a defendant "must be in the relationship of an owner or operator of [the] vessel." *Baker v. Raymon Int'l, Inc.*, 656 F.2d 173, 181 (5th Cir. 1981) (*citing Daniels v. Florida Power & Light Co.*, 317 F.2d 41, 43 (5th Cir.), cert. denied, 375 U.S. 832, 84 S.Ct. 78, 11 L.Ed.2d 63 (1963). However, an owner can escape liability for unseaworthiness if the vessel is under a bareboat or demise charter. *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 182 (5th Cir. 1981); *see Guzman v. Pichirilo*, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962); *Kerr-McGee Corp. v. Law*, 479 F.2d 61, 63 (4th Cir. 1973); *Solet v. M/V Capt. H. V. Dufrene*, 303 F.Supp. 980, 983-85 (E.D.La. 1969). A bareboat or demise charter exists when a defendant owner relinquishes full control over the vessel to the operator such that "the master is his man and the ship's people are his people." *Uni-Petrol Gesellschaft Fur Mineraloel Produkte M.B.H. v. M/T Lotus Maru*, 615 F. Supp. 78, 80 (S.D.N.Y. 1985). However, if the defendant owner retains control over the vessel such that is merely carrying the goods furnished or designated by the charter, then a bareboat or demise charter does not exist. *Uni-Petrol Gesellschaft Fur Mineraloel Produkte M.B.H. v. M/T Lotus Maru*, 615 F. Supp. 78, 80 (S.D.N.Y. 1985).

Here, no evidence has been offered to show that Defendants had control over

the M/V Dustin Danos at the time of Plaintiff's alleged accident. Plaintiff points to two brochures used as marketing material to assert that Gulf Offshore and GOL were the operators of the M/V Dustin Danos. *See* Doc. 83-1, p. 2, Doc. 83-4, p. 4. However, this assertion is directly contradicted by the operating agreement in effect at the time of the accident and other record evidence. (Doc. 85-1, p. 4, Doc. 82-2, p. 22-23, Doc. 82-2, p. 32). The operating agreement for the M/V Dustin Danos unequivocally states that "operation, navigation, and management of the [M/V Dustin Danos] shall be under the exclusive control and command of [REC Marine] and its servants and its Master and crew." (Doc. 85, p.3); *see* (Doc. 85-1, p.4). Moreover, it specifically describes Offshore Transport Services, LLC as the "Owner" of the M/V Dustin Danos and REC Marine Logistics, LLC as the "Operator" at the time of the incident. (Doc. 85-1, p. 3). In fact, evidence included in Plaintiff's response to Defendant's motion for summary judgment lists Offshore Transport Services, LLC as the registered owner, and Gulf Offshore as the "ship manager/commercial manager." (Doc. 83-9, p. 1). Accordingly, Plaintiff's unseaworthiness claims asserted against Defendants GOL and Gulf Offshore are **DISMISSED WITH PREJDUCE**.

### c. Jones Act Negligence and Maintenance and Cure

A seaman who is injured while at sea may be entitled to "maintenance and cure" damages from the *employer*. *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525 (1938) (emphasis added). "Maintenance and cure" is an obligation imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship. *Boudreax v. United States*, 280 F.3d 461, 468 (5th Cir. 2002); *see also*

6

*Galveston County Nav. Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 357 n. 8 (5th Cir. 1996). Defendants assert that Plaintiff cannot assert claims under Jones Act negligence and maintenance and cure. Here again, the record makes clear that Plaintiff was employed by REC Marine at the time of the alleged accident. (Doc. 82-2, p. 25). As noted, REC Marine readily admitted in its response to Plaintiff's requests for admission that it was Plaintiff employer on the date of the alleged accident. *See* (Doc. 82-2, p.28-31). Moreover, Plaintiff admits that neither Defendant ever employed him. (Doc. 83, p. 15). Accordingly, Plaintiff's Jones Act negligence and maintenance and cure claims asserted against Defendants GOL and Gulf Offshore are **DISMISSED WITH PREJDUCE.**

### d. Third-Party Negligence

Defendants assert that they are not liable to Plaintiff under general maritime law negligence because he failed to assert a claim of third-party negligence against them. (Doc.82-1, p.9). Plaintiff alleged, without specificity, that "the evidence will show the [Defendants] owned Plaintiff a duty and that duty was breached." (Doc. 83, p.2). Plaintiff's entire argument rests on the assertion that Defendants were the operator of the M/V Dustin Danos at the time of the accident. (Doc. 83, p. 10).

To establish negligence and a cause of action under the general maritime law, a plaintiff must establish that there was a duty owed by a defendant, a breach of that duty, an injury, and causation. *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 211 (5th Cir. 2010). The United States District Court for the Eastern District of Texas has found that a vessel broker is not liable for tort damages when it simply

7

acts as a middleman between the vessel owner and the vessel operator. *Matter of Savage Inland Marine, LLC*, 539 F. Supp. 3d 629, 650 (E.D. Tex. 2021). The facts of that case revealed that the broker procured and delivered a seaworthy vessel for use by a vessel charter who maintained exclusive care, custody, and control of the vessel. *Id.* at 651. The court reasoned that the broker could not owe a duty to the plaintiff because there was no evidence that the broker had crew present on board or participated in the operation of the vessel at the time of the incident. *Id.* at 651.

Here, Plaintiff has presented no evidence to show that Defendants had control over the M/V Dustin Danos at the time of Plaintiff's alleged accident. Defendants' roles were confined to "ship manager/commercial manager." (Doc. 83-9, p. 1). Moreover, the operating agreement makes clear that Offshore Transport Services, LLC was owner of, and REC Marine Logistics, LLC was the operator of, the M/V Dustin Danos. There is nothing in the record to support the allegation that either of the Defendants exercised any control of the M/V Dustin Danos at the time of the accident. Accordingly, to the extent Plaintiff asserts a claim against either GOL or Gulf Offshore for third-party negligence under maritime law, such claims **DIMISSED WITH PREJUDICE.**

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants Gulf Offshore Logistics, LLC and GOL, LLC's **Motion for Summary Judgment (Doc. 82)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Jones Act claims asserted

8

against Defendants GOL and Gulf Offshore are **DISMISSED WITH PREJDUCE.**

**IT IS FURTHER ORDERED** that Plaintiff's unseaworthiness claims asserted against Defendants GOL and Gulf Offshore are **DISMISSED WITH PREJDUCE.**

**IT IS FURTHER ORDERED** that Plaintiff's Jones Act negligence and maintenance and cure claims asserted against Defendants GOL and Gulf Offshore are **DISMISSED WITH PREJDUCE.**

**IT IS FURTHER ORDERED** that to the extent Plaintiff asserts a claim against either GOL or Gulf Offshore for third-party negligence under maritime law, such claims are **DIMISSED WITH PREJUDICE.**

Baton Rouge, Louisiana, this 26th day of January, 2022

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA