**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**EXHIBIT**

**__A__**

| | |
|---|---|
| **MCARTHUR GRIFFIN** <br>         **Plaintiff** <br><br> **VERSUS** <br><br> **REC MARINE LOGISTICS, LLC, ET AL** <br>         **Defendants** | **CIVIL ACTION NO:  3:20-cv-00092** <br><br> **DISTRICT JUDGE:** <br> **HON. BRIAN A. JACKSON** <br><br> **MAGISTRATE JUDGE:** <br> **HON. ERIN WILDER-DOOMES** |

## REC MARINE LOGISTICS, LLC, GOL, LLC, GULF OFFSHORE LOGISTICS, LLC AND OFFSHORE TRANSPORT SERVICES, LLC'S RESPONSES TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION AND INTERROGATORIES

**NOW INTO COURT**, through undersigned counsel, come defendants, REC Marine Logistics, LLC (REC), GOL, LLC ("GOL"), Gulf Offshore Logistics, LLC ("Gulf Offshore"), and Offshore Transport Services, LLC ("Offshore Transport") (hereinafter sometimes collectively referred to as "Defendants"), who respond to the Second Requests for Production and Interrogatories propounded by Plaintiff, McArthur Griffin ("Plaintiff"), as follows:

## GENERAL OBJECTIONS

Defendants generally objects to Plaintiff's Second Requests for Production and Interrogatories as follows:

1.    Defendants generally object to the discovery requests as they seek the knowledge of a business over the period of its existence. An entity in and of itself, possesses no knowledge except through its various agents or employees, each of whom may possess different levels of knowledge or understanding as to any given matter at any given time.

2.      Discovery and investigation in this case are continuing. The right to supplement and amend these responses with additional information, or if errors are discovered, is specifically reserved. These responses are also given without prejudice to defendants' rights to rely at trial on subsequently discovered information or information inadvertently omitted in these responses as a result of mistake, error or oversight.

3.      These responses are made solely for the purposes of the instant action. They are subject to all objections as to competence, relevance, materiality, propriety and admissibility, and any and all objections and grounds that would require the excluding of any statements contained herein at trial.

4.      Defendants generally object to the discovery to the extent that it seeks information that is protected from discovery by the attorney-client privilege, the attorney work product doctrine or the anticipation of litigation privilege. Defendants generally object to the extent that the discovery seeks information which is irrelevant and immaterial to the subject matter of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, by providing responses to the discovery requests, Defendants do not waive any objections as to the admissibility at trial.

5.      Defendants generally object to the extent that the discovery seeks the disclosure of the mental impressions, conclusions, memoranda, notes or summaries, legal research or legal theories of defendants' attorneys, and to the extent that the discovery requires disclosure of the mental impressions, conclusions or opinions

of defendants' representatives insofar as they relate to the value or merit of a claim or defense respecting strategy or tactics.

6.     Defendants object to this discovery insofar as it seeks confidential business information without any showing of need that would justify requiring defendants to make such disclosure.

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Produce all Documents supporting Defendants' contention that Plaintiff intentionally concealed and/or misrepresented pertinent medical facts prior to his employment. This request seeks information related to Defendants' claimed McCorpen defense. See McCorpen v. Central Gulf Steamship Corp., 396 F.2d 547, 548 (5th Cir. 1968).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

See attached lawsuits involving plaintiff, (bates labeled REC 1863-1893 and 1894-1898) . In addition, see plaintiff's personnel file previously produced. Lastly, see pre-employment physical records previously produced from Complete Occupational Health Services (bates labeled REC 1173-1188). Defendants reserve the right to supplement this response as discovery proceeds.

**REQUEST FOR PRODUCTION NO. 2:**

Produce all Documents reflecting the pre-employment disclosure of medical facts and/or pre-existing injuries for persons hired by Defendants, as well as any Documents reflecting the Defendants' discussion/analysis of such facts or injuries before they were hired. For the purposes of this request for production, the Documents being requested are those for employees that worked aboard vessels owned, operated, controlled, and/or managed by Defendants and/or for persons hired that were/are classified as seamen. This request seeks information related to Defendants' claimed *McCorpen* defense. *See McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547, 548 (5th Cir. 1968).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendants object to Request No. 2 in that it seeks the confidential medical information of individuals who are not parties to this litigation. Defendants further object to Request No. 2 in that it is overly broad, unduly burdensome, and not proportional to the needs of this case. The Request is not limited in time. Furthermore, plaintiff was not (nor has he ever been) employed by GOL, Gulf Offshore, or Offshore Transport. Accordingly, any employment records maintained by any of these entities have no conceivable relevance to this case.

**REQUEST FOR PRODUCTION NO. 3:**

Produce all Documents supporting Defendants' contention that Plaintiff's alleged intentional concealment and/or misrepresentation of pertinent medical facts materially affected Defendants' decision to hire Plaintiff. This request seeks information related to Defendants' claimed *McCorpen* defense. *See McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547, 548 (5th Cir. 1968).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

See plaintiff's personnel file previously produced.

**REQUEST FOR PRODUCTION NO. 4:**

Produce all Documents related to incidents that resulted in injuries sustained in connection with a basket transfer to or from a vessel owned, operated, controlled, and/or managed by Defendants.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendants object to Request No. 4 in that it seeks the production of documents which are neither relevant, nor likely to lead to the discovery of admissible evidence. Defendants further object to Request No. 4 in that it is overly broad, unduly burdensome, and not proportional to the needs of the case. More particularly, Request No. 4 is not limited in time, and seeks documents from entities which neither employed the plaintiff nor owned/operated the vessel onboard which he was allegedly injured. The Request also seeks the production of documents for vessels other than the one

on which plaintiff was allegedly injured, and would require REC Marine to search through the records of an entire fleet of vessels in order to respond to the Request as written.

## ANSWERS TO INTERROGATORIES

## INTERROGATORY NO. 1:

Identify by Bates number all Communications from Plaintiff that Defendants' contend constitutes intentional concealment and/or misrepresented pertinent medical facts by Plaintiff that materially affected Defendants decision to hire Plaintiff.  This interrogatory seeks information related to Defendants claimed *McCorpen* defense.  *See McCorpen v. Central Gulf Steamship Corp*., 396 F.2d 547, 548 (5th Cir. 1968).

## ANSWER TO INTERROGATORY NO. 1:

See documents referenced in response to Request for Production No. 1 above.

## INTERROGATORY NO. 2:

Identify and fully explain the alleged factual causal link between the alleged concealed pre-existing injuries and Plaintiff's claimed injuries.  This interrogatory seeks information related to Defendants claimed *McCorpen* defense.  *See McCorpen v. Central Gulf Steamship Corp*., 396 F.2d 547, 548 (5th Cir. 1968).

## ANSWER TO INTERROGATORY NO. 2:

According to the Plaintiff's Petition, he claims to have sustained injuries to various parts of his body, including, but not limited to, injuries to his back and neck. Upon information and belief, plaintiff sustained injuries to his low back, back, neck, and other parts of his body in prior accidents for which he has filed suit. See response to Request No. 1 for further information.

## INTERROGATORY NO. 3:

Identify all persons who disclosed medical facts and/or pre-existing injuries before they were hired.

## ANSWER TO INTERROGATORY NO. 3:

Defendants object to Interrogatory No. 3 in that it seeks information which is neither relevant, nor likely to lead to the discovery of admissible evidence. Defendants further object to

Interrogatory No. 3 in that it is overly broad, unduly burdensome, and not proportional to the needs

of the case. More particularly, Interrogatory No. 3 is not limited in time, and seeks information from

entities which did not employ the plaintiff. Even if a response was appropriate, such would require

four separate companies to search through the personnel files of all individuals ever employed by

those companies to determine whether said individuals disclosed "medical facts and/or pre-existing

injuries." Furthermore, this Interrogatory seeks confidential medical information of individuals who

are not parties to this litigation.

Respectfully submitted:

Salvador J. Pusateri T.A. (#21036)
Kyle A. Khoury (#33216)
PUSATERI, JOHNSTON, GUILLOT
& GREENBAUM
1100 Poydras Street
Energy Centre – Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile:  (504) 620-2510
Salvador.Pusateri@pJgglaw.com
Kyle.Khoury@pJgglaw.com
ATTORNEYS FOR GOL, LLC, REC
MARINE LOGISTICS, LLC, GULF
OFFSHORE LOGISTICS, LLC, and
OFFSHORE TRANSPORT SERVICES, LLC

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 28th day of April, 2021, I served the foregoing document by electronic means (email) upon all counsel of record in this case.

_____

EXHIBIT

B

1

1                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF LOUISIANA
2
McARTHUR GRIFFIN,              :      Case No. 3:20-cv-092-BAJ-EWD
3
        Plaintiff,             :
4
            v.                 :      Baton Rouge, Louisiana
5                                     June 24, 2021
REC MARINE LOGISTICS, LLC,     :
6  ET AL.,
                               :
7       Defendants.
                               :
8  : : : : : : : : : : : : : : : : : : : : : : : : : : : :

9
                     TRANSCRIPT OF MOTION HEARING
10          BEFORE THE HONORABLE ERIN WILDER-DOOMES,
                  UNITED STATES MAGISTRATE JUDGE
11
APPEARANCES (via Zoom):
12
For the Plaintiff:         Morrow & Sheppard LLP
13                         BY:  DANIEL SHEPPARD, ESQ.
                           5151 San Felipe St., Ste. 100
14                         Houston, TX  77056

15 For Defendants, REC Marine    Pusateri Johnston
   Logistics, LLC, GOL, LLC,     BY:  KYLE A. KHOURY, ESQ.
16 Gulf Offshore Logistics,      1100 Poydras Street, Suite 2250
   LLC, and Offshore Transport   New Orleans, LA  70163
17 Services, LLC:

18
AUDIO OPERATOR:            BRANDY ROUTE
19

20 TRANSCRIPT PREPARED BY:     JANICE RUSSELL TRANSCRIPTS
                              1418 Red Fox Circle
21                            Severance, CO  80550
                              (757) 422-9089
22                            trussell31@tdsmail.com

23
   Proceedings recorded by electronic sound recording; transcript
24 produced by transcription service.

25

1    APPEARANCES (via Zoom continued):

2    For Defendant, QBE Insurance    Lugenbuhl
     (Europe) Limited:            BY:  ALAN R. DAVIS, ESQ.
3                                 601 Poydras Street, Suite 2775
                                  New Orleans, LA  70130
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2                THE COURTROOM DEPUTY:  Civil Matter 20-92, Griffin

3  versus REC Marine Logistics, et al.

4                THE COURT:  All right, Counsel.  I'm going to ask you

5  to make your appearances, please, starting with Mr. Sheppard.

6                MR. SHEPPARD:  Daniel Sheppard for the plaintiff,

7  McArthur Griffin.

8                MR. KHOURY:  Kyle Khoury on behalf of the defendants.

9                MR. DAVIS:  And Alan Davis on behalf of the insurance

10 defendant, QBE.

11               THE COURT:  All right.

12               Okay, gentlemen.  I wanted to have a hearing to

13 discuss the Amended Motion to Compel, which is, at least it

14 appears to me to be related to information that relates solely

15 to the possibility of the defendant raising a McCorpen defense,

16 or one of the defendants, I guess, whomever was the employer

17 raising the McCorpen defense.

18               So first, let me ask, Mr. Sheppard, is it fair to say

19 that the information that you're seeking in these discovery

20 requests is only related to the, the issue of the McCorpen

21 defense?

22               MR. SHEPPARD:  Yes, your Honor, and specifically to

23 the materiality prong of the McCorpen defense.

24               THE COURT:  All right.

25               And there seems to be some disagreement in the

4

1   briefing about who Mr. Griffin's employer actually was.  Is it

2   REC Marine?

3          MR. SHEPPARD:  Yes, your Honor.  Sorry if I was

4   unclear with the, the way I responded.  He worked for REC.  He,

5   he worked for REC Marine at the time of his injury.  Prior to

6   that, he worked for a company named J&B and there was some sort

7   of confusion in the deposition testimony if that also included

8   Gulf Offshore Logistics.  Those companies then merged into REC

9   Marine --

10          THE COURT:  Okay.

11          MR. SHEPPARD:  -- in 2016.

12          THE COURT:  So at this point Mr. Griffin is not

13   contending that any entity other than REC Marine would be

14   liable for maintenance and cure?

15          MR. SHEPPARD:  Correct, your Honor.

16          THE COURT:  Okay.  All right.

17          Okay.  And, Mr. Khoury, has any defendant that you

18   represent pled the McCorpen defense?

19          MR. KHOURY:  No.  So, your Honor, in the pleadings,

20   no.  Well, let me say in an answer, no.  There was a former

21   attorney who was enrolled for the defendants.  We substituted

22   in, I believe, at the end of 2020 and since this motion to

23   compel was filed and the plaintiff raised the fact that it had

24   not actually been pled was the first time we were aware that

25   prior counsel had not pled that as a defense.

1    So we do plan within the next few days to file a

2  motion for leave to amend the answer just to assert that

3  defense.  I think as plaintiff's counsel points out prior

4  counsel did indicate it in a status report that had been filed

5  previously that the McCorpen defense was at issue.  So I don't

6  think, I mean, it's been on plaintiff's radar for, I would say,

7  at the very least six to seven months, probably longer than

8  that.  But in prior -- in the answer filed by prior counsel it

9  was not formally pled.

10    THE COURT:  Okay.  So, so there is an intention to

11  move for leave to amend the answer to actually assert the

12  defense?

13    MR. KHOURY:  Correct, your Honor.

14    THE COURT:  Okay.

15    Is there going to be an opposition to that request,

16  Mr. Sheppard?

17    MR. SHEPPARD:  To the extent that the materials that

18  were not, that we're seeking aren't being -- are -- aren't

19  being produced, I think we would be at a -- at this point we

20  would, we would be in a pretty tight spot.  It wouldn't -- it's

21  not necessarily surprise, but we are being kind of prejudiced

22  by the fact that we don't have the, the documents that we need

23  to deal with that defense, but also, there is a -- I don't know

24  the justification for the delay.  This, you know, they've had

25  the file in their, in their hands for seven, eight, nine

1  months.  I can't remember exactly when they subbed in.  I would

2  imagine the first thing you do is look through the answer and I

3  know that when Mr., when Mr. Khoury's firm does file answers in

4  Jones Act cases they do assert that immediately.

5       So I'm not sure why it wouldn't have been done months

6  ago.

7       THE COURT:  Okay.  Well, I think that the, the issue

8  of the discovery requests is somewhat separate from the

9  question of whether or not leave should be granted to the non-

10 insurance defendant, or whomever is the appropriate

11 defendant -- I'm assuming --

12      MR. SHEPPARD:  right.

13      THE COURT:  -- it's REC Marine -- to assert the

14 McCorpen defense.  Because, you know, what I had planned to

15 tell you all and what I'm probably still going to tell you all

16 today is that until there is actually a claim or a defense to

17 which this information would be relevant, it's not discoverable

18 under Rule 26 and the fact that there may be a defense that is

19 asserted at some point in time, the same as if there may be a

20 claim that is asserted at some point in time, is not a basis to

21 obtain discovery.  But in light of Mr. Khoury's representations

22 that there is an intention to move for leave to add this -- and

23 I -- frankly, I'll be candid with you, I mean, the delay is

24 somewhat of a concern to me as well, but I'm not going to fully

25 explore that today because I don't have a motion for leave

1   pending before me.  I will say that I was a little bit

2   surprised because I could not tell from the briefing, I mean,

3   obviously, the easy thing to say would be, "We didn't assert

4   the defense.  We're not going to assert the defense.  So none

5   of this information is relevant."  The fact that they never

6   said that kind of made it clear to me that maybe there was an

7   expectation that, that a motion for leave was going to be

8   filed, but then wasn't, one wasn't even filed immediately in

9   connection with this motion.

10          So obviously, the delay is something that's going to

11  have to be addressed not just the delay from the time that

12  Mr. Khoury's firm entered the case, but the delay from the time

13  period that it was on my radar that the McCorpen defense might

14  be an issue and hadn't been actually pled.  Because, I mean,

15  obviously, we all know it was not in the answer, which was also

16  one of the things that I intended to discuss today, but

17  Mr. Khoury has acknowledged that it is, it has not been pled up

18  to this point.

19          So I, I don't think that the fact that you haven't

20  been given responses to the discovery requests is a basis for

21  opposing the motion for leave to amend because, to me, that

22  puts the cart before the horse.  You wouldn't get discovery on

23  these issues unless and until REC Marine is able to actually

24  assert the McCorpen defense, which hasn't been decided yet.

25          So if that is decided, then the other thing that I was

1    going to tell you today is, you know, obviously, then,

2    Mr. Khoury, your client needs to be prepared to answer some of

3    these questions, although I do agree that perhaps with regard

4    to GOL or Gulf Logistics those question are not relevant

5    because that's not actually the entities that are asserting the

6    defense.  Presumably, it's only going to be REC Marine that's

7    asserting the McCorpen defense.  And so some of these issues

8    related to materiality and the, the information that's being

9    sought related to that prong of the McCorpen defense would be

10   relevant only as to REC Marine.

11          So what I would suggest is that you all have a

12   discussion about whether or not there really is going to be an

13   objection.  Because I understand that there was prior counsel,

14   I mean, there was counsel.  So, I mean, it's not like this is a

15   situation where REC Marine was not counseled at the time, but,

16   you know, I also understand the importance of the defense.  I

17   think that to the extent that there's any prejudice, it could

18   probably be alleviated by, you know, some degree of a

19   continuance to allow you all to conduct discovery related to

20   the McCorpen defense.  And so, you know, that's kind of where I

21   am with regard to that issue.

22          But I think that you all should talk about both the

23   motion for leave to amend.  See if you can reach an agreement

24   on that.  And also, talk about then, okay, assuming that, you

25   know, this is, that you do reach an agreement and Mr. Sheppard

1   says, "Okay, fine," you know.  "We're, we're going to let you

2   amend to assert the defense," then I think that the flipside of

3   that is going to be, Mr. Khoury, you're going to have to be

4   more reasonable about what your client is willing to provide in

5   terms of discovery of information that's related to the

6   defense.  I think when I had the last conference with you all I

7   told you it's probably not going to be everything that's sought

8   because it seems like that's very broad, but I definitely think

9   that some discovery related to these issues is relevant to the

10   <u>McCorpen</u> defense and I'm, I'm certainly going to order some

11   degree of discovery related to the prongs of the defense.

12         MR. SHEPPARD:  Understood, your Honor.

13         THE COURT:  Okay.

14         So what I'm going to do for now, I'm going to deny the

15   motion on the basis that the defense hasn't actually been

16   asserted yet without prejudice to reurging it when and if the

17   defense is asserted and, and you all go through the conferral

18   process related to trying to narrow some of these issues down.

19         So it is denied for purposes of today, but I think

20   I've provided you with enough guidance to kind of know where I

21   might be going on some of these issues that lie ahead of us.

22         MR. KHOURY:  Yeah.  Judge, just so, I mean, maybe if

23   we could obtain the benefit of your, your thoughts just

24   generally on the production of, of, you know, non-party medical

25   information and how you deal with that in the past, whether you

1    just require -- obviously, it's, we're very hesitant to produce

2    anything that's going to identify someone and their medical

3    records.

4           THE COURT:  Uh-huh (indicating an affirmative

5    response).

6           MR. KHOURY:  And -- and -- and, and I know that the

7    plaintiff has agreed to, to redaction of some of that

8    information, but at the same time, you know, the issue is the

9    materiality of a, of a McCorpen defense and I think the

10   plaintiff's theory is that if, you know, REC Marine in the past

11   had hired someone who had a pre-existing condition, that they

12   also would have hired him and I just don't think that that is,

13   is a, a leap that you can make.

14          So to me, it just seems -- and, and also, it's -- it's

15   -- it's also not narrowed down to the type of injury that the

16   plaintiff had --

17          THE COURT:  Okay.

18          MR. KHOURY:  -- the kind of employee he had.  They're

19   just asking for anyone who disclosed any type of medical

20   condition who was employed.  That could include captains.  The

21   plaintiff was a deckhand, not a captain.  I mean, it, if we

22   could just have some guidance on how you've maybe dealt with

23   this in the past, if you have, so we know how we sort of

24   negotiate this.

25          THE COURT:  Well, I haven't dealt with this specific

1   issue in the past, but, I mean, I can tell you that immediately

2   -- and that's kind of to the point I was making earlier about

3   the breadth of these requests -- I mean, I don't disagree with

4   Mr. Khoury.  To me, at the very least you should start with

5   people or employees who had similar injuries to the pre-

6   existing injury that is alleged that Mr. Griffin had and people

7   who were working in the same kind of job.  Because I think that

8   would be most relevant to the question of whether or not, you

9   know, if you hired other people who had these types of pre-

10  existing injuries, you would have been likely to also hire him.

11          So I think that it needs to certainly be narrowed in

12  those ways if -- and once you get that information,

13  Mr. Sheppard, if that information then prompts you to think

14  that there is something additional that you want or would need,

15  then I think you can better articulate, "Okay.  This is what

16  we've gotten.  This is why we think maybe some additional

17  information is relevant or would be helpful or beneficial," and

18  then I can make a better determination about it.  But when it's

19  just sort of everything about everybody, you know, that, that

20  does --

21          MR. SHEPPARD:  Right.

22          THE COURT:  -- seem a lot more problematic.

23          With regard to the, the health information, is there a

24  protective order in this case?

25          MR. SHEPPARD:  There, there isn't yet.  We, we don't

1   have a problem entering into some sort of protective order and

2   we've, we've suggested that information just be redacted and

3   that, you know, you just have some sort of like Identifier 1,

4   Employee 2, so we know which records belong to which person.

5   That's kind of it.

6          THE COURT:  Uh-huh (indicating an affirmative

7   response).

8          MR. SHEPPARD:  As it relates to the injuries, as long

9   -- I guess we can limit our, further limit to, need to kind of

10  mull over it a little more, but, you know, similar, similar

11  injuries, as the Court has explained, with the folks that were

12  -- we had limited just the seamen, though, that were working

13  abord these sorts of vessels.

14         THE COURT:  I don't know -- I -- I honestly don't know

15  enough about working --

16         MR. SHEPPARD:  Oh.

17         THE COURT:  -- on these vessels to know like -- I'm

18  assuming that seamen is sort of a broad category of people and

19  then there are like people who are seamen, but also do

20  particular jobs on vessels.  And so what I'm looking for, I

21  think, at the outset is people who did the same job that

22  Mr. Griffin did on this vessel.  If there's a reason to go

23  beyond that after you get the first information, then, like I

24  said, I mean, I think that's something that we can potentially

25  talk about.

1           But it seems to me the most relevant is going to be

2    people who have similar injuries who were working the same job

3    as him.

4           MR. SHEPPARD:  Sure.

5           THE COURT:  Okay?  All right.

6           Any other questions?

7           And I think a protective order, I didn't remember

8    whether there was one in this case or not.  It seems to me that

9    either the redaction or the protective order or both, whatever,

10   whatever you all think is most appropriate.  But usually, with

11   regard to sort of protected health information one of, one of

12   those two things usually resolves anybody's concerns about

13   releasing, you know, other people's health information or any

14   other kind of information, you know, employee records, you

15   know.  We obviously have a lot of, a lot of situations where

16   information about other people is being requested and usually,

17   the protective order or redaction take care of any concerns

18   that anybody has about releasing that information.  Okay?

19          MR. SHEPPARD:  Understood.

20          MR. KHOURY:  Thank you, Judge.

21          THE COURT:  All right.  Anything else?

22          MR. SHEPPARD:  That's it, I think.

23          THE COURT:  Okay.  All right.

24          I'll issue a Minute Entry from this conference that

25   just explains the basis for the denial of the order and

```
 1   summarizes what we've discussed and then we will go from there.

 2            MR. SHEPPARD:  Great. Thank you, your Honor.

 3            MR. KHOURY:  Thank you, Judge.

 4            MR. DAVIS:  Thank you, Judge.

 5            THE COURT:  All right.

 6            Thank you, everyone.

 7       (End of proceedings)

 8

 9

10

11                       CERTIFICATE

12            I, court approved transcriber, certify that the

13   foregoing is a correct transcript from the official electronic

14   sound recording of the proceedings in the above-entitled

15   matter.

16   /s/ Janice Russell                    January 27, 2022

17   Janice Russell, Transcriber                Date

18

19

20

21

22

23

24

25
```

**EXHIBIT**

____C____

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>　　　　　　　　**Plaintiff** | **CIVIL ACTION NO:  3:20-cv-00092** |
| **VERSUS** | **DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON** |
| **REC MARINE LOGISTICS, LLC, ET AL**<br>　　　　　　　　**Defendants** | **MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

## REC MARINE LOGISTICS, LLC AND OFFSHORE TRANSPORT SERVICES, LLC'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION AND INTERROGATORIES

**NOW INTO COURT**, through undersigned counsel, come defendants, REC Marine Logistics, LLC (REC) and Offshore Transport Services, LLC ("Offshore Transport") (hereinafter sometimes collectively referred to as "Defendants"), who supplement their responses to the Second Requests for Production and Interrogatories propounded by Plaintiff, McArthur Griffin ("Plaintiff"), as follows:

## GENERAL OBJECTIONS

Defendants generally objects to Plaintiff's Second Requests for Production and Interrogatories as follows:

1.　　　　Defendants generally object to the discovery requests as they seek the knowledge of a business over the period of its existence. An entity in and of itself, possesses no knowledge except through its various agents or employees, each of whom may possess different levels of knowledge or understanding as to any given matter at any given time.

2.     Discovery and investigation in this case are continuing. The right to supplement and amend these responses with additional information, or if errors are discovered, is specifically reserved. These responses are also given without prejudice to defendants' rights to rely at trial on subsequently discovered information or information inadvertently omitted in these responses as a result of mistake, error or oversight.

3.     These responses are made solely for the purposes of the instant action. They are subject to all objections as to competence, relevance, materiality, propriety and admissibility, and any and all objections and grounds that would require the excluding of any statements contained herein at trial.

4.     Defendants generally object to the discovery to the extent that it seeks information that is protected from discovery by the attorney-client privilege, the attorney work product doctrine or the anticipation of litigation privilege. Defendants generally object to the extent that the discovery seeks information which is irrelevant and immaterial to the subject matter of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, by providing responses to the discovery requests, Defendants do not waive any objections as to the admissibility at trial.

5.     Defendants generally object to the extent that the discovery seeks the disclosure of the mental impressions, conclusions, memoranda, notes or summaries, legal research or legal theories of defendants' attorneys, and to the extent that the discovery requires disclosure of the mental impressions, conclusions or opinions of

defendants' representatives insofar as they relate to the value or merit of a claim or defense respecting strategy or tactics.

6.      Defendants object to this discovery insofar as it seeks confidential business information without any showing of need that would justify requiring defendants to make such disclosure.

## SUPPLEMENTAL RESPONSES TO REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 2:

Produce all Documents reflecting the pre-employment disclosure of medical facts and/or pre-existing injuries for persons hired by Defendants, as well as any Documents reflecting the Defendants' discussion/analysis of such facts or injuries before they were hired.  For the purposes of this request for production, the Documents being requested are those for employees that worked aboard vessels owned, operated, controlled, and/or managed by Defendants and/or for persons hired that were/are classified as seamen.  This request seeks information related to Defendants' claimed *McCorpen* defense.  *See McCorpen v. Central Gulf Steamship Corp*., 396 F.2d 547, 548 (5th Cir. 1968).

### SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Defendants object to Request No. 2 in that it seeks the confidential medical information of individuals who are not parties to this litigation. Defendants further object to Request No. 2 in that it is overly broad, unduly burdensome, and not proportional to the needs of this case. The Request is not limited in time. Furthermore, plaintiff was not (nor has he ever been) employed by Offshore Transport. Moreover, GOL and Gulf Offshore have been dismissed. Accordingly, any employment records maintained by Offshore Transport, GOL, or Gulf Offshore have no conceivable relevance to this case.

Subject to the foregoing objections, Defendants further respond consistently with U.S. Magistrate Judge Erin Wilder-Doomes's Telephone Conference Report dated January 24, 2022 (Rec. Doc. 100) and produce herewith the applications for employment of Employee "A" and Employee "B", redacted to remove all personal information, as being responsive to "information regarding

deckhands who applied with REC Marine and reported neck and back injuries during the 'look back'
time period of April 2016 (the date Plaintiff applied for employment with REC Marine) through April
2018." (Rec. Doc. 100) Those documents are attached hereto as REC-002141 - 002176.

## SUPPLEMENTAL ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 3:

Identify all persons who disclosed medical facts and/or pre-existing injuries before they
were hired.

### SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 3:

Defendants object to Interrogatory No. 3 in that it seeks information which is neither relevant,
nor likely to lead to the discovery of admissible evidence. Defendants further object to Interrogatory
No. 3 in that it is overly broad, unduly burdensome, and not proportional to the needs of the case.
More particularly, Interrogatory No. 3 is not limited in time, and seeks information from four separate
companies, which would require these companies to search through the personnel files of all
individuals ever employed to determine whether said individuals disclosed "medical facts and/or pre-
existing injuries." Two of those entities (GOL and Gulf Offshore) have now been dismissed from this
case. Furthermore, Plaintiff has never been employed by Offshore Transport. Accordingly, any
responsive information in the possession of Offshore Transport, GOL, or Gulf Offshore could have
no conceivable relevance to this case.

Subject to the foregoing objections, Defendants further respond that based upon information
and belief all REC Marine employees "were required to complete an employment application with
REC Marine" in 2016, as did McArthur Griffin. (Rec. Doc. 100, p. 2). Defendants further respond
that the "transitioning process" of employees of JNB Operating to REC Marine took place in April,
2016, with employment with REC Marine effective on May 1, 2016. (Rec. Doc. 100, p. 3). Finally,

Defendants refer plaintiff to the documents being produced in Supplemental Response to Request for

Production No. 2.

Respectfully submitted:

_____

Salvador J. Pusateri T.A. (#21036)
Kyle A. Khoury (#33216)
PUSATERI, JOHNSTON, GUILLOT
& GREENBAUM
1100 Poydras Street
Energy Centre – Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
ATTORNEYS FOR GOL, LLC, REC
MARINE LOGISTICS, LLC, and
OFFSHORE TRANSPORT SERVICES, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2021, I served the foregoing document
by electronic means (email) upon all counsel of record in this case.

_____



P.O. Box 774 • Galliano, LA 70354
Ph: (985) 325-3366 • Fax: (985) 325-3368
www.recmarinelogistics.com

**EMPLOYEE "A"**

## Application for Employment

*It is our policy to provide equal employment opportunity to all qualified persons without regard to race, creed, color, religious belief, sex, age, national origin, ancestry, physical or mental handicap, or veteran status.*

### Applicant Information:

Date: __7-18-17__

Name: _____  _____  _____
           (Last)                (First)             (Middle)

Mailing Address: _____

Physical Address: _____

Social Security #: _____ - ____ - _____

Home Telephone: ( ____ ) _____ Cell Phone: ( ____ ) _____

Position applied for: __Deckhand__ Desired Wage $ _____

Desired Start Date: _____ Desired Schedule: _____

Have you ever worked for REC Marine before?          Yes or (No?)
If Yes, when? _____

Are you a US Citizen or can provide authorized to work in the US on an unrestricted basis?          (Yes) or No?

Are you at least 18 years old?          (Yes) or No?

REC Marine Logistics, LLC          Employment Application          Rev. 10/2014

## Additional Information:

Do you have a Driver's License or State Issued Identification          Yes or No?
If so, provide Driver's License or State ID Number: ▓▓▓▓▓▓

State of Issue: _____ L A _____          Expiration Date: ▓▓▓▓▓▓

Have you had any motor vehicle accident or had your license suspended during
the past five (5) years?          Yes or No?

If so, how many occurrences? _____ 1 _____

Are you a veteran of the United States Military?          Yes or No?
        If yes, did you receive an Honorable Discharge?          Yes or No?

Are you able to perform the essential functions of the duties of the job
for which you are applying with or without reasonable accommodations?          Yes or No?

Have you EVER failed or refused a Drug or Alcohol Test job
related or not?          Yes or No?
**If yes,** provide the date and company that required the test: _____

Have you EVER been convicted of any criminal offense? (Including, but not limited to DUI, DWI,
felony, or misdemeanor)          Yes or No?
If yes, please fully describe the circumstance:

_____
_____
_____
_____

Have you ever been a party (either plaintiff or defendant) to a lawsuit or civil action? Yes or No?
If so, for each lawsuit provide the following. (Use the back, if additional space is needed.)

| Parties to Lawsuit | Court or Parish/County | Brief Explanation of Claims |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

## Education History:

| Education | Name of school | Number of years | Did you graduate? | Subjects studied |
|-----------|----------------|-----------------|-------------------|------------------|
| Grammar school | Milton Middle | | | |
| High School | O. Comeaux | | | |
| College | | | | |
| Trade School | | | | |

## Marine Experience, Licenses, Certifications and Skills:

| | |
|---|---|
| Do you have a Transportation Worker Identification Credential (TWIC)? | Yes or No |
| Do you have SafeGulf Card? | Yes or No |
| Do you have a current Rigging Card? | Yes or No |
| Do you have CPR / First Aid Certifications? | Yes or No |
| Do you have Water Survival Training? | Yes or No |
| Do you have Fire Watch Certification? | Yes or No |
| Do you have a Merchant Mariner Credential, (MMC)? | Yes or No |

Additional skills you feel are relevant for the desired position:

_____

_____

Have you had any accidents operating any vessel in the last five (5) years? If so, provide explanation for each occurrence:

_____

_____

Have you had any suspension or revocation of a marine license you have held in the last five (5) years?  If so, provide explanation for each occurrence:

_____

_____

REC Marine Logistics, LLC          Employment Application          Rev. 10/2014

**Employment History:  (Start with most recent employer)**



**References: (Please List Three Professional References)**

Full Name:
Company:

Full Name:
Company:

Full Name:
Company:

I certify that the facts set forth in this application for employment are true and complete to the best of my knowledge. I understand that if I am employed, false statements on this application shall be considered sufficient cause for dismissal. REC Marine Logistics is hereby authorized to make any investigations of my prior educational, employment history and any or all of the information listed in this application and consent to driving and/or criminal history background check. I also authorize REC Marine Logistics to contact references, employers, and/or educational institutions listed on this application. I release REC Marine Logistics and is representatives from all claims, damages, and liability arising in connection with seeking, gathering and using such information and all other persons, corporations or organizations for releasing such information. I understand that neither the acceptance of this application nor the subsequent entry into any type of employment relationship with REC Marine Logistics creates an actual or implied contract of employment. I understand that, if an offer of employment is extended, it will be conditioned upon, 1 – my taking and passing a pre-employment drug test and 2 – my undergoing a medical examination and the examination not revealing any physical condition that prevents my performing the essential duties of the position offered to me with or without reasonable accommodation. I further understand that, if I accept employment with REC Marine Logistics, my employment will be on an "at will" basis. This means that either REC Marine Logistics or I have the right to terminate the employment relationship at any time, with or without notice, for any reason, with or without cause.

_____          7-13-17
Signature                                                Date

REC Marine Logistics, LLC is an equal employment opportunity employer in all areas of the employer/employee relationship, including initial hiring practices. REC Marine Logistics makes employment decisions without regard to race, color, religion, sex, sexual orientation, national origin, citizenship, age, disability status, veteran status, or other classification protected by law. Your opportunity for employment with REC Marine Logistics depends solely on your qualifications and experience.

# Occupational ◆ Medicine ◆ Services, L.L.C.

144 Valhi Lagoon Crossing
Houma, LA 70360

Phone: 985-223-0032
Fax: 985-872-6670

www.o-m-s.com

## Post Offering Evaluation

Date: 7 / 13 / 17     Your Name: ▮▮▮▮▮▮▮▮▮▮

Your SS#: ▮▮▮▮▮▮▮▮     Date of Birth: ▮▮▮▮▮▮     Company: GOL

| PFT | Hearing | Audio | CXR | Back x-ray | C-Spine | Ishihara | Depth Perception | Farnsworth | EKG |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Normal ☐ Abnl | ☐ Normal ☐ Abnl | ☐ Pass ☐ Fail | ☐ Normal ☐ Abnl | ☑ Normal ☐ Abnl | ☐ Normal ☐ Abnl | ☑ Pass ☐ Fail | ☐ Pass ☐ Fail | ☐ Pass ☐ Fail | ☐ Normal ☐ Abnl |

## Functional Capacity Evaluation

This applicant was tested using a state of the art functional testing system. Tests were performed to determine his/her capacity to perform at the essential demand level of the job for which they are being hired. Upon review of the evaluation results, it is the determination of this evaluator and the evaluating physician that this applicant is

**CAPABLE / NOT CAPABLE**

of performing at the level sufficient to execute the essential demands of the position for which he/she is being hired with minimal risk of injury.     *Kevelaei ▮▮▮*

*Evaluator's Signature*

## TB SKIN TEST ☐ Negative ☐ Positive

| Respirator Form | Respirator Fit | Fit Test |
|---|---|---|
| | The above name individual is approved to wear a respirator. | ☐ Pass ☐ Fail |
| ☐ Reviewed | ☐ Yes ☐ No | Type _____ |
| | Based on : ____ Physical ____ History Only ____ PFT ____ History | Size _____ |

## Physical Examination - Based on the requirements for employment, as mandated by the employer listed above, the above named applicant's results are:

☑ Employment per job description
☐ Pending medical records
☐ Fit for Diving

☐ Employment with Restrictions
   Light Work     Medium Work
☐ Rejected per job description

7/13/17

_____
Physician's Signature

_____
Date

All records pertaining to the above evaluations will be held permanently on file at Occupational Medicine Services. You may request a copy of this evaluation by contacting OMS at (985) 223.0032.



**Occupational        Medicine        Services, L.L.C.**

144 Valhi Lagoon Crossing          Phone: 985-223-0032
Houma, LA 70360              Fax: 985-872-6670

www.o-m-s.com

Patient Name: ▮▮▮▮▮▮▮▮▮▮▮▮

Date: 7·13·2017

To continue with your post-offer testing you must obtain records to explain the condition stated below. After the appropriate party forwards your records to us, we will make the decision of whether or not to continue on with your physical. Upon resolution of the problems listed below, you will be permitted to continue on with your physical. Please be aware that more issues may arise with further testing and you may be required to obtain more records. There is a $5 charge for Blood Pressure rechecks and a $5 charge for each urinalysis dip recheck. Please be prepared for the additional fees.

1. _____ *needs Glasses* _____

2. _____

3. _____

4. _____

5. _____

6. _____

Please have records faxed to our office:

Occupational Medicine Services, L.L.C.
Phone: 985-223-0032
Fax: 985-872-6670

REC-002147

**O**  **M**  **S**

144 Valhi Lagoon Crossing Houma, LA 70360        Phone 985.223.0032    Fax 985.872.6670

Applicant: ████████                    Date: 7-13-17

Address: ████████          D.O.B. ████        Tel # ████████

Position Applied for: _____        S.S.# ████████

## Medical Questionnaire

Circle Y for YES and N for NO if you currently have the following symptoms or have significantly in the past.

| | | | |
|---|---|---|---|
| Poor Vision | Y **N** | Carpal Tunnel Syndrome | Y **N** | Colitis | Y **N** |
| Color Blindness | Y **N** | Stomach Problems | Y **N** | Sleep Apnea | Y **N** |
| Cataract/Glaucoma | Y **N** | Bloody bowel movements | Y **N** | ANY SURGERY? | Y **N** |
| Wear glasses or contacts | **Y** N | Thyroid problems | Y **N** | Concussion or head injury | Y **N** |
| Ear Infection | Y **N** | Epilepsy/seizures | Y **N** | Been a patient in a hospital | **Y** N |
| Hearing Aid/Loss of Hearing | Y **N** | Migraine Headache | Y **N** | Cirrhosis | Y **N** |
| Dental problems/TMJ | Y **N** | Loss of Consciousness | Y **N** | Had a hernia | Y **N** |
| Allergies | Y **N** | Dizziness/Vertigo | Y **N** | Had fits or fainting | Y **N** |
| Tuberculosis | Y **N** | Peripheral Nerve Disease | Y **N** | Had a serious illness | Y **N** |
| Asthma & Breathing difficulties | Y **N** | Frequent worry/depression | Y **N** | Injured your back or experienced back pain | **Y** N |
| Lung collapse | Y **N** | Kidney trouble/stones | Y **N** | Injured your neck or experienced neck pain | Y **N** |
| Shortness of breath/wheezing | Y **N** | Bladder/Gallbladder Trouble | Y **N** | Injured your right or left shoulder | Y **N** |
| Emphysema | Y **N** | Difficult or frequent urination | Y **N** | Injured your right or left elbow | Y **N** |
| Irregular heart beat | Y **N** | Venereal disease | Y **N** | Injured your right or left wrist | Y **N** |
| Varicose Veins | Y **N** | Irregular period/menstruation | Y **N** | Injured your right or left hand | Y **N** |
| Stroke | Y **N** | Are you pregnant? | Y **N** | Injured your fingers | Y **N** |
| Leg Ulcers | Y **N** | Date of last pap smear ___ | | Injured your right or left hip | Y **N** |
| Anemia | Y **N** | Date of last mammogram ___ | | Injured your right or left leg | Y **N** |
| Leukemia | Y **N** | Prostate problems | **Y** N | Injured your right or left knee | Y **N** |
| Diabetes | Y **N** | HIV Positive | Y **N** | Injured your right or left ankle | Y **N** |
| High Blood Pressure | Y **N** | Sickle Cell Disease | Y **N** | Injured your right or left foot | Y **N** |
| Heart Disease | Y **N** | Rash/Dermatitis | Y **N** | Injured your toes | Y **N** |
| Mental Illness | Y **N** | Psoriasis | Y **N** | Missing any limbs | Y **N** |
| Cancer or Tumors | Y **N** | Dislocations | Y **N** | Received worker's compensation | Y **N** |
| Hepatitis | Y **N** | Broken a bone | **Y** N | Received disability benefits | Y **N** |
| Drug and/or Alcohol Abuse | Y **N** | | | | |

Undergone an MRI, CT Scan, Discogram or Myelogram for any part of your body?  Y **N**
Received a disability rating from a physician resulting from any injury to any part of your body?  Y **N**
Been limited in the amount of weight you can lift by a physician?  Y **N**
Failed a physical or denied employment due to any injury or illness?  Y **N**
Are your presently taking a prescriptive medication?  Y **N**
Have you EVER had an illness, injury, or claim arising out of your employment?  Y **N**

Please fully describe any "yes" responses; (Back Surgery 1-26-94 injury on job, etc.)
Broken leg 1994      Lower Lumbar Strain 2010

Are you currently unable to perform any activity or do you have any lifting restrictions?  Y **N** List: _____

Present Medication: _____

Have you ever had an injury which required you to miss time from work?    Yes    **No**
If yes, give dates, nature of claim, and outcome. _____

Warning: Pursuant to LSA-RS 23:1208.1, I understand that failure to answer truthfully any/all of the above questions of this medical questionnaire may result in a denial of any right I or my dependants may have to workers compensation benefits, including medical treatments and expenses. I have read and fully understand the above. (Initial) ████

Signature of Applicant ████████

REC-002148

| Applicant Name | ██████████ | | Date | 7/13/17 |
|---|---|---|---|---|

| Height in inches ✓ 70 | BMI 31.1 | Weight 215 lbs |
|---|---|---|

**Body Build**  Obese ___  Robust ✓  Average ___  Small ___

**Vision**

**Uncorrected**
(Near) Both 20/40  L20/40  R20/ 40
(Far)  Both 20/40  L20/70  R20/70

**Corrected**
(Near) Both 20/  L20/  R20/
(Far)  Both 20/20  L20/35  R20/25

**Color Sense**  ✓ Normal ___ Abnormal

**Horizontal Field of Vision** ✓ Normal ___ Abnormal

**Ishihara**
✗ Pass
___ Fail

**Depth Perception**
___ Pass
___ Fail

| **Inguinal Rings** | Closed | Open | **Supporting Structure** | | |
|---|---|---|---|---|---|
| | | | Strong | Med | Weak |
| R | | | | | |

**Fistula or Hemorrhoids**  ___ No  ___ Yes

**Genitalia** ___ Normal  ___ Abnormal

| | None | Mild | Mod. | Severe |
|---|---|---|---|---|
| **Varicose Veins** | | | | |
| **Varicocele** | | | | |
| **Hydrocele** | | | | |

**Spine Motion**  ___ Normal  ___ Restricted

**Surgery**  ___ No  ___ Yes

| **Nose** | ___ Normal ___ Abnormal |
|---|---|
| **Ears** | ___ Normal ___ Abnormal |

**Neck** ___ Normal ___ Abnormal

**Hearing** ___ Normal ___ Abnormal

**Body Deformities** ___ No  ___ Yes

**Nervous System** ___ Normal  ___ Abnormal

**Missing Extremities** ___ No  ___ Yes

**Tendon Reflexes** ___ Normal  ___ Abnormal

**Mouth**
Teeth ___ Normal ___ Abnormal
Gums ___ Normal ___ Abnormal
Tonsils ___ Normal ___ Abnormal
Lungs ___ Normal ___ Abnormal

**Feet** ___ Normal ___ Abnormal

**Heart**
Rhythm ___ Normal ___ Abnormal
Murmur ___ No ___ Yes

**Hernia**
Right ___ No ___ Yes
Left ___ No ___ Yes

**Abdomen** ___ Normal ___ Abnormal

**Communicable Disease** ___ No  ___ Yes

**Rectum & Prostate** ___ Normal  ___ Abnormal

| **Back X-Ray** | **Cervical X-Ray** | **Chest X-Ray** |
|---|---|---|
| ✓ Normal | ___ Normal | ___ Normal |
| ___ Abnormal | ___ Abnormal | ___ Abnormal |

**EKG** ___ Normal  ___ Abnormal

**Blood Pressure**  Systolic/Diastolic 130/76  Resting Pulse 80

Pulse 2 minutes after exercise _____

**Protein** Ø  **PH** 5  **Blood** Ø
**Specific Gravity** 1020  **Glucose** Ø

**Remarks and Recommendations:** _____
_____
_____

✓ Employment per job description ___ Pending Further Information ___ Rejection until Defect is Corrected

___ Rejected per job description ___ Employment with Restrictions: _____
_____

Physicians Signature: _____  Date: _____

DEPARTMENT OF HOMELAND SECURITY
**U.S. Coast Guard**

OMB No. 1625-0040
Exp. Date: 01/31/2016

**APPLICATION FOR MERCHANT MARINER MEDICAL CERTIFICATE**

**Section I: Applicant Information - To be completed by the Applicant and reviewed by the Medical Practitioner**

Last Name | First Name | Middle Name | Suffix (Jr., Sr., III)

Reference Number (if applicable) | Gender: ☑ Male ☐ Female | Date of Birth (MM/DD/YYYY)

Please indicate best method(s) of contact by checking the appropriate box(es). Optional if information is same as most recent CG-719B.

Home Address (PO Box NOT acceptable) ☐
Street Address

Primary Phone Number ☐

City | State | Zip Code

Alternate Phone Number ☐

Delivery/Mailing Address, if different (PO Box acceptable) ☐
Street Address

E-mail Address ☐

City | State | Zip Code

Other ☐

Application Type: ☑ Medical Certificate ☐ First Class Pilot
I have a medical waiver: ☐ Yes ☑ No    If YES, provide a copy of the medical waiver to the Medical Practitioner.

**Section II(a): Medical Conditions - To be completed by the Applicant and reviewed by the Medical Practitioner**

To the best of your knowledge, have you ever had, required treatment for, or do you presently have any of the following conditions?

☐Yes ☑No 1. Eye/vision problems except glasses
☐Yes ☑No 2. Ear/nose/throat problems or other ENT problems/surgery
☐Yes ☑No 3. High or low blood pressure
☐Yes ☑No 4. Heart or vascular disease of any kind
☐Yes ☑No 5. Heart surgery and/or implanted devices (pacemaker, defibrillator, etc.)
☐Yes ☑No 6. Lung disease of any type (asthma, bronchitis, emphysema, etc.)
☐Yes ☑No 7. Any blood disorder (anemia, hemophilia, blood clots, polycythemia, etc.)
☐Yes ☑No 8. Diabetes, glucose intolerance, or sugar in urine
☐Yes ☑No 9. Thyroid problem
☐Yes ☑No 10. Stomach, liver, or intestinal disorder
☐Yes ☑No 11. Kidney problems/stones or blood in urine
☐Yes ☑No 12. Any other urinary or bladder problems not listed above
☐Yes ☑No 13. Skin disorder or problem
☑Yes ☐No 14. Allergies or allergic reactions to any substance, medication, or food.
☐Yes ☑No 15. Infectious/contagious disease
☐Yes ☑No 16. Any sleep problems: obstructive sleep apnea, restless leg syndrome, narcolepsy, shift work sleep disorder, insomnia, etc.
☐Yes ☑No 17. Epilepsy, fits, or seizures
☐Yes ☑No 18. Loss of consciousness or memory
☐Yes ☑No 19. Frequent or severe headaches

☐Yes ☑No 20. Dizziness/fainting spells/balance problems
☐Yes ☑No 21. Frequent motion sickness requiring medication
☐Yes ☑No 22. Stroke or Transient Ischemic Attack (TIA), brain tumor or other brain disorder
☐Yes ☑No 23. Any neurologic disorder or nerve problems including numbness and/or paralysis, not listed above
☐Yes ☑No 24. Attention deficit disorder with or without hyperactivity
☐Yes ☑No 25. Anxiety, depression, bipolar disorder, adjustment disorder, PTSD, or schizophrenia
☐Yes ☑No 26. Suicide attempt or thought (ideation) of suicide
☐Yes ☑No 27. Evaluation, treatment, or hospitalization for alcohol or substance use, abuse, addiction, or dependence (including illegal drugs, prescription medications, or other substances)
☐Yes ☑No 28. Any other psychiatric disorder, mental health evaluation/hospitalization
☐Yes ☑No 29. Back pain, joint problems, or orthopedic surgery
☐Yes ☑No 30. Amputation, prosthesis, or use of ambulatory devices (cane, walker, braces, etc.)
☐Yes ☑No 31. Fractures, recurrent dislocations or limitation of motion of any joint
☐Yes ☑No 32. Have you ever been signed off as sick or repatriated for medical reasons within the last six years?
☐Yes ☑No 33. Any diseases, surgeries, cancers, illnesses, or disabilities not listed on this form?
☐Yes ☑No 34. Any hospital admissions within the last six years not listed elsewhere in this Section?

Applicant Name: (Last, First, MI.) | Date of Birth: (MM/DD/YYYY) | Page 1 of 5

REC-002150

## Section II(b): Medical Conditions – To be completed by the Medical Practitioner

**Instructions:** For each "YES" answer, identify the item numbers, the condition/diagnosis, date of onset or diagnosis, any treatment required or received, the current status of the condition, and any limitations due to the condition. As applicable, attach supporting documentation to verify findings. Additional sheets may be added as needed being sure applicant name and date of birth appear on each additional sheet.

| Number | Additional Information (Please Print) |
|--------|---------------------------------------|
| 14 | allergy - Penicillin |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## Section III: Medications – To be completed by the Applicant and reviewed by the Medical Practitioner

Applicants who are required to complete a general medical exam are required to report all prescription medications prescribed, filled or refilled, and/or taken within 30 days prior to the date that the applicant signs the CG-719K. In addition, all prescription medications, and all non-prescription (over-the-counter) medications including dietary supplements and vitamins, that were used for a period of 30 or more days within the last 90 days prior to the date that the applicant signs the CG-719K or approved equivalent form, must also be reported.

The information reported by the applicant must be verified by the verifying medical practitioner or other qualified medical practitioner to the satisfaction of the verifying medical practitioner to include the following two items: **(1)** Report all medications (prescription and non-prescription), dietary supplements, and vitamins. **(2)** Include dosages of every substance reported on this form, as well as the condition for which each substance is taken.

Additional sheets may be added by the applicant and/or medical practitioner if needed to complete this section *(include applicant name and date of birth on each additional sheet).*

If none, check "NONE" ☐ **NONE**

| Applicant (Please Print) | Medical Practitioner (Please Print) |
|--------------------------|-------------------------------------|
| | |

CG-719K (01/14)   Applicant Name: (Last, First, MI)          Date of Birth: (MM/DD/YYYY)          Page 2 of 5
Previous Editions Obsolete

# REPORT OF MEDICAL EXAMINATION

Sections IV and V should be completed by the Medical Practitioner or other medical staff to the satisfaction of the Medical Practitioner.

## Section IV: Vision

*The Medical Practitioner must indicate test used and results (number of errors). Additional information must be reported in Section VII. Color sensing lenses (e.g. X-Chrome) are prohibited.*

### a. Visual Acuity

| Distant Uncorrected | If Necessary, Distant Corrected To | Field of Vision |
|---|---|---|
| Right: 20/ 70 | Right: 20/ | *This applicant must have a 100-degree horizontal field of vision.* |
| Left: 20/ 70 | Left: 20/ | ☑ Normal  ☐ Abnormal |

### b. Color Vision *(check one)*

*The following color sense testing methodologies are acceptable*

☐ AOC (1965) - (6 or fewer errors on plates 1-15)

☐ AOC-HRR (2nd Edition) - (No errors in test plates 7-11)

☐ HRR PIP (4th Edition) - (No errors in test plates 5-10)

☐ Richmond (2nd and 4th Edition) - (6 or fewer errors)

☑ Titmus Vision Tester/OPTEC 2000 - (No errors on 6 plates)

☐ OPTEC 900 (colored lights) Test per instruction booklet

☐ Farnsworth D-15 Hue Test (attach test results)
(Engineer/radio officer/tankerman/MODU only)

☐ Ishihara pseudoisochromatic plates test, 14 plate (5 or less errors)

☐ Ishihara pseudoisochromatic plates test, 24 plate (6 or less errors)

☐ Ishihara pseudoisochromatic plates test, 38 plate (8 or less errors)

☐ Farnsworth Lantern (colored lights) Test per instruction booklet

☐ Dvorine pseudoisochromatic 15 plate test (6 or less errors)

☐ An alternative test approved by the Coast Guard (Indicate test)
_____

### Color Vision Testing Results:

☑ Passed   ☐ Failed   Number of Errors: 0

If color vision test is failed, can the Applicant distinguish red, green, blue, and yellow:   ☐ Yes   ☐ No

## Section V: Hearing

*An applicant with normal hearing by forced whispered voice ≥ 5 feet with or without hearing aids does not need to complete either the audiometer test or the functional speech discrimination test.*

☑ Normal Hearing      ☐ Abnormal Hearing      ☐ Hearing Aid Required

(a) If hearing is abnormal, then perform either a functional speech discrimination test at 65dB or an audiogram documenting thresholds and averages as indicated below. Both aided and unaided values should be recorded for applicants requiring hearing aids.

(b) All applicants with an unaided threshold > 30dB in the better ear should have functional speech discrimination testing performed at 65dB.

(c) Refer to Medical and Physical Evaluation Guidelines for Merchant Mariner Credentials from the NMC website (http://www.uscg.mil/nmc/medical/default.asp) for further guidance. Report any additional information or comments in Section VII.

|  | Audiometer Threshold Value | | | | |
|---|---|---|---|---|---|
|  | 500Hz | 1,000Hz | 2,000Hz | 3,000Hz | Average |
| Right Ear (Unaided) | | | | | |
| Left Ear (Unaided) | | | | | |
| Right Ear (Aided) | | | | | |
| Left Ear (Aided) | | | | | |

**Functional Speech Discrimination Test @ 65dB, if required by instruction (b) above**

Right Ear (Unaided): _____ %

Left Ear (Unaided): _____ %

Right Ear (Aided): _____ %

Left Ear (Aided): _____ %

## Section VI. Physical Examination – Items 1-17 of this section must be completed by the Medical Practitioner.

Height *(inches only):* 70    Weight *(lbs):* 215    Body Mass Index *(BMI):* *(For BMI > 40 refer to Section VII)* 31.)

Pulse Resting: 70    Initial Blood Pressure: 130/76    Repeat Blood Pressure *(if needed):*

*Please make comments in the space provided on any item indicated as an "abnormal" system/organ.*

**Additional Medical Comments**

| Item | Additional Information (Please Print) |
|------|----------------------------------------|

1. Head, Face, Neck, Scalp — ☑Normal ☐Abnormal

2. Eyes/Pupils/EOM — ☑Normal ☐Abnormal

3. Mouth and Throat — ☑Normal ☐Abnormal

4. Ears/Drums — ☑Normal ☐Abnormal

5. Lungs and Chest — ☑Normal ☐Abnormal

6. Heart — ☑Normal ☐Abnormal

7. Abdomen — ☑Normal ☐Abnormal

8. Upper/Lower Extremities — ☑Normal ☐Abnormal

9. Spine/Musculoskeletal — ☑Normal ☐Abnormal

10. Skin — ☑Normal ☐Abnormal

11. Lymphatic — ☑Normal ☐Abnormal

12. Neurologic — ☑Normal ☐Abnormal

13. Vascular System — ☑Normal ☐Abnormal

14. Genitourinary System — ☑Normal ☐Abnormal

15. General/Systemic — ☑Normal ☐Abnormal

16. Hernia — ☐Yes ☑No

17. Missing Extremities/Digit — ☐Yes ☑No

CG-719K (01/14)
Previous Editions Obsolete

Applicant Name: *(Last, First, MI)* ▮▮▮▮

Date of Birth: *(MM/DD/YYYY)* ▮▮▮▮

Page 4 of 5

REC-002153

## Section VII - Demonstration of Physical Ability - To be completed by the Medical Practitioner

1. The Medical Practitioner shall require that the applicant demonstrate the ability to meet the guidelines contained within Section VII of the CG-719K instructions. This does not mean, for example, that the applicant must actually don an exposure suit, pull an unchanged 1.5 inch diameter 50' fire hose with nozzle to full extension, or lift a charged 1.5 inch diameter fire hose to firefighting position. Rather, the Medical Practitioner may utilize alternative measures to satisfy himself or herself that the applicant possesses the ability to meet the guidelines in the third column. A description of the methods utilized by the medical practitioner should be reported in the Comments section provided below.
2. All practical demonstrations should be performed by the applicant without assistance. Any prosthesis normally worn by the applicant, and any other aid devices, may be used by the applicant in all practical demonstrations except when the use of such items would prevent the proper wearing of mandated personal protection equipment (PPE).
3. If the Medical Practitioner is unable to conduct the practical demonstration, the applicant should be referred to a competent evaluator of physical ability. The Coast Guard recognizes that all medical practitioners may not have the equipment necessary to test all of the tasks as listed. Equivalent alternate testing methodologies may be used. For further information, check the Medical and Physical Evaluation Guidelines for Merchant Mariner Credentials (http://www. uscg.mil/nmc/medical/default.asp).
4. If the applicant is unable to perform any of the following functions, the Medical Practitioner should provide information on the degree or the severity of the applicant's inability to meet the standards. The results of any practical demonstration or attendant physical evaluation should be recorded in the Comments section provided below.

**Physical Ability Results**

☑ Applicant has the physical strength, agility, and flexibility to perform all of the items listed in the instruction table.

☐ Applicant does NOT have the physical strength, agility, and flexibility to perform all of the items listed in the instruction table.

**COMMENTS:** *(Please Print)*

## Section VIII - Food Handler Certification - To be completed by the Medical Practitioner

If Food Handler Certificate is sought by the applicant, is applicant free from communicable disease:    ☑ Yes ☐ No

## Section IX - Summary - To be completed by the Medical Practitioner

Applicant proof of identity provided:    ☑ Yes ☐ No

Overall fitness recommendation:    ☑ Fit for Duty

☐ Not Fit for Duty    ☐ Needs Further Review

Comments: *(Please Print)*

**Medical Practitioner:**
My signature attests, subject to criminal prosecution under 18 USC § 1001, that all information reported by the medical practitioner is true and correct to the best of his/her knowledge and that the medical practitioner has not knowingly omitted or falsified any material information relevant to this form. My signature also attests that I have fully evaluated all examination tests and results submitted in support of this application.

| Last Name | First Name | M.I. | License Number | State |
|---|---|---|---|---|
| LeMaire | William | L | AP04092 | LA |

Signature: *[signature]*    Date (MM/DD/YYYY): 07/13/2017

MD/DO ☐    PA ☐    NP ☑

Office Street Address: 144 Valhi Lagoon Crossing

| City | State | Zip Code |
|---|---|---|
| Houma | LA | 70360 |

Phone Number: (985) 223-0032

Occupational Medicine Services
144 Valhi Lagoon Crossing
Houma, Louisiana 70360
(985) 223-0032

*(Place office address stamp here)*

## Section X - Applicant Certification - To be completed by the Applicant

My signature below attests, subject to prosecution under 18 USC § 1001, that all information provided by me on this form is complete and true to the best of my knowledge, and I agree that it is to be considered part of the basis for issuance of any medical certificate to me. I have not knowingly omitted any material information relevant to this form. I have also read and understand the Privacy Act Statement that accompanies this form.

Signature of Applicant: *[redacted]*    Date (MM/DD/YYYY): 7-13-17

CG-719K (01/14)
Previous Editions Obsolete

Applicant Name: *(Last, First, MI)* *[redacted]*    Date of Birth: *(MM/DD/YYYY)* *[redacted]*    Page 5 of 5

REC-002154

# FUNCTIONAL ABILITIES EVALUATION



**BTe** TECHNOLOGIES™

## Client Information

| | |
|---|---|
| **Client Name:** | ███████ |
| **Address:** | ███████ |
| **Dominant Hand:** | Right Hand |
| **SSN:** | ███████ |
| **Date of Birth:** | ███████ |
| **Gender:** | Male |
| **Height:** | 70 inches |
| **Weight:** | 215 lbs |

## Employment Information

**Occupation:** Deckhand
**Employer:** REC Marine
**Address:**

**Work Status:** Currently working

**Start & Finish Date:** Jul 13, 2017
**Evaluator:** Kandaci Lirette
**Evaluation Time:** 13 Min

Kandaci Lirette
Medical Assistant

**Work Simulation** ▶ **Rope Hang**

Jul 13, 2017 1:47:28 PM


capable

OCCUPATIONAL MEDICINE SERVICES
144 VALHI LAGOON CROSSING HOUMA LA 70360  (985) 223-0032

All testing was completed using the FOCUS System, Data Management was compiled through ODES products of BTE Technologies

P. 1

**Hand Grip Strength** ▶ The JAMAR hand dynamometer was used in order to quantify grip strength and determine whether ▉▉▉▉ exerted consistent effort during grip strength testing. ▉▉▉▉▉ was tested using the standard hand grip protocol. ▉▉▉▉▉ is right hand dominant. Normative data is based on the assumption that right and left hand dominant subjects, analyzed separately show little functional difference between their mean scores.[1,2]



### Standard Hand Grip                                                                    Jul 13, 2017 1:46:22 PM

|  | Left | Right |
|---|---|---|
| Trial #1 | 96.6 lbs. | 111.6 lbs. |
| Trial #2 | 72.6 lbs. | 81.5 lbs. |
| Trial #3 | 79.5 lbs. | 89.9 lbs. |
| Average | 82.9 lbs. | 94.3 lbs. |
| Maximum | 96.6 lbs. | 111.6 lbs. |
| COV | 12.2% | 13.4% |
| Diff L Vs. R | | 12.1% |

*The client squeezes the hand grip dynamometer for a three second trial duration. A rest period of 5 seconds is given before testing the other hand. This process is repeated three times. The average of the three trials is compared to published normative data.[1,2]*

▉▉▉▉ grip strength was compared to age and gender matched normative data. The published normal grip strength range for the left hand is from 88.7 lbs to 132.1 lbs.[1,2] ▉▉▉▉ displayed an average force of 82.9 lbs. which is considered in the below normal range when compared to the normal population of the referenced study. The published normal grip strength range for the right hand is from 99.4 lbs to 144.2 lbs.[1,2] ▉▉▉▉ displayed an average force of 94.3 lbs. which is considered in the below normal range when compared to the normal population of the referenced study. The coefficient of variation was 12.2% for the left hand and 13.4% for the right hand. Values greater than 15% may be an indicator of inconsistent effort.

[1] Mathiowetz V, Kashman N, Volland G, Weber K, Dowe M, Rogers S. 1985. Grip and pinch strength: normative data for adults. Arch Phys Med Rehabil 66:69-74.

[2] Mathiowetz V, Wiemer D, Federman S. 1986. Grip and pinch strength: norms for 6- to 19- year olds. Am J Occup Ther 40(10):705-11.

### ► Standard Arm Lift

**Test Date:** Jul. 13, 2017 1:49:52 PM



Force (lbs)

| Trial 1: 63.9 lbs | Average: | 62.4 lbs |
| Trial 2: 60.4 lbs | COV: | 2.4% |
| Trial 3: 62.9 lbs | | |

██████████ reached an average force of 62.4 lbs. for the Standard Arm Lift test. The coefficient of variation was 2.4% during the Standard Arm Lift. Values greater than 15% may be an indicator of submaximal effort.

### ► Standard High Near Lift

**Test Date:** Jul. 13, 2017 1:51:05 PM



Force (lbs)

| Trial 1: 118.5 lbs | Average: | 111.2 lbs |
| Trial 2: 104.9 lbs | COV: | 5% |
| Trial 3: 110.2 lbs | | |

██████████ reached an average force of 111.2 lbs. for the Standard High Near Lift test. The coefficient of variation was 5% during the Standard High Near Lift. Values greater than 15% may be an indicator of submaximal effort.

OCCUPATIONAL MEDICINE SERVICES
144 VALHI LAGOON CROSSING HOUMA LA 70360 (985) 223-0032


P. 3

cdos_data2008.mdb

### ▶ Standard Leg Lift

**Test Date: Jul. 13, 2017 1:49:09 PM**



**Force (lbs)**

Trial 1: 116.9 lbs   |   Average:   109.6 lbs
Trial 2: 101.4 lbs   |   COV:   5.8%
Trial 3: 110.4 lbs

████████ reached an average force of 109.6 lbs. for the Standard Leg Lift test. The coefficient of variation was 5.8% during the Standard Leg Lift. Values greater than 15% may be an indicator of submaximal effort.

**OCCUPATIONAL MEDICINE SERVICES**
144 VALHI LAGOON CROSSING HOUMA LA 70360 (985) 223-0032

P. 4

odcs_data2008.mdb

**Dynamic Lifting - Floor to Shoulder 50 lbs 5 reps**

The Dynamic Lifting - Floor to Shoulder 50 lbs 5 reps was conducted in order to determine ███████ ability to complete the task. A progressive loading method was used to determine ███████ capacity for the performance of dynamic lifting activities on a safe and dependable basis. Lifting was conducted between an initial height of  inches and a final height of floor height for a total of 5 repetitions at each weight increment. The increase in the amount of weight lifted was in 0-pound increments.

In order to ensure safety in the administration of the testing protocol, ███████ heart rate was monitored on a real-time basis. A cut-off of 160 beats per minute, based upon 85 percent of the age-predictive maximum heart rate was used in order to ensure the safe administration of the dynamic lifting protocol. A rating of perceived exertion was also used in order to make certain ███████ was capable of continuing in the protocol without risk of injury.

During the course of testing ███████ heart rate increased from 136 beats per minute to a peak of 145 beats per minute at the final weight of 50 lbs. This represented a heart rate increase of 7% during the lifting protocol.

███████ demonstrated a safe weight lifting ability of 50 pounds. The reason for the conclusion of the dynamic lifting protocol was the fact ███████ met the job demand.



**Initial Heart Rate:** 136 BPM
**Peak Heart Rate:** 145 BPM
**Final Testing Heart Rate:** 145 BPM
**% Heart Rate Increase:** 7 %

■ During Testing   ■ Before & After Testing   — Maximum Allowable HR

**Elapsed Time:** 01:05
**Recovery Time:** None

| | | | | |
|---|---|---|---|---|
| Starting Height | inches | Exertion Rating Stop Point | Very Heavy |
| Ending Height | floor height | Heart Rate Cut Off | 85% of age adj. |
| Initial Weight | 50.0 lbs. | Maximum Test Duration | Unlimited |
| Weight Increments | Remained Constant | Maximum Allowed Weight | 50 lbs. |
| Repetitions Per Weight | 5 Repetitions | Maximum Safe Weight Lifted | 50 lbs. |
| Rest Period Per Weight Cycle | 12 seconds | Job Demand Default | 50 lbs. |

**Dynamic Lifting – Floor to Waist 75 lbs (new)**

Jul 13, 2017 1:52:30 PM

The Dynamic Lifting – Floor to Waist 75 lbs (new) was conducted in order to determine ███ ability to complete the task. A progressive loading method was used to determine ███████ capacity for the performance of dynamic lifting activities on a safe and dependable basis. Lifting was conducted between an initial height of inches and a final height of floor height for a total of 3 repetitions at each weight increment. The increase in the amount of weight lifted was in 15-pound increments.

In order to ensure safety in the administration of the testing protocol, ██████ heart rate was monitored on a real-time basis. A cut-off of 160 beats per minute, based upon 85 percent of the age-predictive maximum heart rate was used in order to ensure the safe administration of the dynamic lifting protocol. A rating of perceived exertion was also used in order to make certain ████████ was capable of continuing in the protocol without risk of injury.

During the course of testing ████████ heart rate increased from 89 beats per minute to a peak of 125 beats per minute at the final weight of 75 lbs. This represented a heart rate increase of 40% during the lifting protocol.

████████ demonstrated a safe weight lifting ability of 75 pounds. The reason for the conclusion of the dynamic lifting protocol was the fact ████████ met the job demand.



| | |
|---|---|
| **Initial Heart Rate:** | 89 BPM |
| **Peak Heart Rate:** | 125 BPM |
| **Final Testing Heart Rate:** | 125 BPM |
| **% Heart Rate Increase:** | 40 % |
| **Elapsed Time:** | 02:39 |
| **Recovery Time:** | 00:00 |

During Testing   Before & After Testing   -- Maximum Allowable HR

| | | | | |
|---|---|---|---|---|
| Starting Height | inches | **Exertion Rating Stop Point** | Very Heavy |
| Ending Height | floor height | **Heart Rate Cut Off** | 85% of age adj. |
| Initial Weight | 30.0 lbs. | **Maximum Test Duration** | Unlimited |
| Weight Increments | 15.0 lbs. | **Maximum Allowed Weight** | 75 lbs. |
| Repetitions Per Weight | 3 Repetitions | **Maximum Safe Weight Lifted** | 75 lbs. |
| Rest Period Per Weight Cycle | No Rest Period | **Job Demand Default** | 75 lbs. |

**Cardiovascular Intake**

Jul 13, 2017



| | | | |
|---|---|---|---|
| | 80 | 130 | 76 |
| **Result** | Safe to Test | Safe to Test | Safe to Test |

OCCUPATIONAL MEDICINE SERVICES
144 VALHI LAGOON CROSSING HOUMA LA 70360 (985) 223-0032

P. 6

odes_data2006.mdb

REC-002160



P.O. Box 774 • Galliano, LA 70354
Ph: (985) 325-3366 • Fax: (985) 325-3368
www.recmarinelogistics.com

**EMPLOYEE "B"**

## Application for Employment

*It is our policy to provide equal employment opportunity to all qualified persons without regard to race, creed, color, religious belief, sex, age, national origin, ancestry, physical or mental handicap, or veteran status.*

### Applicant Information:

Date: 4/3/18

Name: ▮▮▮ (Last)   ▮▮▮ (First)   ▮▮▮ (Middle)

Mailing Address: ▮▮▮

Physical Address: ▮▮▮

Social Security #: ▮▮▮

Home Telephone: ▮▮▮   Cell Phone: ▮▮▮

Position applied for: Deckhand   Desired Wage $ 140

Desired Start Date: Tuesday 4/10/2018   Desired Schedule: 14-7

Have you ever worked for REC Marine before? Yes or No?
If Yes, when? ▮▮▮

Are you a US Citizen or can provide authorized to work in the US on an unrestricted basis? Yes or No?

Are you at least 18 years old? Yes or No?

REC Marine Logistics, LLC    Employment Application    Rev. 10/2014

REC-002161

## Additional Information:

Do you have a Driver's License or State Issued Identification    Yes or No?
If so, provide Driver's License or State ID Number:

State of Issue: _M  )_                    **Expiration Date:**

Have you had any motor vehicle accident or had your license suspended during
the past five (5) years?                                              Yes or No?

If so, how many occurrences? _Once Suspended_

Are you a veteran of the United States Military?                    Yes or No?
    If yes, did you receive an Honorable Discharge?    Yes or No?

Are you able to perform the essential functions of the duties of the job
for which you are applying with or without reasonable accommodations?    Yes or No?

Have you EVER failed or refused a Drug or Alcohol Test job
related or not?                                                    Yes or No?
**If yes**, provide the date and company that required the test: _____

Have you EVER been convicted of any criminal offense? (Including, but not limited to DUI, DWI,
felony, or misdemeanor)                                            Yes or No?
If yes, please fully describe the circumstance:
_____
_____
_____
_____

Have you ever been a party (either plaintiff or defendant) to a lawsuit or civil action? Yes or No?
If so, for each lawsuit provide the following. (Use the back, if additional space is needed.)

| Parties to Lawsuit | Court or Parish/County | Brief Explanation of Claims |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

## Education History:

| Education | Name of school | Number of years | Did you graduate? | Subjects studied |
|---|---|---|---|---|
| Grammar school | NA | | | |
| High School | Hazelhurst | 4 | no | |
| College | N.A | | | |
| Trade School | N.A | | | |

## Marine Experience, Licenses, Certifications and Skills:

| | |
|---|---|
| Do you have a Transportation Worker Identification Credential (TWIC)? | Yes or No |
| Do you have SafeGulf Card? | Yes or No |
| Do you have a current Rigging Card? | Yes or No |
| Do you have CPR / First Aid Certifications? | Yes or No |
| Do you have Water Survival Training? | Yes or No |
| Do you have Fire Watch Certification? | Yes or No |
| Do you have a Merchant Mariner Credential, (MMC)? | Yes or No |

Additional skills you feel are relevant for the desired position:

_____

_____

Have you had any accidents operating any vessel in the last five (5) years? If so, provide explanation for each occurrence:

no

_____

Have you had any suspension or revocation of a marine license you have held in the last five (5) years?  If so, provide explanation for each occurrence:

no

_____

REC Marine Logistics, LLC        Employment Application        Rev. 10/2014

**Employment History:  (Start with most recent employer)**



REC Marine Logistics, LLC          Employment Application          Rev. 10/2014

Full Name:
Company:

Full Name:
Company:

Full Name:
Company:

I certify that the facts set forth in this application for employment are true and complete to the best of my knowledge. I understand that if I am employed, false statements on this application shall be considered sufficient cause for dismissal. REC Marine Logistics is hereby authorized to make any investigations of my prior educational, employment history and any or all of the information listed in this application and consent to driving and/or criminal history background check. I also authorize REC Marine Logistics to contact references, employers, and/or educational institutions listed on this application. I release REC Marine Logistics and is representatives from all claims, damages, and liability arising in connection with seeking, gathering and using such information and all other persons, corporations or organizations for releasing such information. I understand that neither the acceptance of this application nor the subsequent entry into any type of employment relationship with REC Marine Logistics creates an actual or implied contract of employment. I understand that, if an offer of employment is extended, it will be conditioned upon, 1 – my taking and passing a pre-employment drug test and 2 – my undergoing a medical examination and the examination not revealing any physical condition that prevents my performing the essential duties of the position offered to me with or without reasonable accommodation. I further understand that, if I accept employment with REC Marine Logistics, my employment will be on an "at will" basis. This means that either REC Marine Logistics or I have the right to terminate the employment relationship at any time, with or without notice, for any reason, with or without cause.

Signature                                      Date

REC Marine Logistics, LLC is an equal employment opportunity employer in all areas of the employer/employee relationship, including initial hiring practices. REC Marine Logistics makes employment decisions without regard to race, color, religion, sex, sexual orientation, national origin, citizenship, age, disability status, veteran status, or other classification protected by law. Your opportunity for employment with REC Marine Logistics depends solely on your qualifications and experience.

# Occupational      Medicine      Services, L.L.C.

144 Valhi Lagoon Crossing
Houma, LA 70360

Phone: 985-223-0032
Fax: 985-872-6670

www.o-m-s.com

## Post Offering Evaluation

Date: 4 / 3 / 18          Your Name: ▓▓▓▓▓▓

Your SS#: ▓▓▓▓▓     Date of Birth: ▓▓▓▓▓     Company: CeC macinel GoL

| PFT | Hearing | Audio | CXR | Back x-ray | C-Spine | Ishihara | Depth Perception | Farnsworth | EKG |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Normal<br>☐ Abnl | ☐ Normal<br>☐ Abnl | ☐ Pass<br>☐ Fail | ☐ Normal<br>☐ Abnl | ☑ Normal<br>☐ Abnl | ☐ Normal<br>☐ Abnl | ☑ Pass<br>☐ Fail | ☐ Pass<br>☐ Fail | ☐ Pass<br>☐ Fail | ☐ Normal<br>☐ Abnl |

## Functional Capacity Evaluation

This applicant was tested using a state of the art functional testing system. Tests were performed to determine his/her capacity to perform at the essential demand level of the job for which they are being hired. Upon review of the evaluation results, it is the determination of this evaluator and the evaluating physician that this applicant is **CAPABLE** / NOT CAPABLE of performing at the level sufficient to execute the essential demands of the position for which he/she is being hired with minimal risk of injury.

_____
*Evaluator's Signature*

**TB SKIN TEST** ☐ Negative ☐ Positive

**Respirator Form**

☐ Reviewed

**Respirator Fit**

The above name individual is approved to wear a respirator.
☐ Yes ☐ No
Based on :
____ Physical ____ History Only
____ PFT ____ History

**Fit Test**

☐ Pass ☐ Fail

Type _____

Size _____

**Physical Examination** - Based on the requirements for employment, as mandated by the employer listed above, the above named applicant's results are:

☑ Employment per job description
☐ Pending medical records
☐ Fit for Diving

☐ Employment with Restrictions
    Light Work    Medium Work
☐ Rejected per job description

_____
Physician's Signature

4/3/18
_____
Date

All records pertaining to the above evaluations will be held permanently on file at Occupational Medicine Services. You may request a copy of this evaluation by contacting OMS at (985) 223.0032.

**O          M          S**

144 Valhi Lagoon Crossing Houma, LA 70360                    Phone 985.223.0032    Fax 985.872.6670

| | |
|---|---|
| Applicant: ███████ | Date: 4-38-08 |
| Address: ███████   D.O.B. ███   Tel # ███████ | |
| Position Applied for: Deckhand    S.S.#: ███████ | |

## Medical Questionnaire

Circle Y for YES and N for NO if you currently have the following symptoms or have significantly in the past.

| | | | | | |
|---|---|---|---|---|---|
| Poor Vision | Y **N** | Carpal Tunnel Syndrome | Y **N** | Colitis | Y **N** |
| Color Blindness | Y **N** | Stomach Problems | Y **N** | Sleep Apnea | Y **N** |
| Cataract/Glaucoma | Y **N** | Bloody bowel movements | Y **N** | ANY SURGERY? | Y **N** |
| Wear glasses or contacts | Y **N** | Thyroid problems | Y **N** | Concussion or head injury | Y **N** |
| Ear Infection | Y **N** | Epilepsy/seizures | Y **N** | Been a patient in a hospital | Y **N** |
| Hearing Aid/Loss of Hearing | Y **N** | Migraine Headache | **Y** N | Cirrhosis | Y **N** |
| Dental problems/TMJ | **Y** N | Loss of Consciousness | Y **N** | Had a hernia | Y **N** |
| Allergies | **Y** N | Dizziness/Vertigo | Y **N** | Had fits or fainting | Y **N** |
| Tuberculosis | Y **N** | Peripheral Nerve Disease | Y **N** | Had a serious illness | Y **N** |
| Asthma & Breathing difficulties | Y **N** | Frequent worry/depression | **Y** N | Injured your back or experienced back pain | **Y** N |
| Lung collapse | Y **N** | Kidney trouble/stones | Y **N** | Injured your neck or experienced neck pain | Y **N** |
| Shortness of breath/wheezing | Y **N** | Bladder/Gallbladder Trouble | Y **N** | Injured your right or left shoulder | Y **N** |
| Emphysema | Y **N** | Difficult or frequent urination | Y **N** | Injured your right or left elbow | Y **N** |
| Irregular heart beat | Y **N** | Venereal disease | Y **N** | Injured your right or left wrist | Y **N** |
| Varicose Veins | Y **N** | Irregular period/menstruation | Y **N** | Injured your right or left hand | Y **N** |
| Stroke | Y **N** | Are you pregnant? | Y **N** | Injured your fingers | Y **N** |
| Leg Ulcers | Y **N** | Date of last pap smear | | Injured your right or left hip | Y **N** |
| Anemia | Y **N** | Date of last mammogram | | Injured your right or left leg | Y **N** |
| Leukemia | Y **N** | Prostate problems | Y **N** | Injured your right or left knee | Y **N** |
| Diabetes | Y **N** | HIV Positive | Y **N** | Injured your right or left ankle | Y **N** |
| High Blood Pressure | Y **N** | Sickle Cell Disease | Y **N** | Injured your right or left foot | Y **N** |
| Heart Disease | Y **N** | Rash/Dermatitis | Y **N** | Injured your toes | Y **N** |
| Mental Illness | **Y** N | Psoriasis | Y **N** | Missing any limbs | Y **N** |
| Cancer or Tumors | Y **N** | Dislocations | Y **N** | Received worker's compensation | Y **N** |
| Hepatitis | Y **N** | Broken a bone | Y **N** | Received disability benefits | Y **N** |
| Drug and/or Alcohol Abuse | Y **N** | | | | |

| | |
|---|---|
| Undergone an MRI, CT Scan, Discogram or Myelogram for any part of your body? | Y **N** |
| Received a disability rating from a physician resulting from an injury to any part of your body? | Y **N** |
| Been limited in the amount of weight you can lift by a physician? | Y **N** |
| Failed a physical or denied employment due to any injury or illness? | Y **N** |
| Are your presently taking a prescriptive medication? | Y **N** |
| Have you EVER had an illness, injury, or claim arising out of your employment? | Y **N** |

Please fully describe any "yes" responses; (Back Surgery 1-26-94 injury on job, etc.)
Allergic to Keflex, ADHD, Bipolar, Depression, Migranes - OTC meds
Back pain - occas.

Are you currently unable to perform any activity or do you have any lifting restrictions? Y **N** List: _____

Present Medication: _____

Have you ever had an injury which required you to miss time from work?    Yes    **No**
If yes, give dates, nature of claim, and outcome. _____

**Warning:** Pursuant to LSA-RS 23:1208.1, I understand that failure to answer truthfully any/all of the above questions of this medical questionnaire may result in a denial of any right I or my dependants may have to workers compensation benefits, including medical treatments and expenses. I have read and fully understand the above. (Initial) ███

Signature of Applicant ███████

| **Applicant Name** | | **Date** | 4/3/18 |
|---|---|---|---|

| Height in inches | 67 | BMI | 33.9 | Weight | 51 lbs |
|---|---|---|---|---|---|

**Body Build** ____ Obese ____ Robust ✓Average ____ Small

| **Inguinal Rings** | Closed | Open | Supporting Structure | | |
|---|---|---|---|---|---|
| | | | Strong | Med | Weak |
| R | | | | | |
| L | | | | | |

### Vision
**Uncorrected**
*(Near)* Both 20/20  L20/20  R20/20
*(Far)* Both 20/20  L20/20  R20/20

**Corrected**
*(Near)* Both 20/ ___  L20/ ___  R20/ ___
*(Far)* Both 20/ ___  L20/ ___  R20/ ___

**Color Sense** ✓Normal ____ Abnormal

**Horizontal Field of Vision** ✓Normal ____ Abnormal

**Ishihara**
✗ Pass
____ Fail

**Depth Perception**
____ Pass
____ Fail

| | None | Mild | Mod. | Severe |
|---|---|---|---|---|
| **Varicose Veins** | None | | | |
| **Varicocele** | | | | |
| **Hydrocele** | | | | |

**Fistula or Hemorrhoids** ____ No ____ Yes

**Genitalia** ____ Normal ____ Abnormal

**Spine** ____ Normal
**Motion** ____ Restricted

**Surgery** ____ No ____ Yes

**Nose**
____ Normal ____ Abnormal

**Ears**
____ Normal ____ Abnormal

**Body Deformities** ____ No ____ Yes
**Missing Extremities** ____ No ____ Yes

**Neck**
____ Normal ____ Abnormal

**Hearing**
____ Normal ____ Abnormal

**Nervous System** ____ Normal ____ Abnormal
**Tendon Reflexes** ____ Normal ____ Abnormal

**Mouth**
*Teeth* ____ Normal ____ Abnormal
*Gums* ____ Normal ____ Abnormal
*Tonsils* ____ Normal ____ Abnormal

**Lungs** ____ Normal ____ Abnormal

**Feet** ____ Normal ____ Abnormal

**Heart**
*Rhythm* ____ Normal ____ Abnormal

*Murmur* ____ No ____ Yes

**Communicable Disease** ____ No ____ Yes
**Rectum & Prostate** ____ Normal ____ Abnormal

| **Back X-Ray** | **Cervical X-Ray** | **Chest X-Ray** |
|---|---|---|
| ____ Normal | ____ Normal | ____ Normal |
| ____ Abnormal | ____ Abnormal | ____ Abnormal |

**Abdomen**
____ Normal ____ Abnormal

**Hernia**
*Right* ____ No ____ Yes
*Left* ____ No ____ Yes

**EKG** ____ Normal ____ Abnormal

| **Blood Pressure** | *Systolic/Diastolic* 130/82 | *Resting Pulse* 84 | **Protein** ✓  **PH** 6  **Blood** ✓ |
|---|---|---|---|

Pulse 2 minutes after exercise _____

**Specific Gravity** 1.005  **Glucose** ✓

Remarks and Recommendations: _____

____ Employment per job description ____ Pending Further Information ____ Rejection until Defect is Corrected

____ Rejected per job description ____ Employment with Restrictions: _____

Physicians Signature: _____  Date: _____

DEPARTMENT OF HOMELAND SECURITY
**U.S. Coast Guard**

OMB No. 1625-0040
Exp. Date: 01/31/2016

## APPLICATION FOR MERCHANT MARINER MEDICAL CERTIFICATE

| Last Name | First Name | Middle Name | Suffix *(Jr., Sr., III)* |
|---|---|---|---|
| ███ | ███ | ███ | |

Reference Number *(if applicable)*

Gender: ☑ Male ☐ Female

Date of Birth (MM/DD/YYYY) ███

Please indicate best method(s) of contact by checking the appropriate box(es). Optional if information is same as most recent CG-719B.

Home Address *(PO Box NOT acceptable)* ☐
Street Address ███

Primary Phone Number ☐ ███

City ███  State ███  Zip Code ███

Alternate Phone Number ☐ ███

Delivery/Mailing Address, if different *(PO Box acceptable)* ☐
Street Address ███

E-mail Address ☐ ███

City ███  State ███  Zip Code ███

Other ☐

Application Type: ☑ Medical Certificate  ☐ First Class Pilot
I have a medical waiver: ☐ Yes  ☑ No    If YES, provide a copy of the medical waiver to the Medical Practitioner.

To the best of your knowledge, have you ever had, required treatment for, or do you presently have any of the following conditions?

☐ Yes ☑ No 1. Eye/vision problems except glasses

☐ Yes ☑ No 2. Ear/nose/throat problems or other ENT problems/surgery

☐ Yes ☑ No 3. High or low blood pressure

☐ Yes ☑ No 4. Heart or vascular disease of any kind

☐ Yes ☑ No 5. Heart surgery and/or implanted devices (pacemaker, defibrillator, etc.)

☐ Yes ☑ No 6. Lung disease of any type (asthma, bronchitis, emphysema, etc.)

☐ Yes ☑ No 7. Any blood disorder (anemia, hemophilia, blood clots, polycythemia, etc.)

☐ Yes ☑ No 8. Diabetes, glucose intolerance, or sugar in urine

☐ Yes ☑ No 9. Thyroid problem

☐ Yes ☑ No 10. Stomach, liver, or intestinal disorder

☐ Yes ☑ No 11. Kidney problems/stones or blood in urine

☐ Yes ☑ No 12. Any other urinary or bladder problems not listed above

☐ Yes ☑ No 13. Skin disorder or problem

☑ Yes ☐ No 14. Allergies or allergic reactions to any substance, medication, or food.

☐ Yes ☑ No 15. Infectious/contagious disease

☐ Yes ☑ No 16. Any sleep problems: obstructive sleep apnea, restless leg syndrome, narcolepsy, shift work sleep disorder, insomnia, etc.

☐ Yes ☑ No 17. Epilepsy, fits, or seizures

☐ Yes ☑ No 18. Loss of consciousness or memory

☐ Yes ☑ No 19. Frequent or severe headaches

☐ Yes ☑ No 20. Dizziness/fainting spells/balance problems

☐ Yes ☑ No 21. Frequent motion sickness requiring medication

☐ Yes ☑ No 22. Stroke or Transient Ischemic Attack (TIA), brain tumor or other brain disorder

☐ Yes ☑ No 23. Any neurologic disorder or nerve problems including numbness and/or paralysis, not listed above

☑ Yes ☐ No 24. Attention deficit disorder with or without hyperactivity

☑ Yes ☐ No 25. Anxiety, depression, bipolar disorder, adjustment disorder, PTSD, or schizophrenia

☐ Yes ☑ No 26. Suicide attempt or thought (ideation) of suicide

☐ Yes ☑ No 27. Evaluation, treatment, or hospitalization for alcohol or substance use, abuse, addiction, or dependence (including illegal drugs, prescription medications, or other substances)

☑ Yes ☐ No 28. Any other psychiatric disorder, mental health evaluation/hospitalization

☑ Yes ☐ No 29. Back pain, joint problems, or orthopedic surgery

☐ Yes ☑ No 30. Amputation, prosthesis, or use of ambulatory devices (cane, walker, braces, etc.)

☐ Yes ☑ No 31. Fractures, recurrent dislocations or limitation of motion of any joint

☐ Yes ☑ No 32. Have you ever been signed off as sick or repatriated for medical reasons within the last six years?

☐ Yes ☑ No 33. Any diseases, surgeries, cancers, illnesses, or disabilities not listed on this form?

☐ Yes ☑ No 34. Any hospital admissions within the last six years not listed elsewhere in this Section?

CG-719K (01/14)
Previous Editions Obsolete

Applicant Name: *(Last, First, MI,* ███

Date of Birth: *(MM/DD/YYYY* ███

Page 1 of 5

## Section II(b): Medical Conditions - To be completed by the Medical Practitioner

**Instructions:** For each "YES" answer, identify the item numbers, the condition/diagnosis, date of onset or diagnosis, any treatment required or received, the current status of the condition, and any limitations due to the condition. As applicable, attach supporting documentation to verify findings. Additional sheets may be added as needed being sure applicant name and date of birth appear on each additional sheet.

| Number | Additional Information *(Please Print)* |
|---|---|
| 14 | Allergic to Keflex |
| 25 | ADHD - no meds |
| 28 | Bipolar, depression - no meds |
| 29 | Back Pain - Occasional back pain |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## Section III: Medications - To be completed by the Applicant and reviewed by the Medical Practitioner

Applicants who are required to complete a general medical exam are required to report all prescription medications prescribed, filled or refilled, and/or taken within 30 days prior to the date that the applicant signs the CG-719K. In addition, all prescription medications, and all non-prescription (over-the-counter) medications including dietary supplements and vitamins, that were used for a period of 30 or more days within the last 90 days prior to the date that the applicant signs the CG-719K or approved equivalent form, must also be reported.

The information reported by the applicant must be verified by the verifying medical practitioner or other qualified medical practitioner to the satisfaction of the verifying medical practitioner to include the following two items: **(1)** Report all medications (prescription and non-prescription), dietary supplements, and vitamins. **(2)** Include dosages of every substance reported on this form, as well as the condition for which each substance is taken.

Additional sheets may be added by the applicant and/or medical practitioner if needed to complete this section *(include applicant name and date of birth on each additional sheet)*.

If none, check "NONE"  ☑ NONE

| Applicant *(Please Print)* | Medical Practitioner *(Please Print)* |
|---|---|
| | States was on ability as an adolescent. Has not been treated since then. |

CG-719K (01/14)
Previous Editions Obsolete    Applicant Name: *(Last, First, Ml.)*    Date of Birth: *(MM/DD/YYYY)*    Page 2 of 5

REC-002170

# REPORT OF MEDICAL EXAMINATION

Sections IV and V should be completed by the Medical Practitioner or other medical staff to the satisfaction of the Medical Practitioner.

## Section IV: Vision

The Medical Practitioner must indicate test used and results (number of errors). Additional information must be reported in Section VII. Color sensing lenses (e.g. X-Chrome) are prohibited.

### a. Visual Acuity

| Distant Uncorrected | If Necessary, Distant Corrected To | Field of Vision |
|---|---|---|
| Right: 20/ 20 | Right: 20/ | This applicant must have a 100-degree horizontal field of vision. |
| Left: 20/ 20 | Left: 20/ | ☑ Normal  ☐ Abnormal |

### b. Color Vision *(check one)*

*The following color sense testing methodologies are acceptable*

☐ AOC (1965) - (6 or fewer errors on plates 1-15)

☐ AOC-HRR (2nd Edition) - (No errors in test plates 7-11)

☐ HRR PIP (4th Edition) - (No errors in test plates 5-10)

☐ Richmond (2nd and 4th Edition) - (6 or fewer errors)

☑ Titmus Vision Tester/OPTEC 2000 - (No errors on 6 plates)

☐ OPTEC 900 (colored lights) Test per instruction booklet

☐ Farnsworth D-15 Hue Test *(attach test results)* *(Engineer/radio officer/tankerman/MODU only)*

☐ Ishihara pseudoisochromatic plates test, 14 plate (5 or less errors)

☐ Ishihara pseudoisochromatic plates test, 24 plate (6 or less errors)

☐ Ishihara pseudoisochromatic plates test, 38 plate (8 or less errors)

☐ Farnsworth Lantern (colored lights) Test per instruction booklet

☐ Dvorine pseudoisochromatic 15 plate test (6 or less errors)

☐ An alternative test approved by the Coast Guard *(Indicate test)*

### Color Vision Testing Results:

☑ Passed  ☐ Failed  Number of Errors: ___

If color vision test is failed, can the Applicant distinguish red, green, blue, and yellow:  ☐ Yes  ☐ No

## Section V: Hearing

An applicant with normal hearing by forced whispered voice ≥ 5 feet with or without hearing aids does not need to complete either the audiometer test or the functional speech discrimination test.

☑ Normal Hearing    ☐ Abnormal Hearing    ☐ Hearing Aid Required

(a) If hearing is abnormal, then perform either a functional speech discrimination test at 65dB or an audiogram documenting thresholds and averages as indicated below. Both aided and unaided values should be recorded for applicants requiring hearing aids.

(b) All applicants with an unaided threshold > 30dB in the better ear should have functional speech discrimination testing performed at 65dB.

(c) Refer to Medical and Physical Evaluation Guidelines for Merchant Mariner Credentials from the NMC website (http://www.uscg.mil/nmc/medical/default.asp) for further guidance. Report any additional information or comments in Section VII.

| Audiometer Threshold Value | 500Hz | 1,000Hz | 2,000Hz | 3,000Hz | Average |
|---|---|---|---|---|---|
| Right Ear (Unaided) | | | | | |
| Left Ear (Unaided) | | | | | |
| Right Ear (Aided) | | | | | |
| Left Ear (Aided) | | | | | |

**Functional Speech Discrimination Test @ 65dB, if required by instruction (b) above**

Right Ear (Unaided): ___ %

Left Ear (Unaided): ___ %

Right Ear (Aided): ___ %

Left Ear (Aided): ___ %

CG-719K (01/14)
Previous Editions Obsolete    Applicant Name: *(Last, First, MI.)* ████████    Date of Birth: *(MM/DD/YYYY)* ████    Page 3 of 5

REC-002171

## Section VI: Physical Examination - Items 1-17 of this section must be completed by the Medical Practitioner.

Height *(inches only):*  6 7

Weight *(lbs):*  151

Body Mass Index *(BMI):*
*(For BMI > 40 refer to Section VII)*  23.9

Pulse Resting:  84

Initial Blood Pressure:  130/82

Repeat Blood Pressure
*(if needed):*

*Please make comments in the space provided on any item indicated as an "abnormal" system/organ.*

1. Head, Face, Neck, Scalp
   ☒ Normal  ☐ Abnormal

2. Eyes/Pupils/EOM
   ☒ Normal  ☐ Abnormal

3. Mouth and Throat
   ☒ Normal  ☐ Abnormal

4. Ears/Drums
   ☒ Normal  ☐ Abnormal

5. Lungs and Chest
   ☒ Normal  ☐ Abnormal

6. Heart
   ☒ Normal  ☐ Abnormal

7. Abdomen
   ☒ Normal  ☐ Abnormal

8. Upper/Lower Extremities
   ☐ Normal  ☐ Abnormal

9. Spine/Musculoskeletal
   ☒ Normal  ☐ Abnormal

10. Skin
    ☒ Normal  ☐ Abnormal

11. Lymphatic
    ☒ Normal  ☐ Abnormal

12. Neurologic
    ☒ Normal  ☐ Abnormal

13. Vascular System
    ☐ Normal  ☐ Abnormal

14. Genitourinary System
    ☒ Normal  ☐ Abnormal

15. General/Systemic
    ☒ Normal  ☐ Abnormal

16. Hernia  ☐ Yes
             ☒ No

17. Missing Extremities/Digit
             ☐ Yes
             ☒ No

**Additional Medical Comments**

| Item | Additional Information *(Please Print)* |
|------|------------------------------------------|
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |

CG-719K (01/14)
Previous Editions Obsolete

Applicant Name: *(Last, First, MI.)* ▓▓▓▓

Date of Birth: *(MM/DD/YYYY)* ▓▓▓▓

Page 4 of 5

## Section VII: Demonstration of Physical Ability - To be completed by the Medical Practitioner

1. The Medical Practitioner shall require that the applicant demonstrate the ability to meet the guidelines contained within Section VII of the CG-719K instructions. This does not mean, for example, that the applicant must actually don an exposure suit, pull an unchanged 1.5 inch diameter 50' fire hose with nozzle to full extension, or lift a charged 1.5 inch diameter fire hose to firefighting position. Rather, the Medical Practitioner may utilize alternative measures to satisfy himself or herself that the applicant possesses the ability to meet the guidelines in the third column. A description of the methods utilized by the medical practitioner should be reported in the **Comments** section provided below.
2. All practical demonstrations should be performed by the applicant without assistance. Any prosthesis normally worn by the applicant, and any other aid devices, may be used by the applicant in all practical demonstrations except when the use of such items would prevent the proper wearing of mandated personal protection equipment (PPE).
3. If the Medical Practitioner is unable to conduct the practical demonstration, the applicant should be referred to a competent evaluator of physical ability. The Coast Guard recognizes that all medical practitioners may not have the equipment necessary to test all of the tasks as listed. Equivalent alternate testing methodologies may be used. For further information, check the Medical and Physical Evaluation Guidelines for Merchant Mariner Credentials (http://www.uscg.mil/nmc/medical/default.asp).
4. If the applicant is unable to perform any of the following functions, the Medical Practitioner should provide information on the degree or the severity of the applicant's inability to meet the standards. The results of any practical demonstration or attendant physical evaluation should be recorded in the **Comments** section provided below.

**Physical Ability Results**

**COMMENTS:** *(Please Print)*

[x] Applicant has the physical strength, agility, and flexibility to perform all of the items listed in the instruction table.

[ ] Applicant does **NOT** have the physical strength, agility, and flexibility to perform all of the items listed in the instruction table.

## Section VIII: Food Handler Certification - To be completed by the Medical Practitioner

If Food Handler Certificate is sought by the applicant, is applicant free from communicable disease: [x] Yes [ ] No

## Section IX: Summary - To be completed by the Medical Practitioner

Applicant proof of identity provided: [x] Yes [ ] No

Overall fitness recommendation: [x] Fit for Duty
[ ] Not Fit for Duty  [ ] Needs Further Review

Comments: *(Please Print)*

**Medical Practitioner:**
My signature attests, subject to criminal prosecution under 18 USC § 1001, that all information reported by the medical practitioner is true and correct to the best of his/her knowledge and that the medical practitioner has not knowingly omitted or falsified any material information relevant to this form. My signature also attests that I have fully evaluated all examination tests and results submitted in support of this application.

| Last Name | First Name | M.I. | License Number | State |
|---|---|---|---|---|
| LeMaire | William | L | APO1092 | La. |

Signature: *(signature)*  Date (MM/DD/YYYY): 4/3/2018

MD/DO [ ]  PA [ ]  NP [x]

Office Street Address: 144 Valhi Lagoon Crossing

City: Houma  State: La  Zip Code: 70360

Phone Number: 985-223-0032

Occupational Medicine Services, LLC
144 Valhi Lagoon Crossing
Houma, Louisiana 70360
985.223.0032
www.omahouma.com

*(Place office address stamp here)*

## Section X: Applicant Certification - To be completed by the Applicant

My signature below attests, subject to prosecution under 18 USC § 1001, that all information provided by me on this form is complete and true to the best of my knowledge, and I agree that it is to be considered part of the basis for issuance of any medical certificate to me. I have not knowingly omitted any material information relevant to this form. I have also read and understand the Privacy Act Statement that accompanies this form.

Signature of Applicant: *(signature)*  Date (MM/DD/YYYY): 04/03/2018

CG-719K (01/14)
Previous Editions Obsolete
Applicant Name: *(Last, First, MI.)*  Date of Birth: *(MM/DD/YYYY)*  Page 5 of 5

# FUNCTIONAL ABILITIES EVALUATION



**TECHNOLOGIES™**

## Client Information

**Client Name:**
**Address:**

**Dominant Hand:** Right Hand
**SSN:**

**Date of Birth:**
**Gender:** Male
**Height:** 67 inches
**Weight:** 151 lbs

## Employment Information

**Occupation:** Deckhand
**Employer:** REC Marine
**Address:**

**Work Status:** Currently working

**Start & Finish Date:** Apr 03, 2018
**Evaluators:** Pamela Boudreaux
Nick Toups MS
Director of Ergonomics
**Evaluation Time:** 18 Min

Pamela Boudreaux
X-Ray Tech

Nick Toups MS
Director of Ergonomics

Apr 03, 2018 2:07:50 PM

**Work Simulation ▶ Rope Hang**

| Rope Hang |
|-----------|
| CAPABLE |

OCCUPATIONAL MEDICINE SERVICES
144 VALHI LAGOON CROSSING HOUMA LA 70360  (985) 223-0032

All testing was completed using the FOCUS System, Data Management was compiled through ODES products of BTE Technologies

P. 1

REC-002174

**Hand Grip Strength** 

The JAMAR hand dynamometer was used in order to quantify grip strength and determine whether ███ ███ exerted consistent effort during grip strength testing. ███████ was tested using the standard hand grip protocol. ██████████ is right hand dominant. Normative data is based on the assumption that right and left hand dominant subjects, analyzed separately show little functional difference between their mean scores.[1, 2]



The client squeezes the hand grip dynamometer for a three second trial duration. A rest period of 5 seconds is given before testing the other hand. This process is repeated three times. The average of the three trials is compared to published normative data[1, 2].

## Standard Hand Grip

Apr 03, 2018 2:06:31 PM



|  | Left | Right |
|---|---|---|
| Trial #1 | 97.9 lbs. | 85.7 lbs. |
| Trial #2 | 97.7 lbs. | 81.1 lbs. |
| Trial #3 | 102.9 lbs. | 97.1 lbs. |
| Average | 99.5 lbs. | 88.0 lbs. |
| Maximum | 102.9 lbs. | 97.1 lbs. |
| COV | 2.4% | 7.6% |
| Diff L Vs. R | 13.1% | |

██████████ grip strength was compared to age and gender matched normative data. The published normal grip strength range for the left hand is from 82.7 lbs to 126.3 lbs.[1, 2] ██████████ displayed an average force of 99.5 lbs. which is considered in the normal range when compared to the normal population of the referenced study. The published normal grip strength range for the right hand is from 100.4 lbs to 141.6 lbs.[1, 2] ██████████ displayed an average force of 88.0 lbs. which is considered in the below normal range when compared to the normal population of the referenced study. The coefficient of variation was 2.4% for the left hand and 7.6% for the right hand. Values greater than 15% may be an indicator of inconsistent effort.

[1] Mathiowetz V, Kashman N, Volland G, Weber K, Dowe M, Rogers S. 1985. Grip and pinch strength: normative data for adults. Arch Phys Med Rehabil 66:69-74.

[2] Mathiowetz V, Wiemer D, Federman S. 1986. Grip and pinch strength: norms for 6- to 19- year olds. Am J Occup Ther 40(10):705-11.

OCCUPATIONAL MEDICINE SERVICES
144 VALHI LAGOON CROSSING HOUMA LA 70360  (985) 223-0032



P. 2

odes_data2006.mdb

**Dynamic Lifting - Floor to Waist 75 lbs (New)**

Apr 03, 2018 2:12:58 PM

The Dynamic Lifting - Floor to Waist 75 lbs (New) was conducted in order to determine ▮▮▮▮ ability to complete the task. A progressive loading method was used to determine ▮▮▮▮ capacity for the performance of dynamic lifting activities on a safe and dependable basis. Lifting was conducted between an initial height of inches and a final height of floor height for a total of 3 repetitions at each weight increment. The increase in the amount of weight lifted was in 15-pound increments.

In order to ensure safety in the administration of the testing protocol, ▮▮▮▮ heart rate was monitored on a real-time basis. A cut-off of 167 beats per minute, based upon 85 percent of the age-predictive maximum heart rate was used in order to ensure the safe administration of the dynamic lifting protocol. A rating of perceived exertion was also used in order to make certain ▮▮▮▮ was capable of continuing in the protocol without risk of injury.

During the course of testing ▮▮▮▮ heart rate increased from 106 beats per minute to a peak of 127 beats per minute at the final weight of 75 lbs. This represented a heart rate increase of 20% during the lifting protocol.

▮▮▮▮ demonstrated a safe weight lifting ability of 75 pounds. The reason for the conclusion of the dynamic lifting protocol was the fact ▮▮▮▮ met the job demand.



**Initial Heart Rate:** 106 BPM
**Peak Heart Rate:** 127 BPM
**Final Testing Heart Rate:** 127 BPM
**% Heart Rate Increase:** 20 %

■ During Testing   ■ Before & After Testing   -- Maximum Allowable HR

**Elapsed Time:** 03:42
**Recovery Time:** None

| Starting Height | inches | Exertion Rating Stop Point | Very Heavy |
|---|---|---|---|
| Ending Height | floor height | Heart Rate Cut Off | 85% of age adj. |
| Initial Weight | 30.0 lbs. | Maximum Test Duration | Unlimited |
| Weight Increments | 15.0 lbs. | Maximum Allowed Weight | 75 lbs. |
| Repetitions Per Weight | 3 Repetitions | Maximum Safe Weight Lifted | 75 lbs. |
| Rest Period Per Weight Cycle | 12 seconds | Job Demand Default | 75 lbs. |

**Cardiovascular Intake**

Apr 03, 2018

| | Resting Rate (Min) | Systolic (mm Hg) | Diastolic (mm Hg) |
|---|---|---|---|
| | 84 | 130 | 82 |

| Result | Safe to Test | Safe to Test | Safe to Test |
|---|---|---|---|

**OCCUPATIONAL MEDICINE SERVICES**
144 VALHI LAGOON CROSSING HOUMA LA 70360  (985) 223-0032

P. 6

odes_data2006.mdb

**Cynthia Dugas**

<div style="border:1px solid black; background:yellow;">
<b>EXHIBIT</b>

<u>D</u>
</div>

| | |
|---|---|
| **From:** | Daniel Sheppard <dsheppard@morrowsheppard.com> |
| **Sent:** | Monday, February 21, 2022 6:17 PM |
| **To:** | Kyle Khoury |
| **Cc:** | John Sheppard; Salvador J. Pusateri; Kristian Dobard; Cynthia Dugas; Alan Davis |
| **Subject:** | RE: Griffin v. REC Marine |

---

**EXTERNAL**

---

Kyle,

It may be useful for arrange for a teleconference to conference regarding the content of the reply.  Generally, I would not be opposed.  However, as the hearing is on Wednesday, we are place into a position where responding to a reply may not be feasible.  Feel free to call me if you would like to discuss.

As for discovery, as REC argues that Plaintiff's response to a question involving accidents and drivers' license suspensions is the means REC uses to determine injuries for prospective employees, please produce all applications that have an affirmative response to that question.

*PLEASE NOTE OUR NEW ADDRESS*
__

**Daniel E. Sheppard**



Morrow & Sheppard LLP
5151 San Felipe Street, Suite 100
Houston, Texas 77056
**T**:  713-489-4815  **F**: 713-893-8370
**E**: dsheppard@morrowsheppard.com

SEND ALL E-SERVICE TO:
msfiling@morrowsheppard.com

---

**From:** Kyle Khoury <kyle.khoury@pjgglaw.com>
**Sent:** Thursday, February 17, 2022 7:18 PM
**To:** Daniel Sheppard <dsheppard@morrowsheppard.com>
**Cc:** John Sheppard <jsheppard@morrowsheppard.com>; Salvador J. Pusateri <salvador.pusateri@pjgglaw.com>; Kristian Dobard <kristian.dobard@pjgglaw.com>; Cynthia Dugas <cynthia.dugas@pjgglaw.com>; Alan Davis <adavis@lawla.com>
**Subject:** Griffin v. REC Marine

---

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Daniel:

I am preparing a Reply Memorandum in Support of our Objection to the Magistrate Judge's Order. Please advise whether you have any objection to us seeking leave to file a Reply.

Also, last week we produced our responses to the plaintiff's discovery regarding the *McCorpen* defense. Please advise whether you plan to request any deposition or further discovery in relation thereto so we can get that done and keep our trial date. Thanks.

**Kyle Khoury**
*Partner*
Pusateri, Johnston, Guillot & Greenbaum, LLC



**Direct:** (504) 620-2380
**Main:** (504) 620-2500
**Fax:** (504) 620-2510
1100 Poydras St., Ste. 2250
New Orleans, LA 70163
www.pjgglaw.com

Confidentiality Notice: The information contained in this email and any attachments may be legally privileged and include confidential information intended only for the recipient(s) identified above. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, or copying of this email or its attachments is strictly prohibited. If you have received this email in error, please notify the sender by return email and permanently delete the email and any attachments immediately. Please do not retain, copy, or use this email or any attachments for any purpose, nor disclose all or any part of its contents to any other person. Pusateri, Johnston, Guillot & Greenbaum, LLC operates as a limited liability company.





EXHIBIT

E

P.O. Box 774 • Galliano LA 70354
Ph: (985) 325-3366 • Fax: (985) 325-3368
www.recmarinelogistics.com

## Application for Employment

*It is our policy to provide equal employment opportunity to all qualified persons without regard to race, creed, color, religious belief, sex, age, national origin, ancestry, physical or mental handicap, or veteran status.*

## Applicant Information:

Date: _4-19-16_

Name: _Griffin_          _Mc Author_ X          _James_
         (Last)                 (First)            (Middle)

Mailing
Address: ███████████████████████████████████

Physical
Address: ███████████████████████████████████

Social Security #: ███████████████████

Home Telephone: ████████████  Cell Phone: ████████████

Position applied for: _Engineer_          Desired Wage $_____

Desired Start Date: _____  Desired Schedule: _____

Have you ever worked for REC Marine before?                    Yes or (No)?
If Yes, when? _____

Are you a US Citizen or can provide authorized to work in the US
on an unrestricted basis?                                       (Yes) or No?

Are you at least 18 years old?                                  (Yes) or No?

REC Marine Logistics, LLC          Employment Application          Rev. 10/2014

## **AdditionalInformation:**

Do you have a Driver's License or State Issued Identification          Yes or **No**?
If so, provide Driver's License or State ID Number: _____

State of Issue: _____          Expiration Date: _____

Have you had any motor vehicle accident or had your license suspended during
the past five (5) years?                                                        Yes or No?

If so, how many occurrences? _____

Are you a veteran of the United States Military?                      Yes or No?
        If yes, did you receive an Honorable Discharge?             Yes or No?

Are you able to perform the essential functions of the duties of the job
for which you are applying with or without reasonable accommodations?     Yes or No?

Have you EVER failed or refused a Drug or Alcohol Test job
related or not?                                                          Yes or No?
**If yes**, provide the date and company that required the test: _____

Have you EVER been convicted of any criminal offense? (Including, but not limited to DUI, DWI,
felony, or misdemeanor)                                                 Yes or No?
If yes, please fully describe the circumstance:
_Yes for fighting about 4 years ago_ _____
_____
_____

Have you ever been a party (either plaintiff or defendant) to a lawsuit or civil action? Yes or No?
If so, for each lawsuit provide the following. (Use the back, if additional space is needed.)

| Parties to Lawsuit | Court or Parish/County | Brief Explanation of Claims |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Education History:**

| Education | Name of school | Number of years | Did you graduate? | Subjects studied |
|---|---|---|---|---|
| Grammar school | | | | |
| High School | Ville Platte High | 5 | NO | |
| College | LIT | 1½ | Yes | Nursing aid |
| Trade School | Vo-Tech | 1 | NO | Welding |

**Marine Experience, Licenses, Certifications and Skills:**

| | |
|---|---|
| Do you have a Transportation Worker Identification Credential (TWIC)? | (Yes) or No |
| Do you have SafeGulf Card? | (Yes) or No |
| Do you have a current Rigging Card? | (Yes) or No |
| Do you have CPR / First Aid Certifications? | Yes or (No) |
| Do you have Water Survival Training? | Yes or No |
| Do you have Fire Watch Certification? | Yes or No |
| Do you have a Merchant Mariner Credential, (MMC)? | Yes or No |

Additional skills you feel are relevant for the desired position: (Type of USCG License, all valid Safety Training)

_____

_____

Have you had any accidents operating any vessel in the last five (5) years? If so, provide explanation for each occurrence:

_____

_____

Have you had any suspension or revocation of a marine license you have held in the last five (5) years?  If so, provide explanation for each occurrence:

_____

_____

REC Marine Logistics, LLC          Employment Application          Rev. 10/2014