**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MCARTHUR GRIFFIN** <br>                 **Plaintiff** | **CIVIL ACTION NO:  3:20-cv-00092** |
| **VERSUS** | **DISTRICT JUDGE:** <br> **HON. BRIAN A. JACKSON** |
| **REC MARINE LOGISTICS, LLC, ET AL** <br>                 **Defendants** | **MAGISTRATE JUDGE:** <br> **HON. ERIN WILDER-DOOMES** |

**PROPOSED JURY INSTRUCTIONS**

**NOW INTO COURT,** through undersigned counsel, come Plaintiff, McArthur Griffin, and Defendants, REC Marine Logistics, LLC, Offshore Transport Services, LLC, and QBE Insurance (Europe) Limited, which hereby request that the Court issue the following instructions to the jury:

**Fifth Circuit Pattern Jury Instructions**

The following instructions are requested from the Fifth Circuit Pattern Jury Instructions:

1. 1.1 "Instructions for Beginning of Trial";

2. 1.2 "Preliminary Instructions to Jury";

3. 2.1 "First Recess";

4. 2.2 "Stipulated Testimony";

5. 2.3 "Stipulations of Fact";

6. 2.4 "Judicial Notice";

7. 2.5 "Discontinuance as to Some Parties";

8. 2.6 "Limiting Instruction"2.7 "Charts and Summaries";

9. 2.8 "Demonstrative Evidence";

2.9  "Witness Not Called"2.11 "Impeachment by Witness's Inconsistent Statements";  (Plaintiff objects to this instruction.   The jury does not need and should not be given instruction on how to weigh the credibility of the testimony).

10. 2.12 "Impeachment by Witness's Felony Conviction";  Plaintiff objects to this instruction. Defendants sole evidence of felony conviction relates to Plaintiff.  This instruction should not be given for the reasons stated in Plaintiff's Omnibus Motion in Limine.2.13 "Deposition Testimony";

11. 2.14 "Transcript of Recorded Conversation";   Plaintiff objects to this instruction. Defendants have not produced a transcript of a recorded conversation.  To the extent this seeks to backdoor deposition testimony into evidence, the instruction should not be given as deposition transcripts should not be wholesale admitted to evidence.

Defendants respond that this would simply be a transcription of the Plaintiff's post-incident recorded statement, which was listed as an Exhibit in the Pre-Trial Order, solely to assist the jury.

12. 2.16 "Bias—Corporate Party Involved";

13. 3.1 "Jury Charge";

14. 3.2 "Burden of Proof: Preponderance of the Evidence";

15. 3.3 "Evidence";

16. 3.4 "Witnesses";

17. 3.5 "Expert Witnesses";

18. 3.6 "No Inference from Filing Suit";  Plaintiff objects to this instruction, in particular the language "Anyone may make a claim and file a lawsuit" as untrue and misleading.  There are protections against frivolous lawsuits and lawsuits brought in bad faith or without evidence.  The Defendants had the opportunity to file motions for dismissal and summary

judgment. *See also Ferreira v. City of Binghamton*, 2016 WL 4991600, *15 (N.D. NY 2016) (granting unopposed motion in limine as to the comment "Anyone Can File A Lawsuit").

19. 3.7 "Duty to Deliberate; Notes" (Defendants defer to the Court and its standard practice as to whether jurors will or will not be allowed to take notes; Plaintiff requests that the jurors be permitted to take notes);

20. 4.3 "Jones Act—Unseaworthiness—Maintenance and Cure (Seaman Status Not Contested)";

21. 4.4 "Jones Act—Negligence";

22. 4.5 "Unseaworthiness"; (The parties submit that after instructing the jury on unseaworthiness, the Court should explain that in circumstances wherein a vessel is under bareboat charter, the bareboat charterer assumes the responsibility for providing a seaworthy vessel just as if it were the owner. Proposed instruction is set forth below, as there is no Fifth Circuit Pattern Instruction);  Plaintiff objects to the additional instruction.

23. 4.6 "Causation";

24. 4.7 "Contributory Negligence"—(Defendants' contend this instruction should include the portion of the Pattern Jury Instruction pertaining to "concealment of material information in hiring." It should be noted that this is separate from any intentional concealment claim that could be made in connection with the *McCorpen* defense to Plaintiff's claim for maintenance and cure. Plaintiff objects to the additional instruction.  Plaintiff did not conceal "material information in hiring" because, *inter alia*, Defendants admittedly chose not to ask Plaintiff any questions related to preexisting injuries and/or physical condition. Plaintiff reserves the right to brief this issue further.

25. 4.8 "Damages";

26. 4.9 "Punitive Damages"; (Defendants object to Pattern Instruction 4.9, and would reference the footnotes to Pattern Instruction 4.9 as support for the objection.)

27. 4.10 "Maintenance and Cure Claims and Their Relationship to Jones Act and Unseaworthiness Claims—Punitive Damages for Willful Withholding of Maintenance and Cure (Defendants' aver that the optional portion of Pattern Instruction 4.10 regarding punitive damage for failure to pay maintenance and cure should not be given.). Plaintiff avers that the instruction regarding punitive damages should be given. Plaintiff demanded that Defendants make maintenance and cure payments at a reasonable rate and pay for Plaintiff's medical treatment and have sought punitive damages.

28. 15.1 "Consider Damages Only if Necessary";

29. 15.2 "Compensatory Damages" (The elements of compensatory damages for this case are set forth in Pattern Instruction 4.8); *see also* Verdict Form. Plaintiff reserves the right to seek all damages permitted.

30. 15.3 "Injury/Pain/Disability/Disfigurement/Loss of Capacity for Enjoyment of Life" (elements of damages should track those in Pattern Instruction 4.8); *see also* Verdict Form. Plaintiff reserves the right to seek all damages permitted.

31. 15.5 "Mitigation of Damages";

32.

### **Additional Proposed Jury Instructions**

33. Federal Civil Jury Instruction 1.26 from the U.S. Court of Appeals for the Seventh Circuit entitled "Dismissed/Withdrawn Defendant"; Plaintiff objects as this instruction is not necessary unless former parties are mentioned.

34. Sometimes the owner of a vessel will charter that vessel to another company. There is a certain type of charter called a demise (or bareboat) charter. Under a demise (bareboat) charter, the entire command, possession, and control of the vessel is turned over to the charterer.[1] The charterer furnishes the crew and maintenance for the vessel.[2] Although the owner retains legal title, the charterer is considered the temporary owner, or commonly termed the owner *pro hac vice*.[3] Under this type of charter, the owner is obligated to deliver a vessel that is seaworthy.[4] After delivery, the seaworthiness is the responsibility of the charterer unless otherwise provided for in the contract between the owner and the charterer.[5]  Plaintiff objects to this instruction as shipowners owe those aboard its vessel the duty of exercising reasonable care under the circumstances of each case for their own safety. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Ross v. John E. Graham & Sons*, 189 F.3d 466 (5th Cir. 1999).

35. The Direct Action Statute grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured. The Direct Action Statute was enacted to give special rights to tort victims.  The Direct Action Statute affords a Plaintiff the right to sue the insurer directly when the liability policy covers a certain risk. *Soileau v. Smith True Value & Rental*, 2012-1711 La. 6/28/13, 11, 144 So. 3d 771, 780. (QBE objects to this instruction as it believes this issue is one for the Court and not the jury)

---

[1] Thomas J. Schoenbaum, Admiralty & Maritime Law §11.3 (6th Ed.); *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993)
[2] *Forrester*, 11 F.3d at 1215.
[3] *Id.*
[4] *Id.*
[5] *Id.*

36.     To establish general maritime negligence, a plaintiff need only demonstrate that there was a duty owed by the defendant to the plaintiff, a breach of that duty, injuries sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury. *In re Great Lakes Dredge and Dock Company*, LLC, 624 F.3d 201, 211 (5th Cir. 2010); *Canal Barge Company v. Torco Oil Company*, 220 F.3d 370, 376 (5th Cir. 2000). (Defendants object to this instruction, as the negligence claims in this case are governed by the Jones Act rather than the general maritime law).

37.     Under maritime law, a defendant owes a plaintiff a duty of ordinary care. In re Great Lakes Dredge and Dock Company, LLC, 624 F.3d 201, 211 (5th Cir. 2010); *Daigle v. Point Landing, Inc*., 616 F.2d 825, 827 (5th Cir.1980). (Defendants object to this instruction, as the negligence claims in this case are governed by the Jones Act rather than the general maritime law.)

38.     The applicable burden of proof that a seaman must satisfy in order to prevail in a claim or Jones Act negligence is the reduced burden of "featherweight" causation which only requires the seaman to prove that his employer's negligence played any part, even the slightest, in producing the injury for which damages are sought.[6] (Defendants object to this instruction, as the standard of causation applicable to this case is fully covered by the Fifth Circuit Pattern Instructions above).

39.     A shipowner owes those aboard its vessel the duty of exercising reasonable care under the circumstances of each case for their own safety. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Ross v. John E. Graham & Sons*, 189 F.3d 466 (5th Cir. 1999). (Defendants object to this instruction, as the negligence claims in this case are governed by the Jones Act rather than the general maritime law).

---

[6] <u>Monroe v. Cooper/T. Smith Stevedoring Co., Inc.</u>, 2009 WL 1309786, at *2 (M.D. La. May 11, 2009)

40.    Jones-Act employers have a non-delegable duty to furnish their seamen with a safe place to work. *Alexander v. Global Fabrication, L.L.C.*, 2011 WL 2899124 (E.D.La. 2011). (Defendants object to this instruction, as it is fully covered by the Fifth Circuit Pattern Instructions above).

41.    Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person's potential. Earning capacity is not necessarily determined by actual loss. While the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity.  The plaintiff need not be working or even in a certain profession to recover this type of award.  What is being compensated is the plaintiff's lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity. (Defendants object to this instruction as no authority is cited, and the calculation of damages is fully addressed by the Fifth Circuit Pattern Instructions above.)

42.    In order to recover for impairment of earning capacity, a plaintiff must prove two things. First, a plaintiff must demonstrate that before the incident made the basis of this suit, a plaintiff had a capacity to earn money. Second, a plaintiff must show that plaintiff's capacity, if it existed, was diminished through the defendant's negligence.

Factors to consider in fixing awards for loss of earning capacity include: age, work life expectancy, appropriate discount rate, the annual wage rate increase, prospects for rehabilitation, probable future earning capacity, loss of earning capacity, and the inflation factor or decreasing purchasing power of the applicable currency.  *Gossett v. Wal-Mart Stores, Inc.*, 2007 WL 628116 (E.D.La. 2007). (Defendants object to this instruction, as the calculation of damages is fully addressed by the Fifth Circuit Pattern Instructions above.)

43. A defendant takes its victim as it finds him and is responsible for all damages resulting from its tortious conduct. (Defendant objects to this instruction, as it is unnecessary in light of the Fifth Circuit Pattern Instructions above).

44. A seaman such as McArthur Griffin is not contributorily negligent for carrying out orders that result in his own injury, even if he recognizes possible danger.  This includes the seaman's failure to exercise stop work authority.  This sets forth the rule long-established in *Williams v. Brasea, Inc*., 497 F.2d 67, 73 (5th Cir. 1974). *See also Ledet v. Smith Marine Towing Corp*., 455 Fed. Appx. 417, 422 (5th Cir. 2011) (following and affirming same rule). *Granger v. Odyssea Vessels, Inc*., 2015 U.S. Dist. LEXIS 79786 (E.D. La. June 18, 2015) (applying rule to "stop work authority"). (Defendants object to this jury instruction as an incorrect and incomplete statement of the law. Various Federal Courts have found that stop work authority is a valid consideration in assessing a seaman's contributory negligence. *Howard v. Offshore Liftboats, LLC*, 2016 WL 69631 (E.D. La. 2016); *Gotreaux v. Apache Corp.,* 2015 WL 5315610 (E.D.La. 2015); *Mingo v. Great Lakes Dredge & Dock Co., LLC of Louisiana*, 2019 WL 4690362 (E.D. La. 2019).)

45. The basic law in Louisiana on this kind of case states that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  The word "fault" is a key word.  "Fault" means acting as you should not have acted or failing to do something which you should have done. The law regards those actions as being below the standard which applies to the defendant's activities.

The law also provides that:

"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

The law further provides that:

"Masters and employers are answerable for the damage occasioned by their servants and

overseers, in the exercise of the functions in which they are employed."

The standard which the law applies to the defendant's actions will change according to the surrounding circumstances. These standards are sometimes set by the legislature in statutes, and sometimes they are set by the courts. At the end of the trial, I will tell you the standards which apply to the defendant's conduct in this particular suit, and you will have to accept those standards.

Your job will then be to decide whether the plaintiff has proved that it is more likely true than not true that the defendant's actions fell below those standards. In legal terms, that would mean that the defendant is "at fault." In this particular case, the plaintiff says that the defendant has committed the kind of fault that the law calls "negligence." But this is only one of the parts of McArthur Griffin's case, and in order to succeed, McArthur Griffin must establish all of the essential parts of his case. Questions addressed to all of these parts of the case will be given to you in the "verdict form" that you will get at the end of these instructions and that you will take with you to fill out as a part of your deliberations. The other parts of the McArthur Griffin 's case are:

(1) that the injury McArthur Griffin suffered was, in fact, caused by the conduct of the defendant; and

(2) that there was actual damage to the McArthur Griffin's person or his property.

The plaintiff must establish that all of these essential parts of his case are more likely true than not true. Questions addressed to all of these parts of the case will be given to you in the "verdict form" that you will receive at the end of the case and that you will take with you to fill out as a part of your deliberations.

When I say that the plaintiff has to prove that the defendant's actions were a cause of his injury, I don't mean that the law recognizes only one cause of an injury.

You will have to decide, as to each defendant, whether his conduct was a contributing factor

in causing this incident. To make this determination, you should consider whether it is more likely than not that the defendant's conduct created a force or series of forces which remain in continuous and active operation up to the time of the harm.

The next part of the plaintiff's case that you'll have to consider is whether the defendant's actions were below the standard required under the law for his actions. In this case, the basic standard is that the defendant should have acted as a reasonably prudent person would have acted under the same or similar circumstances. The standard of care is not that of an extraordinarily cautious individual or an exceptionally skilled person, but rather that of a reasonably prudent person acting in the same or similar circumstances.

A reasonably prudent person will avoid creating an unreasonable risk of harm. In deciding whether the defendant violated this standard of conduct, you should weigh the likelihood that someone might have been injured by his conduct and the seriousness of that injury if it should occur against the importance to the community of what the defendant was doing and the advisability of the way he was doing it under the circumstances.

A reasonably prudent person will normally obey the statutes that apply to his conduct. But in exceptional circumstances, even a violation of a statute might nonetheless be reasonable conduct.

The plaintiff has the burden of proving the following elements by a preponderance of the evidence, which means that the facts the plaintiff is seeking to prove are more likely true than not true. He has to demonstrate:

(1) that the injury which he says he suffered was caused in whole or in part by the conduct of the defendant;

(2) that the conduct of the defendant was below the standards which I have told you are applicable to the defendant's conduct; and

(3) that there was damage to the plaintiff's person or his property.

If you believe that the plaintiff has established that these three elements are more likely true than not true, then the plaintiff is entitled to recover and you should return a verdict for the plaintiff. If the plaintiff has failed to establish that these three elements of his case are more likely true than not true, then you should return a verdict for the defendant.

If the defendant contends that the plaintiff was at fault as well and his fault contributed to his own injury, then the defendant must persuade you that it is more likely true than not true that the plaintiff was at fault.

You can assign any percentage of fault to the plaintiff or to any or all of the defendants that you want, but the total of all of the percentages must be 100%. If you're persuaded by the defendant's evidence that the only reason the plaintiff was injured was because of the plaintiff's own sub-standard conduct, you may return a verdict for the defendant in response to the questions on the verdict form by assigning 100% fault to the plaintiff. If the defendant does not persuade you that the plaintiff was at fault and the plaintiff has otherwise proved his case as I have described to you, then you should return a verdict for the plaintiff without assigning any percentage of fault to the plaintiff.

If you decide to return a verdict for the plaintiff, then you should award an appropriate amount of money to the plaintiff according to the instructions which I have given you on the subject of damages.

You may not decide on a percentage of fault or an amount of damages by agreeing in advance to an average of various amounts suggested by individual jurors. You must reach these conclusions by your own independent consideration and judgment. All of you must ultimately agree on the percentage or the amount in question, or on a denial of an award altogether.

(Defendants object to proposed instruction No. 45, as it appears to set forth principles of negligence under Louisiana law rather than the Jones Act.)

46.  An employer is entitled to rely on certain legal defenses to a claim for maintenance and cure. In a case called *McCorpen v. Central Gulf Steamship Corp.,* the U.S. Fifth Circuit Court of Appeals held that a seaman who "knowingly fails to disclose a pre-existing physical disability during his [or her] pre-employment physical examination" may not recover maintenance and cure. *Meche v. Doucet*, 777 F.3d 237, 244. In order to establish a *McCorpen* defense, an employer must show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit. *Meche*, 777 F.3d at 244-45. Where the employer does not require a pre-employment medical examination or interview, the rule is that a seaman must disclose a past illness or injury only when in his own opinion the employer would consider it a matter of importance. *Id.*Plaintiff objects to this instruction in part.  There was no pre-employment physical conducted by REC Marine.  Therefore, the instruction discussing the three prongs is irrelevant as to whether the *McCorpen* defense even applies.  Further, the instruction should advise the jury that REC Marine is not allowed to rely on the *McCorpen* defense if  "there existed reasonable grounds for Mr. Griffin's good-faith belief that he was fit for duty."  *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 173 (5th Cir. 2005).

Respectfully submitted,

MORROW & SHEPPARD LLP

  /s/ Daniel E. Sheppard   
John D. Sheppard
Attorney-In-Charge
(admitted *pro hac vice*)
Daniel E. Sheppard
State Bar No. 38076
P. Hogan Leatherwood
(admitted *pro hac vice*)
5151 San Felipe Street, Suite 100
Houston, Texas 77056
713.489.1206 tel
713.893.8370 fax

All E-Service To:
msfiling@morrowsheppard.com
jsheppard@morrowsheppard.com
dsheppard@morrowsheppard.com
hleatherwood@morrowsheppard.com

**COUNSEL FOR PLAINTIFF**

Of counsel:

Brilliant Clayton
State Bar No. 36829
Clayton, Fruge, Ward, & Hendry
3741 La Hwy 1 S.
Port Allen, LA 70767
225.344.7000 tel
225.383.7631

*/s/ Kyle A. Khoury* **(signed with permission)**
Salvador J. Pusateri, (#21036)
Kyle A. Khoury, T.A. (#33216)
Kristian B. Dobard (#36997)
**PUSATERI, JOHNSTON, GUILLOT
& GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
Kristian.Dobard@pjgglaw.com
**ATTORNEYS FOR REC MARINE
LOGISTICS, LLC AND OFFSHORE
TRANSPORT SERVICES, LLC**

_/s/Alan Davis_ (signed with permission)

Alan Davis
State Bar No. 31694
adavis@lawla.com
Lorin R. Scott
State Bar No. 38888
lscott@lawla.com
Lugenbuhl, Wheaton, Peck, Rankin, & Hubbard
2772 Pan-American Life Center
601 Poydras Street
New Orleans, Louisiana 70130
504.568.1990 tel
504-310-9195 fax
COUNSEL FOR DEFENDANT, QBE Insurance
(Europe) Ltd.: