UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>    Plaintiff<br><br>**VERSUS**<br><br>**REC MARINE LOGISTICS, LLC, ET AL**<br>    Defendants | **CIVIL ACTION NO: 3:20-cv-00092-BAJ-EWD**<br><br>**DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON**<br><br>**MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

## OBJECTIONS TO PROPOSED TRIAL EXHIBITS

**NOW INTO COURT,** through undersigned counsel, come defendants, REC Marine Logistics, LLC and Offshore Transport Services, LLC (hereinafter sometimes referred to as "Defendants") which respectfully submit the following objections to certain proposed trial exhibits:

### Exhibit 3 (GOL HSE Manual)

Plaintiff seeks to include as an exhibit the entire Health, Safety, and Environmental (HSE) Manual utilized by REC Marine. The manual is over 500 pages long, the vast majority of which is wholly irrelevant to the issues in this case. For instance, the manual contains sections pertaining to the following topics: (1) Alcohol, Firearms, and Controlled Substances; (2) Hydrogen Sulfide; (3) Heat Illness and Prevention; (4) Hurricane Evacuation Plan; (5) Waste Management; and (6) Sexual Harassment. This is merely a fraction of the sections in the manual that have no relation to any issue in the case. Federal Rule of Evidence 402 states plainly that "Irrelevant evidence is not admissible." As such, Plaintiff should be limited to including such pages or sections from the manual as are reasonably related to the issues in this case. Furthermore, REC Marine's corporate

representative, who is the individual likely to be questioned about the manual, should have fair warning of the portions about which he will be questioned.

### Exhibit 4 (Specification Sheets for the M/V DUSTIN DANOS)

Exhibit 4 is entitled "Specification Sheets for the M/V DUSTIN DANOS." However, only one of the three documents included within the exhibit is the actual Specification Sheet for the vessel. Another is the Certificate of Inspection issued by the U.S. Coast Guard for the M/V DUSTIN DANOS. Defendants have no objection to the actual Specification Sheet or the Certificate of Inspection being admitted as exhibits. However, Defendants do object to the third document included within the exhibit, which was originally submitted by Plaintiff in opposition to a Motion for Summary Judgment filed by two former defendants in the case, Gulf Offshore Logistics, LLC and GOL, LLC. The document is an unauthenticated, undated printout from a website called Equasis. Plaintiff argued that it supported his contention that Gulf Offshore Logistics was an operator of the M/V DUSTIN DANOS. Of course, the Court subsequently issued an Order Granting the Motion for Summary Judgment and dismissing Gulf Offshore Logistics and GOL from this lawsuit. (R. Doc. 102). As such, apart from the authenticity concerns regarding this document, it is also irrelevant and therefore should be excluded pursuant to Federal Rule of Evidence 402.

### Exhibit 38 (Defendants' Discovery Responses)

The documents proposed by Plaintiff to be included within Exhibit 38 include various Defendants' responses to discovery requests, including Interrogatories, Requests for Production of Documents, and Requests for Admission. As noted above, this case originally involved two defendants (Gulf Offshore Logistics, LLC and GOL, LLC) which have now been dismissed. Some of the discovery responses included within Exhibit 38 were submitted jointly on behalf of current

and former defendants. Defendants do not object to these. However, Plaintiff also includes Gulf Offshore Logistics, LLC's responses to Requests for Admission and GOL, LLC's responses to Requests for Admission. Not only are these entities no longer defendants, but their responses to Requests for Admission are irrelevant. As such, they should be excluded pursuant to Federal Rule of Evidence 402.

### Exhibit 39 (Communications Requesting Payment of Maintenance and Cure)

Proposed Exhibit 39 contains a series of correspondence from Plaintiff's counsel to the former attorney who represented the Defendants. The various items of correspondence pertain to maintenance and cure issues. They are rife with unsubstantiated and unfounded assertions made by Plaintiff's counsel, including claims that the Plaintiff's maintenance checks were being "withheld and delayed on purpose," and that a decision to discontinue maintenance and cure benefits was "in bad faith and designed to hurt [the Plaintiff]." The correspondence is filled with argument of counsel and contains citation to legal authority regarding punitive damages and "other severe penalties." Exhibit 39 is clearly hearsay within the meaning of Federal Rule of Evidence 801, without any recognized exception. Moreover, the correspondence contains hearsay within hearsay, specifically when Plaintiff's counsel states that "Mr. Griffin was specifically told that maintenance and cure was being stopped in retaliation because he filed a lawsuit."

Admission of Exhibit 39 into evidence would also be highly prejudicial. Clearly Plaintiff's counsel will not be a testifying witness in the case, and therefore Defendants would be unable to question opposing counsel in an effort to show that the assertions made in the correspondence are false.

### Exhibit 42 (Time Charters and Assumption Agreements)

Exhibit 42 is a Blanket Charter Agreement between Gulf Offshore Logistics, LLC and W&T Offshore, Inc. ("W&T"), along with a written assignment of the Agreement to GOL, LLC. It was initially believed that the M/V DUSTIN DANOS may have been under time charter to W&T at the time Plaintiff claims he was injured in the personnel basket incident. However, he testified at his deposition that the vessel was not working for W&T at the time. As such, the above-referenced Blanket Charter Agreement is irrelevant to any issue in the case and should be excluded pursuant to Federal Rule of Evidence 402.

### Exhibits 57 – 62 (Redacted Personnel Files)

As the Court is aware, REC Marine has asserted a *McCorpen* defense to Plaintiff's claim for maintenance and cure. To establish a *McCorpen* defense, an employer must show that (1) the seaman intentionally misrepresented or concealed medical facts; (2) the nondisclosed facts were material to the employer's decision to hire the seaman; and (3) a causal link exists between the withheld information and the injury that is the subject of the complaint. *Johnson*, 544 F.3d at 301 (citing *Brown v. Parker Offshore Drilling Corp.*, 410 F.3d 166, 171 (5th Cir. 2005)). The scope of discovery to which Plaintiff is entitled on the *McCorpen* defense has been a significant source of contention among the parties. Initially, Plaintiff requested that multiple defendants produce personnel records (including medical records) of other employees who had disclosed medical facts or pre-existing injuries before they were hired. Griffin claimed he needed the requested information in order to test the second prong (commonly referred to as the "materiality" prong) of the three-pronged *McCorpen* defense. (See Rec. Doc. 67-1, pg. 5). After extensive briefing on the issue, Magistrate Judge Wilder-Doomes ordered that, if REC Marine was granted leave of court

to assert the *McCorpen* defense, then Plaintiff's discovery should be limited to "the pre-employment disclosures of *REC Marine employees* in *similar job positions* with *similar previous injuries* as Plaintiff." (R. Doc. 75, pg. 4 emphasis in original). A "lookback period" from April 2016 through April 2018 was established. Once REC Marine was granted leave to assert the *McCorpen* defense, it promptly complied with Magistrate Judge Wilder-Doomes' Order, producing the redacted personnel and medical records of two individuals who were REC Marine deckhands in the relevant time period who disclosed injuries to their neck and/or back (the injuries for which REC Marine has asserted the *McCorpen* defense).

After producing the above-referenced documents, Plaintiff's counsel sent an informal request by email to defense counsel on February 21, 2022, requesting an entirely new set of documents from REC Marine. More particularly, counsel stated "as REC argues that Plaintiff's response to a question involving accidents and drivers' license suspensions is the means REC uses to determine injuries for prospective employees, please produce all applications that have an affirmative response to that question." The question on REC Marine's employment application to which Plaintiff is referring states "Have you had any motor vehicle accident or had your license suspended during the past five (5) years?" REC Marine had previously pointed out that two years before completing an employment application to work for REC Marine, Plaintiff filed a lawsuit related to a car accident in which he alleged injuries to his lower back and neck.[1] REC Marine further noted that Plaintiff did not disclose this prior accident (which resulted in injuries to his lower back and neck) despite the fact that REC Marine's employment application asked about any motor vehicle accidents within the past five years.[2]

---

[1] R. Doc. 69, pgs. 5-6
[2] *Id.*

5

Plaintiff contended that because REC Marine is claiming his "failure to disclose a motor vehicle accident on a form supports its *McCorpen* defense," he is entitled to the personnel records of other employees who disclosed that they had been in car accidents or had their drivers' licenses suspended. Again, the alleged purpose was so Plaintiff could test REC Marine's *McCorpen* defense. Yet Plaintiff demanded records of other employees who had disclosed car accidents even if any injuries resulting from such accidents were to body parts other than the neck or back (the only injuries for which REC Marine has asserted the *McCorpen* defense). Counsel for Mr. Griffin indicated that a motion to compel the records would be filed, even though a formal discovery request had never been issued. Rather than burdening the Court with needless briefing, REC Marine produced additional personnel files requested by the Plaintiff, reserving the right to object to the relevance of such documents should Plaintiff attempt to use them at trial. These are the personnel files listed as Exhibits 57 – 62. It is difficult to overstate just how far outside the bounds of relevance these documents are. For example, "Employee C" answered yes to the question about car accidents or driver's license suspension. However, it is clear, that he responded in that manner because of a license suspension within the preceding five years and <u>not</u> because of a car accident. Furthermore, the only injury Employee C disclosed on his pre-employment medical questionnaire was a broken forearm in 2002. The Plaintiff in the instant case is not alleging a broken forearm, and REC Marine is certainly not asserting a *McCorpen* defense relative to a forearm injury.

Plaintiff also fundamentally misconstrues REC Marine's argument with respect to his prior car accident. REC Marine is not claiming it has a *McCorpen* defense simply because Plaintiff lied about a car accident on his April 2016 employment application. Rather, REC Marine's position is that it has a *McCorpen* defense because plaintiff did not disclose that only two years before applying to work for REC Marine he filed a lawsuit claiming "severe and permanent injuries to…his lower back,

back, and neck…" It just so happens that a car accident was the source of those injuries. REC Marine notes that its employment application specifically asked whether Plaintiff had "ever been a party (either as a plaintiff or defendant) to a lawsuit," and, if so, requested a "brief explanation of the claims." Despite having filed a lawsuit in 2014 claiming lower back, back and neck injuries, Griffin left this section of the application blank.

In sum, Exhibits 57 – 62 have no conceivable relevance to Plaintiff's ability to contest the *McCorpen* defense. Furthermore, any witness in the case, not to mention the potential jurors, would no doubt be thoroughly confused as to why Plaintiff's counsel is asking questions about a former REC Marine employee who had his driver's license suspended on one occasion and had a broken forearm 21 years ago.

Respectfully submitted,

*/s/ Kyle A. Khoury*
Salvador J. Pusateri, T.A. (#21036)
Kyle A. Khoury (#33216)
Kristian B. Dobard (#36997)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
Kristian.Dobard@pjgglaw.com
**ATTORNEYS FOR REC MARINE LOGISTICS, LLC AND OFFSHORE TRANSPORT SERVICES, LLC**