# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>　　　　　　**Plaintiff**<br><br>**VERSUS**<br><br>**REC MARINE LOGISTICS, LLC, ET AL**<br>　　　　　　**Defendants** | **CIVIL ACTION NO: 3:20-cv-00092-BAJ-EWD**<br><br>**DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON**<br><br>**MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

## OPPOSITION TO PLAINTIFF'S OBJECTIONS TO DEFENSE TRIAL EXHIBITS

**MAY IT PLEASE THE COURT:**

Plaintiff, McArthur Griffin, has filed a document entitled "Plaintiff's Objections to Defense Exhibits 1-8" (hereinafter "Plaintiff's Objections"). (R. Doc. 167). Defendants, REC Marine Logistics, LLC and Offshore Transport Services, LLC ("Defendants"), hereby file this Opposition to address the arguments raised by Plaintiff. As the Court is aware, trial was originally scheduled to commence on March 6, 2023. However, a brief continuance was granted until April 25, 2023. The numbering of some of Defendants' exhibits has changed slightly since Plaintiff's Objections were filed. Defendants will nevertheless address the substance of those Objections, and will indicate where appropriate both the prior and current exhibit number.

### Evangeline Parish Criminal Records

Defendants originally listed various records pertaining to Plaintiff's criminal conviction in Evangeline Parish as Defense Exhibit 1. Defendants have since agreed to voluntarily remove this Exhibit.

## 15th JDC Lawsuit filed by Plaintiff entitled
### *McArthur Griffin v. Lewis Joles, et al.*

The Plaintiff has objected to the introduction of a personal injury lawsuit he filed in 2014 in the 15th Judicial District Court for Lafayette Parish. This was originally Defense Exhibit 2 but is now Defense Exhibit 1. The lawsuit stemmed from an accident in which a car Plaintiff was driving was rear-ended. The Petition alleges that, as a result of the accident, Griffin "suffered severe and permanent injuries to the structure, tissue, and musculature of his body, which injuries include, but are not limited to, injuries to his lower back, back, and neck, along with other parts of his body." These are the same injuries alleged in this case.

In Plaintiff's Objections, he argues that the lawsuit is unauthenticated, and thus inadmissible. In the more than three years this case has been pending before the Court, this is the first time plaintiff has objected to the authenticity of the lawsuit. On April 22, 2022, Plaintiff filed a Motion in Limine seeking to preclude Defendants from presenting evidence of prior lawsuits. (R. Doc. 134-1, p. 5). There are two prior civil lawsuits at issue, one being *McArthur Griffin v. Lewis Joles, et al.* The Motion in Limine did not raise any authenticity concerns. Rather, Griffin argued that the suits would be irrelevant, and alternatively that the probative value would be outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. This Court rejected Plaintiff's argument, specifically finding that the two prior lawsuits related to car accidents were relevant. (R. Doc. 152, p. 5).

The lawsuit entitled *McArthur Griffin v. Lewis Joles, et al.* was listed as Exhibit 74 in the Joint Pre-Trial Order filed by the parties on February 24, 2023. (R. Doc. 155, p. 28). Within the Joint Pre-Trial Order, Griffin noted an objection which stated "Plaintiff objects to the records under FRE 401-404." No objection was lodged as to authenticity.

The first time any issue was raised regarding the authenticity of the above-referenced lawsuit was in Plaintiff's Objections filed on March 2, 2023. Plaintiff relies on Federal Rule of Evidence 902 for his argument that the suit is unauthenticated. Rule 902 is entitled "Evidence that is Self-Authenticating." It lists various categories of documents which "require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. Of course, relying on Rule 902 is not the only way to authenticate a document or record. Federal Rule of Evidence 901 states that "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901 goes on to provide a non-exhaustive list of evidence that satisfies the requirement, one of which is the testimony of a witness with knowledge "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). At his deposition, Plaintiff acknowledged a prior lawsuit resulting from a car accident in which he was rear-ended in Lafayette. (See Plaintiff's deposition, attached hereto as Exhibit A, pgs. 133-137). He then testified that the Petition in *McArthur Griffin v. Lewis Joles, et al.* was that very lawsuit, confirming various things about the Petition, including that it accurately described the car accident and was filed on his behalf by the lawyer he hired to represent him. (Exhibit A, pgs. 136-137). In sum, Griffin's own sworn testimony establishes beyond dispute that the document is what it purports to be.

Furthermore, under Rule 901, evidence sufficient to support that an item is what the proponent claims it is can include "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Here, the records pertaining to *McArthur Griffin v. Lewis Joles, et al.* include a copy of the Petition, an Order signed by the district judge dismissing the Petition because the

parties reached a settlement, and a receipt for payment of the records. The Petition is date-stamped and signed by a Deputy Clerk of Court. The Deputy Clerk also assigned the Petition an official civil docket number. The Order dismissing the case contains not only the district judge's signature, but also an official stamp which states: "STATE OF LOUISIANA PARISH OF LAFAYETTE—I hereby certify that a certified copy of this judgment/order has been mailed/served on all parties…" The official stamp is then dated and signed by a Deputy Clerk of Court. The receipt reflecting payment for a copy of the records bears the letterhead of the Clerk of Court for Lafayette Parish, Louis J. Perret. In sum, the appearance, content, substance and other distinctive characteristics of these records combined with the plaintiff's own testimony, unquestionably establish that the records are what they purport to be. It appears the records may actually qualify as self-authenticating under Fed. R. Evid 902(1), as they bear "a seal purporting to be that of…any state…or political subdivision…" and arguably "a signature purporting to be an execution or attestation."

To the extent the above is not enough, Defendants have requested and are paying for another copy of the records and requesting that the Lafayette Parish Clerk of Court issue an official certification. It is disappointing at this late stage of the litigation that Defendants are having to spend time, effort, and money to establish the authenticity of records that all parties know are authentic. Instead of Plaintiff simply stipulating to authenticity, the Court now has to waste judicial resources to entertain briefing on the issue.

### 13th JDC Lawsuit filed by Plaintiff entitled
### *McArthur Griffin, et al. v. Interstate Guaranty Insurance Co.*

Plaintiff's prior civil lawsuit entitled *McArthur Griffin, et al. v. Interstate Guaranty Insurance Co.* was initially Defense Exhibit 3 but is now Defense Exhibit 2. The suit was brought by Griffin and two other individuals who were passengers in a car involved in a

4

significant accident in 1994. The lawsuit was filed in the 13th Judicial District Court for Evangeline Parish in 1995. Interestingly, Plaintiff makes no objection as to authenticity of these records, perhaps because he does not view them to be as consequential as the 2014 lawsuit. He actually acknowledges the Petition was "filed by Plaintiff on August 10, 1995." Griffin claims the lawsuit is "irrelevant because nowhere…does it identify any relevant physical injury from the motor vehicle accident…" (R. Doc. 167, p. 6). He further claims "Defendants can present no evidence that Plaintiff suffered an injury as a result of the accident." This is directly contradicted by the Petition, which alleges that Griffin and the other two plaintiffs to the suit were in a vehicle which "crossed over the northbound lane and ran off of the roadway colliding into a brick mailbox, then continuing through a ditch and colliding into a culvert." The Petition goes on to state that "[t]he vehicle went airborne and collided with a large tree then continued whereupon it struck a second tree." Paragraph 5, subpart 6 alleges "As a result of the accident, the defendants [sic] received various injuries all of which necessitated extensive medical treatment from medical care providers, including ambulance service, doctors, hospitals, medical treatment, physical therapy, etc." Lastly, Paragraph 6 alleges that Plaintiff was entitled to damages consisting, in part, of "past, present and future medical expenses."

The fact that the exact injuries sustained by Griffin were not specified in the lawsuit should not prevent Defendants from questioning Plaintiff under oath at trial about the car accident and his injuries. As noted above, the Court has already denied a Motion in Limine filed by Plaintiff, finding that evidence of his prior car accidents that resulted in lawsuits for personal injury are relevant. (R. Doc. 152, p. 5).

## Mercy Regional Medical Center
## Records from January 10, 2013

Griffin has objected to the use of medical records from Mercy Regional Medical Center pertaining to an emergency room visit on January 10, 2013. This was originally Defense Exhibit 4 and is now Defense Exhibit 3. The records reflect that Plaintiff was in an altercation 6 days prior in which he was struck in the face. Even after 6 days, his face was still swollen and hurt so bad he could not open his mouth or eat. Plaintiff argues that these records are irrelevant. Pursuant to Federal Rule of Evidence 401, evidence is relevant if (1) it has any tendency to make a fact more or less probable than it would be without the evidence, and (2) the fact is of consequence in determining the action. One of the primary arguments made by the Defendants in this case is that any condition or pathology in plaintiff's neck is pre-existing. Evidence that he was struck in the face so hard he had to go to the hospital a week later certainly tends to make the contention that plaintiff had pre-existing cervical issues more probable than it would be without the evidence. Blunt force trauma to the head can certainly cause a neck injury, even if not initially recognized.

Plaintiff also argues that the records demean his character, and are therefore inadmissible "character evidence" presumably because they pertain to a fight. However, the records say nothing more than that there was an "altercation" and Griffin was struck in the face. Defendants fail to see how Plaintiff being the victim of a violent assault could demean his character.

## Records from Mamou Family Care

Medical records from Mamou Family Care are Defense Exhibit 5. Plaintiff contends the records are inadmissible under Federal Rule of Evidence 402 because they are irrelevant. He further relies on Federal Rule of Evidence 403, claiming the probative value of the records would be substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading

6

the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Beyond citing to Rule 402 and 403, Griffin provides no explanation as to why the records are irrelevant or unfairly prejudicial. The records from Mamou Family Care are from a primary care physician, Dr. John Fontenot, who has treated Plaintiff <u>during the pendency of this case.</u> Plaintiff's complaints and medical conditions, as well as Dr. Fontenot's examination of him, are clearly relevant to the issues in this lawsuit.

Griffin next argues that the records are hearsay, citing Federal Rule of Evidence 802. It is worth noting that this is a selective assertion of the hearsay rule, as plaintiff has not objected to vast amounts of other medical records. Furthermore, even if the records were hearsay, they are subject to multiple exceptions under Federal Rule of Evidence 803, more particularly Fed. R. Evid. 803(4) and (6).

Lastly, plaintiff claims without any supporting argument that the records seek to admit evidence of a collateral source. Presumably he is referring to one page out of the entire 25 pages of medical records that reflect billing for an office visit. There is nothing about this one page which implicates or violates the collateral source rule.

### **Photographs of the M/V DUSTIN DANOS**

Defense Exhibit 6 consists of photographs of the M/V DUSTIN DANOS, the vessel upon which Plaintiff was allegedly injured. Plaintiff objects on the grounds that the photographs were not taken immediately after the alleged incident and do not depict how the vessel may have looked at that time. He therefore asserts that the photographs would be unfairly prejudicial and are being introduced to mislead the jury. This is not true. As defense counsel was preparing for trial, they felt it would be helpful for the jury to understand what the M/V DUSTIN DANOS looks like and be able to see where plaintiff was standing at the time he claims the incident

occurred. As such, counsel asked their client to have crewmembers on the vessel take detailed pictures for illustrative purposes. These photographs were then produced to the Plaintiff.

The M/V DUSTIN DANOS is a specific type of offshore supply vessel with an open back deck and an elevated wheelhouse. At the time of Plaintiff's alleged incident, the captain of the DUSTIN DANOS was operating the vessel from what is known as the stern controls, which are in the elevated wheelhouse and face the back of the vessel. A witness who claims to have seen the incident was standing on a walkway that wraps around the wheelhouse. Mr. Griffin was standing near the aft portion of the back deck when he was allegedly struck by a personnel basket being lifted from the vessel to a nearby platform. It is likely that the members of the jury will never have been on (or perhaps even seen) a vessel like the M/V DUSTIN DANOS, much less be familiar with what a personnel basket transfer from this type of vessel looks like. Rather than asking the jury to repeatedly listen to terms such as "stern controls," "elevated wheelhouse," "walkway surrounding the wheelhouse," "aft portion of back deck" and trying to envision what this looks like in the abstract, it would be much more helpful to simply show the jury the actual vessel. It will also allow the plaintiff to point to exactly where he was standing at the time of the claimed incident.

Defendants acknowledge that the configuration of cargo on the deck would likely have looked different on the day of the accident. However, Defendants are not putting forth these photographs to show the configuration of cargo at the time of the alleged accident. The Plaintiff and other witnesses are fully capable of explaining that to the jury. Defendants are simply trying to have graphic representations of various areas and equipment on the vessel so each juror is not left to speculate regarding what the witnesses are talking about. Not showing the photographs to the jury would lead to much more confusion than showing them. Defendants further point out

that Plaintiff himself has agreed to inclusion of a photograph of the M/V DUSTIN DANOS which was taken on an unknown date and certainly does not depict the configuration of cargo at the time of his accident. The photograph is on a specification sheet which is used for marketing purposes. It is taken from a distance while the M/V DUSTIN DANOS was underway in the river and does not even show the back deck.

Plaintiff cites to a case in which a court excluded pictures of a sidewalk because they were taken after an incident and did not depict the condition of the sidewalk when the plaintiff was injured. The difference between that case and the present one is evident. What a sidewalk looks like is within the common experience of a lay juror. The layout and configuration of an offshore supply vessel is not. As noted above, to the extent the cargo on the DUSTIN DANOS was in a different configuration at the time of the Plaintiff's alleged accident, then Mr. Griffin and other witnesses can simply explain that to the jury. This is not a case where plaintiff is claiming the cargo was defective. Rather, the allegation is that the captain of the vessel caused it to move forward during a personnel basket transfer.

### **Medical Records from Ville Platte Family Care**

Medical records from Ville Platte Family Care are Defense Exhibit 7. Plaintiff contends the records are inadmissible under Federal Rule of Evidence 402 because they are irrelevant. He further relies on Federal Rule of Evidence 403, claiming the probative value of the records would be substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The records from Ville Platte Family Care are from another primary care physician, Dr. Francisco Cantu, who has treated Griffin <u>during the pendency of this case.</u> Plaintiff's complaints and medical conditions, as well as Dr. Cantu's examination of him, are clearly relevant to the issues in this

9

lawsuit. More particularly, the records reflect treatment of Plaintiff as a result of a fall <u>which resulted in neck pain</u> (one of the injuries alleged in the present case).

Griffin next argues that the records are hearsay, citing Federal Rule of Evidence 802. It is worth noting that this is again a selective assertion of the hearsay rule, as plaintiff has not objected to vast amounts of other medical records. Furthermore, even if the records were hearsay, they are subject to multiple exceptions under Federal Rule of Evidence 803, more particularly Fed. R. Evid. 803(4) and (6).

### **Recorded Statement of Plaintiff**

Plaintiff objects to Defense Exhibit 8 which is a recording of a statement he provided to an adjuster for REC Marine on July 5, 2018. He argues the statement (or portions thereof) is irrelevant under Federal Rule of Evidence 402. Plaintiff further relies on Federal Rule of Evidence 403, claiming the probative value of the statement would be substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Contrary to Plaintiff's assertion, the statement is highly relevant. It is a pre-lawsuit description in the Plaintiff's own words of the circumstances of his alleged accident, claimed injuries, as well as pre-existing injuries sustained which could impact Plaintiff's ability to prove medical causation. Moreover, the statement contradicts various allegations that have been made in this case. While the statement may therefore impact Mr. Griffin's case, this is certainly not "unfair prejudice."

Griffin notes that there are questions he declines to answer and times when he asked to end the interview. He suggests that the only purpose of including those portions of the statement would be to "unduly prejudice him [and] demean his character." Defendants assume Plaintiff is referring to the end of his statement where the adjuster asks if Mr. Griffin has ever been involved

in any prior civil lawsuits, to which he responds that he was involved in a car accident several years prior. When questioned about whether he was hurt in the accident, Plaintiff states "what does that have to do with this? That don't have nothing to do with this, huh?" He then claims he can't remember whether he was hurt, before subsequently admitting he injured his back (one of the injuries claimed in this case). This information is relevant and there is no reason why Defendants should not be able to use it at trial to defend against the claims of Mr. Griffin.

Respectfully submitted,

*/s/ Kyle A. Khoury*
Salvador J. Pusateri, T.A. (#21036)
Kyle A. Khoury (#33216)
Kristian B. Dobard (#36997)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
Kristian.Dobard@pjgglaw.com
**ATTORNEYS FOR REC MARINE LOGISTICS, LLC AND OFFSHORE TRANSPORT SERVICES, LLC**