# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MCARTHUR GRIFFIN | § |
| | § |
| Plaintiff | § |
| | § CIVIL ACTION NO.: 3:20-92-BAJ-EWD |
| *Versus* | § |
| | § |
| REC MARINE LOGISTICS LLC, ET AL. | § **TRIAL BY JURY DEMANDED** |
| | § |
| Defendants | § |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION ON QBE INSURANCE (EUROPE) LTD.'S JUDGMENT AS A MATTER OF LAW AND TO ALTER OR AMEND JUDGMENT

Plaintiff requests that the Court the Court reconsider its ruling of April 28, 2023, granting QBE Insurance (Europe) Limited's ("QBE's") Judgment as a Matter of Law and asks that the Court reverse its ruling and deny QBE's Motion for Judgment as a Matter of Law and that the Judgment be altered and amended accordingly because: (a) QBE provided insurance to REC Marine Logistics, LLC ("REC Marine") that provides coverage for Plaintiff's damages; (b) some of the actions giving rise to Plaintiff's claims occurred in Louisiana; and (c) the insurance policy was delivered in Louisiana.[1]

---

[1] This Motion is being filed out of an abundance of caution to the extent the Court permits REC Marine and/or Offshore Transport to introduce post-trial evidence to support their purported limitation of liability defense (*e.g.*, evidence regarding the value of the *M/V Dustin Danos* and then pending freight). Although, REC Marine and Offshore Transport vaguely pled the *M/V Dustin Danos* was owned by REC Marine and/or Gulf Offshore, REC Marine has conceded it was not an owner of the *M/V Dustin Danos*, rendering the application of its purported limitation of liability defense inapplicable. *See* Exhibit 18 (REC Marine's Responses to Interrogatories) ("Interrogatory No. 1: Identify all owners and operators of the *M/V Dustin Danos* (a) at the time of the Incident, (b) one month preceding the Incident, and (c) the present. Answer to Interrogatory No. 1: At all pertinent times, the *M/V Dustin Danos* was owned by Offshore Transport Services, LLC ("Offshore Transport") and operated by REC Marine Logistics, LLC…Answer to Interrogatory

Plaintiff recognizes that it is a difficult task to convince a sitting Court to review an earlier ruling, and much more onerous to convince that Court to reverse its prior decision. However, because there is sufficient evidence to show the Incident, in part, occurred in Louisiana and/or the insurance policy issued by QBE to REC Marine was delivered in Louisiana Plaintiff feels compelled to make just such a request.

QBE's argument in support of their Rule 50 Motion for Judgment as a Matter of Law was falsely premised on three things: (1) there is no evidence demonstrating the policy provided coverage for Plaintiff's injuries and damages; (2) there is no evidence any part of the Incident occurred in Louisiana; (3) there is no evidence the policy was delivered in Louisiana.

Plaintiff requests that the Court reverse its earlier dismissal of QBE because:

> (a) QBE admitted in its Answer that it issued a policy to REC Marine that provided coverage for Plaintiff's damages, including, *inter alia*, payment of maintenance and cure;
>
> (b) the evidence demonstrates that Plaintiff's injuries, specifically the injuries associated with REC Marine's refusal to provide Plaintiff with full maintenance, resulted from conduct that took place in Louisiana; and,
>
> (c) there is sufficient evidence showing the policy was delivered in Louisiana and no evidence showing the policy was delivered elsewhere.

---

No. 8: REC Marine was the Operator of the *M/V Dustin Danos* at the relevant time"). Further, while REC Marine chose not to neither produce all the relevant evidence demonstrating the value of the *M/V Dustin Danos* nor meaningfully responded to Plaintiff's discovery regarding the full value of the *M/V Dustin Danos*, the value of the *M/V Dustin Danos'* hull alone is $2.5 million. *See* Exhibit 20 (Certificate of Insurance). Given this admission, without conceding whether any party can pursue a limitation of liability defense, at best, only Offshore Transport could seek to limit its liability—not REC Marine. However, as will be discussed *infra*, the Judgment against Offshore Transport amounted to $341,340 in compensatory damages. *See* Judgment. The Judgment against Offshore Transport is well below REC Marine's stated value of the *M/V Dustin Danos*. *See* Judgment; *compare* Exhibit 20 (Certificate of Insurance) (establishing the stated value of the *M/V Dustin Danos* to be least $2.5 million).

## I.    GENERAL FACTUAL BACKGROUND

As the Court is aware, this is a personal injury case involving a Jones Act seaman that was seriously injured in May 2018. Plaintiff was injured when Captain Michael Haglund ("Captain Haglund") put the controls of the *M/V Dustin Danos* in forward position and stepped away from the controls to use his phone while a dangerous, high-risk personnel basket transfer operation was taking place on the back deck of the *M/V Dustin Danos*. While Captain Haglund was using a cell phone and not paying attention to the dangerous and high-risk operation taking place on the deck of the *M/V Dustin Danos*, Plaintiff was violently struck by a personnel basket, the vessel, and/or other items on the vessel, injuring his shoulder, neck, back, and other parts of his body.

It is undisputed that Plaintiff was a Jones Act seaman when he was working aboard the *M/V Dustin Danos* in May 2018 on the back deck during a personnel basket transfer operation. *See* Joint Pretrial Order ("On or about the date of the alleged Incident, REC Marine was the Jones Act employer of Mr. Griffin…In May 2018, Mr. Griffin was an employee of REC Marine, working in the service of the *Dustin Danos*.").[2] Further, it is undisputed that REC Marine denied Plaintiff maintenance and cure. *See* Joint Pretrial Order ("REC Marine has denied medical cure to Plaintiff for the neck and back injuries Plaintiff claims that he sustained in the incident…REC Marine has denied the payment of maintenance to Plaintiff for the neck and back injuries Plaintiff claims he sustained in the incident").

This matter came before this Court for a jury trial beginning on April 25, 2023. At the conclusion of the trial, the jury issued a unanimous verdict on May 1, 2023, compensating Plaintiff for, *inter alia*, his past and future physical impairment, disfigurement, pain and suffering mental anguish, loss of enjoyment of life, past wage loss, future loss of earning capacity, past medical

---

[2] Plaintiff has not attached the Joint Pretrial Order as it is a restricted document.

expenses, and future medical expenses. *See* Verdict. Additionally, the jury found that REC Marine unreasonably, willfully, wantonly, and arbitrarily failed to pay Plaintiff maintenance and cure such that an award for attorneys' fees was warranted. *See* Verdict.

The Court entered Judgment in favor of Plaintiff. *See* Judgment. The Judgment against REC Marine amounted to $1,194,690 in compensatory damages and $1,500,000 in punitive damages. *See* Judgment. The Judgment against Offshore Transport Services, LLC ("Offshore Transport") amounted to $341,340 in compensatory damages. *See* Judgment. Plaintiff was awarded Court costs and judicial interest from the date of the judicial demand. *See* Judgment.

## II.    APPLICABLE LAW FOR RULE 59(E) MOTIONS

A motion to amend judgment may be granted on the basis that such amendment is necessary to correct manifest errors of law or fact upon which the judgment is based. Such motion may be granted in order that available evidence may be considered. A court may also grant a motion under Rule 59(e) to prevent a manifest injustice or to accommodate an intervening change in controlling law. *Martco Ltd P'Ship v. Wellons, Inc.*, No. 04-673, 2008 WL 394221 (W.D. La. 2/12/2008).

To prevail on his Motion, Plaintiff need only satisfy one of the following criteria: (a) the motion is necessary to correct a manifest error of law or fact; (b) the movant presents newly discovered or previously unavailable evidence; (c) the motion is necessary to prevent manifest injustice; or (d) the motion is justified by an intervening change in the controlling law. *American Registry of Radiologic Technologists v. Garza*, 512 F. Supp. 2d 902, 904 (S.D. Tex. 2007).

The evidence developed at trial establishes three things: (a) the insurance policy issued by QBE to REC Marine provided coverage for the damages sustained by Plaintiff; (b) Plaintiff's injuries, specifically the injuries associated with REC Marine's refusal to provide Plaintiff with

full maintenance, resulted from REC Marine's post-injury conduct that took place in Louisiana; and, (c) the insurance policy issued by QBE to REC was delivered in Louisiana.

This Motion is necessary to (a) correct a manifest error of law or fact and (b) prevent manifest injustice.

### III. THE QBE INSURANCE POLICY ISSUED TO REC MARINE PROVIDED COVERAGE FOR PLAINTIFF'S DAMAGES, INCLUDING, *INTER ALIA*, PAYMENT OF MAINTENANCE AND CURE

A. PLAINTIFF'S STATUS AS A JONES ACT SEAMAN IS NOT CONTESTED

"When a seaman becomes ill and injured while in the service of his ship, the shipowner must pay him maintenance and cure whether the shipowner was at fault or whether the ship was unseaworthy." *Guevara v. Maritime Overseas Corp*., 59 F.3d 1496, 1499 (5th Cir. 1995). As the Court is well aware, "maintenance" covers an injured seaman's food and lodging while "cure" pays for his necessary medical expenses. *Id*; *See also Hall v. Noble Drilling (U.S.), Inc*., 242 F.3d 582, 589 (5th Cir. 2001) ("A seaman is entitled to the reasonable cost of food and lodging, provided he has incurred the expense).

Plaintiff was injured while in the service of the *M/V Dustin Danos*. *See* Exhibit 1 (Incident Report for Personnel Basket Incident); Exhibit 2 (Occupational Medicine Services Records); Exhibit 3 (Gulf Coast Regional Medical Records); Exhibit 4 (Baton Rouge Orthopedic Records); Exhibit 5 (Fontenot Physical Therapy Records); Exhibit 6 (Surgical Specialty Center of Baton Rouge); Exhibit 7 (Haydel Spine and Wellness); Exhibit 11 at 2:4-10 (Badeaux Testimony); Exhibit 10 at 118:23-123:25 (Griffin Testimony).

Moreover, it is undisputed that Plaintiff was a Jones Act seaman when he was working on the back deck of the *M/V Dustin Danos* in May 2018. *See* Joint Pretrial Order ("On or about the date of the alleged Incident, REC Marine was the Jones Act employer of Mr. Griffin…In May

2018, Mr. Griffin was an employee of REC Marine, working in the service of the Dustin Danos."). Further, it is undisputed that REC Marine denied maintenance and cure payments to Plaintiff. *See* Joint Pretrial Order ("REC Marine has denied medical cure to Plaintiff for the neck and back injuries Plaintiff claims that he sustained in the incident…REC Marine has denied the payment of maintenance to Plaintiff for the neck and back injuries Plaintiff claims he sustained in the incident").

Therefore, as a Jones Act seaman, Plaintiff is entitled to maintenance and cure for the injuries he sustained aboard the *M/V Dustin Danos*.

B.  QBE ADMITTED IT PROVIDED COVERAGE FOR THE DAMAGES SUSTAINED BY PLAINTIFF

"[F]actual assertions in pleadings ... are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983). A party therefore may not rebut a judicial admission made in its pleadings with new evidence or testimony. *See Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107–08 (5th Cir.1987). QBE admitted that it provided Protection and Indemnity insurance to REC Marine at the time of the Incident in its Answer. *See* Exhibit 8 (QBE Answer) ("QBE is a foreign insurer who issued a policy of providing Protection and Indemnity insurance to Rec Marine Logistics, LLC, Gulf Offshore Logistics, LLC, and other assureds…"). Additionally, QBE incorporated the insurance policy, including its terms and conditions, into its Answer. *See* Exhibit 8 (Answer) ("QBE Insurance incorporates the terms, conditions, and exclusions, of the Policy and its incorporated Rules into its Answer…"). By doing this, QBE has, *inter alia*, admitted: (a) the policy provides coverage for "compensation or damages for loss of life or personal injury caused by an accident in respect of: 1.1 A member of the Crew; (b) the policy provides coverage for "…the cost of medical or hospital treatment and ancillary expenses necessarily incurred in relation

to any injury, illness or disease, and of funeral arrangements and the repatriation of remains necessarily incurred, in respect of: 3.1 Any member of the Crew"; (c) the policy provides coverage for "Liability for maintenance and repatriation costs and expenses necessarily incurred, by reason of illness, disease, personal injury or death giving rise to a claim covered under Clause 1, 2 or 3 of this policy in respect of: 4.1 Any member of the Crew." *See* Exhibit 9 (Insurance Policy).[3]

These admissions conclusively establish the following: (a) QBE issued an insurance policy to REC Marine; (b) the policy was effective; (c) the policy issued by QBE provides coverage for Plaintiff's damages, including compensation for Plaintiff's loss of life or personal injury, the cost of Plaintiff's medical and hospital treatment (and ancillary expenses)[4], and Plaintiff's maintenance. *See* Exhibit 9 (Insurance Policy).

QBE's suggestion and argument that there is no evidence demonstrating the policy provided coverage for Plaintiff's injuries and damages is disingenuous is without merit. The insurance policy issued by QBE to REC Marine specifically provides coverage for Plaintiff damages, including but not limited to Plaintiff's maintenance and cure damages. *See* Exhibit 9 at p. 2-3 (Insurance Policy).

QBE cannot now suggest otherwise.

---

[3] To the extent (a) the Court reasons that the insurance policy (and its terms) provided by QBE to REC Marine are not admissions incorporated into QBE's Answer and (b) the Court grants the request of any party to introduce post-trial evidence (*e.g.* including, *inter alia*, QBE's insurance policy and its terms and evidence related to REC Marine and Offshore Transport's inapplicable limitation defense of liability defense), Plaintiff, in the alternative, requests that the Court accept the admissions made by QBE that are part of the insurance policy it incorporated into its Answer, the evidence regarding the value of the value of the *M/V Dustin Danos'* hull, and additional post-trial discovery into the applicability of the limitation of liability defense.

[4] Payment of Plaintiff's medical expenses is cure.

    C.   THE JURY AWARDED PLAINTIFF COMPENSATION FOR MAINTENANCE AND CURE AND PUNITIVE DAMAGES

The jury issued a unanimous verdict on May 1, 2023, compensating Plaintiff for his past and future physical impairment, disfigurement, pain and suffering mental anguish, loss of enjoyment of life, past wage loss, future loss of earning capacity, past medical expenses, and future medical expenses. *See* Verdict. Additionally, the jury found that REC Marine unreasonably, willfully, wantonly, and arbitrarily failed to pay Plaintiff maintenance and cure such that an award for attorneys' fees was warranted. *See* Verdict. The Court issued its Judgment in favor of Plaintiff. *See* Judgment. The Court entered a Judgment against REC Marine for $1,194,690 in compensatory damages and $1,500,000 in punitive damages. *See* Judgment. The Court entered a Judgment against Offshore Transport for $341,340 in compensatory damages. *See* Judgment.

As discussed *supra*, QBE provides coverage for these damages and Plaintiff has a right of direct action against QBE.

### IV.   PLAINTIFF HAS A RIGHT OF DIRECT ACTION AGAINST QBE

    A.   LOUISIANA'S DIRECT-ACTION STATUTE

Under Louisiana law, a right of direct action may be brought against an insurer if one of the following conditions is met:

        (a) if the incident occurred in Louisiana;

        (b) if the policy was written in Louisiana; or

        (c) if the policy was delivered in Louisiana.

*See* LSA–R.S. 22:655.

    B.   THE POST-INJURY DECISION TO TERMINATE PLAINTIFF'S MAINTENANCE AND CURE TOOK PLACE IN LOUISIANA

Plaintiff received and continues to receive medical treatment from the injuries he sustained during the personnel basket transfer operation. *See* Exhibit 3 (Gulf Coast Regional Medical

Records); Exhibit 4 (Baton Rouge Orthopedic Records); Exhibit 5 (Fontenot Physical Therapy Records); Exhibit 6 (Surgical Speciality Center of Baton Rouge); Exhibit 7 (Haydel Spine and Wellness); *see generally* Exhibit 10 at 135:24-137:16; 139:18-140:4; 181:11-18 (Griffin Testimony).

During the trial, Plaintiff presented evidence demonstrating how his injuries resulted from, *inter alia*, how the operations on the *M/V Dustin Danos* were improperly planned and executed, the unseaworthiness of the *M/V Dustin Danos*, the conduct of Captain Haglund, and REC Marine's post-injury decision to terminate Plaintiff's maintenance and cure. *See, e.g.,* Exhibit 11 at 56:25-57:3; 3:14-5:12; 11:12:12-4; 170:1-7 (Badeaux Testimony) (testifying Captain Haglund stepped away from the controls during the personnel basket transfer operation to use his phone while the vessel was being propelled forward); *see* Exhibit 12 95:11-13; 96:25-97:16 (Harris Testimony) (confirming there is no evidence a written JSA was completed and testifying REC Marine's written policies were not followed); Exhibit 12 at 105:22-106:5 (Harris Testimony) (confirming REC Marine made the decision to deny Plaintiff's maintenance and cure after speaking with adjusters and attorneys).[5]

Nevertheless, Plaintiff was denied maintenance and cure by REC Marine for his neck and back injuries. *See* Joint Pretrial Order ("On or about the date of the alleged Incident, REC Marine was the Jones Act employer of Mr. Griffin…In May 2018, Mr. Griffin was an employee of REC Marine, working in the service of the Dustin Danos…REC Marine has denied medical cure to Plaintiff for the neck and back injuries Plaintiff claims that he sustained in the incident…REC

---

[5] REC Marine's attorneys are based out of Louisiana. *See* Docket and Pleadings Filed. REC Marine's adjuster—J. Drew Aucoin—is based out of Louisiana. *See* Exhibit 19 (Gulf Coast Surgical Center at p.4).

Marine has denied the payment of maintenance to Plaintiff for the neck and back injuries Plaintiff claims he sustained in the incident").[6]

REC Marine operates out of a single location in Raceland, Louisiana. *See* Exhibit 9 (Insurance Policy); Exhibit 13 (Certificate of Inspection); Exhibit 14 (Checks Issued by REC Marine); Exhibit 15 (Plaintiff's Application for Employment); Exhibit 16 (Haglund Separation Notice); Exhibit 17 (Badeaux Separation Notice); Exhibit 18 (REC Marine's Response to Interrogatories) ("REC Marine, GOL, Gulf Offshore, and Offshore Transport maintain their domicile address in Raceland, Louisiana"). Exhibit 12 at 105:22-106:5 (Harris Testimony) (confirming REC Marine made the decision to deny Plaintiff's maintenance and cure after speaking with adjusters and attorneys).

There is no evidence the decision to terminate Plaintiff's maintenance and cure occurred or could have occurred elsewhere. REC Marine's decisions to terminate Plaintiff's maintenance and cure could have only taken place in Louisiana. Therefore, part of the Incident giving rise to Plaintiff's claims occurred in Louisiana.

For this reason alone, Plaintiff has a right of direct action against QBE.

C. THE POLICY ISSUED BY QBE TO REC MARINE WAS DELIVERED TO REC MARINE IN LOUISIANA

There is no evidence that REC Marine has some office outside of Louisiana. There is no evidence showing the insurance policy was or could have been delivered outside of Louisiana. However, there is evidence that the insurance policy issued by QBE to REC Marine was delivered in Louisiana.

---

[6] Certified transcripts from the trial are not yet available. Plaintiff has attached the rough transcripts from the trial to the Motion.

- 10 -

QBE has admitted that it (a) it issued the policy at the direction of Laris Insurance Agency, LLC ("Laris") (located in Louisiana); and (b) it issued the policy for the benefit of REC Marine (located in Louisiana).  *See* Exhibit 9 (Insurance Policy).

Moreover, as discussed *supra*, there is ample evidence that (a) REC Marine Logistics, LLC is domiciled in Louisiana, that that Plaintiff's wages were paid by REC Marine in Louisiana, that payments for maintenance and cure for Plaintiff's shoulder injury were paid by REC Marine in Louisiana, that REC Marine's office employees are in Louisiana, and that claims administration for REC Marine was handled by J. Drew Aucoin in Louisiana.  *See* Exhibit 18 (REC Marine's Response to Plaintiff's Interrogatories) ("Both REC Marine and GOL maintain a domicile address in Raceland, Louisiana"); Exhibit 9 (Insurance Policy); Exhibit 13 (Certificate of Inspection); Exhibit 14 (Checks Issued by REC Marine); Exhibit 15 (Plaintiff's Application for Employment); Exhibit 16 (Haglund Separation Notice); Exhibit 17 (Badeaux Separation Notice); Exhibit 19 (Gulf Coast Orthopedic Records) (providing J. Drew Aucoin's—REC Marine's claims handler—Louisiana address); Exhibit 10 at 164:7-14 (Griffin Testimony).

Below are excerpts taken from evidence cited above:

**ANSWER TO INTERROGATORY NO. 8:**

REC Marine was the operator of the M/V DUSTIN DANOS at the relevant time. The vessel was chartered to W&T Offshore, Inc. through GOL, LLC, which merely acted as a boat broker to facilitate the charter pursuant to the contracts referenced in response to Interrogatory No. 2. Both REC Marine and GOL maintain a domicile address in Raceland, Louisiana. Gulf Offshore

*See* Exhibit 18 (REC Marine's Response to Plaintiff's Interrogatories).

**REC Marine Logistics, LLC**
P.O. Box 774
Galliano, LA 70354
(985) 532-1060

Exhibit 14 (Checks Issued by REC Marine).

**LOUISIANA WORKFORCE COMMISSION**

**Separation Notice**

| Employer Information | |
|---|---|
| Company: | REC MARINE LOGISTICS LLC |
| Company Street Address 1: | 4535 HWY 308 |
| Address 2: | |
| City: | RACELAND |
| State: | LA |
| Zip: | 70394 |
| Name: | ALEX GRIFFIN |
| Title: | HR MANAGER |
| Phone Number: | 985-532-1060 |
| Email Address: | ALEX@GULF-LOG.COM |

*See* Exhibits 16 and 17 (Haglund Separation Notice and Badeaux Separation Notice).

| | |
|---|---|
| Aucoin | GRIFFIN, MCAUTHOR J |
| J DREW AUCOIN 701 Metairie Lawn Drive | 052518 |
| Metairie, LA 70011 | Auth #: |

*See* Exhibit 19 (Gulf Coast Surgical Center at p.4).

There is no evidence that any corporate function was carried outside of Louisiana.

The evidence supports only one conclusion: the insurance policy issued by QBE to REC Marine was delivered in Louisiana.

## V. EXHIBITS[7]

| | |
|---|---|
| Exhibit 1 | Incident Report for Personnel Basket Incident |
| Exhibit 2 | Occupational Medicine Services Records |
| Exhibit 3 | Gulf Coast Regional Medical Records |
| Exhibit 4 | Baton Rouge Orthopedic Records |

---

[7] Plaintiff incorporates these Exhibits into the Motion and Memorandum.

| | |
|---|---|
| Exhibit 5 | Fontenot Physical Therapy Records |
| Exhibit 6 | Surgical Specialty Center of Baton Rouge Records |
| Exhibit 7 | Haydel Spine and Wellness Records |
| Exhibit 8 | QBE's Answer |
| Exhibit 9 | Insurance Policy |
| Exhibit 10 | Griffin Testimony |
| Exhibit 11 | Badeaux Testimony |
| Exhibit 12 | Harris Testimony |
| Exhibit 13 | Certificate of Inspection |
| Exhibit 14 | Checks Issued by REC Marine |
| Exhibit 15 | Plaintiff's Application for Employment |
| Exhibit 16 | Haglund Separation Notice |
| Exhibit 17 | Badeaux Separation Notice |
| Exhibit 18 | REC Marine's Response to Plaintiff's Interrogatories and Request for Production |
| Exhibit 19 | Gulf Coast Surgical Center Records |
| Exhibit 20 | Certificate of Insurance |

## VI.    CONCLUSION AND PRAYER

For these reasons, Plaintiff requests that the Court reconsider its ruling of April 28, 2023, granting QBE's Judgment as a Matter of Law.  Plaintiff requests that the Court deny QBE's Motion for Judgment as a Matter of Law and find that (a) QBE provided insurance to REC Marine that provides coverage for Plaintiff's damages; (b) that part of the Incident occurred in Louisiana; and (c) the insurance policy was delivered in Louisiana.  Further, Plaintiff requests all other relief Plaintiff may be justly entitled.

Respectfully submitted,
**MORROW & SHEPPARD LLP**

/s/*Daniel E. Sheppard*
Daniel E. Sheppard
Bar Roll No. 38076
John D. Sheppard
*Admitted Pro Hac Vice*
P. Hogan Leatherwood
*Admitted Pro Hac Vice*
*msfiling@morrowsheppard.com*
*dsheppard@morrowsheppard.com*
*jsheppard@morrowsheppard.com*
*hleatherwood@morrowsheppard.com*
5151 San Felipe Street, Suite 100
Houston, Texas 77056
Telephone:  (713) 489-1206
Facsimile:  (713) 893-8370

AND

Brilliant Clayton (#36829)
**CLAYTON FRUGE WARD**
bclayton@claytonfruge.com
3741 La. Hwy 1 South
Port Allen, LA 70767
Telephone:  225.250.1435
Facsimile:  225.383.7631

*Attorneys for Plaintiff*

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF filing system. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system.

*/s/Daniel E. Sheppard*
Daniel E. Sheppard