UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>　　　　　　　　　　**Plaintiff**<br><br>**VERSUS**<br><br>**REC MARINE LOGISTICS, LLC, ET AL**<br>　　　　　　　　　　**Defendant** | **CIVIL ACTION NO: 3:20-cv-00092-BAJ-EWD**<br><br>**DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON**<br><br>**MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

## MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL OR REMITTITUR

**MAY IT PLEASE THE COURT:**

Defendants, REC Marine Logistics, LLC ("REC Marine) and Offshore Transport Services, LLC ("Offshore Transport"), respectfully request a new trial or remittitur for the reasons more fully stated below.[1]

Rule 59(a) authorizes the Court to grant a new trial on all or part of the issues in an action in which there has been a jury trial, for any of the customary reasons that new trials are awarded. Pursuant to Rule 59(a), whether to grant a new trial is left to the sound discretion of the trial judge, and the court's authority is large.[2] The court may grant a new trial if it finds that the verdict is against the weight of the evidence, the damages awarded were excessive, the trial was unfair or prejudicial error was committed in the course of the trial.[3]

---

[1] The Court recently issued an Order (R. Doc. 226) stating that the Parties "shall file their post-trial motions…within 30 days of the last trial transcript being filed to the record." At this time, no official trial transcripts have been filed into the record. However, in light of Fed. R. Civ. P. 50 and Fed. R. Civ. P. 59, which require the filing of post-trial motions no later than 28 days after the entry of judgment, this motion, as well as a simultaneous Motion for Judgment as a Matter of Law are being filed within the above-referenced time frame out of an abundance of caution. Where appropriate, Defendants will for now simply cite to rough draft transcripts of the trial proceedings, reserving the right to file supplemental and amended motions once the official trial transcripts are available.
[2] *In re Omega Protein, Inc.,* 2007 WL 1974309, *2 (W.D.La. July 2, 2007) (*citing Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415. 433 (1996)).
[3] *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir.1985).

1

The trial court's power to grant a new trial on the basis of the court's firm belief that the verdict is clearly contrary to the weight of the evidence has, as Professor Charles Wright observes, "long been regarded as an integral part of trial by jury."[4] In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party. While the court is to respect the jury's collective wisdom and must not simply substitute its opinion for the jury's, "[i]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial."[5]

It is well settled that "the grant or denial of a motion for a new trial is within the sound discretion of the trial court."[6] In exercising this discretion when a motion for new trial is premised on excessive damages, the trial court may give the plaintiff the option of submitting to a new trial or of remitting a portion of the damages to a level the court considers justified.[7] The court "must not substitute [its] judgment of damages for that of the jury."[8] Rather the court's task is to determine the "*maximum* award which is reasonably supported by the evidence."[9]

The Fifth Circuit has held that when a jury verdict results from passion or prejudice, a new trial, not remittitur, is the proper remedy.[10] Damage awards which are merely excessive, or so large as to appear contrary to right reason, however, are subject to remittitur, not a new trial.[11] Thus, when a jury's award exceeds the bounds of any reasonable recovery, this court may suggest a remittitur. The size of the remittitur, says the Fifth Circuit, must be in accordance with the Fifth

---

[4] C. Wright, *Federal Courts* 633 (4th ed. 1983).
[5] *Id.* at 634.
[6] *Valley View Cattle Co. v. Iowa Beef Processors, Inc.,* 548 F.2d 1219, 1220 n. 2 (5th Cir.1977). *See also United States v. Horton,* 622 F.2d 144 (5th Cir.1980).
[7] Wright & Miller, Federal Practice and Procedure § 2815 (1973).
[8] *Bonura v. Sea Land Service, Inc.,* 505 F.2d 665, 669 (5th Cir.1974).
[9] *Id.*
[10] *See Wells v. Dallas Independent School District,* 793 F.2d 679, 683 (5th Cir.1986), citing *Westbrook v. General Tire and Rubber Company,* 754 F.2d 1233, 1241 (5th Cir.1985).
[11] *Id.*

Circuit's "maximum recovery rule," which prescribes that the verdict will be reduced, if necessary, to the maximum amount the jury could properly have awarded.[12] A verdict is excessive as a matter of law if shown to exceed "any rational appraisal or estimate of the damages that could be based upon the evidence before the jury."[13]

Here, Defendants respectfully aver that a new trial or remittitur of damages is warranted because:

1. The verdict for future medical expenses evinces passion and prejudice and is against the great weight of the evidence;
2. The verdict for past wage loss and future loss of earning capacity evinces passion and prejudice;
3. The verdict for past and future general damages evinces passion and prejudice and is against the great weight of the evidence;
4. The verdict for punitive damages evinces passion and prejudice and is against the great weight of the evidence;
5. The time limits imposed at trial were unfair and prejudiced Defendants; and
6. Improper statements were made during plaintiff's closing argument.

In sum, the jury's verdict was against the great weight of the evidence, and Defendants respectfully aver that they are entitled to the relief requested herein.

## LITIGATION BACKGROUND

A jury trial was held from April 25, 2023 through May 1, 2023. At the close of the Plaintiff's case, and again at the close of all the evidence, REC Marine moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). The Court did not grant the original Motion for Judgement as a Matter of Law and submitted the matter to the jury, which returned a verdict in favor of the Plaintiff. The jury further assessed punitive damages of $1,500,000 against REC Marine with respect to Plaintiff's maintenance and cure claim.

---

[12] *Hansen v. Johns–Manville Products Corporation,* 734 F.2d 1036 (5th Cir.1984), quoting *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 784 (5th Cir.1983).
[13] *Brunnemann v. Terra, International, Inc.,* 975 F.2d 175, 177–78 (5th Cir.1992), citing *Kolb v. Goldring, Inc.,* 694 F.2d 869, 871 (1st Cir.1982) (quoting *Glazer v. Glazer,* 374 F.2d 390, 413 (5th Cir.), *cert. denied,* 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90 (1967)).

In coming to their decision, the jury was influenced by passion and therefore prejudiced in reaching their verdict. As will be discussed below, the jury completely disregarded this Court's jury instructions in awarding both maintenance and lost wages. They also awarded amounts for past and future medical expenses, past wage loss, and future loss of earning capacity that were well above what the evidence supported, and in some instances higher than even Plaintiff's own experts claimed was appropriate. The great weight of the evidence demonstrates that the jury's verdict was incorrect.

## ANALYSIS

**1. The verdict for future medicals evinces passion and prejudice and is against the great weight of the evidence.**

Defendants challenge the jury verdict of $686,700.00 for future medical expenses as excessive and against the great weight of the evidence under Rule 59 because Griffin presented no support for such an award. The award of $686,700.00 for future medicals is not only unsupported, it is actually beyond the testimony of Plaintiff's own economic expert, Dr. Randy Rice, and beyond the amount Plaintiff requested in closing argument, which was $590,503.00.[14] The future medicals awarded are nearly $100,000 more than the supporting evidence and what the plaintiff asked for.

With regard to Griffin's shoulder, his economic expert Dr. Rice testified that it would cost $11,217.00 for a shoulder arthroscopic decompression[15], $978.00 for an orthopedic shoulder surgeon[16], $1,213.00 for corticosteroid injections[17], $685.00 for shoulder x-rays[18], and $6,532.00 for an MRI of the shoulder.[19] The total future costs for Griffin's shoulder therefore total $20,625.00

---

[14] Griffin's closing 29:13-25 and 30:1.
[15] Rice's testimony 173:21-22,25.
[16] Rice' testimony 171:2-4.
[17] Rice's testimony 171:8-9.
[18] Rice's testimony 172:2-4,8.
[19] Rice's testimony 172:4-5,8.

according to Rice's testimony. However, Plaintiff's counsel made a judicial admission that his shoulder was at maximum medical improvement, explicitly stating in pertinent part in his closing "with respect to Mr. Griffin's shoulder . . . do you find the plaintiff has reached maximum medical cure? . . . for the shoulder yes."[20]. The jury clearly did not deduct the expenses for treatment of Plaintiff's shoulder and disregarded Plaintiff's own suggestion that his shoulder was at maximum medical cure and that "while he's been recommended a surgery for his shoulder you know some point down in the future the Defendant shouldn't be obligated to sit on the hook for that until he actually has that. So, we do agree he's reached maximum medical improvement there."[21] It is difficult to imagine how a verdict could not be the result of passion or prejudice when a plaintiff asks the jury to find he is at MMI with respect to a certain injury and they simply ignore that request and all of the available medical evidence.

With regard to Griffin's back, Dr. Rice testified that it would cost $6,398.00 for an ESI of the lumbar spine.[22] However, the jury found by a preponderance of the evidence that Griffin did not injure his back as a result of the personnel basket transfer incident onboard the M/V Dustin Danos.[23] Therefore, all future medicals related to Griffin's back should also be removed from the award for future medicals because it against the jury's determination that Griffin did not injure his back in connection to any incident in this matter.

In sum, at least $27,023.00 for future shoulder and back treatment should be reduced from any award of future medical expenses. Additionally, $96,197.00 should be further reduced from the future medicals award because it is clearly against the great weight of the evidence as plaintiff's experts only testified that he would need $590,503.00 to compensate for Griffin's future medical

---

[20] Griffin's closing 30:2-5.
[21] Griffin's closing 30:5-11.
[22] Rice's testimony 171:10-12.
[23] *See* R. Doc. 212, page 2, Interrogatory No. 3.

needs. Thus, the jury's award of $686,700.00 for future medical expenses should be reduced by at least the sum of $123,220.00 because the evidence simply does not support such a verdict. The jury disregarded the evidence, their own determination that the alleged back injury was not related to this matter, and even the Plaintiff's own request with regard to the need for future medicals when making their determination. It is clear this award is against the great weight of the evidence and that the jury was influenced by passion and prejudice.

### 2. The verdict for past wage loss and future loss of earning capacity evinces passion and prejudice.

Defendant challenges the jury verdict of $150,00.00 for past wage loss and $500,000.00 for future loss of earning capacity as excessive and against the great weight of the evidence under Rule 59. The award of $150,00.00 for past wage loss is contrary to the evidence, the testimony of Plaintiff's economic expert, Dr. Rice, and what Plaintiff requested in closing argument, which was $144,995.00[24]. More particularly, the award for past wage loss is $5,005.00 more than what the evidence showed and what the plaintiff requested, as Dr. Rice testified Griffin's past after-tax wage loss was $144,995.00.[25]

As with past lost wages, the award for future loss of earning capacity is contrary to the evidence. Dr. Rice testified that Griffin's future loss of earning capacity is $321,589.00, and yet the jury awarded $500,000.00.[26] He further stated that the sum of Griffin's past lost wages and future lost wages was $466,584.00.[27] The jury's award of $500,000.00 is $178,411.00 more than what was submitted into evidence. Therefore, the excessive award as it relates to Griffin's past and future wage loss should be reduced.

---

[24] Griffin's closing 28:20-21.
[25] Rice's testimony 166:20-23.
[26] Rice's testimony 167:9-25, 167:1-25 and 168:1-11
[27] Rice's testimony 169:2-7.

6

Additionally, the jury awarded Griffin $10,000.00 in maintenance benefits.[28] However, the jury instructions specifically stated, "If you find that plaintiff is entitled to an award of damages under either the Jones Act or unseaworthiness claims and if you award him either lost wages or medical expenses then you may not award him maintenance and cure for that same period."[29] Here, Griffin was awarded lost wages and medical expenses, and the jury still awarded another $10,000 in maintenance. This is contrary to the jury instructions and must be deducted from the verdict. In *Cates v. United States,* 451 F.2d 411, 417–18 n. 20 (5th Cir. 1971), the Fifth Circuit held that unless there is an "affirmative showing on the record" that the elements compensated for (here lost wages) have actually been included in the maintenance award, a seaman is not precluded from recovering maintenance. Moreover, the burden is on the one claiming duplication to show that the damages assessed against it have "in fact and in actuality" been previously covered.[30] Here, the jury instructions is an affirmative showing that if lost wages are awarded, maintenance may not be awarded for the same period because plaintiff may not recover twice for the same loss of wages.

In sum, at least $183,416.00 for past and future wage loss should be reduced from the verdict. Additionally, $10,000.00 for maintenance should likewise be deducted. The jury disregarded the evidence and was influenced by passion and prejudice in determining their awards for past and future wage loss.

3. **The verdict for past and future general damages evinces passion and prejudice and is against the great weight of the evidence**

---

[28] R. Doc. 212, p.7, *See* interrogatory No. 11.
[29] Jury Instructions 92:22-25 and 93:1-2.
[30] *Id. See Billiot v. Sewart Seacraft,* 382 F.2d 662 (5th Cir. 1967); *Vickers v. Tumey,* 290 F.2d 426 (5th Cir. 1961); *Smith v. Lykes Brothers-Ripley,* 105 F.2d 604 (5th Cir.), *cert. denied,* 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939); *Muise v. Abbott,* 60 F.Supp. 561 (D.Mass.1945), *aff'd,* 160 F.2d 590 (1st Cir. 1947).

Defendant challenges the jury verdict of $100,00.00 for past general damages and $250,000.00 for future general damages as excessive and against the great weight of the evidence under Rule 59 because Griffin presented virtually no evidence to support such awards.

With regard to past and future general damages, the meager testimony of Griffin concerning past and future physical impairment, disfigurement, mental anguish and loss of enjoyment of life he allegedly suffered was insufficient to establish anything greater than nominal damages. A plaintiff must present evidence of the character and severity of emotional injury to recover greater than nominal damages.[31] Courts in this circuit have focused on two necessary elements for the plaintiff to recover emotional distress damages. First, the plaintiff must provide specific evidence of the nature and extent of the harm.[32] Second, the plaintiff must make more than vague and conclusory allegations to support his claims.[33] The Fifth Circuit has specifically stated a preference for corroboration and expert testimony to sustain an award of non-pecuniary compensatory damages.[34]

The Fifth Circuit has repeatedly emphasized that "hurt feelings, anger and frustration are part of life," and are not the types of emotional harm that could support an award of damages.[35] "The plaintiff must present 'specific discernable injury to [her] emotional state.'"[36] Although Griffin's testimony, standing alone, may be sufficient to prove mental damages, his uncorroborated testimony will only be sufficient if it is "particularized and extensive" enough to meet the

---

[31] *Cary v. Piphus*, 435 U.S. 247 (1978); *Giles v. General Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001); *Brady v. Fort Bend County*, 145 F.3d 691, 718 (5th Cir. 1998).
[32] *Giles*, 245 F.3d at 488.
[33] *Id*.
[34] *Thomas v. Texas Dept. of Criminal Justice*, 297 F.3d 361, 368 (5th Cir. 2002).
[35] *Id*. at 940.
[36] *Brady*, 145 F.3d at 718.

specificity requirement outlined by the Fifth Circuit.[37] "Neither conclusory statements that the plaintiff suffered distress . . . will support an award of compensatory damages."[38]

Here, physical impairment, was only addressed with Dr. David Ferachi, who only examined Griffin once on December 29, 2020, and he simply noted that IF Griffin is not properly treated, his injuries could result in permanent physical limitations, not that they would or that it currently applies to Griffin.[39] Dr. Ferachi later stated that Griffin will continue to have physical limitations, but stated he was not able to "speculate on what specific limitations they would be" because a functional capacity exam would need to be performed to "put permanent restrictions on patients".[40] Joyce Beckwith ("Beckwith") further confirmed that "there are no specific physical limitations that have been put on Mr. Griffin by anybody".[41] Finally, like Dr. Ferachi, Dr. Craig Greene testified that Griffin's injuries could result in permanent physical limitations if not properly treated but did not confirm that Griffin suffered from permanent physical limitations.[42]

With regard to disfigurement, none of the plaintiff's experts testified that Griffin was disfigured or would suffer from disfigurement in the future.[43] The only three times mental anguish was mentioned during Griffin's case in chief was during the opening[44] and when plaintiff's counsel referenced a previous lawsuit filed by Plaintiff where mental anguish was pled[45], and during the closing[46]. Finally, with regard to loss of enjoyment of life, Ms. Beckwith testified that Griffin enjoyed boxing before the accident[47] but it was confirmed that Griffin quit boxing in 1988 or

---

[37] *Hitt v. Connell*, 301 F.3d 240, 250- 251 (5th Cir. 2002).
[38] *Id*., see also, *Brady*, 145 F.3d at 718
[39] Dr. David Ferachi's testimony 45:15-20.
[40] Dr. David Ferachi's testimony 48:1-11.
[41] Joyce Beckwith's testimony 139:6-11.
[42] Dr. Craig Greene's testimony 225:7-10.
[43] *See generally* trial transcripts.
[44] Griffin opening statement 16:22-25 and 17:1-2.
[45] Griffin's testimony 150:4-9.
[46] Griffin's closing 28:1.
[47] Joyce Beckwith's testimony 133:1-3.

1989.[48] Beckwith also testified that Griffin stated he enjoyed horseback riding and riding four wheelers, but Beckwith confirmed, just like with boxing, she did not inquire into the time frame that Griffin participated in these activities and if this accident prevented him from continuing those activities[49]. Griffin briefly and generally states he cannot do certain activities whit his children, but they are all conclusory statements.[50]

Additionally and further to this point, none of Griffin's children live with him and have never lived with him.[51] In fact, during his deposition, Griffin confirmed he had not seen his oldest daughter, an adult, in about 2 and a half years[52], his triplets live in Ville Platte and he cannot see them because he is not paying his child support[53], and his youngest daughter lives in lake Charles with her mother[54]. Had defense counsel been allotted more than 45 minutes to cross examine Griffin, counsel would have been able to cover this information.

In any event and considering the testimony, Griffin's evidence of physical impairment, disfigurement, mental anguish and loss of enjoyment of life as well as emotional distress was insufficient to support anything more than a nominal damage award. There was neither corroborating evidence nor did Griffin offer any medical evidence of damages cause by his alleged distress, physical impairment, disfigurement and loss of enjoyment of life.[55] Griffin presented no medical evidence and sought no help from any mental health professional. His complaint of difficulties in playing with and spending time with his children is questionable in light of his

---

[48] Joyce Beckwith's testimony 133:18-25. Griffin confirmed in his deposition that he last amateur boxed in 1988 or 1989. See Exhibit A, 335:1-2.
[49] Joyce Beckwith's testimony 134:1-22
[50] Griffin's testimony 142 – 143.
[51] Exhibit A 58:4-9.
[52] Exhibit A 58:17-20.
[53] Exhibit A 59:1-6.
[54] Exhibit A 59:7-10.
[55] *Patterson*, 90 F.3d at 939.

admission that he does not have custody of his children and that none of his children live in the same city as him.

4. **The Verdict for Punitive Damages is against the great weight of the evidence**

REC Marine incorporates the arguments set forth in its Motion for Judgment as a matter of law. Punitive damages simply were not warranted. They were also clearly excessive. Based on undersigned counsel's initial research, the punitive damages awarded are much higher than any other maintenance and cure punitive damage award in Louisiana state or federal court. They also exceed the ration set forth in *Exxon Shipping Co. v. Baker,* 554 U.S. 471 (2008). REC Marine reserves the right to submit further briefing on these issues.

5. **The time limits imposed were unfair and prejudicial**

Defendants respectfully aver that the time limits imposed at trial were unfair and prejudicial. The time limits were imposed without sufficient notice to the parties and after the plaintiff was allowed to examine 7 out his 10 witnesses before the time limits were imposed.

A trial court should not impose trial time limits without sufficient warning for the parties to plan accordingly.[56] Absent unexpected developments, as discussed below, a trial court should not change the agreed-upon time limits once trial is underway.[57] Nor should additional time be granted unequally to the parties.[58] Time limits may violate a party's due process rights.[59]

> [A]rbitrary, inflexible time limits can impose a serious threat to due process principles. Justice cannot always be achieved within the orderly environment of an

---

[56] *Cf. Hildebrand,* 928 F.Supp. at 849 ("changes in allotments ... must only be made with notice and upon a determination of need").
[57] *Duquesne Light Co.,* 66 F.3d at 610 ("[A]n allocation of trial time relied upon by the parties should not be taken away easily and without warning.").
[58] *See General Signal Corp.,* 66 F.3d at 1508.
[59] *In re Marriage of Ihle,* 577 N.W.2d at 67.

11

assembly line.... Thus, judges must not sacrifice their primary goal of justice by rigidly adhering to time limits in the name of efficiency.[60]

Here, this matter was set four times for a five day jury trial before finally commencing on March 25, 2023.[61] On March 3, 2023, the parties participated in a Telephone Conference where the jury trial, scheduled for March 6, 2023, was continued to March 24, 2023 through March 27, 2023.[62] The jury trial was scheduled to last at least five days.[63] A little over one month before the start of the trial, on March 22, 2023, the Court unilaterally reset the jury trial to March 25, 2023 through March 28, 2023, eliminating one day of trial.[64]

On the second day of trial, the Court informed the Parties that there would be "further instructions for all counsel at the conclusion of today's testimony about how we will proceed tomorrow and Friday and the allocation of time that will be allotted to each witness going forward."[65] At this point in the trial, the plaintiff was on his seventh witness with only two witnesses remaining as well as the continuation of William Badeaux's testimony.[66] Beginning on the third day of trial, the Court officially imposed thirty-minute time limits on all witnesses moving forward. The Defendant was prejudiced due to the short notice with which to recraft their trial strategy and due to the fact that they were allotted less time to present their case in chief and were limited in their cross examination of at least 3 of plaintiff's witnesses.

---

[60] *Id.* at 68. *See also General Signal Corp. v. MCI Telecomms*. Corp., 66 F.3d 1500, 1508 (9th Cir.1995); *see generally Lisiten v. Lisiten*, 30 Colo.App. 375, 377, 492 P.2d 895, 896 (1972) ("We are aware of the crowded docket.... Nevertheless, litigants are entitled to have sufficient time to make an orderly presentation of their case.").
[61] See R. Doc. 41 ("A 5-day jury trial is scheduled for 8:30 a.m. beginning on 12/13/2021"), 70 ("Jury Trial set for 3/21/2022 through 3/25/2022 at 08:30 AM"), 141 ("The five-day Jury Trial is hereby set for 3/6/2023 - 3/10/2023 at 08:30 AM"), and 171 ("The five-day jury trial of the above matter is hereby CONTINUED to April 24, 2023").
[62] R. Docs. 168 – 171.
[63] R. Doc. 171.
[64] R. Doc. 173.
[65] April 25, 2023 Rough Trial Transcript 293:5-9
[66] Badeaux's testimony began on Monday, March 25, 2023, and was finished on Wednesday, March 27, 2023, after the time limits were imposed. The Plaintiff was afforded an additional thirty minutes on Wednesday on top of the time he spent questioning Badeaux on Monday.

In *Maloney v. Brassfield*, the trial court did not impose the time limits during trial, but far ahead of the commencement of trial.[67] Likewise in *Philadelphia Indem. Ins. Co. v. Ohana Control Sys., Inc.*, the court imposed time limes well before the trial began and the parties agreed the trial would last about two weeks.[68] In this matter, the parties did not agree to a four day trial and in fact, the trial lasted five days. Additionally, unlike in *Maloney*, the time limits were imposed after the trial commenced and after the plaintiff was allowed to put on seven of his nine witnesses before the testimony limits were imposed. Because unexpected developments could render a previously reasonable time limit inadequate, "[g]enerally, courts look upon rigid hour limits for trials with disfavor."[69] "[A]ny pre-trial limitations must be flexibly administered during trial to prevent any sacrifice of justice to efficiency."[70] Here, the rigid hour limits during the Defendant's case in chief significantly prejudiced the Defendant. With very little notice, the Defendant was required to revise their entire trial strategy to comply with the thirty minute time limit whereas the plaintiff was only required to revise their strategy with respect to their last two witnesses.

Furthermore, unexpected developments during trial could make a time limit that was initially adequate become insufficient for the parties' reasonable needs.[71] However, such a development must be a specific event that could not reasonably have been anticipated by a party who knew of, and had prepared to work within, the previously set time limitations.[72] If mere mismanagement of available trial time constituted such an unexpected development, a party would

---

[67] *Maloney v. Brassfield*, 251 P.3d 1097, 1102 (Colo. App. 2010).
[68] No. CV 17-00435-SOM-RT, 2020 WL 2025351, at *5 (D. Haw. Apr. 27, 2020).
[69] *General Signal Corp.,* 66 F.3d at 1508.
[70] *Hildebrand,* 928 F.Supp. at 849. *See also Applera Corp.,* 389 F.Supp.2d at 348 ("Where, as here, ... Defendant were granted some additional time exceeding the 20 hour limit, the Court cannot conclude that the clock trial was unfair.").
[71] *Cf. Applera Corp.,* 389 F.Supp.2d at 348 (where one-week continuance granted because of defense counsel's illness, court's adjustment of allotment of trial time was reasonable, and did not result in prejudice).
[72] *Maloney v. Brassfield*, 251 P.3d 1097, 1102 (Colo. App. 2010).

13

profit from poor strategic decisions at the expense of necessary trial court discretion in trial management.[73] Here, the plaintiff completely changed the order of his examination. Plaintiff did not examine a single witness in the order presented to the Court or to the other Parties. To the contrary, the Defendant examined their witnesses in the order presented to the Court and all other Parties allowing them to properly plan and prepare without any significant changes to their strategy based on the rearrangement of witnesses.

### 6. Improper statements made during plaintiff's closing argument

Defendant contends that the plaintiff's closing argument to the jury was prejudicial in that the argument referred improperly mischaracterized witness testimony, that the plaintiff protecting and saving other individuals, that the Defendant was required to report the lift basket incident to the coast guard, and denied allegations made in another lawsuit regarding injuries.

Generally, closing argument must go far beyond the bounds of accepted advocacy before a new trial will be granted.[74] "A district court may order a new trial if improper closing argument irreparably prejudices a jury verdict."[75] The propriety of Griffin's closing argument must be reviewed "within the context of the court's ruling on objections, the jury charge, and any corrective measures applied by the trial court."[76]

Next, plaintiff's counsel consistently made reference to a requirement that the Defendant should have reported the man basket incident in his closing.[77] However, the Court explicitly, stated during that trial that "I want to be very clear he cannot offer evidence that this company consistently violates those standards unless he has evidence to prove it."[78] This directly applies to

---

[73] *Id*.
[74] *Edwards v. Sears Roebuck and Company*, 512 F.2d 276, 284 (5th Cir.1975).
[75] *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir.1988).
[76] *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir.1985); *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 375 (5th Cir. 1989).
[77] Griffin's closing 11:22-25 and 26:7.
[78] Michael Lebsack's testimony 293:1-25, 294:1-25, 295:1-25 and 296:1-19.

the plaintiff's reference that the Defendant will keep "doing this, they will continue hurting people and they way it stops is with you."[79] Plaintiff completely disregarded the Court's instructions regarding the alleged violation of a coast guard policy without any evidence of such.

With regard to plaintiff's denial of alleging permanent injuries in a prior lawsuit, during closing, plaintiff's counsel stated that "he has a lawyer named Bow West and Bow West files a lawsuit for him and he puts in there he has permanent injuries to his back, neck and low back. Mr. Griffin had never seen that before it was filed. He certainly did not have permanent injuries to his neck, back and low back.[80] The Court was specifically concerned with the fact that Griffin denied suffering permanent injuries that resulted in the filing of a lawsuit.[81] The Court also noted that the plaintiff has to sign a certification when filing a lawsuit and that it is not unreasonable to assume Griffin would have known about the filing of the lawsuit and would remember doctor's visits.[82] Plaintiff's assertion in his closing that Griffin had never seen the lawsuit and did not suffer permanent injuries is prejudicial and goes against the weight of the evidence and against Griffin's judicial admission that he was permanently injured.

Next, plaintiff's counsel made reference to William Badeaux's declaration, that plaintiff's counsel "put something there that was not accurate. And when Mr. Badeaux was about it first time in his deposition he didn't fight it he didn't push back he said I didn't see back. He cleared it up right then and there. He did the same thing on the stand."[83] However, that was not an accurate statement as Mr. Badeaux, when asked about the declaration, initially stated in his deposition that the declaration "came from my mouth. That was worded professionally to understand. And I

---

[79] Griffin's closing 68:13-15.
[80] Griffin's closing 21:5-11.
[81] Griffin's testimony 159:1-25, 160:1-25 and 161:1-25.
[82] Griffin's testimony 153:24-25 and 154:1-24.
[83] Griffin's closing 22:10-16.

signed it."[84] Mr. Badeaux initially stated that he agreed with everything in the declaration.[85] Likewise, on the stand, when asked if he read every word of the statement, Mr. Badeaux testified that he did not[86], but during his deposition, Mr. Badeaux explicitly stated, "The declaration was already printed out. I reviewed it. He told me to review it. That - - that information that he printed out was the - - the exact information that I gave him."[87] Again and as stated above, this is not a slight inconsistency and is a complete mischaracterization of the witness testimony. Had the Defendant's been allowed more time to fully examine Mr. Badeaux, this information would have been presented to the jury.

Finally, plaintiff's counsel mischaracterized Captain Winhauer's testimony stating that Captain Winhauer did not recall anything but that does not mean it did not happen that is means he did not remember.[88] Captain Winhauer did state that he did not recall the incident.[89] In fact when questioned by the plaintiff's counsel recalling or remembering the incident, the Court sustained the Defendant's objection and instructed plaintiff's counsel to ask his question another way, to which he did not and abandoned the line of questioning altogether.[90] Plaintiff's counsel repeated attempts during Captain Winhauer's testimony and during plaintiff's closing was prejudicial and a violation of an objection which was previously sustained.

## CONCLUSION

Under the Federal Rules, a district court should grant a new trial when the totality of the evidence demonstrates that the jury's verdict was against the great weight of the evidence. In this case, the testimonial and documentary evidence overwhelmingly demonstrates that the jury's

---

[84] Exhibit C 45:19-22.
[85] Exhibit C 45:23-25 and 46:1-3.
[86] William Badeaux's testimony 17:4-14.
[87] Exhibit C 49:24-25, 50:1-8.
[88] Griffin's closing 12:4-7.
[89] Captain Joshua Winhauer's testimony 91:2-5.
[90] Captain Joshua Winhauer's testimony 95:12-25 and 96:1-21.

verdict regarding future medicals, past wage loss and future loss of earning capacity, past and future general damages, time limits was against the great weight of the evidence. Further, the improper statements made during plaintiff's closing argument evinced passion and prejudice.

                                        Respectfully submitted,

                                        */s/ Kyle A. Khoury*
                                        Salvador J. Pusateri, T.A. (#21036)
                                        Kyle A. Khoury (#33216)
                                        Kristian B. Dobard (#36997)
                                        **PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
                                        1100 Poydras Street, Suite 2250
                                        New Orleans, Louisiana 70163
                                        Telephone: (504) 620-2500
                                        Facsimile: (504) 620-2510
                                        Salvador.Pusateri@pjgglaw.com
                                        Kyle.Khoury@pjgglaw.com
                                        Kristian.Dobard@pjgglaw.com
                                        **ATTORNEYS FOR REC MARINE LOGISTICS,   LLC**