UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>       **Plaintiff**<br><br>**VERSUS**<br><br>**REC MARINE LOGISTICS, LLC, ET AL**<br>       **Defendants** | **CIVIL ACTION NO: 3:20-cv-00092-BAJ-EWD**<br><br>**DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON**<br><br>**MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

**OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(D)**

**MAY IT PLEASE THE COURT:**

The Plaintiff, McArthur Griffin, has filed a Motion for Attorneys' Fees Pursuant to Federal Rule of Civil Procedure 54(D). REC Marine Logistics, LLC ("REC Marine") files this Opposition to Plaintiff's Motion[1], and requests that the Motion be denied for the reasons below.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

McArthur Griffin was employed by REC Marine as a deckhand onboard a vessel named the M/V DUSTIN DANOS. Plaintiff alleges he sustained various physical injuries on May 2, 2018, when he was struck by a personnel basket being lifted from the deck of the M/V DUSTIN DANOS to a nearby platform. On April 22, 2019, he filed an Original Petition for Damages in the 19th Judicial District Court for East Baton Rouge Parish against REC Marine and other entities which were subsequently dismissed from the case.[2] The Original Petition asserted claims for Jones Act negligence and unseaworthiness. Plaintiff further asserted a claim for maintenance and cure, stating only that "As

---

[1] Plaintiff is claiming he is entitled to attorneys' fees in connection with his claim for maintenance and cure. This Opposition is being filed on behalf of REC Marine, as REC Marine was the employer of the Plaintiff and the only defendant against whom a maintenance and cure claim could have been asserted.
[2] R. Doc. 1-1

an American seaman, Plaintiff is also entitled to maintenance and cure. As such, Plaintiff demands that Defendants make maintenance and cure payments at a reasonable rate and pay for Plaintiff's medical treatment."[3] There was no allegation that REC Marine had been willful, wanton or arbitrary in denying maintenance and cure benefits. While Plaintiff alleged entitlement to punitive damages, he attempted to do so only in connection with his negligence claim under the Jones Act.[4] More particularly, the Original Petition states "Plaintiff is also entitled to punitive damages because the aforementioned actions of Defendants were grossly negligent," and then goes on to allege that Defendants were aware of dangerous conditions on the vessel and consciously disregarded those risks, leading to his injuries.[5] These allegations could only conceivably be an attempt to assert punitive damages with respect to Jones Act negligence, because "gross negligence" is not a basis for awarding punitive damages on a maintenance and cure claim, and the issue of whether REC Marine disregarded dangerous conditions on the vessel has nothing to do with entitlement to maintenance and cure. There was no allegation in the Original Petition that REC Marine had been willful, wanton or arbitrary in denying maintenance and cure benefits, thereby justifying punitive damages. Moreover, nowhere in the Original Petition does plaintiff allege entitlement to attorneys' fees.

On November 4, 2019, Griffin's First Supplemental and Amended Petition for Damages ("Amended Petition") was filed in the state court action. The Amended Petition simply added two new defendants, Offshore Transport Services, LLC and QBE Insurance (Europe) Limited. All substantive allegations of the Amended Petition were the same as those in the Original Petition.[6] There was no allegation that Plaintiff was entitled to punitive damages for the willful, wanton or

---

[3] R. Doc. 1-1, p. 1-5, ¶ VIII
[4] Of course, this was clearly futile, as the case law is well-established that punitive damages are not available on a Jones Act negligence claim.
[5] R. Doc. 1-1, p. 1-5, ¶ X
[6] R. Doc. 1-1, p. 51-56

2

arbitrary failure to pay maintenance and cure, and no contention that he was entitled to attorneys' fees on that basis (or any other).[7]

As the Court is aware, this case was set for trial multiple times. The Court's original Scheduling Order set a trial date of December 13, 2021.[8] The deadline to file a motion to amend the pleadings was November 18, 2020.[9] Plaintiff never amended or supplemented the above-referenced state court pleadings. Trial was subsequently continued to March 21, 2022.

Plaintiff and Defendants filed a Joint Pre-Trial Order on January 10, 2022.[10] Therein, Griffin alleged for the first time that defendants were liable for "failure to pay maintenance and cure and withholding maintenance and cure intentionally and wantonly and in such a manner as to give rise to punitive damages."[11] He specifically listed as a disputed legal issue whether he was entitled to punitive damages on his maintenance and cure claim.[12] However, nowhere in the Joint Pre-Trial Order did Plaintiff claim entitlement to attorneys' fees. Furthermore, on February 25, 2022, Plaintiff filed his first Proposed Verdict Form.[13] Question 7 asked "Do you find by a preponderance of the evidence that REC Marine Logistics, LLC, in failing to provide maintenance and cure to McArthur Griffin, acted not only unreasonably, but also willfully and wantonly such that punitive damages are warranted."[14] The Proposed Verdict Form did not ask whether Griffin should be awarded attorneys' fees for the alleged willful and wanton failure to pay maintenance and cure.

Trial was subsequently continued to March 6, 2023. On February 24, 2023, the parties filed another Joint Pre-Trial Order.[15] Just as in the one filed in January of 2022, Plaintiff made reference

---

[7] *Id.*
[8] R. Doc. 41
[9] R. Doc. 41
[10] R. Doc. 91
[11] R. Doc. 91, p. 3
[12] R. Doc. 91, p. 11
[13] R. Doc. 123
[14] R. Doc. 123, p. 5
[15] R. Doc. 155

3

to punitive damages, but did not claim entitlement to (or even mention) attorneys' fees. The parties also filed a joint Proposed Verdict Form on February 24, 2023.[16] Plaintiff again requested that the jury be asked "Do you find by a preponderance of the evidence that REC Marine Logistics, LLC, in failing to provide maintenance and cure to McArthur Griffin, acted not only unreasonably, but also willfully and wantonly such that punitive damages are warranted."[17] However, like the Proposed Verdict Form filed by Plaintiff a year earlier, this version did not ask whether Griffin should be awarded attorneys' fees for the alleged willful and wanton failure to pay maintenance and cure.

A jury trial proceeded from April 25, 2023 through May 1, 2023. On the morning of May 1, 2023, the Court held a charge conference with all counsel to discuss the proposed verdict form and jury instructions. The final Verdict Form given to the jury contained Interrogatory No. 13, stating "Do you find by a preponderance of the evidence that REC Marine Logistics, LLC, in failing to provide maintenance and cure to Plaintiff McArthur Griffin, acted not only unreasonably, but also willfully, wantonly, and arbitrarily, such that punitive damages are warranted.[18] Counsel for Griffin did not object to the Verdict Form or request that the jury be asked whether he should be awarded attorneys' fees as well.

On May 1, 2023, the jury returned a verdict for the Plaintiff. Of note, they answered Interrogatory No. 13 in the affirmative and ultimately awarded punitive damages of $1,500,000 on the maintenance and cure claim.[19] On May 5, 2023, a Judgement on the jury's verdict was entered.[20] Of course, there was no finding in the Judgment that Plaintiff was entitled to attorneys' fees.

---

[16] R. Doc. 157
[17] R. Doc. 157, p. 5
[18] R. Doc. 212, p. 8
[19] R. Doc. 212, p. 8-9
[20] R. Doc. 215

4

## II. LAW AND ARGUMENT

### A. Plaintiff's failure to request attorneys' fees at any time before May 18, 2023 precludes the Court from Awarding Attorneys' Fees

Generally speaking, punitive damages and attorneys' fees are available remedies for willful and wanton failure to pay maintenance and cure. *Hurtado v. Balerno Int'l Ltd.*, 408 F.Supp.3d 1315, 1333 (S.D. Fla. 2019) (citing *Atlantic Sounding Co. Inc. v. Townsend*, 557 U.S. 404, 424 (2009)). If an employer has been willful, wanton or arbitrary in denying maintenance and cure, the trier of fact has the discretion to award punitive damages and/or attorneys' fees. See *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987) ("Arbitrary-and-capricious denial of a seaman's request for maintenance and cure **can** result in the employer's being liable for the seaman's attorney's fees."), (abrogated on other grounds by *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir.1995).[21] This discretion is exemplified in the U.S. Fifth Circuit's Pattern Jury Instruction (given herein) that "If you also find that the employer's failure to pay maintenance and cure was not only unreasonable, but was also willful, wanton, and arbitrary, you **may** also award punitive damages and attorney's fees." (emphasis added).[22]

In the instant case, Plaintiff did not allege entitlement to attorneys' fees in either his Original Petition or Amended Petition.[23] He also did not seek to supplement or amend those pleadings. Griffin's Original Petition and Amended Petition likewise never asserted entitlement to punitive damages in connection with his maintenance and cure claim, and it therefore may have been generous to allow this issue to go to the jury. However, at least Plaintiff stated in multiple Joint Pre-Trial Orders

---

[21] As stated in *Nelton v. Cenac Towing, LLC,* 2011 WL 289040, at *22 (E.D. La. 2011), the U.S. Supreme Court's decision in *Atlantic Sounding* abrogated the Fifth Circuit's decision in *Guevara,* thereby restoring previous Fifth Circuit case law, e.g. *Morales v. Garijak, Inc.*
[22] See Jury Instructions given in this case, p. 41
[23] R. Doc. 1-1, p. 1-5 and p. 51-56

5

that he was seeking punitive damages for the willful denial of maintenance and cure and ensured that the ultimate Verdict Form submitted to the jury reflected that. He did not do so with respect to any claim for attorneys' fees. As discussed above, Griffin submitted at least two Joint Pre-Trial Orders and two proposed jury verdict forms that contained no reference to attorneys' fees.[24] Most importantly, at the conference held by the Court on the last day of trial, counsel for the parties discussed the Verdict Form and had a full opportunity to lodge any objections or suggest changes for the Court's consideration. Despite this, Plaintiff never requested that the Verdict Form be amended to reflect whether he should be awarded attorneys' fees for the alleged willful, wanton, or arbitrary denial of maintenance and cure. As such, the jury (as the trier of fact in this case) made its decision based on the Verdict Form they were given. The Court's Judgment based on the Verdict Form was entered on May 5, 2023, and Plaintiff filed his Motion for Attorneys' Fees on May 18, 2023.

Plaintiff may argue that his Original Petition and Amended Petition refer to "all costs of court," and indeed the Judgment of May 5, 2023, awarded him "court costs and judicial interest from the date of judicial demand."[25] However, court costs and attorneys' fees are not the same thing. This is especially so in the context of this case. In *Holmes v. J. Ray McDermott & Co., Inc.*, the U.S. Fifth Circuit stated "in an action for arbitrary and willful failure to pay maintenance and cure, attorney's fees are not 'similar to costs,' at all but rather are an element of damages which may be recovered." *Holmes v. J. Ray McDermott & Co., Inc.*, 682 F.2d 1143, 1147 (5th Cir. 1982). The court went on to state that an award of attorney's fees for the willful denial of maintenance and cure is "not uniquely separable from the merits but [] bound hand in hand with them." *Holmes*, 682 F.2d at 1147.

Having not pleaded entitlement to or made any reference to attorneys' fees during four years of litigation, and after the jury has returned a verdict which the Court entered Judgment on, Plaintiff

---

[24] R. Docs. 91, 123, 155 and 157
[25] R. Doc. 215, p. 3

6

now asks this Honorable Court to not only determine that he should be awarded attorneys' fees in the first instance, but to then set the amount of that award at $348,150.00. It is much too late for this. REC Marine points the Court to several helpful cases. In *Robin v. Wilson Bros. Drilling*, 719 F.2d 96 (5th Cir. 1983), the jury returned a verdict for the defendant. On appeal, the plaintiff argued the verdict form improperly permitted the jury to provide a single answer to the questions of both negligence and causation under both the unseaworthiness and Jones Act claims. *Robin*, 719 F.2d at 97. In ruling against the plaintiff, the Fifth Circuit noted that even the proposed verdict form which he asked for posed both of these issues in a single question. *Robin*, at 97. Additionally, Robin did not object to this particular aspect of the <u>actual</u> verdict form given to the jury, leading the court to hold that "Having failed to object during the trial, Robin cannot raise this objection for the first time on appeal." *Id.;* See also *McWilliams v. Texaco, Inc.*, 781 F.2d 514 (5th Cir. 1986) (stating "An objection to an interrogatory, or lack thereof, must be made prior to the retiring of the jury or the objection is waived.").

      Similarly, in a case decided by this Court, *Abbott v. Babin*, 2017 WL 3138318, at *1 (M.D. La. May 26, 2017), <u>aff'd,</u> 744 F. App'x 854 (5th Cir. 2018), the plaintiff waited until after the jury verdict was rendered to raise in post-trial motions issues regarding the verdict form. The Court ultimately held that counsel for Abbott did not timely object to the instructions included on the verdict form that directed the jury to bypass all questions related to damages in reference to Plaintiff's Eighth Amendment claim if it found that Plaintiff did not "suffer[ ] some harm" as a result of either Defendant's use of force. *Abbott*, 2017 WL 3138318, at *4. In doing so, it was noted that "Plaintiff only objected after the jury returned its first, yet incomplete, verdict—twenty-six hours after receiving the jury instructions and verdict form and after lodging several objections to the jury instructions and verdict form during the charge conference and before presenting closing argument." *Id.*

In sum, McArthur Griffin had four years to assert that he was entitled to attorneys' fees for the alleged willful, wanton and arbitrary denial of maintenance and cure. He did not do so. Plaintiff also had ample opportunity to object to the Verdict Form which did not ask the jury to determine whether he was entitled to attorneys' fees. This was despite the jury being instructed that they "may" choose to award both attorneys' fees and punitive damages if they found REC Marine's "failure to pay maintenance and cure was not only unreasonable, but was also willful, wanton, and arbitrary."[26] REC Marine notes that even in closing arguments, which occurred after the charge conference, Plaintiff's counsel mentioned nothing about attorneys' fees. Nor did Plaintiff lodge an objection when the jury's verdict was read or in the days thereafter. Pursuant to Federal Rule of Civil Procedure 49, "A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict." Fed. R. Civ. P. 49(a)(3). Here, not only did Plaintiff not object to the lack of reference to attorneys' fees on the verdict form, as previously noted he lodged no objection after the verdict was read or in the days thereafter. The Court made no finding on the issue, and Judgment was entered on May 5, 2023, which included no indication that Griffin should be awarded attorneys' fees on his maintenance and cure claim.[27] Accordingly, pursuant to Fed. R. Civ. P. 49(a)(3), the Court "is considered to have made a finding consistent with its judgment on the special verdict."

To the extent Plaintiff would now attempt to have the Court decide as an initial matter whether he should have been awarded attorneys' fees for the alleged willful, wanton, and arbitrary failure to pay maintenance and cure, such would be improper and highly prejudicial. Although Courts

---

[26] See Jury Instructions, p. 41
[27] R. Doc. 215

frequently decide the <u>amount</u> of attorneys' fees to be awarded, in a jury trial the issue of whether a seaman should be awarded attorneys' fees in the first place is to be decided by the jury. It is quite likely the jury would not have assessed punitive damages of $1,500,000 (which was already grossly excessive), if they knew Plaintiff would later be awarded attorneys' fees of $348,150.00. Alternatively, considering the Court instructed the jury that they "may" award punitive damages <u>and</u> attorneys' fees if they found REC Marine was willful, wanton and arbitrary, the jury may have simply lumped these two items together in their award of punitive damages. Because the jury has been discharged, we will never know what they were thinking. If either of the above circumstances accurately reflect the jury's justification, then it would be manifestly unjust for the Court to find that Plaintiff should be awarded attorneys' fees. Plaintiff would essentially be given two bites at the apple, with the second bite allowed under the assumption that the jury wanted to award him even more money in the form of attorneys' fees which was not somehow already reflected in their verdict.

> **B. If Plaintiff is entitled to an award of attorneys' fees, the rates requested by counsel for the Plaintiff should be reduced**

The Plaintiff requested the rate of $500 per hour for lead counsel, Daniel E. Sheppard, and for Mr. Sheppard's co-counsel, P. Hogan Leatherwood. For the following reasons, the rate of Mr. Sheppard should be reduced from $500 to $250 per hour; and the rate of Mr. Leatherwood should be reduced from $500 to $200 per hour.

In the Fifth Circuit, a reasonable hourly rate is derived by "consider[ing] the attorneys' regular rates as well as prevailing [market] rates." *Coves of the Highland Cmty. Dev. Dist. v. McGlinchey Stafford, P.L.L.C.*, No. CIV.A. 09-7251, 2012 WL 174477, at *2 (E.D. La. Jan. 20, 2012) (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.2d 319, 324, 328 (5th Cir. 1995)).

> In determining the prevailing market rate for these purposes, locale alone is not determinative; the Court must also endeavor to compare the requested rates to those prevailing in the relevant legal market "...

> for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum [v. Stenson*, 465 U.S. 886, 895, n.11 104 S.Ct. 1541, 1547 n.11 (1984)]. Indeed, "considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." *Perdue*, 559 U.S. at 553, 130 S.Ct. at 1673 (internal quotation omitted).
>
> The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *NAACP v. City of Evergreen, Alabama*, 812 F.2d 1332, 1338 (11th Cir. 1987). Such satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and, if available, information on rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. However, mere testimony that a given fee is reasonable is not satisfactory evidence of market rate. *See Hensley*, 461 U.S. at 439 n. 15, 103 S.Ct. at 1942 n. 15.

*St. Joseph Abbey v. Castille*, No. CIV.A. 10-2717, 2015 WL 3444897, at *6 (E.D. La. May 27, 2015). Both attorney-applicants submitted Declarations in which each briefly states when they graduated from law school and was licensed, and how long they have been practicing law and specializing in the field of maritime. Furthermore, each declares "Based on my experience and the average rate for other attorneys in the Baton Rouge area with equivalent experience, I believe $500 per hour is a reasonable hourly billing rate."[28]

Each attorney-applicant also declares that he "believes" the rates of the other applicant are reasonable based on when they graduated from law school.[29] None of the attorney applicants declares that the rates requested in this case are the customary rates <u>they</u> normally charge in similar matters. See *St. Joseph Abbey, supra, quoting Blum, supra*.

---

[28]

[29] See Paragraph 4 of each Declaration.

### 1. Mr. Sheppard's rate should be reduced from the requested $500 per hour to $250 per hour; and Mr. Leatherwood's rate should be reduced from the requested $500 per hour to $200 per hour.

Mr. Sheppard was the lead counsel in this matter.[30] He graduated from law school in 2016 and has been practicing in the area of maritime for at least six years.[31] Mr. Sheppard has been licensed in Louisiana for five years.

Mr. Leatherwood only attended the trial in this matter.[32] He did not attend any of the status conferences or pre-trial hearings.[33] He did not attend or depose any of the witnesses in this matter. He is not licensed in Louisiana and was only admitted here on a *pro-hoc vice* basis. He graduated from law school in 2016 and has been practicing in a variety of fields, including maritime.[34]

"The calculation of attorney's fees involves a well-established process."[35] "First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case."[36] The party applying for attorney's fees bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates.[37] The Fifth Circuit has emphasized that "the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits."[38]

In *Cooper/T. Smith Stevedoring Co., Inc. v. Agribusiness United N. Am. Corp.*, No. CV 17-00252-BAJ-EWD, 2018 WL 2843515, at *1 (M.D. La. June 11, 2018), attorney's fees were awarded.

---

[30] R. Doc. 224-2
[31] R. Doc. 224-2
[32] R. Doc. 224-3
[33] R. Doc. 224-3
[34] R. Doc. 224-3
[35] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).
[36] *Id.*
[37] *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).
[38] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quotation marks omitted).

In *Cooper/T. Smith*, this Court granted the request of four attorneys for attorney's fees, three of which had over 10 years of experience. The Court agreed that an hourly rate of $225.00 for the Managing Director, who had been practicing law for over twenty years in Louisiana and had extensive experience in maritime law, was a reasonable rate for someone with his experience.[39] The Court further agreed that an hourly rate of $165.00 for two associates at the same firm was reasonable. One associate had ten years experience and the other had three years.[40] The plaintiff's attorneys in *Cooper/T. Smith* were all based in New Orleans, but awarded Baton Rouge rates.

In *Acadian Diagnostic Lab'ys, LLC v. Quality Toxicology, LLC* the plaintiff sought and was awarded attorney fees for one of the two primary attorneys with more than 35 years of experience at a billing rate of $300.00 per hour.[41] The other primary attorney was awarded $225.00, and he had more than 12 years of experience.[42] The other, non-primary, attorneys were also awarded an hourly rate of $225.00.[43] The plaintiff's attorneys in *Acadian* were all based in Baton Rouge.

Here, plaintiff cites to *Jefferson v. Baywater Drilling, LLC*, 2015 U.S. Dist. LEXIS 155110, at *4-5 (E.D. La. Sept. 16, 2015) to prove that his counsel's rates are in line with the market for lawyers of comparable skill and experience practicing in the Baton Rouge area. However, the plaintiff's lawyers in *Jefferson* were New Orleans based attorneys. The highest paid attorney in *Jefferson* had

---

[39] *Cooper/T. Smith Stevedoring Co., Inc. v. Agribusiness United N. Am. Corp.*, No. CV 17-00252-BAJ-EWD, 2018 WL 2843515, at *2 (M.D. La. June 11, 2018). See *Alonso*, 2017 WL 4176973, at *7 (M.D. La. Sept. 21, 2017) (finding $300.00 an hour is a reasonable rate for an attorney with thirteen years of experience)(reversed and remanded on other issues, but relating to attorney's fees, the Fifth Circuit stated, "There is no challenge on appeal as to the factual findings supporting the calculation of the attorney fees award. The only dispute is whether attorney fees should be granted for work completed up through trial."); *Hernandez v. Theriot*, No. CV 14-42, 2017 WL 8942567, at *5 (M.D. La. Jan. 19, 2017) (finding $250.00 an hour is a reasonable rate for an attorney with fifteen years of experience).
[40] See *Alonso*, 2017 WL 4176973, at *7 (finding $300.00 an hour is a reasonable rate for an attorney with thirteen years of experience); *Ball v. Leblanc*, No. 13-00368, 2015 WL 5749458, at *4 (M.D. La. Sept. 30, 2015) (finding $200 per hour a reasonable rate for an attorney with four years of experience).
[41] No. CV 16-00176-BAJ-EWD, 2020 WL 1317733, at *2 (M.D. La. Mar. 20, 2020).
[42] *Id*. and at R. Doc. 149-1.
[43] *Id*. and at R. Doc. 149-1.

nearly 41 years of maritime experience at that time.[44] The second highest paid attorney had nearly six years of experience at that time.[45] Their hourly rates were $500.00 and $350.00, respectively.

Counsel for plaintiff did not offer any evidence about what their normal billable rates are or any independent evidence of what the reasonable rates are in the Baton Rouge area for attorneys of similar experience and expertise in comparable litigation. Absent such evidence, the conclusory statements of each attorney regarding the reasonableness of their rates, should not be accepted as prima facie evidence of the reasonableness of the requested rates. Accordingly, an hourly rate of $250.00 is more than appropriate for Mr. Sheppard who has only been practicing maritime law for 6 years. As to Mr. Leatherwood, an hourly rate of $200.00 is also more than appropriate. The New Orleans based attorneys in *Cooper/T. Smith* and *Jefferson* were awarded comparable fees in accordance with Baton Rouge's prevailing market rates, as evinced by the attorney's fees awarded in *Acadian*. As such, both Mr. Sheppard and Mr. Leatherwood's hourly rates should be reduced in proportion to their experience and role in this matter as well as considering the attorneys' regular rates as well as prevailing market rates. REC Marine notes that the request by Plaintiff's counsel for a rate of $500 an hour is significantly higher than lead defense counsel who practices in New Orleans and has over 30 years experience in maritime law.

2. **Number of Hours billed.**

Counsel for the Plaintiff must also prove the reasonableness of the number of hours they are claiming.

> [P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment. *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002). Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. Id.; *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002).

---

[44] See *https://lambertzainey.com/lawyers/hugh-p-lambert/*
[45] See *https://www.jjclaw.com/about-us/cayce-peterson/*

> The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. *Walker*, 313 F.3d at 251 (citing *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996)).[46]

Plaintiff did not submit evidence of the hours billed and the hours written-off. Instead, each attorney seeking fees declared:

> Morrow & Sheppard, LLP wishes to be reasonable and fair in seeking fees. To that end, we have already cut hundreds of hours that were billed to this matter and reduced our hourly rate. Further, in an effort to eliminate redundancy, while still recognizing that every member of the pre-trial and trial team played a unique and critical role. Nonetheless, for example, meetings (excluding trial), for billing purposes, have been reduced to the integral participants. This represents only a decision to exercise billing judgment. Moreover, not every telephone call, e-mail or meeting regarding this case has been included in this itemization.[47]

The declarations of counsel do not state that the billing was kept contemporaneously with the work performed, or that the billing was conducted using the same methods regularly utilized by attorneys in the firm of Morrow & Sheppard, LLP. In addition to the foregoing examples of how to exercise billing judgment, counsel for the plaintiff should have declared and offered documentary evidence showing they only submitted a bill for attorneys' fees incurred in collecting <u>maintenance and cure</u>.

The plaintiff's lawsuit sought damages in personal injury under the Jones Act for alleged negligence of REC Marine and/or for alleged unseaworthiness of the M/V DUSTIN DANOS. The plaintiff prosecuted the Jones Act negligence and unseaworthiness claims through trial. The Jury found in favor of the Plaintiff on both his Jones Act and unseaworthiness claims. Regardless, the Plaintiff cannot, as a matter of law, recover attorney's fees for the

---

[46] *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

[47] See Paragraph 7 of each declaration, R. Docs. 224-2 and 224-3.

prosecution of any claim other than the claim for maintenance and cure.[48] The attorneys did not declare that hours spent on the Jones Act negligence and unseaworthiness claims were removed from the bill submitted to the Court and a review of the bill submitted clearly contains time entries related to those claims or which were clearly not specific to the maintenance and cure claim.[49] Many of the entries, most notably the entries for attendance at trial, apply to all three claims.

The Defendants respectfully suggests that hours obviously spent on the Jones Act negligence and/or unseaworthiness claims be stricken, and that the hours not clearly limited to the prosecution of the maintenance and cure claim be reduced.

### III.  CONCLUSION

For the reasons set forth herein, REC Marine requests that Plaintiff's Motion for Attorneys' fees be denied. REC Marine notes that it has separately filed a Motion for Judgment as a Matter of Law and a Motion for New Trial or Remittitur. Nothing in this Opposition Memorandum should be construed as a waiver of any of the arguments set forth in those Motions.

        Respectfully submitted,

        */s/Kyle A. Khoury*
        Salvador J. Pusateri, T.A. (#21036)
        Kyle A. Khoury (#33216)
        Kristian B. Dobard (#36997)
        **PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
        1100 Poydras Street, Suite 2250
        New Orleans, Louisiana 70163
        Telephone: (504) 620-2500
        Facsimile: (504) 620-2510

---

[48] See *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 90 (5th Cir. 1984) (citing *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962)).

[49] R. Doc. 224-4 (i.e., 5/17/2023 entry by DES for :"Draft motion for attorneys' fees").

Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
Kristian.Dobard@pjgglaw.com
**ATTORNEYS FOR REC MARINE LOGISTICS, LLC**