**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MCARTHUR GRIFFIN** | * | |
| | * | |
| **VERSUS** | * | **C.A. No.: 3:20-92-BAJ-EWD** |
| | * | |
| **REC MARINE LOGISTICS LLC, et al** | * | **TRIAL BY JURY DEMANDED** |
| | * | |

**OPPOSITION TO MOTION TO RECONSIDER**

    QBE Insurance (Europe) Ltd. ("QBE Insurance"), through undersigned counsel, opposes the Motion to Reconsider Judgment as a Matter of Law and to Alter or Amend Judgment filed by Plaintiff, McArthur Griffin ("Plaintiff"). As stated more fully herein, Plaintiff fails to come close to justifying reversal of the Court's judgment in favor of QBE following a trial in which Plaintiff, proceeding directly against an insurer, failed to introduce an insurance policy into evidence and failed to ask a single witness a single question about insurance.

**I.    Plaintiff's Motion should be deferred until certified and complete trial transcripts are available.**

    At the outset, QBE respectfully urges the Court to defer ruling on Plaintiff's Motion to Reconsider until transcripts of the trial are filed into the record and a reasonable opportunity to review them is afforded QBE, as contemplated by the Court's Order of May 24, 2023 (Rec. Doc. 226). To that end, undersigned counsel raised QBE's concern over the lack of trial transcript availability with Plaintiff and counsel for REC Marine Logistics LLC and Offshore Transport Services, LLC (collectively, for ease of reference, "REC Marine") on June 9, 2023, one week before QBE's opposition to Plaintiff's motion would be due. After several days of exchanges between the parties in which QBE sought all parties' consent to a motion to extend all pending post-trial opposition deadlines and drafts of a joint motion were circulated, Plaintiff gave consent

to the Parties Joint Motion to Continue Briefing Deadlines on June 15, 2023. *See* Emails attached as Exhibit A, *in globo*. That motion (Rec. Doc. 237) was filed shortly thereafter on June 15, 2023 and brought to the Court's attention but remains pending.

As a result, QBE files this Opposition out of an abundance of caution and without the benefit of having reviewed accurate transcripts of the witnesses' trial testimony. More importantly, QBE has not reviewed *any* transcripts of the parties Rule 50 arguments/counter-arguments, or of the Court's reasons for granting judgment as a matter of law as stated on the record. For reasons QBE assumes to be self-evident, its inability to review the Court's stated reasons, or the arguments Plaintiff made (and did not make), severely hinders QBE in its effort to respond to a Motion to Reconsider that ruling. Accordingly, QBE respectfully requests that consideration of Plaintiff's Motion be deferred until trial transcripts are available, and that QBE be afforded a full opportunity to respond to Plaintiff's Motion by filing a substitute Memorandum in Opposition after trial transcripts are reviewed.[1]

II. **Alternatively, Plaintiff's Motion should be denied because Plaintiff failed to introduce any actual evidence in support of his direct action claim at trial and cannot remedy that failure through a Rule 59 motion.**

A. **Rule 59(e) relief is disfavored and only available in limited circumstances.**

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment." *Id.* at 478-79 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990); *Schiller v.*

---

[1] QBE also notes that Plaintiff will enjoy that benefit before having to oppose either REC Marine's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial/Remittitur, assuming the extensions QBE sought are granted.

*Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) ("A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued.") (internal quotation marks omitted)). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). See also *Anderson v. Red River Waterway Com'n*, 16 F.Supp.2d 682, 683 (W.D.La. 1998) ("'[R]evisiting the issues already addressed is not the purpose of a motion to reconsider,' and 'advancing new arguments or supporting facts which were otherwise available [when the original motion was filed] is likewise inappropriate.") (quoting *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)); *Cook v. Flight Servs. and Systems, Inc.*, No. 16-15759, 2018 WL 6591919, *2 (E.D.La. Dec. 14, 2018) ("[I]t is well-settled that motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of an order or to re-urge matters that have already been advanced by a party.") (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet,* 367 F.3d at 478-79. (citing *Clancy c. Employers Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D.La. 2000)). "'[L]itigants are expected to present their strongest case when the matter is first considered,'" and therefore "[a] motion to reconsider based on recycled arguments only serves to waste the resources of the court." *State of La. v. Sprint Communications Co.*, 899 F.Supp. 282, 284 (M.D.La. 1995) (quoting *Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559 (11th Cir. 1990)); *Cook*, 2018 WL 6591919 at *2 ("When there exists no independent

reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.").

"Under Rule 59(e), there are three possible grounds for granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *Bellot v. Marine Surveys, LLC*, 2015 WL 1959512, at *1 (E.D.La. Apr. 28, 2015) (citing *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)). Here, Plaintiff only relies on the third of these possible grounds as a basis for reconsideration. Courts have recognized an especially high burden where clear error and manifest injustice are asserted:

> Few cases discuss the manifest injustice standard. And while "[t]here is no general definition of manifest injustice," it is clear that "[e]stablishing a manifest injustice is a high hurdle; 'a showing of such requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy.'" Courts evaluate manifest injustice on a case-by-case basis. "'A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable. In order for a court to reconsider a decision due to manifest injustice, the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.'"
>
> "Importantly, 'there is no manifest injustice for purposes of a Rule 59(e) motion where a party could easily have avoided the outcome, but instead elected not to act until after a final order had been entered.'" "Nor is there manifest injustice 'if the only error the movant seeks to correct is a poor strategic decision.'" Again, "the negligence or erroneous strategy choices of a party's attorney or the party herself, which contributed to the court's dismissal of the party's claims, do not amount to manifest injustice." And so, "'Rule 59(e) does not require a court to rescue parties from the consequences of their own choices.'"

*Muslow v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 19-11793, 2022 WL 3445716, at *13 (E.D. La. Aug. 17, 2022) (internal citations omitted).

As discussed below, *Muslow* accurately characterizes precisely what Plaintiff seeks to do here. Having gone to trial on a claim under the Louisiana Direct Action Statute, La. R.S. 22:1269(B)(1) (the "LDAS") without an insurance policy, a stipulation of insurance coverage, or a witness with personal knowledge relating to insurance, and having presented his case-in-chief to a jury without ever mentioning the LDAS defendant by name or alluding to the existence of coverage, Plaintiff now asks this Honorable Court to rescue him under the guise of a claim of manifest injustice. Because "there is no manifest injustice for purposes of a Rule 59(e) motion where a party could easily have [potentially] avoided the outcome, but instead elected not to until after a final order had been entered," Plaintiff's motion should be denied.

**B. Plaintiff was required to present evidence <u>at trial</u> to establish application of the LDAS and coverage of Plaintiff's claims by QBE, but failed to do so.**

The LDAS "allows a person who is not an insured under the insurance contract to proceed directly against the insurer **under certain circumstances** dictated by the statute." *E.g.*, *Perkins v. Carter*, No. 09-673 (La. App. 1st Cir. Dec. 29, 2009), 30 So.2d 862, 865-66. "The Direct Action Statute extends a conditional right to file suit, **to some parties under some circumstances.**" *Perkins*, 30 So.2d at 865. "However, the Direct Action Statute can only be applied when at least one of the following prerequisites has been met: (1) the policy was written in Louisiana; (2) the policy was delivered in Louisiana; or (3) the accident occurred in Louisiana." *E.g.*, *Continental Ins. Co. v. Jantren, Inc.*, 906 F.Supp. 362, 364 (E.D.La. 1995) (citing *Landry v. Travelers Indemnity Co.*, 890 F.2d 770 (5th Cir. 1989)). Where none of those prerequisites are proven by evidence or stipulation, the LDAS does not apply.

Where it applies, the LDAS explicitly recognizes that "[t]he injured person or his survivors or heirs mentioned in Subsection A of this Section, at their option, shall have a right of direct action against the insurer *within the terms and limits of the policy.*" La. Rev. Stat. 22:1269(B)(1)

(italics added). Courts have recognized that the plaintiff in an LDAS claim has an affirmative burden of showing *by evidence* that the insurer issued a policy that provides coverage for the damages claimed:

> The basis on which the insurer is made a party defendant to the principal action under our direct action statute has two elements. The first is that the insured caused the injury by a tortious act; **the second is that the insurer has issued a policy to the insured which covers his liability for such acts. To recover from the insurance company, the plaintiff must establish both elements**, and clearly the company has the right to resist the action against itself by showing the absence of either element or both.

*Zeno v. ADM Mill Co.*, No. 06-4326, 2008 WL 4974876, at *2 (E.D.La. Nov. 20, 2008). *See also Tunstall v. Stierwald*, 2001-1765, p. 6 (La. 2/26/02); 809 So.2d 916, 921 ("In an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage."); *Berry v. Roberson*, No. 13-00145, 2016 WL 3432455, at *4 (M.D. La. June 17, 2016) ("Although the existence and amount of a liability policy is not relevant under the law of most states, the existence of a liability policy is an essential element of a claim brought pursuant to the Louisiana Direct Action Statute.").

### C. Plaintiff's failure to introduce any QBE policy into evidence at trial was fatal to Plaintiff's LDAS claim against QBE and cannot be rectified post-trial.

#### 1. Plaintiff has consistently failed to plead facts or identify evidence purporting to establish a right to judgment against QBE.

Plaintiff's failure to present evidence supporting his LDAS claim at trial was hardly an aberration; rather, it was entirely consistent with Plaintiff's treatment of his claim against QBE throughout this suit. Plaintiff should not be permitted to complain now that he is a victim of

manifest injustice because his LDAS claim was eventually dismissed, nor should he be permitted to attempt to revive it with post-trial submission of evidence and non-existent stipulations.

When Plaintiff filed his Original Petition on April 23, 2019 in the 19th Judicial District Court for the Parish of East Baton Rouge he named American Steamship Owners Mutual Protection and Indemnity Association (the "American Club") as a LDAS defendant, but not QBE. See Rec. Doc. 1-1, p. 1. It was not until more than six months later that filed a First Supplemental and Amended Petition for Damages (the "Amended Petition") naming QBE as a defendant.[2] That Amended Petition, though, did not contain **any** particularized allegations against QBE other than that it "is a foreign insurance provider for Defendants" subject to service of process through the Louisiana Secretary of State *Id.* In particular, Plaintiff did not allege that QBE provided a policy of marine insurance to REC Marine; did not allege that any such policy provided coverage for Plaintiff's alleged damages; did not allege that any such policy was written or delivered in Louisiana; and did not allege that any accident had occurred in Louisiana.

After naming QBE as a defendant, Plaintiff never sent QBE any discovery requesting a copy of any relevant insurance policy(ies), nor did Plaintiff ever request that QBE stipulate to coverage, or to authenticity or admissibility of any policy. Plaintiff never filed a motion of any kind directed to QBE in either state or federal court; in particular, Plaintiff never filed a motion for summary judgment regarding any issues relevant to QBE or the LDAS.

On December 27, 2021, Plaintiff filed an initial Proposed Pretrial Order (Rec. Doc. 89) and attached his first Exhibit List (Rec. Doc. 89-1). The Proposed Pretrial Order barely mentioned QBE and did not contain any indication that Plaintiff intended to argue that application of the LDAS or coverage under any QBE policy of insurance were uncontested issues or admitted facts.

---

[2] It would take another six months for Plaintiff to finally agree to dismiss the American Club from the suit. Rec. Doc. 16.

Plaintiff did not indicate any intention to call any witness with knowledge of REC Marine's insurance coverage(s). Plaintiff did not request inclusion of any uncontested issues of fact regarding or relating in any way to application of the LDAS or insurance coverage. In fact, the only mention of any facts or issues relating to Plaintiff's claims against QBE were inserted *at QBE's request* to make clear that application of the LDAS and coverage of the particular claims alleged by Plaintiff were *disputed* issues:

> 32. Whether coverage for the particular claims asserted by the Plaintiff exists under QBE Insurance's policy of insurance;
> 33. Whether Plaintiff is entitled to a direct action against QBE Insurance under the Louisiana Direct Action Statute.

First Proposed Joint Pretrial Order, Rec. Doc. 89, pp. 10-11.

Plaintiff attached to the initial Proposed Pretrial Order his first Exhibit List in the case (Rec. Doc. 89-1), which listed 39 intended trial exhibits (many with broad categorical descriptions like "Maintenance and Cure Documents"). Plaintiff's Exhibit List did not include any policy of insurance, any coverage terms, any cover note, any stipulations of coverage, or anything else remotely related to insurance coverage or application of the LDAS.

Over the course of December 27, 2021 to February 24, 2023, Plaintiff filed three revisions of the parties' Proposed Pretrial Order, which grew in length from 19 to 30 pages. *See* Rec. Docs. 90, 91, and 155. Each Proposed Pretrial Order – most importantly, the final Proposed Pretrial Order filed on February 24, 2023, which the parties and the Court relied on throughout trial – included QBE's requested statements that application of the LDAS and coverage of the particular claims asserted by Plaintiff were contested issues to be decided at trial. Not one of the Proposed Pretrial Orders ever identified any witness who would be called by Plaintiff to address those issues, nor any exhibit(s) that would be offered to establish coverage or LDAS applicability. While the Court's Pretrial Order Instructions directs the parties to include in the Pretrial Order "a comprehensive

joint stipulation of all uncontested facts, which will become a part of the evidentiary record in the matter…," Plaintiff also never sought to include any alleged stipulation(s) or admission(s) that would be offered on the issues of insurance coverage or LDAS application. As the Fifth Circuit has recognized, claims and issues that are not identified in a pretrial order are waived:

> The pre-trial order is an indispensable mechanism in the district court. Its purpose is to determine which of the claims pleaded will actually be tried. The claims, issues, and evidence are limited by the order and the course of the trial is thereby narrowed to expedite the proceedings. … **If a claim or issue is omitted from the order, it is waived.**

*Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982) ("District courts are encouraged to construe pre-trial orders narrowly without fear of reversal.") (emphasis added). Whereas QBE identified insurance coverage and LDAS application as contested issues in every Pretrial Order, Plaintiff never once suggested that there was evidence, purported admissions, or witnesses who would be offered on those issues.

Similar to the aforementioned Pretrial Orders, from March 2, 2023 to April 25, 2023, Plaintiff filed his First Amended and Third Amended Preliminary Exhibit Lists. See Rec. Docs. 165 and 179. While the latter identified 62 potential trial exhibits, it again did not include any policy(ies) of insurance, any coverage terms, any cover note(s), or any purported stipulations related to insurance coverage or the LDAS's application. As the Court's Pretrial Order Instructions clearly states:

> No party shall be permitted to introduce and/or offer into evidence any exhibit in its case and chief that is not listed in the parties' jointly submitted Pretrial Order, absent good cause shown.

Plaintiff has not even attempted to offer a reason for his failure to list any insurance policy or any other evidence relating to his LDAS claim in not one but *four* Proposed Pretrial Orders – much less for his failure to attempt to introduce it at trial. See *Muslow*, 2022 WL 3445716 at *10 (E.D.La.

Aug. 17, 2022) ("But the Fifth Circuit has held that the unexcused failure to present evidence available at the time of summary judgment is a valid basis for denying a motion to reconsider.") (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)).

The electronic exhibit list entered into the record on April 25, 2023, the first day of trial, includes 2 Plaintiff's Exhibits, 8 Defense Exhibits, and 69 Joint Exhibits. *See* Rec. Doc. 213. Consistent with the Pretrial Order(s) and exhibit lists filed as far back as 2021, no policy of insurance, no coverage terms, no cover note, and no stipulations regarding coverage are mentioned.

On April 25, 2023, the first morning of trial, undersigned counsel specifically stated during the pretrial conference in chambers that no policy of insurance issued by QBE would be offered into evidence during the trial. Plaintiff did not contradict counsel's assertion, did not object that any such omission was an error, and did not seek leave to add any policy as evidence before the start of trial.

Even on May 1, 2023, when Plaintiff filed a Fourth Amended Preliminary [sic] Exhibit List (Rec. Doc. 206) three days after entry of judgment as a matter of law in favor of QBE, Plaintiff did not identify any evidence relating to Plaintiff's LDAS claim against QBE.

In sum, Plaintiff filed four Proposed Pretrial Orders and at least five iterations of his Exhibit List. Every one of those Proposed Pretrial Orders identified the applicability of the LDAS and the existence of coverage for the particular claims asserted by Plaintiff as disputed issues. Conversely, not one of those Proposed Pretrial Orders or Exhibit Lists identified any policy, stipulation, or other evidence that Plaintiff sought to introduce to address those issues. Now, after resting his case at trial, after the close of evidence, and entry of judgment as a matter of law in favor of QBE, Plaintiff seeks to introduce a QBE policy of insurance into evidence so that Plaintiff can avoid some imagined miscarriage of justice. On the record before the Court, Plaintiff cannot possibly

establish that the record before the court is "so patently unfair and tainted that the error is manifestly clear to all who view it;" indeed, Plaintiff cannot establish an error at all, merely an inevitable consequence of Plaintiff's own actions. Plaintiff's Rule 59(e) motion should therefore be denied.

### 2. Plaintiff's failure to support his LDAS claim at trial, either substantively or procedurally, is not a proper basis for Rule 59 relief.

QBE's Motion for Judgment as a Matter of Law at the conclusion of Plaintiff's presentation of evidence at trial was premised, in large part, on Plaintiff's failure to offer any policy of insurance into evidence to support a claim against QBE. That failure, combined with Plaintiff's failure to ask a single witness a single question about insurance policies or insurance coverage[3], precluded Plaintiff from meeting his burden of proving (1) that the LDAS applied based on the location of the accident or location where a policy of insurance was written or delivered or (2) that, if it applied, the LDAS afforded a remedy to Plaintiff based on the terms of the relevant policy. Following a trial presentation with such glaring omissions, Plaintiff's attempt to introduce a QBE policy into evidence now under the guise that it would prevent manifest injustice or correct a non-existent error should be rejected.

---

[3] The only testimony that Plaintiff asked at trial that elicited a response even remotely related to insurance (albeit the question did not require one) was from Brian Harris, REC Marine's corporate representative. Plaintiff claims in his Motion that Mr. Harris confirmed that "REC Marine made the decision to deny Plaintiff's maintenance and cure after speaking with adjusters and attorneys." Although such testimony is woefully insufficient to establish the essential elements of a claim under the LDAS, Plaintiff's account of Mr. Harris's testimony is also highly misleading. In fact, Mr. Harris testified as follows:

> Q:    OKAY. IF THE TESTIMONY OF MR. GREENE'S TREATING PHYSICIANS, THE ONES THAT CAME HERE WERE THAT THE INCIDENT THAT CAUSED HIS INJURIES WAS POTENTIALLY THIS ALLEGED BASKET TRANSFER AND IT CAUSED NECK AND SHOULDER PAIN, WOULD THE COMPANY REEVALUATE ITS POSITION AND PAY HIM MAINTENANCE AND CURE?
>
> A:    WE WOULD HAVE TO GET ADVICE FROM OUR ATTORNEYS AND ADJUSTERS.

See Plaintiff's Motion, Exhibit 12, pp. 105-06.

The Court denied a closely analogous attempt in *Berry v. Roberson*, No. 13-00145, 2016 WL 3432455 (M.D.La. June 17, 2016), doing so there to detriment of the insurance company on grounds that apply equally here. In *Berry*, a car-accident plaintiff sued the driver of the other vehicle for injuries and included a claim against the latter's insurer under the LDAS. *Id.* at 1. Importantly, the insurer stipulated prior to trial that "[a]t the time of the collision, there was a policy of liability insurance… under the terms of which [the insurer] agreed to insure and indemnify [its insured] *for the damages asserted herein.*" *Id.* at *2-3 (emphasis added). That stipulation was included in the parties' Final Pretrial Order. *Id.* Although the Final Pretrial Order also listed the insurance policy as an exhibit, it was never introduced into evidence. *Id.* at *3. At the conclusion of trial, the jury returned a verdict for $790,000 – an amount roughly eight times the limit of insurance coverage provided by the insurer/LDAS defendant's policy.[4] After an unsuccessful appeal, the insurer paid out its policy limit of $100,000 only to discover that the plaintiff intended to collect his entire judgment from the company. *Id.* at *1-2.

The insurance company sought relief from this Honorable Court in the form of either an amended or declaratory judgment incorporating the policy's limits and capping the insurer's liability. *Id.* The insurance company argued *inter alia* "that it was entitled to rely upon this stipulation such that it was not required to introduce the policy or its limits into evidence at trial." *Id.*

The Court denied the insurance company's request. Initially, the Court recognized that "Louisiana law is clear that policies of insurance must generally be introduced into evidence in order for insurers to avail themselves of policy limits contained therein." *Id.* at *3 (citing *Williams v. Bernard*, 425 So. 2d 719 (La. 1983); *Willis v. State Farm Mut. Auto. Ins. Co.*, 99-708 (La. App.

---

[4] More accurately, the jury's original award of $1,290,000 was reduced to $790,000 by the Court. *Id.* at *1.

3 Cir. 11/3/99); 747 So.2d 683; *Payton v. Colar*, 488 So. 2d 1271, 1273 (La. App. 4 Cir. 1986),

*writ denied*, 494 So. 2d 332 (La. 1986). "Thus, while the Louisiana Direct Action Statute imposes

solidary liability on an insurer up to the policy limits of its insured, the mechanism to place such

policy limits before the Court is an evidentiary one that does not operate automatically." *Id.*

(citations omitted). The Court therefore "look[ed] to determine **what evidence, if any, was**

**introduced related to the policy of insurance**," while being "mindful that Louisiana courts have

distinguished between stipulations as to coverage under an insurance policy and stipulations

reached as to the limits of an insurance policy." *Id.* at *4. The Court then noted: that the "Defendant

concedes that it did not publish the policy at issue to the jury at trial;" "that the policy does not

appear on the list of exhibits introduced at trial;" that "[a] review of the trial transcript confirms

that the policy was not submitted into evidence…;" and that, "while the Court did instruct the jury

to consider the parties' stipulations of fact, Plaintiff is correct to note that the parties did not enter

into any stipulation that set forth the policy limits that Defendant now relies upon to limit its

exposure under the Final Judgment." *Id.* at *4. "Against the backdrop of this evidentiary lacuna,"

the Court held that it "cannot simply declare that the Final Judgment says something that it plainly

– or implicitly – does not in response to evidence that was not properly before it." *Id.*

The Court then considered whether relief to the insurance company was available under

Rule 60(b)(6), which allows a court to "relieve a party or its legal representative from a final

judgment… [for] any other reason that justifies relief." *Id.* at *5. In that regard, the Court noted:

that the "Defendant unquestionably had the evidence it belatedly brings to the Court's attention

even before its insured injured Plaintiff;" "had ample time prior to and during trial to procure

admissible evidence of the policy limits;"  and had "fail[ed] to raise the issue of its policy limits

in its answer, in a motion for summary judgment, in its response to Plaintiff's motion for summary

judgment, in a proposed verdict form, in its proposed jury instructions, and critically by way of stipulation or introduction of evidence at trial…." *Id.* Considering these factors, the Court denied the request to amend the judgment to reflect the policy's limits, referring in its closing to "the difficulty of discerning whether an insurer's failure to introduce a policy into evidence is a deliberate decision" because "[t]he Court has no way of knowing if there was any strategic value in withholding the policy from evidence." *Id.*

Aside from this Court's decision in *Berry*, courts have routinely denied litigants an opportunity to introduce insurance policies into evidence after trial in LDAS actions in order to gain the benefit of coverage terms that were not introduced at the trial. See, e.g., *Williams*, 425 So.2d at 720 (affirming denial of a motion for new trial "for the purpose of proving its policy limits" by an insurance company who stipulated to coverage, did not introduce its policy at trial to prove limits, and was held liable in excess of policy limits); *Payton*, 488 So.2d at 1272 (reversing district court ruling allowing LDAS defendant/insurer to admit insurance policy into evidence to prove policy limits after excessive award at trial).

It would be extraordinarily inequitable and contrary to the rule of *Berry*, *Williams*, and *Payton* to permit Plaintiff to introduce a policy of insurance after the close of evidence at trial in order to attempt to prove the existence of coverage under the LDAS, where insurance companies are routinely denied the opportunity to do the same to prove limits to that coverage. Just as "policies of insurance must generally be introduced into evidence in order for insurers to avail themselves of policy limits contained therein," so too policies must be introduced in order for a plaintiff to establish coverage thereunder or any right to a judgment in their favor under the LDAS:

> A contract of insurance is an essential element of plaintiff's prima facie case to confirm a default judgment against an insurance company [under the LDAS]. Louisiana R.S. 22:1269 permits an injured party to pursue a direct action against the insurer within the terms and limits of the policy. The terms and conditions of

the insurance policy are part of the principal basis for the claims and critical to establishing a prima facie case of the insurer's liability. …

The Lexington insurance policy is the principal basis for Ms. McIntyre's claim against the insurance carrier in securing a default judgment because Lexington's obligation to Ms. McIntyre is based on the contract of insurance. Therefore, it is an essential element of Ms. McIntyre's prima facie case against Lexington. Proof of insurance must be introduced into evidence.
…
The plaintiff contends that the policy was introduced into the record, yet the policy is neither included in the list of exhibits contained in the transcript, nor the record. There is also no testimony concerning the contents of the insurance policy. Thus, we cannot determine the terms of the policy or Lexington's liability. Therefore, it is impossible to determine what, if any, direct action could have been pursued against the insurer.

*McIntyre v. Sussman*, 2010-1281 (La. App. 4 Cir. 10/26/11); 765 So. 3d 1257, 1262, *writ denied*, 2011-2777 (La. 2/17/12), 82 So. 3d 290, and *writ denied*, 2011-2791 (La. 2/17/12), 82 So. 3d 291 (citing *Aria v. Stolthaven New Orleans, LLC*, 08-1111, p. 5 (La. 5/5/09); 9 So.3d 815, 818; *Brown v. Trinity Ins. Co.,* 480 So.2d 919, 920 (La.App. 2nd Cir.1985)). The time for Plaintiff to introduce a policy of insurance to support his claim under the LDAS was at trial, and that time has passed.

If the Court looks to "what evidence, if any, was introduced related to the policy of insurance," as it did in *Berry*, it will find that no evidence of insurance coverage whatsoever was introduced. The policy of insurance was not published to the jury; was not listed among the exhibits introduced at trial; and was not introduced in the transcript – indeed, it was not even listed as a *potential* exhibit in any pre-trial filing, nor was it so much as mentioned in opening statements, in any witness's testimony, or in closing arguments. Moreover, just as the Pretrial Order in *Berry* did not include any stipulation as to policy limits, the Pretrial Order here did not include any stipulation as to insurance *coverage* (indeed, Plaintiff never even sought one). Plaintiff, like the party seeking relief in *Berry*, had possession of the insurance policy at issue long before trial[5]; had ample time

---

[5] Although Plaintiff never requested a copy of the Policy in discovery, a copy was provided by undersigned counsel as a courtesy on February 26, 2020.

prior to and during trial to procure admissible evidence of coverage; and failed to raise the issue of insurance coverage in a motion for summary judgment, proposed verdict form, proposed jury instructions, or by stipulation or introduction of evidence at trial. When the absence of the policy in evidence was raised by QBE in its Motion for Judgment as a Matter of Law at trial, Plaintiff did not attempt to proffer it into evidence. Even Plaintiff's Amended Petition for Damages naming QBE as a defendant failed to make any allegations regarding insurance coverage, or even to mention the existence of an insurance policy. *See* Rec. Doc. 1-1, pp. 191-96. Respectfully, considering all of the foregoing the Court should absolutely hold Plaintiff to the same outcome that the insurer in *Berry* met: with no policy in evidence, Plaintiff cannot possibly have prevailed on his direct action against QBE. Plaintiff's own choices and actions left the Court with little choice but to grant QBE judgment under Rule 50.

   **D. Plaintiff's alternative methods of attempting to overcome trial omissions by improperly shifting the burden of proof and citing to irrelevant evidence that was not raised at trial do not warrant relief.**

   QBE urges the Court to be wary of Plaintiff's not-so-subtle attempts to shift the burden of proof on his LDAS claim to QBE, the defendant. Plaintiff's motion includes numerous assertions that imply that QBE must come forward with evidence to rebut the elements of an LDAS claim that Plaintiff never remotely established, such as Plaintiff's suggestion "[t]here is no evidence that REC Marine has some office outside of Louisiana," or that "[t]here is no evidence the decision to terminate Plaintiff's maintenance and cure occurred or could have occurred [outside Louisiana]," or no "evidence showing the insurance policy was or could have been delivered outside of Louisiana." Plaintiff's Motion, p. 10. These arguments methodically miss the point, which is that there is no evidence to *support* any of those findings either because Plaintiff, *as the party with the burden of proof*, failed to introduce any. QBE did not introduce evidence to rebut those findings for two reasons: first, because it was not QBE's burden to do so; second, because by the time QBE

would have presented its defense and rebutted those facts it had already been dismissed as a result of Plaintiff's failure to offer evidence to substantiate them. Plaintiff cannot meet his considerable burden under Rule 59(e) by improperly reversing the burden of proof and pointing to the absence of contrary evidence, where *Plaintiff* had the burden of proving each element of his claim by evidence at trial and failed to do so.

Further, "[t]his Court may properly decline to consider new arguments or new evidence on reconsideration where those arguments were available to the movant prior to the order." *Kennedy Marr Offshore Singapore PTE Ltd. v. Techcrane Int'l Inc.*, No. 12-1985, 2013 WL 5701664, at *6 (E.D.La. Oct. 18, 2013) (citing *Templet*, 367 F.3d at 478-79). Plaintiff's argument that the decision to terminate maintenance and cure was made in Louisiana and therefore "part of the Incident giving rise to Plaintiff's claim occurred in Louisiana," for instance, is not proper under Rule 59(e) because it was not raised at trial, but could have been. Moreover, it is still not based on any actual trial evidence or testimony, because Plaintiff failed to ask any witness where they were located when they made any decisions relevant to Plaintiff's claims.

Plaintiff's claim that the QBE policy must have been delivered in Louisiana is, likewise, based on "new arguments and supporting facts" not raised at trial, and which again fail to address the actual question at issue. *Anderson*, 16 F.Supp. 2d at 683. The facts that REC Marine paid maintenance payments from Louisiana, has offices in Louisiana, and engaged a claims administrator in Louisiana have no bearing on where REC Marine chose to take delivery of its insurance policy(ies). Indeed, nothing that Plaintiff asserts addresses the simple question that Plaintiff was required to answer at trial: where did REC Marine take delivery of its insurance policies? Plaintiff's counsel could easily have asked a simple question to elicit that information at trial, but chose not to. Plaintiff cannot overcome that decision by asking the Court to presume

17

delivery of the policy in Louisiana – particularly, as QBE argued at trial, where the Fifth Circuit has explicitly recognized the practice of insureds leaving the State to accept delivery of a policy specifically to avoid the LDAS's application. See, e.g., *Landry v. Travelers Indem. Co.*, 890 F.2d 770, 773 (5th Cir. 1989); *Signal Oil & Gas Co. v. Barge W–701,* 654 F.2d 1164 (5th Cir.1981), *cert. denied,* 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982).

Finally, Plaintiff's argument that QBE admitted to coverage of Plaintiff's claim in its Answer is, again, an improper new argument that was not raised at trial. It is also factually incorrect and legally unsupported. In *White v. ARCO/Polymers*, 720 F.2d 1391, 1393, 1396 (5th Cir. 1983), the Fifth Circuit considered a party's "*factual* admission" in a pretrial order "that he had been terminated on the final day of the 120-days worked probationary period." The Court held that while *factual* admissions are "normally" binding on the party that made them, the parties relying on them had "waived the argument that the issue was irreversibly settled" by "failing to contend that White's admissions barred his subsequent assertion of the contrary position." *Id.* at 1396.

In *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107 (5th Cir. 1987), plaintiffs in a securities fraud action alleged in their complaint that they closed accounts in August 1983 "as a result of Defendants' excessive and objectionable trading practices." The Fifth Circuit held that, having done so, they were precluded from later avoiding a statute of limitations dismissal by claiming that they did not learn of any wrongdoing until January 1984. *Id.* at 107-08.

Neither *White* nor *Davis* remotely support Plaintiff's argument here. QBE did not admit in its Answer the factual proposition that it "provided coverage for the damages sustained by Plaintiff," as Plaintiff states. As addressed above, Plaintiff's Petition did not even bother to allege that QBE provided coverage, so there was nothing for QBE to admit. Plaintiff has cited no authority (and certainly neither *White* nor *Davis* support) that by referring to, or even

18

incorporating, a contract in an answer the answering party judicially admits not only the terms of the contract but also the their application to the facts of the case and liability arising from the contract's terms. Moreover, *even if such authority existed*, which QBE denies, Plaintiff has not cited any case to suggest that a document referred to an answer is determinative of liability at trial where neither the document nor the answer were ever introduced into evidence, nor mentioned *or even alluded to* in the presence of the jury. Again, "the Fifth Circuit has held that the unexcused failure to present evidence available at the time of summary judgment is a valid basis for denying a motion to reconsider." *E.g.*, *Muslow*, 2022 WL 3445716 at *10 (citing *Russ*, 943 F.2d at 593). Finally, even if Plaintiff could overcome all of the above deficiencies in its argument, it would be left in the position of the plaintiff in *White*, who waived any argument by failing to contend at the appropriate time that his counterparty was barred by judicial admissions from advancing a position. Here, Plaintiff continually filed Proposed Pretrial Orders including QBE's explicit statements that coverage and LDAS applicability were disputed, never once raising a counterpoint by arguing that QBE had admitted to coverage. Then, Plaintiff opted not to present QBE's answer to the jury at trial, again waiving any argument based on supposed admissions.

### E.  Plaintiff is not entitled to a reversal of the Court's judgment.

Plaintiff's use of Rule 59(e) is also inappropriate in that it seeks not just reconsideration, but outright reversal of the judgment issued in favor of QBE; the Motion's "Conclusion and Prayer" requests "that the Court deny QBE's Motion for Judgment as a Matter of Law and find that (a) QBE provided insurance to REC Marine that provides coverage for Plaintiff's damages; (b) that part of the Incident occurred in Louisiana; and (c) the insurance policy was delivered in

Louisiana." Plaintiff's Motion, p. 13. Essentially, what Plaintiff seeks is Rule 50 judgment in his own favor.

To the extent Plaintiff's seeks judgment in his favor as a matter of law, "Plaintiff is prevented from even bringing such a motion, as it is axiomatic that a party may not make a motion for judgment as a matter of law after trial unless it filed such a motion before the case was submitted to the jury." *E.g.*, *Williams v. Louisiana*, No. 14-00154, 2017 WL 405147, *2 (M.D.La. Jan. 30, 2017) (J. Jackson). To the best of QBE counsel's recollection, although Plaintiff repeatedly opposed QBE's Rule 50(b) motion at trial, Plaintiff did not at any point make his own such motion. Plaintiff may not therefore seek judgment in his favor by a post-trial motion.

### F. Plaintiff has not shown that he would suffer manifest injustice absent Rule 59 relief – but QBE would.

Finally, although Plaintiff claims he would suffer manifest injustice in the absence of Rule 59 relief, he has failed to come close to meeting that burden. As the Court recognized in *Berry*, "the Louisiana Direct Action Statute imposes solidary liability on an insurer up to the limits of its insured." *Berry*, 2016 WL 3432455 at *3. In his effort to establish an injustice, Plaintiff has not even attempted to address the fact that QBE is merely a would-be solidary obligor alongside other parties against whom Plaintiff obtained a judgment at trial. With that fact in mind, Plaintiff has not established that he will suffer even the slightest harm or prejudice should the judgment in favor of QBE be sustained.

However, without retreating at all on its position that the policy is not in evidence and should not be considered, QBE points out that the policy attached to Plaintiff's Motion includes 10 pages of policy-specific terms and conditions followed by 80 rider clauses that limit and exclude the coverage that Plaintiff now seeks to establish. See Plaintiff's Motion, Exhibit 9. Among them,

Clause 63.4 states that "This policy shall be governed by and construed in accordance with English law," and Clause 73 states:

> 73.    There shall be no cover under this policy in respect of liability for or exposure to:
> 73.1    punitive or exemplary damage;
> 73.2    any amount payable under any judgment or award of any Court or tribunal in favour of any third party which is not compensatory in nature or which is not payable in respect of loss or damage sustained by that third party except as provided under Clause 23.

After failing to request or obtain a stipulation of authenticity or coverage prior to or during trial, and failing to ever address any aspect of any insurance policy by motion during the past four years, Plaintiff's attempt to enter the policy into evidence *solely for the purpose of establishing liability* without regard to exclusions and limitations would be wildly prejudicial. QBE prepared for trial, identified witnesses and evidence it would present, and tried its case based on Plaintiff's allegations and the evidence included in his numerous exhibit lists and Pretrial Orders. It would be manifestly unjust to QBE to permit Plaintiff to introduce and rely on any policy of insurance at this post-trial stage of proceedings. Accordingly, Plaintiff's Motion should be denied.

<u>**CONCLUSION**</u>

For the reasons set forth herein, Plaintiff's Motion to Reconsider should be DENIED.

/s/ Alan R. Davis
Alan R. Davis, LA Bar No. 31694
Lorin R. Scott, LA Bar No. 38888
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504-568-1990
Facsimile: 504-310-9195
Email: adavis@lawla.com
***Attorney for QBE Insurance (Europe), Ltd.***