<table>
<tr><td>

PLEASE REVIEW THIS BINDER/POLICY CAREFULLY AS THE COVERAGE, TERMS AND CONDITIONS MAY VARY FROM THOSE INITIALLY REQUESTED IN YOUR SUBMISSION.

</td></tr>
</table>

**Cover Note Number:  TRM-408194**
**Renewal of Cover Note Number:  TRM-407608**

# COVER NOTE
OF INSURANCE EFFECTED THROUGH
## TRIDENT MARINE MANAGERS, INC.
14425 Torrey Chase Blvd., Suite 200,  Houston, TX  77014-1648



In accordance with authorization granted to TRIDENT MARINE MANAGERS, INC. by certain admitted and/or non admitted insurers (hereinafter called "UNDERWRITERS") whose names and proportions underwritten by them are or will be on file in the office of TRIDENT MARINE MANAGERS, INC., and in consideration of the stipulations and premium shown, TRIDENT MARINE MANAGERS, INC. has placed insurance for the limits or amount as specified herein, and for the term stipulated, according to the following:

NAME OF ASSURED:    REC Marine Logistics, LLC (as per attached)
ADDRESS:        P.O. Box 309, Raceland, LA 70394

TERM:    From:  February 20, 2018    To: February 20, 2019    At the times as per the attached.
OPERATION OR CLASS OF BUSINESS:    Boat Brokerage. Also vessel operations servicing the oilfield.

AMOUNT OR LIMIT:        As per the attached.

TYPE OF COVERAGE:        As per the attached.

Acting upon the instructions of:        Laris Insurance Agency, LLC
                        P.O. Box 559
                        Lockport, LA 70374

We confirm that we, the undersigned, have
procured insurance as hereinafter specified from:    QBE Insurance (Europe) Limited trading as British Marine 100%
                        (hereinafter called the "UNDERWRITERS").

Premium:
Certificate Fee:            ███████
Federal Tax:
State Tax:
Stamping Fee:
**Total:**                ███████
                **(Payable in 2 installments)**

Producing Agent, the Assured's Agent, hereinafter called "The Producer", shall remit applicable state taxes to Trident Marine Managers, Inc. for the State of Texas. The Producer assumes all responsibility for such state taxes, if any, in all other states. Whichever party is responsible for the payment of taxes shall also be responsible for full compliance with relevant surplus lines laws of the other states, including the filing of affidavit and other documents if any.

**NOTICE:** NO FLAT CANCELLATIONS ALLOWED

This Cover Note is made and accepted subject to all the provisions, forms, endorsements and conditions set forth herein or appearing in this Cover Note which are specifically referred to and made a part of this Cover Note, together with such other provisions, conditions, forms and endorsements as may be endorsed herein, or attached hereto; and no officer, agent, broker or representative other than TRIDENT MARINE MANAGERS, INC.  Houston, Texas, or the UNDERWRITERS shall have the power to waive or be deemed to have waived any provision, condition, form or endorsement of the Cover Note unless such waiver, if any, shall be issued and executed by TRIDENT MARINE MANAGERS, INC. Houston, Texas, nor shall any privilege or permission affecting the Insurance under the Cover Note exist or be claimed by the Assured unless so issued and executed.

This Cover Note shall not be valid unless signed by TRIDENT MARINE MANAGERS, INC.

Dated at Houston, Texas            **TRIDENT MARINE MANAGERS, INC.**
                    by authority of the UNDERWRITER'S

March 13, 2018





EXHIBIT

9

exhibitsticker.com

REC 001017

# COVER NOTE CONDITIONS

1.  It is expressly understood and agreed by the Assured by accepting this instrument that TRIDENT MARINE MANAGERS, INC. is not one of the UNDERWRITERS or Assurers hereunder and is not nor shall be in any way or to any extent liable for any loss or claim whatever as insurers.  The Assurers hereunder are only those UNDERWRITERS whose names are on file as herein before set forth.

2.  On demand of the Assured or its representative the latest financial statements of any Underwriter hereunder will be made available at the office of Trident Marine Managers, Inc. for review.

3.  This entire Cover Note shall be void if the Assured has concealed or misrepresented any material fact or circumstances concerning this insurance or the Subject thereof, whether before or after a loss.

4.  This Cover Note of Insurance shall not be assigned either in whole or in part without the written consent of TRIDENT MARINE MANAGERS, INC. endorsed hereon.

5.  This insurance is made and accepted subject to all the provisions and conditions set forth herein and in any forms or endorsements attached hereto, all of which are to be considered as incorporated herein, and any provisions or conditions appearing in any forms or endorsements attached hereto which alter the Cover Note provisions stated above shall supersede such Cover Note provisions in so far as they are inconsistent therewith.

6.  This document intended for use as evidence that insurance described herein has been effected against which UNDERWRITER'S Policy(ies) will be duly issued.  IT IS UNDERSTOOD AND AGREED THAT THIS INSURANCE IS SUBJECT TO ALL THE TERMS, CONDITIONS AND PROVISIONS OF SAID UNDERWRITER'S POLICY(IES) WHICH SHALL, IN THE EVENT OF CONFLICT HEREWITH, BE CONTROLLING.

7.  The Assured, upon knowledge of any occurrence likely to give rise to a claim hereunder, shall give immediate notice to the UNDERWRITER'S pursuant to the policy and to TRIDENT MARINE MANAGERS, INC., 14425 Torrey Chase Blvd., Suite 200,  Houston, TX  77014-1648.

8.  UNDERWRITER'S have agreed to allow, if applicable, the appropriate amount of the premium to pay Federal Excise Tax.

    It is understood and agreed that in the event of any return of premium becoming due hereunder the UNDERWRITER'S will deduct the appropriate Federal Excise Tax amount from the amount of the return and the Assured or his Agent or Broker should take steps to recover the Tax from the U.S. Government.

REC 001018

**British · Marine**

Plantation Place, 30 Fenchurch Street, London EC3M 3BD United Kingdom
Telephone +44 (0)20 7105 5555 • Email: managers@britishmarine.com
www.britishmarine.com

**British Marine**

**PROTECTION & INDEMNITY**

**POLICY OF INSURANCE**

**No.: 02077000001**

**Period of Insurance : Noon (GMT) on 20 February, 2018 to Noon (GMT) on 20 February, 2019.**

In consideration of the premium payable in respect of this insurance, the Insurer undertakes to indemnify the Assured for all liabilities, losses, costs or expenses that the Assured, in the capacity agreed in respect of the Insured Vessel(s) named in this policy, is liable to pay, in respect of the liabilities, risks or events referred to herein.

This insurance covers only liabilities, losses, costs or expenses which arise out of events which occur during the policy period, in respect of the Assured's interest in the Insured Vessel(s) and only in connection with the operation of the Insured Vessel(s).

THE ATTACHED CLAUSES FORM PART OF
THIS POLICY

To:          Rec Marine Logistics, LLC (Assured)
             Rec Boats, LLC (Additional Assured)
             T&T Marine 2, LLC (Additional Assured)
             Best Rentals, INC (Additional Assured)
             DLL Marine, LLC (Additional Assured)
             Central Boat Rentals, Inc (Additional Assured)
             KMB Vessels, LLC (Additional Assured)
             Beau Soleil Marine, LLC (Additional Assured)
             GOL Supply Boats, LLC (Additional Assured)
             Gulf Offshore Logistics, LLC (Additional Assured)
             Offshore Transport Services, LLC (Additional Assured)
             Timmy Danos, Inc (Additional Assured)
             Lafourrche Tugs, Inc (Additional Assured)
             Sea Ventures II, LLC (Additional Assured)
             Adele Elise, LLC (Additional Assured)
             JNB Operating, LLC (Additional Assured)
             Olivia Rae Farms, LLC (Additional Assured)

Ship Owner:   Rec Marine Logistics, LLC
              4535 LA-308
              Raceland
              LA 70394

Continued / Page 1 of  10

British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30 Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

REC 001019

Continuation of Policy No.: 02077000001
Page 2 of 10

| Name of Ship | Gross Tonnage | Year Built | Type | Flag | IMO Number | Port of Registry |
|---|---|---|---|---|---|---|
| ABI C | 88 | 2005 | SUPPLY VESSEL | USA | N/A | N/A |
| ADELE ELISE | 996 | 2007 | SUPPLY VESSEL | USA | N/A | N/A |
| ALEXANDRA DANOS | 97 | 2007 | SUPPLY VESSEL | USA | N/A | N/A |
| AMANDA A | 68 | 1972 | Tug | USA | N/A | N/A |
| BRIANA MARIE | 95 | 2004 | SUPPLY VESSEL | USA | N/A | N/A |
| BROOK DANOS | 89 | 1980 | SUPPLY VESSEL | USA | N/A | N/A |
| CAPT ROD | 99 | 1979 | Crew Boat | USA | N/A | N/A |
| CAPTAIN RON | 87 | 1980 | Maintenance Vessel | USA | N/A | N/A |
| CBR 829 | 210 | 1980 | FLAT TOP BARGE | USA | N/A | N/A |
| DIAMOND MINE | 98 | 1994 | WORK VESSEL | USA | N/A | N/A |
| DIP | 89 | 1980 | Maintenance Vessel | USA | N/A | N/A |
| DOMINIC S | 87 | 1978 | Maintenance Vessel | USA | N/A | N/A |
| DUSTIN DANOS | 98 | 2000 | SUPPLY VESSEL | USA | N/A | N/A |
| ELDA A | 87 | 2014 | Tug | USA | N/A | N/A |
| ELIE CHERAMIE | 87 | 2013 | Tug | USA | N/A | N/A |
| EMILY D | 99 | 1977 | Maintenance Vessel | USA | N/A | N/A |
| GOL DIAMOND | 99 | 2008 | SUPPLY VESSEL | USA | N/A | N/A |
| GRAVOIS | 5 | 1979 | WORK VESSEL | USA | N/A | N/A |
| HANNAH C | 88 | 2006 | SUPPLY VESSEL | USA | N/A | N/A |
| JACOB C | 98 | 1981 | Maintenance Vessel | USA | N/A | N/A |
| JACOB GERALD | 95 | 1984 | SUPPLY VESSEL | USA | N/A | N/A |
| JUDY FRANCES | 773 | 1979 | SUPPLY VESSEL | USA | N/A | N/A |
| KLINE DANOS | 275 | 1983 | SUPPLY VESSEL | USA | N/A | N/A |
| KYLIE D | 92 | 1998 | SUPPLY VESSEL | USA | N/A | N/A |
| LEADER | 90 | 1980 | SUPPLY VESSEL | USA | N/A | N/A |
| LIL WEASAL | 29 | 1981 | Tug | USA | N/A | N/A |
| MARC C | 92 | 1980 | SUPPLY VESSEL | USA | N/A | N/A |
| MISS LEIGHTYN | 21 | 2013 | Crew Boat | USA | N/A | N/A |
| MS JANE | 98 | 1977 | Maintenance Vessel | USA | 588935 | N/A |
| MS MELISSA | 93 | 1999 | SUPPLY VESSEL | USA | N/A | N/A |
| MS TAYLOR | 89 | 1979 | SUPPLY VESSEL | USA | N/A | N/A |
| OLIVIA RAE | 484 | 2006 | SUPPLY VESSEL | USA | N/A | N/A |
| PRODRIVE/ X #1 | 5 | 2013 | WORK VESSEL | USA | N/A | N/A |
| PRODRIVE/ X #1 | 5 | 2013 | WORK VESSEL | USA | N/A | N/A |
| ROMAN ELIE | 92 | 2004 | SUPPLY VESSEL | USA | N/A | N/A |
| SEA SERVICE 1 | 96 | 2011 | SUPPLY VESSEL | USA | 1236101 | N/A |
| STEEL HULL | 10 | 1980 | HOUSEBOAT | USA | N/A | N/A |
| TIM LANDRY | 95 | 2015 | Tug | USA | N/A | N/A |
| TIMMY DANOS | 91 | 1973 | SUPPLY VESSEL | USA | N/A | N/A |

**Evidence of Insurance Clause**

**This Policy of Insurance or any Endorsement hereto is evidence only of the contract of indemnity insurance between the above named Assured(s) and the Insurer and shall not be construed as evidence of any undertaking, financial or otherwise, on the part of the Insurer to any other party.**

**In the event that an Assured tenders this Policy/Endorsement as evidence of insurance under any applicable law relating to financial responsibility, including but not limited to the Oil Pollution Act 1990 or any similar Federal or State Laws, or otherwise shows or offers it to any other party as evidence of insurance, such use of the Policy/Endorsement by the Assured is not to be taken as any indication that the Insurer thereby consents to act as guarantor or to be sued directly in any jurisdiction whatsoever. The Insurer does not so consent.**

Continued / Page 2 of  10



British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30 Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

Continuation of Policy No.: 02077000001
Page 3 of 10

CONDITIONS

Protection and Indemnity Risks in accordance with British Marine, Marine Liability, Protection and Legal Expenses Terms and Conditions 2018 Edition section A Clauses 1-32 incorporating sections B and C Clauses 40-80 attached thereto, including cover in respect of collision, property damage, wreck removal and pollution liabilities in accordance with the Policy Terms, Conditions and Exceptions and subject always to the Special Conditions and Warranties set out hereunder.

LIMIT OF LIABILITY

USD 10,000,000 each vessel, all claims inclusive of costs, fees and expenses either approved and/or incurred by the Insurer, any one accident or occurrence or series of accidents or occurrences arising out of one event, Combined Single Limit.

SPECIAL CONDITIONS

Pursuant to the provisions of Clause 13.1, it is noted and agreed that the cover hereunder is extended to include claims for 4/4ths collision.

**Contractual Liability Clause.**

Notwithstanding Clause 78, cover is extended to cover the Assured's contractual liability for loss of life, personal injury or illness, or loss of or damage to property, or wreck removal, Pollution, and associated costs and expenses arising under the terms of an indemnity or contract given or made on behalf of the Assured in connection with the insured vessel/s.

Limit: USD 10,000,000 each vessel all claims inclusive of costs, fees and expenses either approved and/or incurred by the company any one accident or occurrence or series of accidents or occurrences arising out of one event, Combined Single Limit.

Including: Contractual Wreck Removal
　　　　　 Waving right to limitation
　　　　　 Contractual liability to cargo/property
　　　　　 Naming and waving rights of subrogation

Deductible: USD 15,000 each accident or occurrence.

In accordance with the provision of the above contractual liability extension it is hereby noted and agreed to include charterers, their affiliates and other parties where required under contract as a full joint Assured and to waive rights of subrogation accordingly. It is further noted and agreed that joint Assureds named under this extension will not be jointly liable for payment of premium under this policy. As per the extension this policy shall be deemed primary.

Continued / Page 3 of  10



British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30 Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

REC 001021

**Extended Towage Clause**

Notwithstanding Clause 30, cover is extended in respect of tows without towage contract to include liabilities and expenses arising out of the loss of, damage to or wreck removal of the towed vessel or object including any cargo or property thereon, but always excluding liabilities and expenses arising out of the loss of, damage to or wreck removal of towed vessels or objects, or cargo or property thereon, which are within the same or associated ownership or management of the insured vessel.
Excluding towage of rigs or platforms.
Limit: USD 10,000,000 each vessel all claims inclusive of costs, fees and expenses either approved and/or incurred by the company any one accident or occurrence or series of accidents or occurrences arising out of one event, Combined Single Limit.
Deductible: USD 15,000 each accident or occurrence.

**Specialist Operations Clause**

The coverage is hereby extended, in terms of Clause 38, to include those liabilities, costs and expenses, to the extent they may be incurred by the Assured in respect of claims brought about by any party for whose benefit the work has been performed, or by any third party (whether connected with any party for whose benefit the work has been performed or not), which would have been covered hereunder but for the provisions and/or exclusions in the Terms and Conditions in respect of Specialist Operations.

PROVIDED ALWAYS THAT
the below mentioned exclusions shall prevail notwithstanding any provisions in this clause inconsistent therewith
[1]        fines, punitive, exemplary or aggravated damages.
[2]        any liabilities, losses, costs or expenses in relation to damage to or loss of the contract works or failure to perform the contract works.
Subject to a limit of liability of USD 10,000,000 any one accident or occurrence or series of accidents or occurrences arising out of one event.
Subject to a deductible of USD 15,000 any one accident or occurrence or series of accidents or occurrences arising out of one event.
Subject otherwise to policy terms and conditions.

 British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30 Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

REC 001022

### Affiliated Companies Clause

Should a claim be enforced against or through an affiliated, associated or subsidiary Company of the Assured named in the Policy of Insurance, the Insurer shall reimburse said Company subject to the Policy Terms and Conditions of Insurance and the terms and conditions in respect of Protection and Indemnity risks only set out hereunder save that the liability of the Insurer in respect of any claim only extends to those liabilities which are properly the responsibility of the Assured and shall not exceed the amount that the Assured and all Others named in the policy of Insurance could jointly have limited their liability had they been the registered owner of the insured vessel and had sought and not been denied the right to limit.

For the purpose of this insurance, it is deemed that such Company shall be entitled to all the limitations of liability which would apply if the Company were the registered owner of the vessel and were entitled to limit liability and that any amount recoverable from the Insurer under this insurance shall be limited accordingly.

Subject to the foregoing:

1. The receipt by either the Assured, any Co-Assured or any said Company referred to hereunder of any sum from the Insurer recoverable under this insurance shall be sufficient discharge by the Insurer for same.

2. No claim shall be recoverable hereunder in the event of any conduct by either the Assured or any Co-Assured named in the insurance or said Company referred to hereunder which is in breach of the Policy Terms and Conditions including the special terms and conditions of insurance hereunder.

Notwithstanding the exclusions contained in Clause 73, cover is extended to include punitive damages. This extension will only apply where it is permissible by law to insure such damages.

### "In Rem" Endorsement

It is agreed that any loss, otherwise covered by the policy shall not be considered invalid even though asserted by an action "In Rem", instead of an action "In Personam".

Under no circumstances are Underwriters obligated to arrange, pay for, provide and/or post security in the form of a bond, letter of undertaking or otherwise to obtain the release of a vessel or other property of the Named Assured or any Additional Assured or Indemnitee under this policy.

Continued / Page 5 of  10



British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30 Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

REC 001023

**Cross Liabilities Clause**

In the event of one of the Insured incurring liability to any other of the Assured, this policy shall cover the Assured against whom claim is, or may be, made in the same manner as if separate policies had been issued to each Assured, but this clause shall not operate to increase Underwriters; limit of liability under this policy of insurance.

## TANKERMANS LIABILITY CLAUSE

This insurance to cover any liability imposed by the law on the Assured(s), or the tug(s) or towboat(s) named herein, for any occurrence in loading or unloading any tank barge(s) towed to the loading or unloading site or to be taken in tow therefrom by the tug or towboat or under the supervision of a tankerman duly certificated or qualified as such by the United States Coast Guard and provided that the liability arises out of an act of such tankerman while supervising or conducting the loading or unloading operation; provided always that the amount payable by Underwriters in respect of any claims arising out of any one occurrence shall in no case exceed USD 10,000,000 any one accident or occurrence within the Combined Single Limit; and provided further that this insurance shall in no case extend to, or cover, any sum which the Assured(s) or tug(s) or towboat(s) named herein may become liable to pay, or shall pay:-

1. for loss of, damage to or expense in connection with the tug(s) or towboat(s) named herein and/or its tow (whether or not attached thereto) or the cargo laden thereon or therein;

2. for any claim arising directly or indirectly under the Longshoremen's and Harbor Workers' Compensation Act or any workmen's compensation act of any State or nation;

3. under any contract enlarging the legal liability of the Assured(s), or the tug(s) or towboat(s) named herein; provided, however, that if, by agreement or otherwise, the legal liability of the Assured(s), or the tug(s) or towboat(s) named herein is lessened, then Underwriters shall receive the benefit of such lessened liability.

Where the Assured is, irrespective of this extension, covered or protected against any loss or claim which would otherwise have been paid by Underwriters under this extension then the amount recoverable under this extension shall be excess only; it being the intent that when any loss or claim otherwise recoverable under this extension is recoverable under any other insurance in favour of the Assured, whether supplied by the Assured or others, or would be recoverable under such other insurance if this extension were not in effect, then this extension shall provide excess insurance only, subject always to the terms, conditions, limits, etcetera of this extension.

Continued / Page 6 of 10

British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30 Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

REC 001024

Continuation of Policy No.: 02077000001
Page 7 of 10

WARRANTIES

Trading Inland and Coastal waters of the United States of America including the Gulf of Mexico not exceeding 300 miles offshore or USCG certification.

Warranted classed or surveyed in accordance with statutory regulations.

DEDUCTIBLES
(P&I)

USD 15,000 from all claims, each accident or occurrence.

FIXED PREMIUM

Fixed Premium as agreed.

Cancelling Returns Only.

For and on behalf of
BRITISH MARINE



.........................................................................................
02 March, 2018

Continued / Page 7 of 10

British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30 Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

REC 001025

Continuation of Policy No.: 02077000001
Page 8 of 10

**War Risk (Protection and Indemnity) Endorsement (A)**

Pursuant to the provisions of Clause 39.4.2, notice is hereby given that cover hereunder is subject to the following special terms and conditions until further notice:

It is noted and agreed that cover is extended to include liabilities, costs and expenses in accordance with the provisions of Clause 39 of the Policy Terms and Conditions.

It is a condition of cover that the Hull and Machinery is fully insured for the perils enumerated in the current Institute War and Strikes Clauses - Hull - Time (1.11.95) (Cl.281) with Protection and Indemnity and Crew inclusion clauses (or equivalent clauses in terms no less wide than the forgoing) for not less than the hull value of the insured vessel.

Whether or not notice of cancellation in terms of Clause 39.4.1 is given, cover hereunder in respect of War Risks etc. shall TERMINATE AUTOMATICALLY on the expiry of notice given by any Underwriter of the above mentioned Insurance(s).  British Marine may agree however to reinstate cover subject to agreement with the Assured prior to the expiry of such notice of cancellation as to new rate of premium and/or conditions and/or warranties.

Limit of Liability:

USD 5,000,000 all claims in the aggregate inclusive of costs, fees and expenses either approved and/or incurred by the Insurer, any one accident or occurrence, each vessel.

Trading Warranties:

In the event of a vessel or craft insured hereunder sailing for, deviating towards, or being within the Territorial Waters of any of the Countries or places described in the Exclusions as set out below (including any Port or area that constitutes part of such a country or place however it may hereafter be described) additional premium shall be paid at the discretion of the Insurer hereon. Information of such voyage or deviation shall be given to the Insurer as soon as practicable, and the absence of prior advice shall not affect the cover hereon.  In the event of the Assured not requiring continuation of coverage for a vessel proceeding into or remaining within an excluded area, they shall so advise Insurers hereon before the commencement of such voyage, deviation or period, and it shall be at the Insurer's discretion whether and on what terms the insurance shall be reinstated.


Exclusions

Africa
1. Benin
2. Eritrea, but only South of 15° N
3. Gulf of Guinea, but only the waters of the Togolese,  Beninese and Nigerian Exclusive Economic Zones north of the Latitude 3° N
4. Libya
5. Nigeria
6. Somalia
7. Togo

Continued / Page 8 of  10


British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30 Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.


REC 001026

Indian Ocean / Arabian Sea / Gulf of Aden / Gulf of Oman / Southern Red Sea
 8.  Waters as defined overleaf

Asia
 9.  Pakistan

Indonesia
10.  The port of Jakarta

Middle East
11.  Iran
12.  Iraq, including all Iraqi offshore oil terminals
13.  Israel
14.  Lebanon
15.  Saudi Arabia excluding transit
16.  Syria
17.  Yemen

South America
18.  Venezuela, including all offshore installations in the Venezuelan EEZ.

Definitions:

• Named Countries shall include their coastal waters up to 12 nautical miles offshore, unless specifically
  varied above.
• Named Ports shall include all facilities/terminals within areas controlled by the relevant port
  authority/ies (or as may be more precisely defined by Insurers) including offshore facilities/terminals,
  and all waters within 12 nautical miles of such, but not exceeding 12 nautical miles offshore unless
  specifically stated.

Indian Ocean/Arabian Sea/Gulf of Aden/Gulf of Oman/Southern Red Sea

The waters enclosed by the following boundaries:
a.  on the north-west, by the Red Sea, south of Latitude 15° N
b.  on the west of the Gulf of Oman by Longitude 58° E
c.  on the east, Longitude 65° E
d.  and on the south, Latitude 12° S

excepting coastal waters of adjoining territories up to 12 nautical miles offshore unless otherwise
provided.

Continued / Page 9 of  10



British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of
QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30
Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the
Prudential Regulation Authority.

Continuation of Policy No.: 02077000001
Page 10 of 10

Cover in respect of the risks of war, etc., shall not become effective if, subsequent to acceptance by British Marine and prior to the intended time of attachment of risk, there has occurred any event which would have automatically terminated cover under the provisions of this clause.

All other terms and conditions continue without amendment.                    Ref.War P&I (A) Dec, 2015.


For and on behalf of
BRITISH MARINE


.......................................................................................
02 March, 2018


Continued / Page 10 of  10

British Marine is a trading name of QBE Insurance (Europe) Limited (no. 1761561) ('QIEL') and QBE Underwriting Limited (No. 1035198) ('QUL'). QIEL and QUL are part of QBE European Operations, a division of the QBE Insurance Group. QIEL and QUL are registered in England and Wales and their registered office is Plantation Place, 30 Fenchurch Street, London EC3M 3BD. QIEL and QUL are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority.

REC 001028



# British Marine

# Protection & Indemnity

Marine Liability, Protection and Legal Expenses
Terms & Conditions



# BRITISH MARINE

## Marine Liability, Protection and Legal Expenses

## TERMS AND CONDITIONS

Assured ........................................................................................................................................................

Address .......................................................................................................................................................

.......................................................................................................................................................

Facsimile ....................................................................................................................................................

E-mail address ...........................................................................................................................................

Insured Vessel(s) .......................................................................................................................................

Period  From [          ] hrs on ........................... to [          ] hrs on ...........................

In consideration of the premium payable in respect of this insurance, the Insurer undertakes to indemnify the Assured for all liabilities, losses, costs or expenses that the Assured, in the capacity agreed in respect of the Insured Vessel(s) named in this policy, is liable to pay, in respect of the liabilities, risks or events referred to in Section A of this policy, subject to the provisions in Sections B and C.

This insurance covers only liabilities, losses, costs or expenses which arise out of events which occur during the policy period, in respect of the Assured's interest in the Insured Vessel(s) and only in connection with the operation of the Insured Vessel(s)

## OPA DISCLAIMER

**This Policy of Insurance or any Endorsement hereto is evidence only of the contract of indemnity insurance between the above named Assured(s) and the Insurer and shall not be construed as evidence of any undertaking, financial or otherwise, on the part of the Insurer to any other party.**

**In the event that an Assured tenders this Policy/Endorsement as evidence of insurance under any applicable law relating to financial responsibility, including but not limited to the Oil Pollution Act 1990 or any similar Federal or State Laws, or otherwise shows or offers it to any other party as evidence of insurance, such use of the Policy/Endorsement by the Assured is not to be taken as any indication that the Insurer thereby consents to act as guarantor or to be sued directly in any jurisdiction whatsoever. The Insurer does not so consent.**

## 2018 Terms and Conditions

British Marine is a trading name of QBE Insurance (Europe) Limited and QBE Underwriting Limited. Both companies are part of QBE European Operations, a division of the QBE Insurance Group. QBE Insurance (Europe) Limited (No. 1761561) and QBE Underwriting Limited (No. 1035198) are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority. Registered office, Plantation Place, 30 Fenchurch Street, London, EC3M 3BD. Registered in England and Wales.

1

## SECTION A – RISKS COVERED

### 1. Accidental Death or Injury

Liability to pay compensation or damages for loss of life or personal injury caused by an accident in respect of:

1.1    A member of the Crew

1.2    A Supernumerary

1.3    A Passenger

1.4    A Stevedore, where such liability arises:

      1.4.1    on board the Insured Vessel(s), or

      1.4.2    in the course of handling cargo from the time of receipt of the cargo from the consignor or shipper at the port of loading until the time of delivery of that cargo to the consignee at the port or place of discharge

1.5    Any Third Person, together with any person not on board the Insured Vessel(s) who suffers loss of life or personal injury caused by an accident in connection with the operation of the Insured Vessel(s).

1.6    Any person on a vessel(s) which is in collision with the Insured Vessel(s) or which is damaged by the Insured Vessel(s) other than by collision, or on any property or object damaged by the Insured Vessel(s).

### 2. Illness and Disease

Liability to pay compensation or damages for loss of life caused by illness or disease or for any illness or disease contracted by:

2.1    A member of the Crew.

2.2    A Supernumerary.

2.3    A Passenger.

2.4    A Stevedore, where such liability arises:

      2.4.1    on board the Insured Vessel(s), or

      2.4.2    in the course of handling cargo from the time of receipt of the cargo from the consignor or shipper at the port of loading until the time of delivery of that cargo to the consignee at the port or place of discharge.

      Save where such liability arises solely under the terms of a contract between the Assured and any other party.

2.5    Any Third Person.

### 3. Medical and Funerary Expenses

Liability to pay for the cost of medical or hospital treatment and ancillary expenses necessarily incurred in relation to any injury, illness or disease, and of funeral arrangements and the repatriation of remains necessarily incurred, in respect of:

3.1    Any member of the Crew.

3.2    A Supernumerary.

3.3    A Passenger.

### 4. Repatriation by Reason of Illness, Injury or Disease

Liability for maintenance and repatriation costs and expenses necessarily incurred, by reason of illness, disease, personal injury or death giving rise to a claim covered under Clause 1, 2 or 3 of this policy in respect of:

4.1    Any member of the Crew

4.2    A Supernumerary

4.3    A Passenger

4.4    Any Third Person

4.5    Any person on a vessel(s) which is in collision with the Insured Vessel(s) or which is damaged by the Insured Vessel(s) other than by collision, or on any property or object damaged by the Insured Vessel(s).

## 5.  Obligatory Repatriation

Liability for repatriation costs and expenses in respect of any member of the Crew necessarily incurred under the terms of any contract of service or employment, or Collective Agreement, or pursuant to any statutory obligation or any order or decree issued by a governmental agency or authority, or pursuant to Regulation 2.5 of the Maritime Labour Convention 2006 except where such expense is payable by reason of:

5.1    the end of a member of the Crew's contractual term of service, under such a contract or Collective Agreement, or by agreement.

5.2    the sale or disposal of the vessel(s).

5.3    the default of the Assured.

5.4    the laying up of the Insured Vessel(s).

Save where such liability arises solely under the Maritime Labour Convention 2006 or equivalent statutory provision.

## 6.  Crew Substitution

Costs and expenses necessarily incurred to substitute a member of the Crew when the Assured is deprived of the services of that member of the Crew, by reason of:

6.1    the death of or repatriation of that member of the Crew pursuant to Clause 4 of this policy.

6.2    death, injury or illness of that member of the Crew, not giving rise to repatriation.

6.3    desertion by that member of the Crew.

## 7.  Compensation following a Casualty

7.1    Liability for wages or compensation payable to any member of the Crew for a maximum period of 60 days, following the actual or constructive or compromised total loss of the Insured Vessel(s) which necessitates the termination of the employment of any member of the Crew under the terms of any contract of service or employment or Collective Agreement, or other legal obligation.

7.2    Liabilities incurred by the Assured arising under a contract of carriage for reward to pay damages or compensation to passengers on board an insured vessel arising as a consequence of a casualty to the insured vessel, including the costs of forwarding passengers to destination or return to port of embarkation and of maintenance of passengers ashore.

Any claim in respect of such liabilities shall be subject to the following provisions:

7.2.1    The terms of the passage ticket or other contract between the passenger and the Assured have been approved by the Insurers in writing.

7.2.2    There shall be no cover under this policy in respect of liabilities incurred as a result of the carriage of any passenger by air, except when such liability occurs during repatriation by air of injured or sick passengers, or of passengers following a casualty to the insured vessel.

7.2.3    There shall be no cover under this policy in respect of liabilities incurred when a passenger is on an excursion from the insured vessel where either:

7.2.3.1    a separate contract has been entered into by the passenger for the excursion, whether or not with the assured; or

7.2.3.2    the Assured has waived any rights of recourse against any sub-contractor or other third party in respect of the excursion.

Cover under 7.2  is subject to the provisions at Clause 18 in respect of the personal effects of any Passenger and at Clause 76.5 of this policy. The Assured shall also be covered under Clauses 1.3, 2.3, 3.3, 4.3, 10 and 18 in respect of a Passenger.

3

### 8. Defaulting Crew

Liability for costs and expenses necessarily incurred by the Assured pursuant to any statutory obligation or any order or decree issued by any governmental agency or authority applicable to any member of the Crew who goes absent from the Insured Vessel(s) without leave, where such costs or expenses cannot be recovered from the member of the Crew concerned.

### 9. Stowaways, Refugees and Persons Rescued at Sea

Costs and expenses other than the costs of diversion of the Insured Vessel(s), necessarily incurred by the Assured in meeting its legal obligations in respect of stowaways, persons rescued at sea, or refugees, including the cost of maintaining, landing and where necessary repatriating such persons. Costs and expenses incurred shall only be covered to the extent that they cannot be recovered from any other party.

Any claim for costs and expenses in respect of bunkers, stores, Crew wages, insurance and port charges shall be limited to the Assured's Net Loss

### 10. Diversion

Costs and expenses necessarily incurred by reason of the diversion or delay of the Insured Vessel(s) solely:

10.1    for the provision of medical treatment ashore of an ill or injured member of the Crew, or any other person on board the Insured Vessel(s).

10.2    in awaiting a substitute for a member of the Crew who has died or for an ill or injured member of the Crew who has been landed for medical treatment or repatriated.

10.3    for the purpose only of landing stowaways, persons rescued at sea or refugees.

Any claim for costs and expenses in respect of bunkers, stores, Crew wages, insurance and port charges shall be limited to the Assured's Net Loss.

### 11. Life Salvage

Liability to a third party arising by reason of the saving or attempted saving by that third party of any member of the Crew or other person on or from the Insured Vessel(s), save to the extent that payment in respect of such a liability is recoverable under the Insured Vessel(s)'s Hull and Machinery insurance or from cargo interests.

### 12. Quarantine

Costs and expenses of disinfection, fumigation or quarantine in respect of the Insured Vessel(s) or cargo or persons on board the Insured Vessel(s), necessarily incurred by the Assured directly by reason of the outbreak of, or presence on board the Insured Vessel(s) of, an infectious human disease or any measures taken to control or eliminate such disease. Such costs and expenses shall be limited to those incurred specifically in respect of the measures taken to eliminate or control such disease and the Assured's Net Loss in respect of bunkers, stores, Crew wages, insurance and port charges.

### 13. Collision Liabilities

Liabilities, costs and expenses arising as a result of a collision between the Insured Vessel(s) and any other vessel(s) in respect of:

13.1    one fourth of the liabilities, costs and expenses incurred by reason of such a collision, in respect of claims other than those set out at Clause 13.2 below, and which are not covered by the Insured Vessel(s)'s Hull and Machinery insurance, save where the Insurer have agreed in writing to cover some other proportion of such liabilities, costs and expenses.

13.2    the full extent of the Assured's liabilities, costs and expenses incurred by reason of such a collision in respect of:

13.2.1    accidental death or injury under Clause 1.

13.2.2    medical and funerary costs and expenses under Clause 3.

13.2.3    repatriation under Clause 4.

13.2.4    crew substitution under Clause 6.

13.2.5    loss of or damage to property under Clause 15.

13.2.6    wreck removal under Clause 16.

13.2.7    damage to cargo on the Insured Vessel(s) under Clause 17.

13.2.8    pollution under Clause 19.

13.2.9    general average or salvage paid by those interested in cargo carried on board the Insured Vessel(s) or in property on board the Insured Vessel(s).

13.3    such part of the Assured's liabilities incurred by reason of collision, other than those referred to in Clause 13.2 as exceeds the amount recoverable under the Insured Vessel(s)'s Hull and Machinery insurance solely because those liabilities exceed the Insured Vessel(s)'s insured value under such insurance.

Cover under this Clause is subject to the provisions at Clauses 40, 53 and 66 of this policy.

Unless agreed by the Insurer in writing, if both vessels in collision are to blame, and the liability of one or both vessel(s) is limited by operation of law, claims in respect of liabilities arising under this Clause shall be settled by reference to the principle of single liability. Save in these circumstances, claims in respect of such liabilities shall be settled by reference to the principle of cross-liabilities.

5

## 14. Damage to Vessel(s) other than by Collision

Liabilities, costs and expenses in respect of loss of or damage to any other vessel(s) or craft, or to property on board such other vessel(s) or craft, not caused by a collision with the Insured Vessel(s), and the impairment or infringement of any rights of any third party caused by such loss or damage.

Where such loss or damage, impairment or infringement occurs, the Assured shall also be covered under the Clauses referred to below in respect of:

14.1    accidental death or injury under Clause 1.

14.2    medical and funerary costs and expenses under Clause 3.

14.3    repatriation under Clause 4.

14.4    substitution under Clause 6.

14.5    damage to property under Clause 15.

14.6    wreck removal under Clause 16.

14.7    loss of or damage to cargo on the Insured Vessel(s) under Clause 17.

14.8    pollution under Clause 19.

14.9    towage by or of the Insured Vessel(s) under Clause 29 or Clause 30.

Cover under this Clause is subject to the provisions at Clauses 40, 53 and 66 of this policy.

## 15. Loss of or Damage to Property

Liabilities, costs and expenses arising in respect of loss of or damage to any fixed or movable property or object (other than any other vessel(s) or craft, or property on any other vessel(s) or craft), including but not limited to any dock, pier, harbour, jetty, buoy, lighthouse, breakwater, beacon or cable, caused by the Insured Vessel(s), or the impairment or infringement of any rights of any third party caused by the Insured Vessel(s).

Where such loss, damage, impairment or infringement occurs, the Assured shall also be covered under the Clauses referred to below in respect of:

15.1    accidental death or injury under Clause 1.

15.2    medical and funerary costs and expenses under Clause 3.

15.3    repatriation under Clause 4.

15.4    substitution under Clause 6.

15.5    wreck removal under Clause 16.

15.6    loss of or damage to cargo on the Insured Vessel(s) under Clause 17.

15.7    pollution under Clause 19.

15.8    towage by or of the Insured Vessel(s) under Clause 29 or Clause 30.

Cover under this Clause is subject to the provisions at Clauses 40, 53 and 66 of this policy.

## 16.  Wreck Removal and Liabilities

16.1   Liabilities, costs and expenses in respect of the removal or disposal of, or the lighting or marking of:

    16.1.1   the wreck of the Insured Vessel(s).

    16.1.2   cargo, property or goods on board or which were carried on board the Insured Vessel(s) (other than oil or any other polluting substance).

    16.1.3   the wreck of any vessel damaged by the Insured Vessel(s), by collision or otherwise, or cargo on board such a wreck.

where such removal or disposal, or lighting or marking, is either required by law, or by any order or decree issued by any governmental agency or authority, or the cost of such removal or disposal, or lighting or marking is legally recoverable from the Assured, or is performed under the terms of a contract which the Insurer, in their absolute discretion, agree in writing.

Any claim in respect of such liabilities, costs and expenses shall be subject to the following:

    16.1.4   the salved value of the wreck, cargo, property or goods shall be deducted from any claim under this section.

    16.1.5   there shall be no claim under this Clause if the Assured has divested itself of its interest in the wreck, cargo, property or goods other than by way of abandonment, before such removal, disposal, marking or lighting takes place.

16.2   Liabilities incurred by the Assured:

    16.2.1   by reason of the attempted or actual removal or disposal of the wreck of the Insured Vessel(s) or property on board the Insured Vessel(s).

    16.2.2   in respect of the wreck of the Insured Vessel(s) including in respect of therelease or escape of oil or any other polluting substance, or any failure to remove or dispose of, or light or mark the said wreck.

## 17.  Cargo

Liabilities, costs and expenses incurred by the Assured in respect of cargo intended to be carried, which is carried or which has been carried on board the Insured Vessel(s), which arise by reason of a breach by the Assured of its duties or obligations as carrier, whether directly or through the acts or omissions of a party for whom the Assured is responsible, or by reason of the unseaworthiness of the Insured Vessel(s) (always subject to Clauses 17.11 – 17.21) in respect of:

17.1   loss of or damage to cargo.

17.2   shortage of cargo on discharge.

17.3   delay, save where the Assured's liability arises under an express term of a contract of carriage requiring delivery on or before a specified date or time or within a specified period, or save where liability arises by a failure to maintain a contractual rate of discharge.

In particular the Assured shall be covered in respect of:

17.4   additional costs of discharging, restowage and resecuring of damaged cargo, over and above the costs which would have been incurred by the Assured in the normal course of the performance of the contract of carriage, and save insofar as such costs are recoverable from any third party.

17.5   costs of disposal of damaged cargo, save insofar as such costs are recoverable from any third party.

17.6   additional costs of discharging, restowage and resecuring of cargo on board the Insured Vessel(s) following a casualty, which are necessarily incurred to complete the intended voyage, which do not constitute General Average expenditure, save insofar as such costs are recoverable from any third party.

17.7   default of a consignee or receiver in failing to take delivery of, rejecting or failing to collect cargo on board, or which has been carried on board, the Insured Vessel(s), save insofar as the liabilities, costs and expenses incurred are recoverable through the sale of the cargo or from any third party. Such liabilities, costs and expenses are covered under this Clause irrespective of whether or not the Assured is in breach of its duties and obligations as carrier.

7

17.8   loss of or damage to cargo, or other property on board the Insured Vessel(s) by reason of a collision, for which the Assured is liable.

17.9   the effects or consequences of the emission of ionising radiation from cargo whilst on board the Insured Vessel(s) (and only whilst on board the Insured Vessel(s)), if such cargo consists of radio-isotopes used for or destined for commercial, agricultural, industrial, medical or other scientific purposes and provided that the prior approval in writing of the Insurer has been obtained for the carriage of such cargo, subject always to the provisions of Clause 74 of this policy.

17.10   liabilities directly caused by loss of, damage to, or shortage of cargo for:

17.10.1   loss of market.

17.10.2   idle time or depletion in output of any plant or factory for which the cargo in respect of which a claim is made was or is destined.

17.10.3   contamination of cargo belonging to any third party.

**There shall be no cover under this policy in respect of the following:**

17.11   ***Terms of Carriage:*** Liabilities incurred by reason of the carriage of goods on terms and subject to exclusions and limitations of liability less favourable to the Assured than those which would have applied had the goods been carried subject to the Hague Rules or Hague-Visby Rules or the Hamburg Rules where the Hamburg Rules are compulsorily applicable to such carriage.

17.12   ***Combined Transport:*** Liabilities for:

17.12.1   loss of or damage to cargo.

17.12.2   shortage of cargo on discharge.

17.12.3   delay, save where the Assured's liability arises under an express term of a contract of carriage requiring delivery on or before a specified date or time or within a specified period.

incurred by reason of the carriage of goods under a contract of carriage or bill of lading providing for through transport or transshipment, unless the Insurers have given their prior written agreement to cover such liabilities, costs and expenses.

17.13   ***Failure to Load:*** Liabilities, costs or expenses incurred by reason of the failure by the Assured to load a particular cargo on board the Insured Vessel(s), save where such failure is caused by an accident, casualty or breakdown suffered by the Insured Vessel(s) after its arrival at the berth where such cargo is to be loaded.

17.14   ***Non-Arrival and Late Arrival:*** Liabilities, costs and expenses incurred by reason of a delay in the arrival or the non-arrival of the Insured Vessel(s) at any load port.

17.15   ***Misdelivery:*** Liabilities for misdelivery where cargo which is carried on board the Insured Vessel(s):

17.15.1   under a negotiable bill of lading or other document of title, is delivered to any person without production by that person of the original negotiable bill of lading or other document of title duly endorsed to that person.

17.15.2   under a non-negotiable bill of lading or other non-negotiable document, is delivered to a person other than the person entitled to receive the cargo under its terms.

17.16   ***Non-Contractual Discharge:*** Liabilities, costs or expenses incurred by reason of the discharge of cargo on board the Insured Vessel(s) at a port or location other than that provided for under the contract of carriage.

17.17   ***Incorrect Statements:*** Liabilities, costs or expenses incurred in circumstances where a bill of lading or other document evidencing the terms of a contract of carriage is issued which, to the knowledge of the Assured or the Master, misstates:

17.17.1   the date of issue of such bill of lading or other document, the date of shipment of the cargo, or the date when the cargo was received for shipment.

17.17.2   the description of the cargo.

17.17.3   the quality or condition of the cargo.

8

17.17.4    the quantity of cargo.

17.17.5    the port or place of loading.

17.17.6    the location of cargo as being under deck, when it is carried on deck.

17.18   ***Ad Valorem Bills of Lading:*** Liabilities arising in respect of cargo carried under an ad valorem bill of lading.

17.19   ***Deviation:*** Liabilities, costs or expenses which result from or as a consequence of a deviation from the voyage required to be performed under a contract of carriage by the Insured Vessel(s), where such deviation would operate to prevent the Assured from relying on defences, exclusions or limitations under that contract of carriage, save where such deviation is made with the prior approval in writing of the Insurer.

17.20   ***Livestock:*** Liabilities arising in respect of any contract for the carriage of live animals.

17.21   ***High Value and Documentary Cargo:*** Liabilities, costs or expenses in respect of:

17.21.1    bullion, precious metals or minerals, diamonds, precious or semi-precious stones or coinage.

17.21.2    artworks, antiques, jewellery or rare or precious artefacts.

17.21.3    documents of value including but not limited to, currency notes, bonds, bearer documents, negotiable instruments, bank drafts, cheques or payment orders.

unless the carriage of such goods or items has the prior approval in writing of the Insurer.

## 18.  Personal Effects

Liability to pay compensation or damages for loss of or damage to property belonging to:

18.1    a member of the Crew.

18.2    a Supernumerary.

18.3    a Passenger.

18.4    any Third Person.

except in respect of:

18.5    bullion, precious metals or minerals, diamonds, precious or semi-precious stones or coinage.

18.6    artworks, antiques, jewellery or rare or precious artefacts.

18.7    documents of value including but not limited to currency notes, bonds, bearer documents, negotiable instruments, bank drafts, cheques or payment orders.

18.8    any item with a value in excess of US$2,500 or such other sum agreed in writing.

unless cover in respect of such goods or items has the prior approval in writing of the Insurer. Where such liabilities, costs or expenses are incurred pursuant to a contract between the Assured and persons referred to at Clauses 18.1 to 18.4 above, there shall be no cover in respect of such liabilities, costs or expenses unless the terms of that contract have the prior approval in writing of the Insurer.

9

## 19. Pollution

Liabilities, costs and expenses incurred by reason of or in consequence of the actual or threatened accidental release or escape of oil or any other polluting substance from the Insured Vessel(s) including:

19.1     **Loss or Damage:** Loss of or damage to property belonging to any third party, or loss sustained by any third party by reason of contamination.

19.2     **Death or Personal Injury:** Death, injury or illness suffered by any person.

19.3     **Containment:** Measures reasonably taken to avert or minimise the risk of an imminent release or escape of oil or other polluting substance from the Insured Vessel(s), together with any liability for loss or damage to property caused by measures so taken.

19.4     **Environmental Purposes:** Measures reasonably taken after the accidental release or escape of oil or any other polluting substance from the Insured Vessel(s), in containing the spread of and cleaning up such oil or any other polluting substance, in order to minimise any resulting loss, damage or contamination.

19.5     **Governmental Intervention:** Compliance with any direction, decree or order made by any governmental agency or authority to avert or minimise the threat of pollution, or following such accidental release or escape, save where such liabilities, costs or expenses:

19.5.1     are recoverable under the Insured Vessel(s)'s Hull and Machinery insurance, or

19.5.2     would be incurred in any event in the course of the ordinary operation of the Vessel(s) or in the ordinary course of the performance of repair work or salvage services.

19.6     There shall be no recovery in respect of any liability loss, damage, costs, fines and expenses arising as a consequence of the discharge or escape or the presence of any substance, material or product or waste determined or deemed to be hazardous in any dump, site, storage or disposal facility whether or not such substance, material, product or waste was previously carried on board the Insured Vessel(s) as cargo, fuel, slops or stores.

## 20. Pollution following Collision or Damage other than by Collision

Liabilities incurred by reason of the actual or threatened accidental release or escape of oil or any other polluting substance from any vessel with which the Insured Vessel(s) is in collision, or which suffers damage caused by the Insured Vessel(s) other than by collision, falling within the scope of Clause 19, save that references to the Insured Vessel(s) shall be treated as references to any vessel(s) with which the Insured Vessel(s) is in collision, or which suffers damage caused by the Insured Vessel(s) other than by collision.

## 21. Special Compensation for Salvors

Liability to pay special compensation to a salvor in respect of the Insured Vessel(s), to avert, limit or prevent damage to the environment under the provisions of Article 14 of the International Convention on Salvage 1989, or under a Lloyd's Open Form, 1980, 1990 or 1995 editions, or any standard form salvage agreement incorporating the effect of Article 14 of the said Convention, save insofar as such special compensation is payable by any third party also interested in property which is the subject of salvage services.

## 22. Pollution Control Indemnities

Liabilities, costs or expenses incurred by the Assured for death or injury of any person or for loss of or damage to property belonging to any person by reason of the granting of an indemnity by the Assured to, or the conclusion of a contract by the Assured with, any party in connection with the provision of services covered under Clause 19.3 and 19.4 above, provided the terms of such indemnity or contract have the prior approval in writing of the Insurer.

## 23. Fines and Penalties

A fine or monetary penalty levied in respect of the Insured Vessel(s) or any member of the Crew, for which either the Assured is legally liable, or in respect of which the Insurer agrees in writing that reimbursement for such fine or monetary penalty should be given, which is levied by any Court or other judicial body, tribunal, or by any governmental agency or authority for:

23.1     breach of an administrative, governmental or customs requirement in relation to the administration of cargo documentation or for short delivery or over-delivery of cargo, including any sum for which the Assured is liable to any charterer of the Insured Vessel(s) in respect of such fine or monetary penalty levied against such a charterer, under the terms of a charterparty to which the Assured is party.

23.2    the accidental release or escape of oil or any other polluting substance from the Insured Vessel(s).

23.3    any breach of customs laws, regulations or requirements, or smuggling, other than in respect of cargo carried under a contract of carriage to which the Assured is party.

23.4    breach of any laws, regulations or requirements in respect of immigration.

23.5    any act or omission by any member of the Crew acting pursuant to their obligations to the Assured under a contract of employment or service, or under any Collective Agreement, in respect of the Insured Vessel(s), which attracts a fine or monetary penalty.

There shall however be no cover under this policy for a fine or monetary penalty levied in respect of:

23.6    any overloading of the Insured Vessel(s), or the presence on board the Insured Vessel(s) of a greater number of passengers than is legally permitted.

23.7    contravention of any law, regulation or requirement in respect of fishing.

23.8    criminal activity embarked on with the knowledge, connivance, complicity or reckless disregard of the Assured.

23.9    any breach or infringement of the requirements and provisions relating either to the configuration and equipping of the Insured Vessel(s) or the maintaining of proper records or documents under or in connection with the International Convention for the Prevention of Pollution from Ships 1973, as amended or any statutory re-enactment of such requirements and provisions.

## 24.  Legal Costs

Legal costs necessarily incurred by the Assured after a casualty suffered by the Insured Vessel(s), or an event likely to give rise to a claim under this policy, to avoid or limit liabilities, costs and expenses in respect of risks covered by this policy, provided that such legal costs have been incurred with the prior approval of the Insurer.

## 25.  Investigative Costs

Costs, other than legal costs, necessarily incurred by the Assured after a casualty suffered by the Insured Vessel(s), or an event likely to give rise to a claim under this policy, for the purpose of conducting an investigation into the circumstances of such a casualty or event, provided that such costs have been incurred with the prior approval of the Insurer.

## 26.  Sue and Labour Costs

Costs and expenses, other than those which would be incurred in the course of the ordinary operation or trading of the Insured Vessel(s), necessarily incurred by the Assured, after a casualty suffered by the Insured Vessel(s), or an event likely to give rise to a claim under this policy, solely to avoid or limit liabilities, costs or expenses in respect of risks covered by this policy, provided that such costs and expenses have been incurred with the prior approval of the Insurer.

## 27.  Inquiry Expenses

Costs and expenses necessarily incurred by the Assured following a casualty suffered by the Insured Vessel(s) to protect the interests of the Assured or any member of the Crew, before any inquiry or tribunal constituted to investigate that casualty, provided that such costs and expenses have been incurred with the prior approval of the Insurer.

## 28.  Insurer's Interest

Costs and expenses incurred by the Assured at the request or direction of the Insurer for the purpose of protecting or advancing the interests of the Insurer.

### 29.  Towage of the Insured Vessel(s)

Liabilities, incurred by the Assured by reason of the towage of the Insured Vessel(s), under the terms of a contract (save in respect of payment for the tow itself) for:

29.1    entering and leaving port for the purpose of the Insured Vessel's ordinary trading.

29.2    shifting the Insured Vessel(s) in port or between places, and securing the Insured Vessel(s) in port, for the purpose of the Insured Vessel(s)'s ordinary trading.

29.3    any other purpose, provided that any contract for towage of the Insured Vessel(s), is on the Towcon or Towhire standard forms, all in unamended form, or any other standard form towage contract which affords the Assured equivalent or better protection than the said standard forms, or to which the Insurer may, on such terms as they require, agree in writing.

save insofar as such liabilities are covered under the Insured Vessel(s)'s Hull and Machinery insurance.

### 30.  Towage by the Insured Vessel(s)

Liabilities, costs and expenses incurred by the Assured by reason of the towage by the Insured Vessel(s) of any other vessel(s) or object, provided that any contract under which such services are given is on the UK Standard Conditions for Towing or Other Services (1986 Edition), the Towcon or Towhire standard forms, all in unamended form, or any other standard form towage contract which affords the Assured equivalent or better protection than the said Standard Conditions or standard forms, or to which the Insurer may, on such terms as they require, agree in writing.

### 31.  Third Party General Average Contributions

A sum equivalent to the proportion of General Average, salvage or special compensation payable to salvors, due to the Assured from any third party including but not limited to cargo interests, but which cannot be recovered through legal process or through negotiation, solely by reason of a breach by the Assured of the Assured's obligations as carrier under a contract of carriage with that third party.

Cover under this Clause is subject to the provisions at Clauses 17.11 to 17.21 of this policy.

### 32.  Excess General Average Payable by the Assured

A sum equivalent to the amount of or proportion of General Average, salvage or special compensation due to a salvor, due in respect of the Insured Vessel(s), which cannot be recovered under the Insured Vessel(s)'s Hull and Machinery insurance, by reason of that proportion being adjusted on the basis of a sound valuation of the Insured Vessel(s) which exceeds its insured value under the said insurance.

Cover under this Clause is subject to the provisions at Clauses 40 and 66 of this policy.

**IN ADDITION TO THE RISKS COVERED UNDER CLAUSES 1 – 32 OF THIS POLICY, THE ASSURED MAY, ON SUCH TERMS AS THE INSURER MAY AGREE IN WRITING, BE COVERED UNDER THE FOLLOWING OPTIONAL CLAUSES 33 – 39:**

### 33. Stand-by Crew

Where an Assured has concluded a contract for the purchase of:

33.1    a new vessel(s), and stations a person at a shipyard for the purpose of supervision of work, familiarisation and hand-over

33.2    a second-hand vessel(s), and stations a person on board that vessel(s) for the purpose of inspection, familiarisation and hand-over

or

33.3    where an Insured Vessel(s) is undergoing repair, refit or drydocking and the Assured stations a person, not being a member of the Crew, on board for the purpose of supervision of the repair, refitting or drydocking work that person may be treated as a member of the Crew of an Insured Vessel(s) for the purpose of coverage under Clauses 1, 2, 3 and 4 of this policy, by special arrangement with the Insurer, on such terms as the Insurer may agree in writing and subject to the payment of an additional premium.

### 34. Confiscation

The Assured may, on such terms as the Insurer may agree, be covered for loss of the Insured Vessel(s) by reason of confiscation. The Assured may, subject to such terms, recover a sum equivalent to the market value of the Insured Vessel(s), in the event of its confiscation by or on the order or decree of any Court or other judicial body, tribunal or by any governmental agency or authority, for any breach of customs or tax laws, regulations or requirements, or smuggling, other than in respect of cargo carried under a contract of carriage to which the Assured is party, provided that:

34.1    the activity which gives rise to such confiscation was not embarked on with the knowledge, connivance, complicity or reckless disregard of the Assured or the Master.

34.2    the Assured took all reasonable steps to prevent the activity giving rise to such confiscation occurring on board the Insured Vessel(s).

34.3    the Assured has been irrevocably and finally deprived of the use of the Insured Vessel(s).

The market value of the Insured Vessel(s) shall be the market value at the time that the confiscation took place.

### 35. Legal Expense not covered by Clause 24

Legal costs and expenses necessarily incurred by the Assured (including the costs of an opposing party where such costs are ordered to be paid by a court or tribunal, or are to be paid pursuant to the terms of any settlement concluded with the approval in writing of the Insurer and always subject to the provisions at Clauses 56 and 59) in pursuing or defending claims, or in seeking to resolve disputes, on such terms as the Insurer may agree in writing, arising in respect of the following:

35.1    any contract for the building of the Insured Vessel(s), which has the prior approval in writing of the Insurer.

35.2    any contract for the purchase or sale of the Insured Vessel(s), which has the prior approval in writing of the Insurer.

35.3    any contract for the conversion, alteration, repair, refit, drydocking or maintenance of the Insured Vessel(s).

35.4    any charterparty, contract of carriage, bill of lading or contract of affreightment, to which the Assured is party in respect of the Insured Vessel(s) and disputes as to the conclusion or legal effect of any such charterparty, contract of carriage, bill of lading or contract of affreightment.

35.5    any contract for operational services provided to or in respect of the Insured Vessel(s), including but not limited to agency, stevedoring, towage or salvage, or harbour authority services.

35.6    any contract for administrative services provided to or in respect of the Insured Vessel(s) for insurance broking or ship broking services, management services or the provision of technical advice.

35.7    any contract in respect of goods or materials, necessaries and stores including bunkers and lubricating oil provided to the Insured Vessel(s).

35.8    the employment of the Crew.

35.9    any contract of marine insurance in respect of the Insured Vessel(s), or which the Assured contends covers the Insured Vessel(s), other than that evidenced by this policy.

35.10   any damage to the Insured Vessel(s), detention of the Insured Vessel(s), or the impairment of any right of the Assured in respect of the Insured Vessel(s), caused by any third party.

35.11   General Average contributions.

35.12   the presence on board the vessel(s) of stowaways, refugees or persons rescued at sea.

35.13   the handling, loading, stowing, lashing and discharge of cargo which is to be carried, which is carried or which has been carried on board the Insured Vessel(s).

Provided that the Assured has reasonable prospects of successfully pursuing or defending any such claim, or resolving any such dispute, through the incurring of legal costs and expenses, and provided that such costs and expenses are incurred with the prior written approval of the Insurer.

Approval by the Insurer of a contract under Clause 35.1 or 35.2 shall not connote acceptance or approval of the terms and conditions of such a contract. There shall be no cover under this Clause in respect of any claim by a Joint Assured against another Joint Assured, nor in respect of disputes between Joint Assureds.

The following shall be taken into account in assessing the prospects of successfully pursuing or defending any such claim or resolving any such dispute:

35.14   the applicable law and jurisdiction.

35.15   the value of the claim or sum in issue or the significance of the dispute.

35.16   the level of the legal costs and expenses likely to be incurred.

35.17   the legal merit of the Assured's position.

35.18   any alternative means for pursuing or defending the claim or resolving the dispute.

35.19   the prospect of enforcement of any claim by or against the Assured.

35.20   the conduct of the Assured.

35.21   the importance of any issues that arise to the shipping community generally.

Subject always to the provisions at Clause 56, if it is proposed that a claim is to be settled or compromised in respect of which legal costs and expenses falling within the scope of this Clause 35 have been or will be incurred, the Assured shall, before agreeing to such a compromised settlement , obtain the prior written consent of the Insurer to do so. The Assured shall provide to the Insurer such information as the Insurer shall reasonably require to facilitate such agreement. Subject to the provisions of Clause 59, the Insurer shall be entitled to any legal costs and expenses which the Assured recovers pursuant to an award, judgment or compromised settlement. If the compromised settlement does not include provision for legal costs and expenses, the proportion which shall be attributable to legal costs and expenses will be determined by the Insurer in its sole discretion and shall be binding upon the Assured.

The conduct of any claim or handling of any dispute under this Clause shall be governed by the procedure provided for at Clauses 55, 56, 57, 58 and 59 of this policy. Any dispute or disagreement between the Insurer and the Assured as to the prospects of successfully defending or pursuing any such claim, or resolving any such dispute, shall be submitted to arbitration in London in accordance with the procedure provided for under this Clause.

The arbitration shall be conducted before three arbitrators, one to be appointed by each of the parties and a third by the arbitrators so appointed. The arbitrators shall be English barristers who are not Queen's Counsel. The arbitration shall be on the basis of written submissions and supporting documentation alone and, save as expressly provided in this Clause and in Clause 63.3, shall be subject to the provisions of the English Arbitration Act 1996 or any statutory modification or re-enactment of it for the time being in force.

All other disputes shall be determined pursuant to the provisions of Clause 63.

### 36.  Maritime Labour Convention 2006 (MLC) Abandonment Indemnity Clause

36.1    It is hereby agreed that in the event of relinquishing of possession or control of the Insured Vessel by the Assured, the application of clause 49.5 of this policy (termination of cover of the Insured Vessel without notice) shall be suspended for a period of 120 days, save where there is foreclosure by a mortgagee. This suspension shall apply solely for the purposes of discharging the legal liabilities referred to in Clauses 36.2 & 36.3 below.

36.2    Suspension pursuant to Clause 36.1 above shall be for the sole purpose of the Insurer discharging legal liabilities of the Assured in respect of :-

36.2.1    Medical and Funerary Expenses pursuant to Clause 3 of this policy;

36.2.2    Repatriation of crew and personal luggage transportation costs;

36.2.3    Accommodation and food costs;

36.2.4    Outstanding wages;

where such liability would otherwise fall to be met by the competent authority of an Assured that has ratified the MLC to Standard A2.5.5(a) and Guidelines B2.5.1.3(a)-(e), and only to the extent that such competent authority would otherwise be liable to meet such liabilities, costs and expenses.

36.3    Any payment in respect of a liability, costs or expense pursuant to Clause 36.2 above shall be made on behalf of the Assured, and the Assured shall be liable to reimburse the Insurer, for all costs and expenses paid pursuant to Clauses 36.2.3 and 36.2.4 above.

36.4    There shall be no cover under this MLC Abandonment Clause 30 days after notice of termination has been given in accordance with Regulation 2.5, Standard A2.5.2.11 or Regulation 4.2, Standard A4.2.12.

### 37.  Charterers' Liability

The Assured may, on such terms as the Insurer may agree in writing, be covered for liabilities, costs and expenses incurred as the charterer of a vessel in respect of risks covered under Clauses 1-32 of this policy, and in respect of:

37.1    liabilities to an owner or demise charterer or disponent owner of such chartered vessel under the terms of a charterparty concluded in respect of such chartered vessel, for loss of or damage to such chartered vessel.

37.2    loss of or damage to the Assured's property (other than cargo) on board such chartered vessel including, but not limited to, bunkers and lubricating oil.

37.3    any contribution in salvage payable by the Assured.

## 38. Special Operations

Where the Insured Vessel(s) is a vessel which carries out the special operations set out at Clauses 38.1 to 38.13 below, the Assured may, on such terms as the Insurer may agree in writing, also be covered in respect of liabilities, costs and expenses covered under Clauses 1 to 32 incurred by reason of the Insured Vessel(s) carrying out such special operations:

38.1    salvage.

38.2    firefighting.

38.3    exploration, surveying, drilling, production, and associated services in respect of oil, gas or minerals.

38.4    oil storage.

38.5    underwater operations by a submarine or other submersible, commercial diving and underwater surveying.

38.6    construction, including pile driving, blasting, and the transport and construction of offshore installations.

38.7    dredging, and the removal and discharge of dredging or other spoil.

38.8    cable or pipeline laying or recovery, including preparatory surveying, laying or recovery operations and maintenance.

38.9    waste incineration or disposal.

38.10   pollution control.

38.11   search and rescue at sea.

38.12   research at sea.

38.13   leisure, accommodation and catering services on board a permanently moored vessel.

Save as specifically agreed by the Insurer in writing there shall be no cover under this policy for liabilities, costs and expenses arising from or in connection with such special operations performed by the Insured Vessel(s) provided that this exclusion shall not apply to liabilities, costs and expenses incurred by the Vessel(s) in respect of:

i)      Loss of life, injury or illness of crew and other personnel on board the insured Vessel(s), and

ii)     The wreck removal of the insured Vessel(s), and

iii)    Oil pollution emanating from the insured Vessel(s)

but only to the extent that such liabilities and expenses are otherwise covered by the Insurer in accordance with the Terms and Conditions of cover.

### 39. War Risks

The Assured may, on such terms as the Insurer may agree in writing, be covered for liabilities, costs and expenses caused by:

39.1  war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or for any hostile act by or against a belligerent power or any act of terrorism.

39.2  capture, seizure, arrest, restraint or detainment (barratry and piracy excepted) and the consequences thereof or any attempt threat.

39.3  Mines, torpedoes, bombs or other weapons of war.

provided such liabilities, costs and expenses are not covered under the terms of any other insurance in respect of the Insured Vessel(s) or the Assured. This Clause shall only cover such liabilities, costs and expenses insofar as they exceed amounts recoverable under any such other insurance including but not limited to the Insured Vessel(s)'s Hull and Machinery insurance and insurance in respect of Crew or war risks

Cover under this Clause shall be subject to the following:

39.4  **_Cancellation:_** The Insurers may, on giving 7 days notice in writing:

39.4.1  Cancel the cover provided under this Clause, or

39.4.2  vary or restrict the terms on which cover under this Clause is provided.

39.5  **_Automatic Termination:_** Cover under this Clause shall cease automatically without notice:

39.5.1  on the outbreak of war, whether declared or not, between any of the following: the United Kingdom, The United State of America, the People's Republic of China, France or the Russian Federation.

39.5.2  the requisitioning for any purpose of any Insured Vessel(s) covered under this policy

39.5.3  the hostile detonation by any party anywhere, of a weapon of war employing atomic or nuclear fission and/or fusion or other similar reaction or radioactive force or matter.

39.6  **_Five Powers War:_** There shall be no cover under this policy for any loss, damage, liability or expenses arising from or in connection with:

39.6.1  the outbreak of war whether declared or not, between any of the following: the United Kingdom, the United States of America, the People's Republic of China, France or the Russian Federation.

39.6.2  the requisition for any purpose of any Insured Vessel(s) covered under this policy.

39.7  **_Chemical, Biological, Bio-chemical, Electromagnetic Weapons and Cyber Attack Risks:_** Cover under this Clause is subject always to Clauses 74 and 79 of this policy.

39.8  **_Pre-attachment Events:_** There shall be no cover under this Clause if an event which would give rise to cover ceasing automatically without notice under Clause 39.5 occurs after the agreement of the Insurers in writing has been provided to the Assured, but before the date and time for the attachment of the cover so agreed.

## SECTION B – GENERAL CONDITIONS

### 40.  Insured Value

The Insured Vessel(s) shall be, throughout the policy period, deemed to be insured in respect of Hull and Machinery on terms which afford the Assured protection equivalent to or better than that provided under Lloyd's Marine Policy MAR (1.1.82 Edition) with the Institute Time Clauses 1.10.83 or, in the case of fishing vessel(s) only, Institute Fishing Vessel Clauses 20.7.87, for an insured value equivalent to or higher than the market value of the Insured Vessel(s) from time to time. Such market value shall be assessed on the basis that the Insured Vessel(s) is available for sale, free of commitment from a willing Seller at the date of the event giving rise to a claim under this policy. Any dispute or disagreement between the Assured and the Insurer as to such market value shall in the first instance be submitted to the Claims Committee and/or Arbitration in accordance with Clause 63.

### 40A. Breach of warranty

In the event of a failure by the Assured to comply with any of the warranties under Clauses 41-44 in respect of the Insured Vessel(s), then in accordance with Clause 63.5 the remedies provided for under the Marine Insurance Act 1906 shall apply instead of those provided under the Insurance Act 2015:

In addition, the Insurer may:

40A.1  terminate cover provided under this policy from the date any of these warranties are breached and shall provide written notice to the Assured that cover has been terminated from the date of breach, or.

40A.2  vary or restrict the terms on which cover under this policy is provided and shall provide the Assured with written notice as to how the terms of this policy have been changed.

### 41.  Classification

The Assured warrants that the Insured Vessel(s) is at the time of inception of this policy classed with a classification society approved by the Insurer, and shall remain so classed throughout the policy period. The Assured further warrants that it shall:

41.1  comply with the rules of that classification society, and comply with any recommendation or requirement issued by it in accordance with those rules within any period or by any date stated by that classification society for compliance.

41.2  notify and secure the Insurer's approval in writing of any intended change of classification society in respect of the Insured Vessel(s), stating in full all outstanding requirements, recommendations and restrictions to which the Insured Vessel(s) is subject.

41.3  notify the classification society as soon as practicable of any event or circumstance which may affect the Insured Vessel(s)'s class, including but not limited to any event or circumstance which might cause the classification society to impose a requirement or make a recommendation under its Rules.

It is a condition precedent to liability under this policy that the Assured:

41.4  disclose to the Insurer all information and documents that they may require relating to the class of the vessel, including but not limited to information and documents relating to any requirements or recommendations imposed, any special survey or drydocking of the Insured Vessel(s), and the granting of any extensions by the classification society under its Rules.

41.5  authorise a nominated representative of the Insurer to inspect and copy the Insured Vessel(s)'s class records and be provided with any other information or documents that the classification society may hold.

## 42. Flag State

The Assured warrants that the Insured Vessel(s) complies at the time of inception of this policy with all requirements of the Insured Vessel(s)'s flag state including those relating to:

42.1    the construction, condition, manning and equipping of the Insured Vessel(s).

42.2    the maintenance of valid statutory certificates issued by or on behalf of the Insured Vessel(s)'s flag state.

It is a condition precedent to liability under this policy that the Insured Vessel(s) has complied with such requirements throughout the policy period including the implementation and maintenance of any vessel(s) or office systems in accordance with Flag State requirements.

## 43. Survey by Insurer

The Assured shall permit the inspection of the Insured Vessel(s) by a surveyor or surveyors appointed on behalf of the Insurer:

43.1    prior to inception of this policy, or

43.2    at any time and as often as required by the Insurer during the policy period

and will co-operate fully in the performance of such an inspection. The Assured warrants that it shall comply with all recommendations or requirements made by the Insurer following the inspection within the period required for compliance.

In the event of the Insured Vessel(s) being laid up for a continuous period of 180 or more days the Assured shall notify the Insurer in writing at least 7 days prior to the recommissioning of the Insured Vessel(s) in order for the Insurer to have an opportunity to commission an inspection of the Insured Vessel(s) pursuant to this Clause.

It is a condition precedent to liability under this policy that the Assured has complied with the requirements of this Clause.

## 44. ISM Code

If the Insured Vessel(s) is required to comply with the International Safety Management Code by the International Maritime Organisation the Assured warrants:

44.1    that the Insured Vessel(s) has a valid Safety Management Certificate.

44.2    that the Assured, Owner or Manager of the Insured Vessel(s) has a valid Document of Compliance.

44.3    that the Assured, Owner or Manager of the Insured Vessel(s) has implemented and continues to maintain and operate a Safety Management System in accordance with the International Safety Management Code

in accordance with the requirements of the said Code, and that they shall be maintained in accordance with such requirements throughout the policy period.

The Assured further warrants that it shall notify the Insurer in writing forthwith on the suspension or withdrawal of the said Safety Management Certificate or Document of Compliance.

It is a condition precedent to liability under this policy that the Assured has complied with the requirements of this Clause.

## 45. Mitigation and Sue and Labour

The Assured shall, on the occurrence of an event likely to give rise to a claim under this policy, take all reasonable steps to avert or minimise any liabilities, costs and expenses which might be covered under this policy.

19

### 46. Assignment

Neither this policy, nor any interest under this policy, may be assigned by the Assured, unless the Insurer in their absolute discretion consent in writing to such an assignment and on such terms as the Insurer shall impose.

### 47. Set Off

The Insurer shall be entitled to set off any sum due from the Assured against any sum due to the Assured under this policy in respect of any Insured Vessel(s). The Assured shall not be entitled to set off any amount payable by the Insurer against any sum due from the Assured under this policy.

### 48. Termination of Insurance

This policy of insurance shall terminate automatically without notice in the following circumstances:

48.1    the Assured, being an individual:

48.1.1    14 days after he dies.

48.1.2    he becomes bankrupt.

48.1.3    he is the subject of a receiving order or of a scheme of arrangement or composition with his creditors.

48.1.4    ceases to be able to manage his business by reason of mental illness or incapacity.

48.2    the Assured, being a corporation:

48.2.1    it is the subject of a compulsory winding up order or resolution for its voluntary winding up.

48.2.2    it is dissolved.

48.2.3    it is the subject of the appointment of a receiver, administrator or manager or analogous person in respect of all or part of its business.

48.2.4    it initiates any proceedings to achieve legal protection from its creditors.

The Assured (or in the case of an individual Assured who dies, his personal representative) shall notify the Insurer in writing forthwith on the occurrence of an event referred to in this Clause.

48.3    Termination of Insurance by notice:

The insurer may, at any time and without giving reasons, terminate the Insurance of an Insured Vessel(s) by not less than 14 days written notice of termination, effective from the expiry thereof.

### 49. Termination of Cover in respect of an Insured Vessel(s)

Cover in respect of an Insured Vessel(s) shall cease without notice on the occurrence of any of the following:

49.1    sale of the Insured Vessel(s).

49.2    divestment or assignment by the Assured of part or all of his interest in the Insured Vessel(s).

49.3    change of manager or flag state in respect of the Insured Vessel(s).

49.4    mortgage or hypothecation of the Insured Vessel(s).

49.5    relinquishing of possession or control of the Insured Vessel(s) by the Assured or foreclosure by a mortgage bank in respect of the Insured Vessel(s).

49.6   total loss of the Insured Vessel(s) whether

49.6.1   actual.

49.6.2   constructive, upon agreement by or acknowledgment from the Insured Vessel(s)'s Hull and Machinery Insurer(s).

49.6.3   compromised or agreed with the Insured Vessel(s)'s Hull and Machinery Insurer(s).

49.6.4   in circumstances where the Insurer concludes that the Insured Vessel(s) is a total loss and notifies the Assured in writing accordingly.

49.7   the Insured Vessel(s) cannot be located or contacted for a consecutive period of ten days unless the Insurer agrees in writing to maintain or reinstate cover in respect of the Insured Vessel(s), on the same or on varied or restricted terms.

The Assured shall notify the Insurer in writing forthwith on the occurrence of a circumstance or event referred to in this Clause.

Where cover ceases pursuant to this Clause the Insurer shall be liable only in respect of any claim arising prior to the time when cover ceases, except that, where cover ceases by virtue of Clause 49.6, the Insurer shall also be liable in respect of any claims which arise directly by reason of the casualty giving rise to the Insured Vessel(s) becoming a total loss.

## 50. Premium

Premium payable in respect of this policy shall be paid on such terms as the Insurer shall agree in writing.

In the event of failure by the Assured to pay premium or any instalment of premium due under the said terms or any other sum or sums debited by the Insurers, the Insurer may:

50.1   cancel this policy giving a minimum notice period of 7 days.

50.2   vary or restrict the terms on which cover under this policy is provided.

In the event of the cancellation of this policy by the Insurer under this Clause, the Insurer shall not be liable in respect of any claim whatsoever, whether arising before or after such cancellation.

The Insurer shall be entitled to interest at a rate of 2% over the LIBOR rate for any premium or part of the premium which is due and unpaid.

Where the Assured has paid the premium due under this policy and:

50.3   termination of the policy takes effect pursuant to Clause 48, premium under the policy shall be returned to the Assured on a pro rata per day basis.

50.4   termination of cover in respect of an Insured Vessel(s) takes effect pursuant to Clause 49, premium paid in respect of that Insured Vessel shall be returned to the Assured on a pro rata per day basis.

50.5   If any Insured Vessel(s) shall be laid up in a safe port, without employment, with no crew on board (save the minimum number remaining for the vessel(s)'s maintenance and security), and no cargo on board, for a period of 30 or more consecutive days after finally mooring there (such period being computed from the day of arrival to the day of departure, only one being included), and for each completed 30 day period thereafter, the Assured shall be entitled to a return of up to 70% of the premium attributable on a pro rata basis to the period during which such vessel(s) was laid up and unemployed provided that the Insurer is notified in writing within 6 months of the end of either such lay up period or the policy period, whichever the earlier.

50.5.1   Any vessel(s) laid up but under repair shall be entitled to up to 50% return, subject otherwise to all other terms of this Clause.

50.6   The right to receive a return of premium from the Insurer shall not apply if the Insured Vessel(s) is a total loss as defined in Clause 49.6 during the relevant insurance period, where the Insurer will be entitled to receive full annual premium.

21

## 51.  Waiver

No representation, act or omission, conduct or forbearance by the Insurer nor any agreement or acquiescence to the conduct of the Assured, shall amount to a waiver of any right of the Insurer under this policy, nor shall it give rise to an estoppel in respect of any such right unless expressed in writing and addressed by the Insurer to the Assured.

## 52.  Joint Assureds and Co-Assureds

Joint Assureds and/or Co-Assureds shall not be covered in respect of any claims or liabilities between such Joint Assureds and/or Co-Assureds.

Such Joint Assureds and Co-Assureds shall:

52.1    be bound by the default of any one of the said Joint Assureds or Co-Assureds in failing to disclose or misrepresenting material information to the Insurer.

52.2    be bound by the conduct of any one of the said Joint Assureds or Co-Assureds which would give rise to:

52.2.1    the termination of this policy.

52.2.2    the termination of cover in respect of an Insured Vessel(s).

52.2.3    the cancellation by the Insurer of cover provided under this Policy.

52.2.4    the variation or restriction by the Insurer of the terms on which cover under this policy is provided.

52.3    be deemed to have received any notice or communication sent by the Insurer to any one of the said Joint Assureds or Co-Assureds or the Assured.

52.4    be deemed to have sent any notice or communication sent by any one of the said Joint Assureds or Co-Assureds to the Insurer.

Joint Assureds shall be jointly and severally liable to pay premium due under this policy.

The deductibles and limits provided for in this policy shall apply to any claim by any one of such Joint Assureds or Co – Assureds, as if the Joint Assureds or Co-Assureds were a single Assured. Receipt by any Joint Assured or Co-Assured of any sum payable by the Insurer shall be deemed to be receipt on behalf of all the Joint Assureds and Co-Assureds, and shall discharge the Insurer of their liability for any claim in respect of which such payment is made.

## 53.  Common Ownership

Where the Assured is also the owner or part owner of:

53.1    a vessel or craft with which the Insured Vessel(s) is in collision giving rise to a claim under Clause 13.

53.2    a vessel or craft which the Insured Vessel(s) damages other than by collision giving rise to a claim under Clause 14.

53.3    property or an object which the Insured Vessel(s) damages giving rise to a claim under Clause 15.

53.4    cargo on board a vessel with which the Insured Vessel(s) is in collision giving rise to a claim under Clause 13.

the Assured shall be covered under this policy as if the said vessel, craft, property, object or cargo belonged to a third party.

## 54. Notices

Any notice:

54.1    by the Assured to the Insurer shall be sent to:

British Marine

C/o QBE Insurance (Europe) Limited
Plantation Place,
30 Fenchurch Street,
London EC3M

Telephone : +44 (0) 20 7105 4000
Fax : +44 (0) 20 7105 4019
E-mail address: managers@britishmarine.com

Or to such other address or by such other means of communication as the Insurer shall notify to the Assured from time to time.

54.2    by the Insurer to the Assured shall be sent to the address, facsimile number or e-mail address shown after the Assured's name on the first page of this policy. Proceedings issued by the Insurer against the Assured shall be deemed to have been duly served if delivered to such address.

## 55. Claims Notification, Provision of Information and Recovery

55.1    It is a condition precedent to liability of the Insurer under this policy that the Assured shall:

55.1.1    notify the Insurer in writing as soon as reasonably practicable of any event which may give rise to a claim under this policy.

55.1.2    notify the Insurer in writing forthwith of any legal or other proceedings brought against the Assured or in respect of the Insured Vessel(s).

55.1.3    provide to the Insurer or to any party nominated by the Insurer as soon as reasonably practicable all material, including documents, photographs or reports in the possession of the Assured or its agents, and any information known to the Assured or its agents, relating to any event which may give rise to a claim under this policy, and continue to keep the Insurer advised of all material developments in respect of such an event or claim.

55.1.4    notify the Insurer as soon as practicable of any opportunity to obtain information, relating to an event which may give rise to a claim under this policy, including but not limited to an opportunity to conduct medical examinations, surveys in respect of any cargo, vessel(s) or any other object.

55.1.5    give full co-operation to the Insurer in any investigation conducted by or on behalf of the Insurer into any event which may give rise to a claim under this policy.

55.1.6    not make any admission of liability, responsibility or blame to any third party in respect of any event which may give rise to a claim under this policy.

55.2    Unless the Insurer in its discretion decides otherwise, it is a condition precedent to the Assured's right to recover under the Policy in respect of any liabilities, costs or expenses that he shall first have discharged or paid the same out of funds belonging to him unconditionally and not by way of a loan or otherwise.

## 56. Claims Handling

The Insurer shall be entitled on such terms as they may require to assume control of the conduct of any claim, legal proceedings, arbitration or participation by the Assured in any inquiry or investigation, in respect of any event or matter which may give rise to a claim under this policy.

The Insurer may direct the Assured to take any step in connection with the conduct of such a claim, legal proceedings, arbitration, inquiry or investigation, including the conclusion of a settlement or compromise agreement.

In the event of a failure by the Assured to act as directed by the Insurer, any claim under this policy shall be limited to the amount of the claim which would have been recoverable had the Assured acted as directed by the Insurer.

23

### 57. Assistance in Handling Claims

The Insurer may, subject to the terms of this policy, appoint on behalf of the Assured any person to assist in or advise on the conduct of any investigation, claim or legal or other proceedings, in respect of any event that may give rise to a claim under this policy.

Any person so appointed, or appointed by the Assured with the Insurer's consent, will act for and on the instructions of the Assured as principal, but shall, without reference to the Assured, disclose all material, documents or information relating to such investigation, claim or legal or other proceedings to the Insurer, as if the Insurer were his principals.

### 58. The Provision of Security

The Insurer is under no obligation, but may, provided all sums due to the Insurer from the Assured are paid and otherwise on such terms as the Insurer shall agree, provide security in respect of any claim against the Assured by any party in respect of the risks referred to at Section A. The Insurer shall not provide security in respect of Clause 35, except by way of security provided to an opponent party for the costs of the Assured ordered to be provided by a Court or Tribunal, or pursuant to the terms of an agreement with such opponent party as the Insurer may agree in writing. The Assured shall indemnify the Insurer for the costs of, or liability incurred to any Third Party under the security so provided, save to the extent that such costs or liability are recoverable under this policy.

### 59. Recoveries and Subrogation

Where the Insurer has made a payment to or on behalf of the Assured in respect of a claim or for legal costs and expenses pursuant to Clause 35 under this policy, and the Assured, or any person on the Assured's behalf, obtains the recovery or reimbursement of any sum representing all or part of the liability, loss, cost or expense which was the subject of the claim or legal costs and expenses pursuant to Clause 35 so paid, such sum shall be applied in favour of the Insurer and the Assured in the proportions of their respective contributions to such payment.

The Insurer shall be subrogated to all rights which the Assured may have against any third party in respect of any payment made under the policy, to the extent of such payment, and the Assured shall, at the request on the Insurer, execute forthwith any document required by the Insurer for the purpose of the exercising of such rights.

### 60. Crew Contracts

Where any liability, costs or expenses are incurred under the terms of any contract of service or employment, or Collective Agreement with any member of the Crew, such liability, costs or expenses shall only be covered under this policy if those terms have the prior approval in writing of the Insurer.

### 61. Limitation of Liability

Cover under this policy for a liability incurred by the Assured or in respect of the Insured Vessel(s) shall be limited to such liability as may be established under the applicable law, or as may be agreed to in writing by the Insurer, and shall be limited in particular by reference to any legal provision under the applicable law providing for the limitation of liability in respect of the Insured Vessel(s) or the Assured.

Where cover is provided under Clause 37 of this policy to a time charterer, such cover shall be limited to such liability as would be established under the applicable law, if the time charterer were the registered owner of the chartered vessel, and shall be limited in particular by reference to any legal provision which would apply under the applicable law providing for the limitation of liability in respect of the chartered vessel, had the time charterer been its registered owner.

### 62. Duties of the Assured

62.1    The Assured must make a fair presentation of the risk (as set out in the Insurance Act 2015 or successor or amending legislation) in proposing for, or proposing to vary, this insurance.

62.2    Section 8 of the Insurance Act 2015 which sets out the remedies for breach of the duty of fair presentation does not apply to this policy. Any breach of the duty of fair presentation shall entitle the Insurer to avoid this policy, regardless of whether such breach is deliberate, reckless or otherwise.

62.3    Section 14 of the Insurance Act 2015 which abolishes the remedy of avoidance of this policy on the grounds that the duty of utmost good faith has not been observed does not apply to this policy. This policy shall be deemed to be a contract of utmost good faith, and any breach of that duty shall entitle the Insurer to avoid this policy.

### 63.  Disputes and Governing Law

Save where Clause 35 applies:

63.1   The Assured hereby submits to the jurisdiction of the High Court of Justice of England in respect of any action brought by the Insurer to recover sums which the Insurer may consider to be due to it from the Assured. Without prejudice to the foregoing, the Insurer shall be entitled to commence and maintain in any jurisdiction any action to recover sums which the Insurer may consider to be due to it from the Assured.

63.2   Any other dispute or difference arising between the Insurer and the Assured under this policy shall in the first instance be referred to the Claims Committee for consideration and adjudication. Such reference shall be on written submissions only.

63.3   If the Assured does not accept the decision of the Claims Committee, such difference or dispute shall be referred to the arbitration in London of two arbitrators (one appointed by the Insurer and the other by the Assured) and an Umpire to be appointed by the Arbitrators, and the submission to arbitration and the proceedings therein shall be subject to the provisions of the Arbitration Act 1996, and any statutory modification or re-enactment thereof for the time being in force.

63.4   This policy shall be governed by and construed in accordance with English law.

63.5   Unless expressly stated to the contrary in this policy the Insurance Act 2015 and any applicable subordinate, amending or successor legislation or regulation in force from time to time applies to this policy. Where the Insurance Act 2015 is not applicable, the Marine Insurance Act 1906 shall govern this policy.

63.6   In addition to the provisions of Clause 62 above, the following provisions of the Insurance Act 2015 are excluded from this policy:

63.6.1   Section 10 of the Insurance Act 2015 which abolishes the discharge of the Insurer's liability under the policy where the Assured has breached a warranty does not apply to this policy. All warranties in this policy must strictly be complied with and if any of the Assured, Joint Assured or Co-Assured fails to comply with any warranty the Insurer shall be discharged from liability from the date of the breach, regardless of whether the breach is subsequently remedied.

63.6.2   Section 11 of the Insurance Act 2015 which abolishes the right of the Insurer to discharge its liability under the policy where the Assured has breached a term of this policy that is not relevant to the actual loss which occurred does not apply to this policy. All the terms of this policy (including any terms subsequently endorsed) and terms which tend to reduce the risk of loss of a particular kind, loss at a particular location and/or loss at a particular time, must be strictly complied with and if any of the Assured, Joint Assured or Co-Assured fails to comply with any such term, the Insurer's liability may be excluded, limited or discharged in accordance with this policy notwithstanding that the breach could not have increased the risk of the loss which actually occurred in the circumstances in which it occurred.

63.6.3   Section 13 of the Insurance Act 2015 which prohibits the Insurer from terminating a group insurance policy from the date of a fraudulent act committed by or on behalf of one Assured, Joint Assured or Co-Assured does not apply to this policy. The Insurer shall be entitled to exercise its right to terminate this policy in the event that a fraudulent claim is submitted.

For the avoidance of doubt Section 12 of the Insurance Act 2015 which entitles the Insurer to deny any fraudulent claims, recover sums paid in respect of such fraudulent claims and treat this policy as having been terminated as a result of fraudulent claims made by any of the Assured, Joint Assured or Co-Assured does apply to this policy and remains in full force and effect.

63.6.4   Section 13A of the Insurance Act 2015 which implies a term in this policy that where the Assured makes a claim under this policy, the Insurer must pay any sums due in respect of that claim within a reasonable time does not apply to this policy. This policy shall not be subject to nor shall the Insurer be in breach of any implied term that it will pay any sums due in respect of any claim within a reasonable time save where the breach is deliberate or reckless.

63.7   The Insurance provided by the Insurer shall not nor is intended to confer any right or benefit on any third party under the Contracts (Rights of Third Parties) Act 1999 or any similar provision, enactment or principle of law contained in the laws of any State which purports to do so.

25

## 64. Policy Limit, Claims Payment and Recovery

Where the Combined Single Limit exceeds US$ 100 million, the Insurer shall only be liable to pay any sum by which any claim or claims subject to the Combined Single Limit exceed US$ 100 million, when the Insurer has received such sum from its Reinsurers, from time to time, or such sum can be paid pursuant to any agreement to effect simultaneous settlement between the Insurer and its Reinsurers.

## 65. Definitions and Construction

65.1   For the purpose of this policy terms set out below shall be defined as stated:

*Assured* – The Person insured under the Policy of Insurance and who is stated as being the Assured in the Policy of Insurance. Where the context permits, Assured shall also mean Joint Assured.

*Cargo* – Goods which are the subject of a contract of carriage to which the Assured is party including packaging or securing materials, other than containers supplied by or on behalf of the Assured.

*Claims Committee* – A committee constituted periodically by the Insurer to consider claims issues and disputes that may arise from time to time.

*CMR Convention* – The Convention on the Contract for the International Carriage of Goods by Road of 19th May 1956, as amended by the CMR Protocol of 5th July 1978.

*Co-Assured* – A Person named as a Co-Assured in the Policy of Insurance.

*Combined Single Limit* – The maximum figure for which the Insurer is liable in respect of any claim or claims under this policy arising out of any one event, accident or occurrence, or any series of accidents or occurrences arising out of one event.

*Crew* – Any person (including the Master) employed or engaged to serve on board the Insured Vessel(s) under Articles of Agreement or other crew agreement or contract of service of or employment, including a substitute for such a person.

*Cumulative Injury* – Any injury which is suffered by any person and which is both not traceable solely to a single accident or series of accidents arising out of one event which occurred during that person's occupation, and has occurred by reason of or has been aggravated by a repetitive occupational activity.

*Date Recognition Problem* – Any failure or anticipated failure of or inability of any computer system, software, hardware, integrated circuit, microchip, operating system and/or any other electronic device or component correctly, unambiguously or completely to assign, exchange, interpret, manipulate, process, recognise, sequence or transfer any time, year, date or date-like code, data or information.

*Hague Rules* – The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading of Brussels, 25th August 1924.

*Hague-Visby Rules* – The International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924, as amended by the Protocol signed at Brussels on 23rd February 1968 and The Protocol signed at Brussels on 21st December 1979.

*Hamburg Rules* – The United Nations Convention on the Carriage of Goods by Sea signed at Hamburg on 31st March 1978.

*Hull and Machinery insurance* – Insurance in respect of the Insured Vessel(s)'s Hull and Machinery, increased value and excess liability.

*Insured Vessel* – The Vessel(s) which is/are named on the Policy of Insurance

*Insurer* – QBE Insurance (Europe) Limited, trading as British Marine, a company incorporated in the United Kingdom.

British Marine is a trading name of QBE Insurance (Europe) Limited and QBE Underwriting Limited. Both companies are part of QBE European Operations, a division of the QBE Insurance Group. QBE Insurance (Europe) Limited (No. 1761561) and QBE Underwriting Limited (No. 1035198) are authorised by the Prudential Re gulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority. Registered office, Plantation Place, 30 Fenchurch Street, London, EC3M 3BD. Registered in England and Wales.

*Joint Assured* – A Person insured under the Policy of Insurance and who is stated to be the Joint Assured in the Policy of Insurance.

*Net Loss* – Loss suffered after deductions are made in respect of costs and expenses which would have been incurred in the ordinary course of the trading or operation of the Insured Vessel(s) in respect of bunkers, stores, Crew wages, insurance and port charges.

*Occupational Disease* – Any disease caused or aggravated by the conditions in which a person works which is both caused by that person's occupational environment or a disease inducing agent or agents present in that occupational environment, and has resulted in that person becoming disabled, or requiring medical treatment or dying.

*Passenger* – A person on board the Insured Vessel(s) by virtue of their holding a ticket and making a payment of money for passage on board the Insured Vessel(s).

*Person* – A natural person, an incorporated or unincorporated body or a combination of both.

*Policy Period* – The period of insurance under this policy agreed by the Insurer and shown on the policy.

*Special Operations* – Any of the operations described at Clauses 38.1 to 38.13 of this policy.

*Stevedore* – Any person engaged to handle cargo of the Insured Vessel(s) including but not limited to linesman, longshoreman, crane or forklift drivers and tally clerks.

*Supernumerary* – Any person, not being a member of the Crew, whom the Assured directs to go on board the Insured Vessel(s) whilst, and only whilst such person is on board the Insured Vessel(s), including but not limited to a port captain, superintendent or person employed by or on behalf of the Assured to carry out repairs or maintenance on the Insured Vessel(s).

*Third Person* – Any person on board the Insured Vessel(s), with or without the approval or agreement of the Assured, not being a member of the Crew, Passenger, Supernumerary or Stevedore. A Third Person shall include but shall not be limited to a Surveyor, Inspector, Pilot, Customs Officer and a Supercargo nominated by any charterer of the Insured Vessel(s).

*Towcon* – The BIMCO standard form for International Ocean Towage for lump sum payment.

*Towhire* – The BIMCO standard form for International Ocean Towage for payment by way of daily hire.

*Vessel* – Any ship, boat, hovercraft or other description of vessel or structure (including any ship, boat, hovercraft or other vessel or structure under construction) used or intended to be used for any purpose whatsoever in navigation or otherwise on, under, over or in water or any part thereof or any proportion of the tonnage thereof or any share therein.

*Wreck* – Any vessel or craft which is disabled, and is stranded or has sunk, and which is not the subject of a contract for the provision of salvage services.

*Writing* – Text in English communicated by letter, notice, facsimile, or e-mail

65.2    Words importing the singular shall include the plural and vice versa.

65.3    Words importing the masculine shall include the feminine.

65.4    Words importing natural persons shall include individuals and any legal entity including corporations or partnerships.

65.5    The headings and sub-headings in this policy are for guidance only and are not to be taken into account in its construction or interpretation.

27

## SECTION C – EXCLUSIONS AND RESTRICTIONS AND LIMITATIONS

### 66. Hull and Machinery Insurances

There shall be no cover under this policy in respect of any liabilities, costs or expenses which would be recoverable under the Insured Vessel's Hull and Machinery insurance had the Vessel been insured for an insured value equivalent to or higher than the market value of the Insured Vessel(s) from time to time, under the terms of Lloyd's Marine Policy MAR (1.1.82 Edition) with the Institute Time Clauses 1.10.83 or, in the case of fishing vessels, Institute Fishing Vessel Clauses 20.7.87. There shall be no cover under this policy in respect of any deductible provided for under the terms of the Insured Vessel's Hull and Machinery insurance. Any claim under Clause 13.3 shall be limited to the excess over and above any claim which would have been recoverable under Hull and Machinery insurances on the terms set out at Clause 40.

### 67. Time Bar

There shall be no cover under this policy in respect of any claim unless:

67.1　the Assured gives notice of the event or casualty within 12 months of the assured having notice of or gaining knowledge of that event or casualty, or

67.2　requests reimbursement of any costs or expenses covered under the terms of this policy within 12 months of that cost or expense being incurred.

If such notice or request is not given within the period required the claim shall be treated as extinguished and any liability of the Insurer discharged.

### 68. Double Insurance

There shall be no cover under this policy in respect of any claim:

68.1　which falls within the scope of cover provided under any other insurance in respect of the Assured or the Insured Vessel(s), or

68.2　which would be so covered but for a provision in that other insurance which seeks or purports to exclude or limit liability on the basis of double insurance, and/or

68.3　in no circumstances shall the Insurer be liable for any liabilities, costs or expenses which relate to any franchise, deductible or deduction of a similar nature borne by the Assured under such other insurance.

### 69. Loss of or Damage to the Insured Vessel(s) and Equipment

There shall be no cover under this policy for:

69.1　loss of, damage to, or the cost of repairs to, the Insured Vessel(s), or any part of it, except where the Insured Vessel(s) is lost through confiscation covered under Clause 34.

69.2　loss of or damage to, or the cost of repairs to, any equipment or property owned or leased by the Assured or any party associated or affiliated to the Assured, on the Insured Vessel(s), including but not limited to bunkers.

69.3　loss of or damage to a Chartered Vessel or equipment or property owned by the Owners or Disponent Owner of such Chartered Vessel (except where the Assured is covered pursuant to Clause 37 of this policy).

except where such loss, damage or cost of repairs forms part of a claim which is recoverable under Clause 31 or Clause 32.

### 70. Commercial Losses

There shall be no cover under this policy for loss, suffered by the Assured, or nonpayment to the Assured, of:

70.1　freight or hire payable in respect of the Insured Vessel(s).

70.2　any sum by reason of the cancellation or termination of any charter, contract of carriage or other contract for the employment of the Insured Vessel(s).

70.3　demurrage or damages for detention or delay in respect of the Insured Vessel(s).

## 71. Financial Default and Fraud

There shall be no cover under this policy in respect of any liabilities, costs, expenses or losses which arise by reason of:

71.1  any debt or claim being unrecoverable from any party by reason of insolvency, financial default or impecuniosity of any party except:

71.1.1  in respect of a claim under Clause 8 where liabilities, costs and expenses cannot be recovered from a member of the Crew who goes absent without leave.

71.1.2  in respect of a claim under Clause 9 where costs and expenses cannot be recovered from a stowaway, a refugee or a person rescued at sea personally.

71.2  fraud perpetrated against the Assured or the misappropriation of monies belonging to the Assured or held on the Assured's behalf

## 72. Illegal and Reckless Trading

There shall be no cover under this policy in respect of any liabilities, costs or expenses which arise by reason of the use of the Insured Vessel(s), by or on behalf of the Assured, or with the knowledge, connivance, complicity or reckless disregard of the Assured for:

72.1  the carriage of contraband.

72.2  any illegal or unlawful trade.

72.3  any employment or trade which exposes the Insured Vessel(s) or the Assured to unreasonable or unnecessary risk or hazard.

## 73. Punitive or Exemplary Damages

There shall be no cover under this policy in respect of liability for or exposure to:

73.1  punitive or exemplary damages.

73.2  any amount payable under any judgment or award of any Court or tribunal in favour of any third party which is not compensatory in nature or which is not payable in respect of loss or damage sustained by that third party except as provided under Clause 23.

## 74. Radioactive, Contamination, Chemical, Biological, Bio-chemical and Electromagnetic Weapons Exclusion

This Clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

74.1  In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from:

74.1.1  ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

74.1.2  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

74.1.3  any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

29

74.1.4    the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

74.1.5    any chemical, biological, bio-chemical, or electromagnetic weapon.

## 75. War Risks

There shall be no cover under this policy for loss, damage, liability or expense caused by:

75.1    war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power or any act of terrorism.

75.2    capture, seizure, arrest, restraint or detainment (barratry and piracy excepted), and the consequences thereof or any attempt thereat.

75.3    mines, torpedoes bombs or other weapons of war, except as provided under Clause 39.

## 76. General Exclusions

For the avoidance of doubt, there shall be no cover in respect of liability, costs or expenses arising in connection with the following except in so far as specifically provided for under the Clauses referred to:

76.1    Pollution – except as provided under Clause 19 and Clause 20.

76.2    Salvage – except in respect of a claim for salvage which forms part of a claim for:

76.2.1    Special Compensation under Clause 21.

76.2.2    Third Party General Average Contributions under Clause 31.

76.2.3    Excess General Average payable by the Assured under Clause 32.

76.2.4    Life Salvage under Clause 11.

76.3    Towage – except as provided under Clause 29 and Clause 30.

76.4    Special Operations – except as provided for under Clause 38.

76.5    Passengers – except as provided under Clauses 1, 2, 3, 4, 7, 10, 11 and 18.

76.6    In any event liability to a Passenger shall be limited to the extent that the Assured would be liable had any contract with that Passenger provided the Assured with the maximum protection by way of the limitation or exclusion of liability permitted in accordance with the applicable law.

## 77. Electronic Date Recognition

The cover provided under this policy shall not be prejudiced by reason of a loss being caused or contributed to by a Date Recognition Problem provided always that this insurance will not cover any loss, damage, liability, or expense which has resulted from a want of due diligence by the Assured, Owners or Managers in respect of a Date Recognition Problem.

This insurance shall not cover:

77.1    any expense incurred in respect of testing for, discovering, rectifying, correcting, averting or minimizing any Date Recognition Problem.

77.2    the cost of reprogramming or correcting any computer hardware, microchip, software, operating system, code or data.

77.3    the cost of repairing or replacing any computer hardware, microchip software, operating system, code or data that has broken down or malfunctioned as a consequence of any Electronic Date Recognition Problem.

## 78. Indemnities and Contractual Liabilities

Any claim in respect of liabilities, costs, expenses, compensation or wages under this policy which arise by reason of an indemnity granted by the Assured or under the terms of a contract to which the Assured is party shall only be covered under this policy if the terms of such indemnity or contract have the prior approval in writing of the Insurer.

## 79. Cyber Attack Exclusion

79.1    Subject only to Clause 79.2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

79.2    Where this Clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, Clause 79.1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system, computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

## 80. Sanctions Limitation and Exclusion

There shall be no cover under this policy and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer or any member of the Insurer's group to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of any country.

There shall be no entitlement under any circumstances for the Assured to recover under this policy that part of any liability, cost or expense which is not recovered or recoverable by the Insurer from any reinsurer because of a shortfall in recovery or non-recovery from such reinsurer by reason of any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of any country.

The terms 'shortfall' or 'non-recovery' include, but are not limited to, any failure or delay in payment to the Insurer by such reinsurer, and/or payment to an account other than an account of, or for the benefit of, the Insurer, in compliance with a requirement imposed by any recognised authority of competent jurisdiction to enforce any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of any country.

## INDEX

| | | |
|---|---|---|
| **Accidental Death or Injury** | Cl. 1 | p. 2 |
| **Additional Cover** | Cl. 33, 34, 35, 36, 37, 38, 39 | p. 13 – 16 |
| – Confiscation | Cl. 34 | p. 13 |
| – Charterers liability | Cl. 37 | p. 15 |
| – Other legal costs | Cl. 35 | p. 13 |
| – Maritime Labour Convention Abandonment Indemnity Clause | Cl. 36 | p. 15 |
| – Special operations | Cl. 38 | p. 16 |
| – Stand-by Crew | Cl. 33 | p. 12 |
| – War risks | Cl. 39 | p. 17 |
| **Assignment of policy** | Cl. 46 | p. 20 |
| **Assured's own Property** | Cl. 53 | p. 21 |
| **Bills of Lading** | | |
| – Ad Valorem | Cl. 17.18 | p. 8 |
| – Delivery without production | Cl. 17.15 | p. 7 |
| – Incorrect statements | Cl. 17.17 | p. 7 – 8 |
| Breach of warranty | Cl. 40A | p. 18 |
| **Cargo** | | |
| – Combined transport | Cl. 17.12 | p. 7 |
| – Consequential loss | Cl. 17.10 | p. 7 |
| – Deviation | Cl. 17.19 | p. 8 |
| – Exclusions | Cl. 17.11 – 17.21 | p. 7 – 8 |
| – Failure to load | Cl. 17.13 | p. 7 |
| – Hague, Hague-Visby Rules | Cl. 17.11 | p. 7 |
| – Hamburg Rules | Cl. 17.11 | p. 7 |
| – High value, documentary | Cl. 17.21 | p. 8 |
| – Late arrival | Cl. 17.14 | p. 7 |
| – Liabilities | Cl. 17 | p. 6 – 8 |
| – Livestock | Cl. 17.20 | p. 8 |
| – Misdelivery | Cl. 17.15 | p. 7 |
| – Non-contractual discharge | Cl. 17.16 | p. 7 |

**Claims**

| | | |
|---|---|---|
| – Assistance with | Cl. 57 | p. 24 |
| – Claims handling | Cl. 56 | p. 23 |
| – Notification | Cl. 55 | p. 23 |
| – Payment | Cl. 64 | p. 26 |
| – Recoveries and subrogation | Cl. 59 | p. 24 |
| – Security | Cl. 58 | p. 24 |
| – Set-off | Cl. 47 | p. 20 |
| – Time bar | Cl. 67 | p. 29 |
| **Classification** | Cl. 41 | p. 18 |

**Collision**

| | | |
|---|---|---|
| – Liabilities | Cl. 13 | p. 5 |
| – Persons on other vessel | Cl. 1.6, Cl. 4.5 | p. 2, 3 |
| – Pollution | Cl. 20 | p. 10 |

**Costs and Expenses**

| | | |
|---|---|---|
| – Additional cover | Cl. 35 | p. 12 – 13 |
| – Inquiry expenses | Cl. 27 | p. 11 |
| – Investigative | Cl. 25 | p. 11 |
| – Legal Cl. 24 | | p. 11 |
| – Sue and labour | Cl. 26 | p. 11 |

**Crew**

| | | |
|---|---|---|
| – Accidental Death | Cl. 1.1 | p. 2 |
| – Casualty Indemnity | Cl. 7.1 | p. 3 |
| – Contracts | Cl. 60 | p. 24 |
| – Defaulting, liability for | Cl. 8 | p. 4 |
| – Illness | Cl. 2.1 | p. 2 |
| – Injury Cl. 1.1 | | p. 2 |
| – Medical & Funerary expenses | Cl. 3.1 | p. 2 |
| – Obligatory repatriation / Maritime Labour Convention | Cl. 5 | p. 3 |
| – Personal effects | Cl. 18.1 | p. 9 |
| – Repatriation | Cl. 4.1 | p. 3 |
| – Substitution | Cl. 6 | p. 3 |

| Damage to Vessels | Cl. 14 | p. 6 |
|---|---|---|
| **Definitions** | Cl. 65 | p. 26 – 28 |
| | | |
| **Disputes** | | |
| – Mediation | Cl. 63 | p. 24 – 25 |
| – Law & Jurisdiction | Cl. 63 | p. 24 – 25 |
| **Diversion** | Cl. 10 | p. 4 |
| **Duties of Assured** | Cl. 62 | p. 24 |
| **Fines and Penalties** | Cl. 23 | p. 10 |
| **Flag State** | Cl. 42 | p. 19 |
| | | |
| **General Average** | | |
| – Third party | Cl. 31 | p. 12 |
| – Excess payable by assured | Cl. 32 | p. 12 |
| **Hull Policies** | Cl. 66 | p. 29 |
| **Illness and Disease** | Cl. 2 | p. 2 |
| **Insurer's Interest** | Cl. 28 | p. 11 |
| **Insured Value** | Cl. 40 | p. 18 |
| **ISM Code** | Cl. 44 | p. 19 |
| **Joint Assureds** | Cl. 52 | p. 22 |
| **Law** | Cl. 63 | p. 25 |
| **Life Salvage** | Cl. 11 | p. 4 |
| | | |
| **Limitation** | | |
| – Generally | Cl. 61 | p. 24 |
| – Hague, Hague-Visby Hamburg Rules | Cl. 17.11 | p. 7 |

**Limitations on Cover**

| | | |
|---|---|---|
| – Commercial losses | Cl. 70 | p. 29 |
| – Cyber attack exclusion | Cl. 79 | p. 32 |
| – Double insurance | Cl. 68 | p. 29 |
| – Electronic date recognition | Cl. 77 | p. 31 |
| – Financial default and fraud | Cl. 71 | p. 30 |
| – Generally | Cl. 76 | p. 31 |
| – Hull policies | Cl. 66 | p. 29 |
| – Illegal or reckless trading | Cl. 72 | p. 30 |
| – Indemnities and contractual liabilities | Cl. 78 | p. 32 |
| – Loss or damage to insured vessel | Cl. 69 | p. 29 |
| – Punitive damages | Cl. 73 | p. 30 |
| – Radioactive, contamination, chemical, biological, – bio-chemical and electromagnetic weapons exclusion | Cl. 74 | p. 30 – 31 |
| – Sanctions exclusion | Cl. 80 | p. 32 |
| – Time bar | Cl. 67 | p. 29 |
| – War risks | Cl. 75 | p. 31 |
| **Medical & Funerary Expenses** | Cl. 3 | p. 2 |
| **Mitigation** | Cl. 45 | p. 19 |
| **Notices** | Cl. 54 | p. 23 |

**Passenger**

| | | |
|---|---|---|
| – Accidental death | Cl. 1.3 | p. 2 |
| – Compensation following a Casualty | Cl. 7.2 | p. 3 |
| – Illness | Cl. 2.3 | p. 2 |
| – Injury Cl. 1.3 | | p. 2 |
| – Medical & funerary expenses | Cl. 3.3 | p. 2 |
| – Personal effects | Cl. 18.3 | p. 8 |
| – Repatriation | Cl. 4.3 | p. 3 |
| **Policy Limit** | Cl. 64 | p. 25 |

**Pollution**

| | | |
|---|---|---|
| – Cover | Cl. 19 | p. 10 |
| – Indemnities to contractors | Cl. 22 | p. 10 |

35

**Premium**

| | | |
|---|---|---|
| – Joint assureds | Cl. 52 | p. 21 |
| – Payment | Cl. 50 | p. 21 |
| – Set-off | Cl. 47 | p. 20 |

**Property**

| | | |
|---|---|---|
| – Loss of, damage to | Cl. 15 | p. 6 |
| – Assureds own | Cl. 53 | p. 22 |
| **Quarantine** | Cl. 12 | p. 4 |

**Repatriation**

| | | |
|---|---|---|
| – Through illness | Cl. 4 | p. 2 |
| – Obligatory | Cl. 5 | p. 3 |
| **Salvors, special compensation** | Cl. 21 | p. 10 |
| **Security** | Cl. 58 | p. 23 |

**Stevedore**

| | | |
|---|---|---|
| – Accidental death | Cl. 1.4 | p. 2 |
| – Illness | Cl. 2.4 | p. 2 |
| – Injury Cl. 1.4 | | p. 2 |
| Stowaways, Refugees, Rescue | Cl. 9 | p. 4 |
| Subrogation | Cl. 59 | p. 24 |

**Supernumerary**

| | | |
|---|---|---|
| – Accidental death | Cl. 1.2 | p. 2 |
| – Illness | Cl. 2.2 | p. 2 |
| – Injury Cl. 1.2 | | p. 2 |
| – Medical & funerary expenses | Cl. 3.2 | p. 2 |
| – Personal effects | Cl. 18.2 | p. 8 |
| – Repatriation | Cl. 4.2 | p. 3 |
| **Survey** | Cl. 43 | p. 19 |

**Termination**

| | | |
|---|---|---|
| – Insurance, of | Cl. 48 | p. 20 |
| – Insured vessel, in respect of | Cl. 49 | p. 20 – 21 |
| – Joint Assureds | Cl. 52.3 | p. 21 |

**Third Person**

| | | |
|---|---|---|
| – Accidental death | Cl. 1.5 | p. 2 |
| – Illness | Cl. 2.5 | p. 2 |
| – Injury Cl. 1.5 | | p. 2 |
| – Personal effects | Cl. 18.4 | p. 8 |
| – Repatriation | Cl. 4.4 | p. 3 |

**Towage**

| | | |
|---|---|---|
| – By insured vessel | Cl. 30 | p. 12 |
| – Of insured vessel | Cl. 29 | p. 12 |
| **Waiver** | Cl. 51 | p. 22 |
| **War risks** | Cl. 39, Cl. 75 | p. 16, 30 |
| **Wreck removal** | Cl. 16 | p. 7 |



**QBE European Operations**

Plantation Place 30
Fenchurch Street
London EC3M 3BD

tel +44 (0)20 7105 5555
fax +44 (0)20 7105 4034

enquiries@uk.qbe.com
www.QBEeurope.com



8566/BRITISHMARINE/P&I/JAN2018

British Marine is a trading name of QBE Insurance (Europe) Limited and QBE Underwriting Limited. Both companies are part of QBE European Operations, a division of the QBE Insurance Group. QBE Insurance (Europe) Limited (No. 1761561) and QBE Underwriting Limited (No. 1035198) are authorised by the Prudential Regulation Authority and regulated by the Financial Conduct Authority and the Prudential Regulation Authority. Registered office, Plantation Place, 30 Fenchurch Street, London, EC3M 3BD. Registered in England and Wales.