<div align="center">

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

</div>

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br><div align="right">**Plaintiff**</div> | **CIVIL ACTION NO:  3:20-cv-00092-BAJ-EWD** |
| **VERSUS** | **DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON** |
| **REC MARINE LOGISTICS, LLC, ET AL**<br><div align="right">**Defendant**</div> | **MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

<div align="center">

**AMENDED AND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF**
**MOTION FOR NEW TRIAL AND/OR REMITTITUR**

</div>

**MAY IT PLEASE THE COURT:**

Defendants, REC Marine Logistics, LLC ("REC Marine) and Offshore Transport Services, LLC ("Offshore Transport"), respectfully request a new trial or remittitur for the reasons more fully stated below.

Rule 59(a) authorizes the Court to grant a new trial on all or part of the issues in an action in which there has been a jury trial, for any of the customary reasons that new trials are awarded. Pursuant to Rule 59(a), whether to grant a new trial is left to the sound discretion of the trial judge, and the court's authority is large.[1] The court may grant a new trial if it finds that the verdict is against the weight of the evidence, the damages awarded were excessive, the trial was unfair or prejudicial error was committed in the course of the trial.[2]

The trial court's power to grant a new trial on the basis of the court's firm belief that the verdict is clearly contrary to the weight of the evidence has, as Professor Charles Wright observes,

---

[1] *In re Omega Protein, Inc.,* 2007 WL 1974309, *2 (W.D.La. July 2, 2007) (*citing Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415. 433 (1996)).
[2] *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir.1985).

<div align="center">1</div>

"long been regarded as an integral part of trial by jury."[3] In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party. While the court is to respect the jury's collective wisdom and must not simply substitute its opinion for the jury's, "[i]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial."[4]

It is well settled that "the grant or denial of a motion for a new trial is within the sound discretion of the trial court."[5] In exercising this discretion when a motion for new trial is premised on excessive damages, the trial court may give the plaintiff the option of submitting to a new trial or of remitting a portion of the damages to a level the court considers justified.[6] The court "must not substitute [its] judgment of damages for that of the jury."[7] Rather the court's task is to determine the "*maximum* award which is reasonably supported by the evidence."[8]

The Fifth Circuit has held that when a jury verdict results from passion or prejudice, a new trial, not remittitur, is the proper remedy.[9] Damage awards which are merely excessive, or so large as to appear contrary to right reason, however, are subject to remittitur, not a new trial.[10] Thus, when a jury's award exceeds the bounds of any reasonable recovery, this court may suggest a remittitur. The size of the remittitur, says the Fifth Circuit, must be in accordance with the Fifth Circuit's "maximum recovery rule," which prescribes that the verdict will be reduced, if necessary,

---

[3] C. Wright, *Federal Courts* 633 (4th ed. 1983).

[4] *Id.* at 634.

[5] *Valley View Cattle Co. v. Iowa Beef Processors, Inc.,* 548 F.2d 1219, 1220 n. 2 (5th Cir.1977). *See also United States v. Horton,* 622 F.2d 144 (5th Cir.1980).

[6] Wright & Miller, Federal Practice and Procedure § 2815 (1973).

[7] *Bonura v. Sea Land Service, Inc.,* 505 F.2d 665, 669 (5th Cir.1974).

[8] *Id.*

[9] *See Wells v. Dallas Independent School District,* 793 F.2d 679, 683 (5th Cir.1986), citing *Westbrook v. General Tire and Rubber Company,* 754 F.2d 1233, 1241 (5th Cir.1985).

[10] *Id.*

to the maximum amount the jury could properly have awarded.[11] A verdict is excessive as a matter of law if shown to exceed "any rational appraisal or estimate of the damages that could be based upon the evidence before the jury."[12]

Here, Defendants respectfully aver that a new trial or remittitur of damages is warranted because:

1. The verdict for future medical expenses evinces passion and prejudice and is against the great weight of the evidence;
2. The awards for past wage loss, future loss of earning capacity, and maintenance are unsupported/excessive;
3. The verdict for past and future general damages evinces passion and prejudice and is against the great weight of the evidence;
4. The verdict for punitive damages evinces passion and prejudice and is against the great weight of the evidence;
5. The time limits imposed at trial were unfair and prejudiced Defendants;
6. The jury's percentage of fault attributed to the Plaintiff was not proper; and
7. Improper statements were made during plaintiff's closing argument.

In sum, the jury's verdict was against the great weight of the evidence, and Defendants respectfully aver that they are entitled to the relief requested herein.

## LITIGATION BACKGROUND

A jury trial was held from April 25, 2023 through May 1, 2023. At the close of the Plaintiff's case, and again at the close of all the evidence, REC Marine moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). The Court did not grant the original Motion for Judgement as a Matter of Law and submitted the matter to the jury, which returned a verdict in favor of the Plaintiff. The jury further assessed punitive damages of $1,500,000 against REC Marine with respect to Plaintiff's maintenance and cure claim.

---

[11] *Hansen v. Johns–Manville Products Corporation,* 734 F.2d 1036 (5th Cir.1984), quoting *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 784 (5th Cir.1983).

[12] *Brunnemann v. Terra, International, Inc.,* 975 F.2d 175, 177–78 (5th Cir.1992), citing *Kolb v. Goldring, Inc.,* 694 F.2d 869, 871 (1st Cir.1982) (quoting *Glazer v. Glazer,* 374 F.2d 390, 413 (5th Cir.), *cert. denied,* 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90 (1967)).

In coming to their decision, the jury was influenced by passion and therefore prejudiced in reaching their verdict. As will be discussed below, the jury completely disregarded this Court's jury instructions in awarding both maintenance and lost wages. They also awarded amounts for past and future medical expenses, past wage loss, and future loss of earning capacity that were well above what the evidence supported, and in some instances higher than even Plaintiff's own experts claimed was appropriate. The great weight of the evidence demonstrates that the jury's verdict was incorrect.

## **ANALYSIS**

**1.   The verdict for future medicals evinces passion and prejudice and is against the great weight of the evidence.**

Defendants challenge the jury verdict of $686,700.00 for future medical expenses as excessive and against the great weight of the evidence under Rule 59 because Griffin presented no support for such an award. The award of $686,700.00 for future medicals is not only unsupported, but also beyond the testimony of Plaintiff's own experts and beyond the amount Plaintiff requested in closing argument, which was $590,503.00.[13] The future medicals awarded are nearly $100,000 more than any supporting evidence submitted by the Plaintiff, as well as what the Plaintiff asked for.

Griffin relied on two experts to provide evidence as to his future medical expenses. Dr. Todd Cowen is a certified life care planner. Based on an expert report he prepared, Dr. Cowen testified as to certain medical treatment the Plaintiff may need for the remainder of his life, as well as the costs associated therewith. Dr. Cowen opined that the "total lifetime cost of [Mr. Griffin's] future medical care" is $576,745.38.[14] Dr. Randy Rice is an economist who was retained by the

---

[13]  See closing argument of Plaintiff's counsel, trial transcript for May 1, 2023, pg. 105, lns. 21-24

[14] Testimony of Dr. Todd Cowen, trial transcript for April 26, 2023, pg. 35; See also excerpt from the report of Dr. Todd Cowen, attached hereto as Exhibit 1. (Because Dr. Cowen was testifying based off the numbers in his written

Plaintiff. Dr. Rice testified that the present value of the medical treatment referenced by Dr. Cowen is $590,503.00. As a point of reference, the numbers of Dr. Cowen and Dr. Rice were significantly higher than those provided by the Defendants' life care planner and economist. Naturally, the Plaintiff relied on the numbers from his own experts and asked the jury to award him future medical expenses of $590,503.00.[15]

Given the above, Defendants submit that the highest amount the jury could conceivably have awarded for future medical expenses was $590,503.00. However, even assuming the jury credited only the Plaintiff's experts, to the exclusion of the Defendants' experts in the same field, an award of $590,503.00 would still have been beyond the great weight of the evidence. Several items of future medical treatment which Dr. Cowen and Dr. Rice included in their cost estimates are unsupported. For example, relying on Dr. Cowen, Dr. Rice included $6,398.00 for lumbar epidural steroid injections (ESI). But the jury found by a preponderance of the evidence that Griffin did not injure his back as a result of the personnel basket transfer incident onboard the M/V Dustin Danos.[16] Also included in the numbers from Plaintiff's experts are the costs of two separate cervical fusion surgeries. The first is identified at a cost of $115,378.00 and the second at $121,286.00.[17] Dr. Cowen stated that the first surgery refers to the anterior cervical discectomy and fusion at C6-7 "recommended" by Dr. David Ferachi in his report from December 29, 2020.[18] In actuality, on December 29, 2020 (the only time he ever saw Plaintiff) Dr. Ferachi stated Mr. Griffin was "a candidate for more physical therapy, cervical epidural steroid injections, or [cervical

---

report, which was simultaneously displayed for the jury, reference was often made simply to "this number" or "that number" without the actual number being stated and transcribed as part of the record. Defendant is attaching the excerpt from the report for sake of clarity."

[15] See closing argument of Plaintiff's counsel, trial transcript for May 1, 2023, pg. 105, lns. 21-24
[16] *See* R. Doc. 212, page 2, Interrogatory No. 3.
[17] See testimony of Dr. Randy Rice, trial transcript for April, 26, 2023, pg. 194
[18] See testimony of Dr. Todd Cowen, trial transcript for April 26, 2023, pg. 43

fusion surgery at C6-7].["19] At trial nearly two and a half years later, Dr. Ferachi confirmed that he offered Plaintiff the three above-referenced options. When asked whether Griffin ever informed him how he wished to proceed, Dr. Ferachi testified that he never saw him again.[20] Given that he had not returned to see him in so long, Dr. Ferachi further testified that as of the time of trial, he had no specific treatment recommendations for the Plaintiff.[21] Despite this, Dr. Rice included the cost of an initial cervical fusion at C6-7 ($115,378.00) in his estimate of the present value of Griffin's future medical expenses.

Incredibly, Dr. Rice's overall figure of $590,503.00 also included $121,286.00 for a second cervical fusion at an "adjacent level."[22] This was based on Dr. Cowen's opinion that, if and when plaintiff chooses to undergo a fusion at C6-7 (which is highly speculative), that he may need to undergo a second fusion at an adjacent level of the cervical spine "20 years down the road."[23] As noted above, plaintiff has not returned to or even contacted Dr. Ferachi in over two years since he mentioned that a first fusion at C6-7 was an option (among others). To conclude that Plaintiff will choose to undergo a fusion at C6-7, subsequently be recommended to undergo another fusion at an adjacent level "20 years down the road," and will choose to undergo the purported adjacent level fusion in 20 years piles speculation on top of speculation, straining all credibility. It should be noted that no treating physician has ever even alluded to the possibility of an adjacent-level fusion at some distant time in the future.

Dr. Rice, again relying on Dr. Cowen, also included costs associated with future medical treatment for plaintiff's left shoulder.  More particularly, he testified that it would cost $11,217.00

[19] See testimony of Dr. David Ferachi, trial transcript for April 25, 2023, pgs. 140-141
[20] See testimony of Dr. David Ferachi, trial transcript for April 25, 2023, pgs. 140-142
[21] See testimony of Dr. David Ferachi, trial transcript for April 25, 2023, pg. 142
[22] See Testimony of Dr. Randy Rice, trial transcript from April 26, 2023, pg. 194
[23] See testimony of Dr. Todd Cowen, trial transcript from April 26, 2023, pgs. 43-44

for some future shoulder arthroscopic decompression,[24] $978.00 for an orthopedic shoulder surgeon,[25] $1,213.00 for corticosteroid injections,[26] $685.00 for shoulder x-rays,[27] and $5,532.00 for an MRI of the shoulder.[28] The future costs for Griffin's shoulder therefore total $19,625.00 according to Dr. Rice's testimony. However, Plaintiff's counsel made a judicial admission in closing arguments that Mr. Griffin's shoulder was at maximum medical improvement, explicitly stating that "with respect to Mr. Griffin's shoulder . . . do you find the plaintiff has reached maximum medical cure? . . . for the shoulder yes."[29] Plaintiff may argue that, while any potential future shoulder surgery is not awardable as cure, it can still be recovered as part of damages under his negligence and unseaworthiness claims. However, such does not address the central issue— that any future shoulder treatment is based on pure speculation and conjecture. Again, the "recommendations" for future treatment of Griffin's left shoulder come from his life care planner, Dr. Cowen, not from any treating physician.[30] As with the purported adjacent level cervical fusion, Dr. Cowen indicated that a future shoulder surgery may be something that is needed "20 years down the road."[31] Not only has Plaintiff's treating shoulder orthopedist (Dr. Craig Greene) never mentioned additional shoulder surgery, his testimony strongly undercuts any contention that such would be warranted. Dr. Greene testified that Plaintiff has not been to see him since June of 2022.[32] As of that date, he was not recommending any form of surgery, and in fact noted that Griffin's

---

[24] See testimony of Dr. Rice, trial transcript for April 26, 2023, pg. 194
[25] Testimony of Dr. Rice, trial transcript for April 26, 2023, pg. 190
[26] *Id.*
[27] Testimony of Dr. Rice, trial transcript for April 26, 2023, pg. 191
[28] *Id.*
[29] See closing argument of Plaintiff's counsel, trial transcript for May 1, 2023, pg. 105-106
[30] See testimony of Dr. Todd Cowen, trial transcript for April 26, 2023, pg. 64
[31] *Id.*
[32] See testimony of Dr. Craig Greene, trial transcript for April 26, 2023, pg. 285

shoulder symptoms had improved.[33]  Considering Plaintiff has not returned to Dr. Greene in approximately a year, that improvement has apparently continued.

In the context of maritime cases, Federal District Courts within the U.S. Fifth Circuit have held that an award of future medical expenses must be based on more than speculation. *Matter of Lasala*, 2022 WL 17485951, *21 (E.D. La. 2022). This was also made clear in this Honorable Court's instruction to the jury regarding compensatory damages. (see page 43 of Jury Instructions). In discussing potential future medical treatment of an injured individual, the Court in *Lasala* stated:

> [A]lthough Dr. Celentano testified that Lasala's condition would likely require a removal of the plates and screws and a fusion of the joint at some point in the future, he offered no opinion as to the timeframe for any future medical procedure. There is no medical testimony to justify an award of future medical damages that would not be speculative. An award for damages cannot stand when the only evidence to support it is speculative or purely conjectural.

*Matter of Lasala*, 2022 WL 17485951,  at *21. Another court reached a similar result in a case which, like here, involved a life care plan developed by Dr. Todd Cowen. *Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co. Ltd.,* 324 F.Supp.3d 808, 830-33 (E.D. La. 2018). In *Associated Terminals*, the court stated "[A]s Ford has not established that it is more likely than not that he will pursue any potential suggested surgery in the future, and as the life care plan developed by Dr. Cowen is premised on Ford choosing to pursue such surgery, the Court finds that the life care plan does not provide a credible estimate as to Ford's future medical expenses." *Associated Terminals*, 324 F.Supp.3d at 833.

Defendants submit that when the speculative and completely unrelated (in the case of lumbar injections) medical expenses are removed, the most the jury could have awarded in future medical expenses would have been $443,194.00, even under the economic methodology used by

---

[33] See testimony of Dr. Craig Greene, trial transcript for April 26, 2023, pg. 285-286

Dr. Rice. However, even if this Honorable Court were to disagree as to a reduction of some or all of the above-referenced speculative/unrelated expenses, that would still result in at most $590,503.00 in future medical expenses. There is simply no evidence, either from the Defendant or the Plaintiff which would support a greater award. And nevertheless, the jury somehow awarded future medical expenses of $686,700.00. This is clearly against the great weight of the evidence and should not be allowed to stand. It is difficult to think that such a clearly erroneous award could have resulted from something other than passion or prejudice.

2.  **The awards for past wage loss, future loss of earning capacity, and maintenance are unsupported/excessive**

"Past lost wages are usually measured by the actual wage losses incurred by the plaintiff from the date of the accident to the date of trial." *Associated Terminals, 324 F. Supp. 3d 808, 823 (E.D. La. 2018) (quoting Baham v. Nabors Drilling USA, LP, 721 F. Supp. 2d 499, 516 (W.D. La. 2010)).* "The sum is determined by calculating the amount of money the plaintiff would have earned had he continued at his pre-accident employment, less any wages he earned since the accident." *Id.* (quoting *Baham,* 721 F. Supp. 2d at 516). "In the maritime context, an award for lost wages must be based on after-tax earnings." *Associated Terminals, 324 F. Supp. 3d at 824 (quoting Ledet v. Smith Marine Towing Corp.,* 2011 WL 1303918, at *12 (E.D. La. Apr. 4, 2011). "[A]n award for damages cannot stand when the evidence to support it is speculative or purely conjectural." *Masinter v. Tenneco Oil Co.,* 929 F.2d 191, 194 (5th Cir. 1991).

Defendants herein challenge the jury verdict of $150,00.00 for past wage loss and $500,000.00 for future loss of earning capacity as excessive and against the great weight of the evidence under Rule 59. Plaintiff's own economist, Dr. Rice, testified that his past after-tax wage

loss was $144,995.00.[34] Furthermore, this was the amount requested in closing argument, with Plaintiff's counsel stating, "Mr. Griffin has not been able to work since the incident. His lost wages are $144,995."[35] The jury's award for past wage loss is $5,005.00 more than what any evidence supported.

As with past lost wages, the award for future loss of earning capacity is contrary to the evidence. Dr. Rice testified that Griffin's future loss of earning capacity is $321,589.00, and yet the jury awarded $500,000.00.[36] This is $178,411.00 more than what was submitted into evidence. It appears the jury may have accidentally taken Dr. Rice's combined number for past and future wage loss ($466,584.00)[37] and awarded an approximation of that as only future loss. Even if that was what the jury mistakenly did, they still overshot future loss by approximately $44,000.

Additionally, the jury awarded Griffin $10,000.00 in maintenance benefits.[38] However, the jury instructions specifically stated, "If you find that plaintiff is entitled to an award of damages under either the Jones Act or unseaworthiness claims and if you award him either lost wages or medical expenses then you may not award him maintenance and cure for that same period."[39] Here, Griffin was awarded lost wages and medical expenses, and the jury still awarded another $10,000.00 in maintenance. This is contrary to the jury instructions and must be deducted from the verdict.

The jury's award of maintenance was also unsupported for another reason. Maintenance is a daily stipend to cover a seaman's living expenses during a period of convalescence. A seaman's

---

[34] Testimony of Dr. Randy Rice, trial transcript for April 26, 2023, pg. 185
[35] Closing argument of Plaintiff's counsel, trial transcript for May 1, 2023, pg. 104
[36] Closing argument of Plaintiff's counsel, trial transcript for May 1, 2023, pg. 105
[37] Testimony of Dr. Randy Rice, trial transcript for April 26, 2023, pg. 188
[38] R. Doc. 212, p.7, *See* interrogatory No. 11.
[39] Jury Instructions 92:22-25 and 93:1-2.

burden of production to establish the value of their maintenance is light, and even their own testimony as to the reasonable cost of room and board in the community where they live is sufficient to support an award. *Yelverton v. Mobile Laboratories, Inc.*, 782 F.2d 555, 558 (5th Cir. 1986). However, this "do[es] not dispense with the requirement that a plaintiff-seaman provide the trier of fact with an evidentiary basis upon which to determine a justifiable amount." *Yelverton*, 782 F.2d at 558. Here, plaintiff provided no evidence, not even his own testimony, as to the cost of his living expenses. As such, there was not evidentiary basis for the jury to award maintenance.

In sum, at least $183,416.00 for past and future wage loss should be reduced from the verdict. Additionally, $10,000.00 for maintenance should likewise be deducted.

**3. The verdict for past and future general damages evinces passion and prejudice and is against the great weight of the evidence**

Defendant challenges the jury verdict of $100,00.00 for past general damages and $250,000.00 for future general damages as excessive and against the great weight of the evidence under Rule 59 because Griffin presented virtually no evidence to support such awards.

With regard to past and future general damages, the meager testimony of Griffin concerning past and future physical impairment, disfigurement, mental anguish and loss of enjoyment of life he allegedly suffered was insufficient to support the jury's award. A plaintiff must present evidence of the character and severity of emotional injury to recover greater than nominal damages.[40] Courts in this circuit have focused on two elements for the plaintiff to recover emotional distress damages. First, the plaintiff must provide specific evidence of the nature and

---

[40] *Cary v. Piphus*, 435 U.S. 247 (1978); *Giles v. General Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001); *Brady v. Fort Bend County*, 145 F.3d 691, 718 (5th Cir. 1998).

extent of the harm.[41] Second, the plaintiff must make more than vague and conclusory allegations to support his claims.[42]

The Fifth Circuit has repeatedly emphasized that "hurt feelings, anger and frustration are part of life," and are not the types of emotional harm that could support an award of damages.[43] "The plaintiff must present 'specific discernable injury to [her] emotional state.'"[44] Although Griffin's testimony, standing alone, may be sufficient to prove mental damages, his uncorroborated testimony will only be sufficient if it is "particularized and extensive" enough to meet the specificity requirement outlined by the Fifth Circuit.[45] "Neither conclusory statements that the plaintiff suffered distress . . . will support an award of compensatory damages."[46]

Here, physical impairment, was only addressed by Dr. David Ferachi, who only examined Griffin once on December 29, 2020, and simply noted that _if_ Griffin is not properly treated, his injuries could result in permanent physical limitations, not that they would or that it currently applies to Griffin.[47] Dr. Ferachi later stated that Griffin will continue to have physical limitations, but stated he was not able to "speculate on what specific limitations they would be" because a functional capacity exam would need to be performed to "put permanent restrictions on patients."[48] Vocational expert Joyce Beckwith further confirmed that "there are no specific physical limitations that have been put on Mr. Griffin by any doctor."[49] Finally, like Dr. Ferachi, Dr. Craig Greene

---

[41] *Giles*, 245 F.3d at 488.
[42] *Id*.
[43] *Id*. at 940.
[44] *Brady*, 145 F.3d at 718.
[45] *Hitt v. Connell*, 301 F.3d 240, 250- 251 (5th Cir. 2002).
[46] *Id*., see also, *Brady*, 145 F.3d at 718
[47] See testimony of Dr. David Ferachi, trial transcript for April 25, 2023, pg. 104
[48] See See testimony of Dr. David Ferachi, trial transcript for April 25, 2023, pg. 107
[49] See testimony of Joyce Beckwith, trial transcript for April 26, 2023, pgs. 155-156

testified that Griffin's injuries could result in permanent physical limitations _if_ not properly treated but did not confirm that Griffin suffered from permanent physical limitations now.[50]

With regard to disfigurement, none of the plaintiff's experts testified that Griffin was disfigured or would suffer from disfigurement in the future.[51] The only three times mental anguish was mentioned during Griffin's case in chief was during the opening,[52] when plaintiff's counsel referenced a previous lawsuit filed by Plaintiff where mental anguish was pled,[53] and during the closing.[54] Finally, with regard to loss of enjoyment of life, Ms. Beckwith testified that Griffin enjoyed boxing before the accident[55] but it was confirmed that Griffin quit boxing in 1988 or 1989.[56] Beckwith also testified that Griffin stated he enjoyed horseback riding and riding four wheelers, but Beckwith confirmed, just like with boxing, she did not inquire into the time frame that Griffin participated in these activities and if this accident prevented him from continuing those activities[57]. Griffin briefly and generally states he cannot do certain activities with his children, but they are all conclusory statements.[58]

Additionally and further to this point, none of Griffin's children live with him and have never lived with him.[59] In fact, during his deposition, Griffin confirmed he had not seen his oldest daughter, an adult, in about 2 and a half years, his triplets live in Ville Platte and he cannot see them because he is not paying his child support, and his youngest daughter lives in lake Charles

---

[50] See testimony of Dr. Craig Greene, trial transcript for April 26, 2023, pgs. 249
[51] *See generally* trial transcripts.
[52] See opening statements, trial transcript for April 25, 2023, pg. 73
[53] See reference by Plaintiff's counsel, trial transcript for April 27, 2023, pg. 201
[54] See closing argument of Plaintiff's counsel, trial transcript for May 1, 2023, pg.101 and pgs. 103-104
[55] See testimony of Joyce Beckwith, trial transcript for April 26, 2023, pg. 139
[56] See testimony of Joyce Beckwith, trial transcript for April 26, 2023, pgs. 149-150
[57] See testimony of Joyce Beckwith, trial transcript for April 26, 2023, pgs. 150-151
[58] See testimony of the Plaintiff, trial transcript for April 27, 2023, pgs. 168-169
[59] See Plaintiff's deposition transcript, attached hereto as Exhibit 2, pgs. 58-59

with her mother.[60] Had defense counsel been allotted more than 45 minutes to cross examine Griffin, counsel would have been able to cover this information.

In sum, Griffin's evidence of physical impairment, disfigurement, mental anguish and loss of enjoyment of life as well as emotional distress was insufficient to support the jury's award. There was neither corroborating evidence nor did Griffin offer any medical evidence of damages cause by his alleged distress, physical impairment, disfigurement and loss of enjoyment of life.[61] Griffin presented no medical evidence and sought no help from any mental health professional. His complaint of difficulties in playing with and spending time with his children is questionable in light of his admission that he does not have custody of his children and that none of his children live in the same city as him.

4.  **The Verdict for Punitive Damages is against the great weight of the evidence**

As the Court is aware, REC Marine has simultaneously filed a Motion for Judgment as a Matter of Law, which in part argues that punitive damages on Plaintiff's maintenance and cure claim were not warranted.[62] REC Marine incorporates the arguments set forth in that Motion, particularly those portions addressing why REC Marine was not willful, wanton, or arbitrary in partly denying Griffin maintenance and cure benefits. However, should the Court decide not to vacate the punitive damages award entirely, REC Marine submits that such should be reduced as the award of $1,500,000.00 was clearly excessive. Counsel for REC Marine has conducted extensive research for cases awarding punitive damages for wrongful denial or termination of maintenance and cure. Defense counsel has searched for all cases in Louisiana (both state and

---

[60] *Id.*
[61] *Patterson*, 90 F.3d at 939.
[62] See R. Docs. 228 and 251

federal court), as well as all federal courts within the jurisdiction of the U.S. Court of Appeals for the Fifth Circuit.

The punitive damages awarded to Mr. Griffin are vastly higher than in any case identified through defense counsel's research. The next highest award identified was for $500,000. *Jordan v. Intercontinental Bultank Corporation,* 621 So.2d 1141 (La. App. 1 Cir. 1993)(A dissent noted the majority failed to cite any punitive damage awards for failure to pay maintenance and cure that even approached $500,000). Other punitive damage awards (in descending order) include the following: *Stermer v. Archer-Daniels-Midland Co.*, 186 So.3d 319 (La. App. 3 Cir. 2016) (affirming award in a bench trial of $300,000); *Reed v. Seacoast Products, Inc.*, 458 So.2d 971 (La. App. 3 Cir. 1984) (awarding $175,000); *Hodges v. Keystone Shipping Co.*, 578 F.Supp. 620 (S.D. Tex. 1983) (awarding $100,000); *Porche v. Maritime Overseas Corp.*, 550 So.2d 278 (La. App. 4 Cir. 1989) (awarding $100,000); *Weeks Marine v. Watson*, 190 F.Supp.3d 588 (E.D. La. 2016) (bench trial in which Judge Barbier awarded $100,000); *Meche v. Key Energy Services, LLC,* 2013 WL 5913757 (W.D. La. 2013) (awarding combined punitive damages and attorneys' fees of $43,118.86)(reversed on other grounds); *Simmons v. Hope Contractors, Inc.*, 517 So.2d 333 (La. App. 1 Cir. 1987) (awarding $25,000); *Jefferson v. Baywater Drilling, LLC*, 2015 WL 365526, *6 (E.D. La. 2015) (awarding $10,000); *Nelton v. Cenac Towing, LLC*, 2011 WL 289040, *22-23 (E.D. La. 2011) (awarding $5,000). The cases above also involve circumstances much more egregious with respect to denial of maintenance and cure than are present in the instant case. There simply is no reasoned basis for the jury to have awarded Mr. Griffin punitive damages of $1,500,000.00.

REC Marine notes that the punitive damages also exceed that allowed under the U.S. Supreme Court's decision in *Exxon Shipping Co. v. Baker,* 554 U.S. 471 (2008). In *Exxon*, which

was decided under the general maritime law, the Court established a 1:1 ratio of compensatory to punitive damages. *Exxon*, 554 U.S. 471, at 513-15. In the instant case, Griffin was awarded overall compensatory damages of $1,706,700 and punitive damages against REC Marine of $1,500,000.[63] At first glance, this may appear not to violate the outer limit established in *Exxon*. However, such is not the case. As the Court is aware, punitive damages are only available to Plaintiff with respect to his maintenance and cure claim. Pursuant to U.S. Supreme Court precedent, a seaman such as Mr. Griffin cannot recover punitive damages on claims for negligence or unseaworthiness. *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990); *The Dutra Group v. Batterton*, 139 S.Ct. 2275, 204 L.Ed.2d 692 (2019). Unlike in *Exxon*, where punitive damages were legally allowable for the entirety of the claim, punitive damages in a case such as the present are only available with respect to the maintenance and cure portion. The jury awarded Plaintiff maintenance of $10,000.[64] No cure was awarded, although Plaintiff was awarded past and future medical expenses totaling $696,700.00.[65] Assuming the Court were to designate the total for past and future medical expenses as cure (which, for the reasons discussed above would be improper), the punitive damages would still well exceed the compensatory to punitive ratio established in *Exxon*. Moreover, even if the Court ignored the distinction above entirely, the Judgment in this case assesses REC Marine (the only entity which could be held liable for punitive damages as plaintiff's employer) with $1,194,690.00 of the overall compensatory damages award, which alone would make the punitive damage award of $1,500,000.00 against REC Marine violative of *Exxon*.

---

[63] R. Doc. 215, pg. 2
[64] R. Doc. 215, pg. 2
[65] *Id.*

**5.   The time limits imposed were unfair and prejudicial.**

Defendants respectfully aver that the time limits imposed at trial were unfair and prejudicial. They were imposed without sufficient notice to the parties and after the plaintiff was allowed to examine 7 out his 10 witnesses. A trial court should not impose trial time limits without sufficient warning for the parties to plan accordingly.[66]   Absent unexpected developments, as discussed below, a trial court should not change the agreed-upon time limits once trial is underway.[67]  Nor should additional time be granted unequally to the parties.[68]

This matter was set four times for a five day jury trial before finally commencing on March 25, 2023.[69] On March 3, 2023, the parties participated in a telephone conference where the jury trial, scheduled for March 6, 2023, was continued to March 24, 2023 through March 27, 2023.[70] The jury trial was scheduled to last at least five days.[71] A little over one month before the start of the trial, on March 22, 2023, the Court reset the jury trial to March 25, 2023 through March 28, 2023, eliminating one day of trial.[72]

On the second day of trial, the Court informed the parties that there would be "further instructions for all counsel at the conclusion of today's testimony about how we will proceed tomorrow and Friday and the allocation of time that will be allotted to each witness going forward."[73]   At this point, the Plaintiff was on his seventh witness with only two witnesses

---

[66] *Cf. Hildebrand,* 928 F.Supp. at 849 ("changes in allotments ... must only be made with notice and upon a determination of need").

[67] *Duquesne Light Co.,* 66 F.3d at 610 ("[A]n allocation of trial time relied upon by the parties should not be taken away easily and without warning.").

[68] *See General Signal Corp.,* 66 F.3d at 1508.

[69] See R. Doc. 41 ("A 5-day jury trial is scheduled for 8:30 a.m. beginning on 12/13/2021"), 70 ("Jury Trial set for 3/21/2022 through 3/25/2022 at 08:30 AM"), 141 ("The five-day Jury Trial is hereby set for 3/6/2023 - 3/10/2023 at 08:30 AM"), and 171 ("The five-day jury trial of the above matter is hereby CONTINUED to April 24, 2023").

[70] R. Docs. 168 – 171.

[71] R. Doc. 171.

[72] R. Doc. 173.

[73] See trial transcript for April 26, 2023, pg. 322

remaining as well as the continuation of William Badeaux's testimony.[74] On the third day of trial, the Court officially imposed thirty-minute time limits on all witnesses moving forward. The Defendants were prejudiced due to the short notice with which to recraft their trial strategy and due to the fact that they were allotted less time to present their case in chief and were limited in their cross examination of at least 3 of plaintiff's witnesses. Most importantly, the Defendants were prejudiced during cross examination of the Plaintiff. A significant amount of time was taken up by Plaintiff's and his counsel's hesitancy to allow testimony concerning two prior car accidents filed by Mr. Griffin wherein he sustained similar injuries to those alleged in this case. The delay caused by this, as well as the very limited time available to cross-exam plaintiff from the start, hindered Defendants in developing testimony favorable to their defense. Specifically, Defendants were unable to question Griffin regarding: (1) the witness statement he provided to an adjuster where he denied injuring anything other than his shoulder in the personnel basket incident; (2) why his trial testimony that he was not injured in the 2013 car accident contradicted his prior statement to the adjuster that he was injured; (3) his testimony that the reason he is unable to do certain things with his children is because of his injuries, which would have been impeached by his sworn deposition; (4) the significant discrepancies between Griffin and William Badeaux about where the personnel basket incident occurred; (5) the amount of money REC Marine paid Plaintiff in advances while he was recovering from left shoulder surgery.

Because unexpected developments could render a previously reasonable time limit inadequate, "[g]enerally, courts look upon rigid hour limits for trials with disfavor."[75] "[A]ny pre-trial limitations must be flexibly administered during trial to prevent any sacrifice of justice to

---

[74] Badeaux's testimony began on Monday, March 25, 2023, and was finished on Wednesday, March 27, 2023, after the time limits were imposed. The Plaintiff was afforded an additional thirty minutes on Wednesday on top of the time he spent questioning Badeaux on Monday.

[75] *General Signal Corp.,* 66 F.3d at 1508.

efficiency."[76] Here, the limits during the Defendants' case in chief were prejudicial. With very little notice, the Defendants were required to revise their trial strategy to comply with the limits whereas the plaintiff was only required to revise his strategy with respect to his last two witnesses.

**6.   The jury's percentage of fault attributed to the plaintiff was not proper.**

There was conflicting testimony as to whether Griffin was ever struck by the personnel basket. William Badeaux testified, "It didn't hit him. It threw him into the conex box. He grabbed the personnel basket, which the personnel basket hit the conex box which rolled and threw him into the conex box."[77] Marine Operations Expert Marc Fazioli confirmed during his testimony that it was not appropriate for Griffin to grab the basket and that the basket should have only been handled with a tag line.[78] It was further confirmed through Mr. Fazioli that Griffin was trained in how to properly handle a personnel basket and that he knew not to grab the basket with his hands.[79] The evidence clearly established that Griffin did not conduct the basket transfer by properly maintaining the tag line rather than placing himself in danger by grabbing the basket. The accident simply would not have happened if the Plaintiff hadn't attempted to physically grab the basket, and the jury's apportionment of only 10% fault to Mr. Griffin was wholly improper.

**7.   Improper statements made during plaintiff's closing argument**

Defendants contend that the plaintiff's closing argument to the jury was prejudicial in that the argument improperly mischaracterized witness testimony, contained inflammatory remarks, and made improper inferences and statements. Generally, closing argument must go far beyond the bounds of accepted advocacy before a new trial will be granted.[80] "A district court may order

---

[76] *Hildebrand,* 928 F.Supp. at 849. *See also Applera Corp.,* 389 F.Supp.2d at 348 ("Where, as here, ... Defendant were granted some additional time exceeding the 20 hour limit, the Court cannot conclude that the clock trial was unfair.").
[77] See testimony of William Badeaux, trial transcript for April 27, 2023, pg. 49
[78] See testimony of Marc Fazioli, trial transcript for April 28, 2023, pgs. 62-64
[79] See testimony of Marc Fazioli, trial transcript for April 28, 2023, pgs. 64-65
[80] *Edwards v. Sears Roebuck and Company*, 512 F.2d 276, 284 (5th Cir.1975).

a new trial if improper closing argument irreparably prejudices a jury verdict."[81] The propriety of Griffin's closing argument must be reviewed "within the context of the court's ruling on objections, the jury charge, and any corrective measures applied by the trial court."[82]

      Plaintiff made several inflammatory and improper statements in his closing that when taken together caused irreparable prejudice in this matter. For example, plaintiff's counsel stated:

1. "Captain Haglund doesn't document the JSA because they would still be at the rig right now. Do you remember him saying that? Getting real angry."[83]

2. "You've heard that he can't do things with his kids anymore. He just kind of – he can't ride horses with them, can't go on four-wheelers with them, can't teach them to swim, basic, basic things that he wants to be able to do."[84]

3. "Do you remember the captain and kind of how angry he was at points in time in his deposition?"[85]

4. "Essentially the Defendants want you to hold Mr. Griffin responsible for trying to protect somebody –not somebody, three people – trying to make sure that those three people don't get hurt."[86]

5. "How many more workers have got to get injured like Mr. Griffin before they change their ways? How many more people have got to get hurt before they actually do investigations to try – a better design to try to find the truth? These investigations are not designed to find the truth. They were designed so that they could put their head in the sand and deny."[87]

---

[81] *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.,* 848 F.2d 613, 619 (5th Cir.1988).
[82] *Westbrook v. General Tire & Rubber Co.,* 754 F.2d 1233, 1238 (5th Cir.1985); *Colburn v. Bunge Towing, Inc.,* 883 F.2d 372, 375 (5th Cir. 1989).
[83] See closing argument of Plaintiff's counsel, trial transcript of May 1, 2023, pg. 98
[84] See closing argument of Plaintiff's counsel, trial transcript of May 1, 2023, pg. 104. In light of fact that Mr. Griffin neither has custody of his children nor lives in the same city as any of them.
[85] See closing argument of Plaintiff's counsel, trial transcript of May 1, 2023, pg. 142
[86] See closing argument of Plaintiff's counsel, trial transcript of May 1, 2023, pg. 143
[87] See closing argument of Plaintiff's counsel, trial transcript of May 1, 2023, pg. 147

6. ". . . but nothing has got them to change their ways. They will continue doing this. They will continue hurting people. And the only way it stops is with you."[88]

Next, plaintiff's counsel consistently made reference to a requirement that the Defendant should have reported the man basket incident in his closing.[89] However, the Court explicitly, stated during that trial that "I want to be very clear: he cannot offer evidence that this company consistently violates those standards, unless he has evidence to prove it."[90] This directly applies to the plaintiff's reference that the Defendant will "continue doing this. They will continue hurting people. And the only way it stops is with you."[91] Plaintiff completely disregarded the Court's instructions regarding the alleged violation of a coast guard policy without any evidence of such.

With regard to Plaintiff's denial of alleging permanent injuries in a prior lawsuit, during closing, Plaintiff's counsel stated that "He has a lawyer at the time named Bo West, and Bo West files a lawsuit for him, and he puts in there he has permanent injuries to his neck, back, and low back. Mr. Griffin had never seen that before it was filed. He certainly did not have permanent injuries to his neck, back and low back.[92] The Court was specifically concerned with the fact that Griffin denied suffering permanent injuries that resulted in the filing of a lawsuit.[93] The Court also noted that the plaintiff has to sign a certification when filing a lawsuit and that it is not unreasonable to assume Griffin would have known about the filing of the lawsuit and would remember doctor's visits.[94] Plaintiff's assertion in his closing that Griffin had never seen the lawsuit and did not suffer permanent injuries is prejudicial and goes against the weight of the evidence and against Griffin's judicial admission in a lawsuit that he was permanently injured.

---

[88] See closing argument of Plaintiff's counsel, trial transcript of May 1, 2023, pg. 149
[89] See closing argument of Plaintiff's counsel, trial transcript of May 1, 2023, pg. 86 and 101
[90] See trial transcript for April 26, 2023, pgs. 322-326
[91] See closing argument of Plaintiff's counsel, trial transcript of May 1, 2023, pg. 149
[92] See closing argument of Plaintiff's counsel, trial transcript of May 1, 2023, pg. 96
[93] See trial transcript for April 27, 2023, pgs. 210-214
[94] See trial transcript for April 27, 2023, pgs. 205-206

## CONCLUSION

Under the Federal Rules, a district court should grant a new trial when the totality of the evidence demonstrates that the jury's verdict was against the great weight of the evidence. In this case, the testimonial and documentary evidence overwhelmingly demonstrates that the jury's verdict regarding future medicals, past wage loss and future loss of earning capacity, past and future general damages, time limits was against the great weight of the evidence. Further, the improper statements made during plaintiff's closing argument evinced passion and prejudice.

Respectfully submitted,

*/s/ Kyle A. Khoury*
Salvador J. Pusateri, T.A. (#21036)
Kyle A. Khoury (#33216)
Kristian B. Dobard (#36997)
**PUSATERI, JOHNSTON, GUILLOT**
**& GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
Kristian.Dobard@pjgglaw.com
**ATTORNEYS FOR REC MARINE**
**LOGISTICS, LLC AND OFFSHORE**
**TRANSPORT SERVICES, LLC**