## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>                    **Plaintiff** | **CIVIL ACTION NO:   3:20-cv-00092-BAJ-EWD** |
| **VERSUS** | **DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON** |
| **REC MARINE LOGISTICS, LLC, ET AL**<br>                    **Defendants** | **MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

### OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE RELATED TO THE VALUE OF THE M/V DUSTIN DANOS

**MAY IT PLEASE THE COURT:**

The Plaintiff, McArthur Griffin, has filed a Motion to Exclude Evidence Related to the Value of the M/V Dustin Danos (hereinafter sometimes referred to as the "Motion"). REC Marine Logistics, LLC ("REC Marine") and Offshore Transport Services, LLC ("Offshore Transport"), hereby file this Opposition to Plaintiff's Motion, and request that the Motion be denied for the reasons below.

### I.    PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

This case was originally filed by McArthur Griffin in state court in April of 2019. On August 9, 2019, Griffin served Interrogatories and Requests for Production of Documents on REC Marine.[1] On January 9, 2020, he served Interrogatories and Requests for Production of Documents on Offshore Transport.[2] On February 17, 2020, Plaintiff's case was removed to this Court by QBE Insurance (Europe) Limited. REC Marine and Offshore Transport filed an Answer

---

[1] See Interrogatories and Requests for Production of Documents to REC Marine, attached hereto as Exhibit 1.
[2] See Interrogatories and Requests for Production of Documents to Offshore Transport, attached hereto as Exhibit 2. As the Court will note, these discovery requests were jointly propounded to Offshore Transport, as well as to other former defendants who were dismissed from the case on summary judgment.

on April 29, 2020.[3] Included therein, Defendants asserted an affirmative defense based on the Limitation of Liability Act, specifically stating as follows:

> "While at all times denying any and all liability, should any Defendant or combination thereof, be found liable, then the defendant would show that such acts for which the defendant(s) are held liable were not within the privity or knowledge of the owners and/or the operators of the M/V Dustin Danos. Therefore, Offshore Transport Services and/or REC are entitled to limit its/their liability to its/their interest in the M/V Dustin Danos, at the end of her voyage, plus the freight then pending, pursuant to 46 U.S.C. § 183 et seq.[4]

On May 4, 2020, Plaintiff filed a Motion seeking to compel responses to discovery requests propounded in state court, and further sought sanctions against prior counsel for Defendants for allegedly violating a discovery order issued by the state district court judge to whom the case was assigned before it was removed.[5] In September of 2020, Defendants asked current counsel to replace their prior attorney, Mr. Fred Salley. On October 6, 2020, the Court issued an Order substituting current defense counsel in place of Mr. Salley.

Within thirty (30) days of being enrolled, current defense counsel fully responded to Interrogatories and Requests for Production of Documents on behalf of REC Marine and Offshore Transport (as well as two other defendants who were later dismissed on summary judgment). Relevant here, Request for Production No. 3 to Offshore Transport asked for "all documents reflecting the value of the M/V DUSTIN DANOS."[6] Request for Production No. 4 asked for "all documents reflecting surveys taken of the M/V DUSTIN DANOS.[7] In accordance with these discovery requests, defense counsel asked their client for any surveys of the M/V DUSTIN DANOS

---

[3] R. Doc. 14.
[4] R. Doc. 14, pg. 4, seventh defense.
[5] R. Doc. 15.
[6] Exhibit 2, pg. 10.
[7] *Id.*

or any other documents evidencing the value of the vessel. The client responded with the documentation they had—a certificate of insurance reflecting the vessel's insured value. Defense counsel produced the certificate in response to Request for Production No. 3. No surveys were located for the M/V DUSTIN DANOS.

It is worth noting that defense counsel has represented the Defendants for quite a few years, and counsel recalls even searching other case files to see if any valuation surveys could be located. None were found. As such, Offshore Transport responded to Request for Production No. 4 by indicating that it did not have any surveys, but reserved the right to retain a marine surveyor to provide a report regarding the fair market value of the vessel. On November 18, 2020, a telephone conference was held before Magistrate Judge Erin Wilder-Doomes, during which Plaintiff's motion to compel and for sanctions against prior defense counsel was discussed.[8] Given that current defense counsel had already produced the responses to the discovery that was the subject of the motion, Plaintiff's counsel agreed that "Defendants' production and responses rendered the Motion to Compel moot…"[9]

At no point during the conference did plaintiff argue that Defendants' discovery responses were deficient or that they were withholding evidence about the value of the M/V DUSTIN DANOS, as he now appears to claim. In fact, at no time thereafter did Plaintiff file a motion to compel on the basis that Offshore Transport did not fully and properly respond to Request for Production No. 3 and No. 4 above. Nor did he issue any further written discovery pertaining to the value of the vessel. Mr. Griffin has been aware since April 29, 2020, when Defendants filed an Answer, that a limitation of liability defense was being asserted. He took the corporate deposition of Defendants on May 12, 2021. In the 30(b)(6) Notices of Deposition issued to both REC Marine and

---

[8] R. Doc. 52.
[9] R. Doc. 52, pg. 2.

Offshore Transport, Plaintiff listed as a topic of inquiry on which his lawyer would ask questions: "All allegations contained in the Answer to Complaint and defenses."[10] Of course, one of the affirmative defenses pleaded in Defendants' Answer was the limitation of liability defense. Yet, Plaintiff's counsel did not ask Defendants' corporate representative any questions concerning the value of the M/V DUSTIN DANOS.

Also listed as a topic was "Your discovery responses, and interpretation of the documents produced." However, Plaintiff's counsel never asked the corporate representative any questions implying that Offshore Transport was withholding documents pertaining to the value of the vessel. Nor were any questions asked about the certificate of insurance which referenced the insured hull value of the vessel. Plaintiff now wants to blame Defendants because he does not know what their corporate representative will testify was the fair market value of the M/V DUSTIN DANOS at the time of Plaintiff's incident in 2018.

The present Motion filed by Plaintiff argues:

1.  That Defendants have withheld or failed to produce documents and therefore should be precluded from offering any evidence concerning the value of the M/V DUSTIN DANOS. (This would, of course, completely void Defendants' limitation of liability defense and result in cancellation of the limitation trial, which the Court has not yet set a date for).

2.  That Defendants failed to identify a witness which Plaintiff assumes (incorrectly) they intend to call to testify as to the fair market value of the M/V DUSTIN DANOS.

3.  That if Defendants are not precluded entirely from offering any evidence concerning the value of the M/V DUSTIN DANOS, that they should at least be precluded from offering

---

[10] See First Amended Notice of Deposition of REC Marine and First Amended Notice of Deposition of Offshore Transport, attached hereto *in globo*, as Exhibit 3.

any evidence that the fair market value of the vessel was anything less than the insured

value of $2.5 million reflected in the previously produced certificate of insurance.

4.  That the limitation of liability defense is inapplicable because the judgement rendered

for the Plaintiff (or at least the portion subject to limitation) does not exceed the value of

the M/V DUSTIN DANOS.

Defendants respond to plaintiff's arguments below and address additional issues relevant thereto.

## II.    LAW AND ARGUMENT

As a preliminary matter, Defendants note that in accordance with the Court's request, Plaintiff and Defendants jointly filed a Notice on March 10, 2023, stipulating that the issues of liability and damages were to be tried to a jury.[11] The parties further stipulated that if the jury were to find liability on the part of Defendants and award damages, the issue of Defendants' limitation of liability defense would be tried to and decided by the Court.[12] The parties and the Court clearly understood that any subsequent trial of the limitation defense would take place only if necessary.

### A.  The relief Plaintiff seeks was addressed and rejected during Day 5 of the jury trial

The Plaintiff neglects to mention in his Motion that during the jury trial on Day 5 he presented a motion asking the Court to strike the limitation defense on the basis that Defendants had not presented evidence pertaining to the value of the M/V DUSTIN DANOS (essentially the same relief now requested). Plaintiff's motion was denied.  In denying the motion, the Court (consistent with the stipulations above) noted that Limitation would be addressed separately and apart from the jury trial, stating "the Court is still entitled to receive evidence" and that at that point in the trial, "The Defense doesn't have to present any evidence at this point because it may be extraneous to

---

[11] R. Doc. 172.
[12] *Id.*

what this jury is - - the issues to be addressed by this jury."[13] Because this issue was so clearly

addressed during the trial, Defendants set forth the exchange between the Court and counsel for the

Plaintiff and Defendants.

"Page 65
2 Mr. Sheppard: your honor, we had met
3 Tuesday and I started addressing concerns with the
4 vessel defendants' limitation of liability act to
5 limit the liability to the value of the vessel and
6 the freight on board. There has been no evidence for
7 the value of this vessel. There has been no
8 testimony for the value of the vessel. There has
9 been no testimony about what was on board and how
10 much it was worth.
11 I had mentioned that I thought it was a
12 little difficult to believe that there is no document
13 out there that would show what this vessel is worth,
14 that haven't provided information to insurance
15 companies in order for them to have it insured. We
16 haven't received any documents showing what it's
17 worth. There is no documents in evidence showing
18 what it's worth. And that's their defense to prove.
19 and they haven't provided any evidence
20 to the court to demonstrate that they're entitled to
21 a limit -- to, one, they're entitled to limitation of
22 liability and; two, what that liability would be.
23 and that's something that they would need to have
24 done at this point.
25 The Court: Counsel?

Page 66
1 Mr. Khoury: your honor, I think, as you
2 know, we've stipulated that the issue of limitation
3 of liability would be tried, your honor, if and when
4 there is a judgment on liability and damages.
5 often times the way that this is done is through the
6 testimony of the corporate representative with
7 knowledge of the value of a vessel. While there are
8 sometimes documents that could refer to the value of
9 the vessel such as the insured value on an insurance
10 policy, it's pretty well-known that that's almost
11 never the actual fair market value of the vessel.
12 and that's what the court has to consider is what the

---

[13] Day 5 Trial Transcript, pages 67 and 68.

13 fair market value of the vessel is.
14 The Court: and I don't mean to be rude.
15 Mr. Khoury: sure.
16 The Court: let me ask you, Mr. Sheppard, if
17 you will. So I understand the nature of your motion.
18 it was my understanding going in that both sides
19 would have the court address the issue at a later
20 time. Am I incorrect about that?
21 Mr. Sheppard: the issue of whether it
22 applies, I thought that was something for the Court
23 to consider -- that was the Court's decision to make.
24 but whether there is evidence of it, I thought that
25 was something that they need to bring in their case-

Page 67
1 in-chief.
2 The Court: I agree. But I guess my
3 question to you is: what would you have me do at
4 this point?
5 Mr. Sheppard: I don't -- well, your honor,
6 the fact that we've never received any documents, we
7 have no testimony on it, I would say that they
8 haven't provided any sufficient basis for that
9 defense to continue at this point.
10 The Court: for what to continue?
11 Mr. Sheppard: for that particular defense
12 to continue. That they haven't provided any evidence
13 to support that defense -- the defense.
14 The Court: and so, again, what would you
15 have me do at this point in the trial?
16 Mr. Sheppard: I would ask the Court to
17 strike the defense and we, you know, move forward.
18 The Court: well, I'm not going to do that.
19 would you agree with me that given that the Court
20 will address the issue -- and it's a factual issue --
21 at a later time pursuant to the stipulation, that the
22 Court is still entitled to receive evidence depending
23 on -- my assumption -- and it's only an assumption
24 here -- is that because of the stipulation, that the
25 plaintiff -- the defense doesn't have to present any

Page 68
1 evidence at this point because it may be extraneous
2 to what this jury is -- the issues to be addressed by
3 this jury.
4 Mr. Sheppard: I would think that they would

7

> 5 just have to ask two questions: you know, what's the
> 6 value of the vessel? What are you basing it on?
> 7 what's the value of the freight? What are you basing
> 8 it on? That wasn't done.
> 9 The Court: right. But that's not -- that's
> 10 for me to consider at the appropriate time, is my
> 11 point.
> 12 Mr. Sheppard: okay, your honor.
> 13 The Court: so to the extent we require
> 14 additional evidence, we'll do it if and when it
> 15 becomes necessary to consider the issue. Okay?
> 16 Mr. Sheppard: Yes, your honor."

As evidenced by the excerpt above, Plaintiff's arguments have already been considered.[14] There is no reason for the Court to reach a different result now. Plaintiff's counsel argued above that the limitation defense should be struck because Defendants did not offer any testimony regarding the defense at trial. As the Court correctly pointed out, this is because the parties stipulated that the limitation issues (if necessary) would be addressed to and decided by the Court at a later time. As discussed in more detail below, trial of the limitation of liability defense is necessary because the jury's verdict does indeed exceed the value of the M/V DUSTIN at the time of Mr. Griffin's accident. Defendants have stated on multiple occasions that they intend to offer the testimony of a corporate representative to testify as to the limitation defense. There is no reason they should not be able to do so.

The Plaintiff curiously states (without any supporting citation) that Offshore Transport has "represented to Plaintiff counsel and the Court that they intend to present evidence concerning the…limitation of liability defense through Mr. Todd Danos."[15] He further argues that Todd Danos was not disclosed as a witness in the Joint Pre-Trial Order filed on February 24, 2023.[16] However,

---

[14] Although the Motion presently before the Court does not technically request again that the limitation defense be struck, Plaintiff does ask the Court to bar any evidence regarding the value of the M/V DUSTIN DANOS. If the Court were to bar evidence regarding the value of the vessel, it would have the same effect as striking the defense.
[15] R. Doc. 254-1, pp. 1-2.
[16] Id.

Defendants have never represented that they intend to call Mr. Danos to provide evidence regarding the limitation defense. Rather, they have said they intend to call a corporate representative.[17] The corporate representative Defendants intend to call is Brian Harris. Mr. Harris was listed in the Joint Pre-Trial Order and testified at trial. He also served as the corporate representative for both REC Marine and Offshore Transport at the 30(b)(6) corporate deposition of these entities. As discussed further below, both REC Marine and Offshore Transport have asserted and are entitled to rely upon the limitation of liability act as a defense. Mr. Harris will be called to testify regarding issues surrounding the limitation defense, including the value of the M/V DUSTIN DANOS.

## B. Defendants have not failed to respond to discovery or improperly withheld documents

The assertion that Defendants have failed to respond to discovery or are improperly withholding documents is false. Through Requests for Production of Documents, Offshore Transport was asked to produce documentation of any surveys for the M/V DUSTIN DANOS, as well as "all documents reflecting the value of the M/V DUSTIN DANOS." Defense counsel requested responsive documents from Offshore Transport, and Offshore Transport provided counsel with the documentation it had—a certificate of insurance reflecting the vessel's insured value. Defense counsel subsequently produced this document to Plaintiff. It is worth mentioning that the pertinent inquiry for purposes of the limitation of liability act is the fair market value of the vessel at the end of the voyage on which the loss or damage occurred. *SCF Waxler Marine, LLC v. M/V ARIS T*, 427 F.Supp.3d 728, 777 (E.D. La. 2019). In implying, without evidence, that Offshore Transport must be witholding other documents, Plaintiff appears to be under the misconception that Offshore Transport has some stack of documents lying around that states the fair market value of the M/V DUSTIN DANOS for every year of its useful life. It does not. Moreover, if Plaintiff believed that

---

[17] Day 5 Trial Transcript, page 66.

Offshore Transport was withholding documents, it seems strange that he is only bringing this issue to the Court's attention now.

**C.** **Plaintiff's attempt to restrict evidence of the value of the M/V DUSTIN DANOS to the insured value is improper**

As discussed above, the pertinent inquiry for purposes of the limitation of liability act is the fair market value of the vessel at the end of the voyage on which the loss or damage occurred. *SCF Waxler Marine, LLC v. M/V ARIS T*, 427 F.Supp.3d 728, 777 (E.D. La. 2019). Therefore, Plaintiff's attempt to only allow evidence of the insured value of the M/V DUSTIN DANOS is improper. For many reasons, it is often the case that a vessel's insured value is significantly higher than its fair market value. Moreover, in determining a vessel's fair market value, courts are to first consider evidence of contemporaneous sales of comparable vessels. *In re Board of Commissioners*, 575 F.Supp.3d 669, 679 (E.D. La. 2021). When fair market value cannot be established through contemporaneous sales, then courts may consider "other indicia of value, such as replacement costs appropriately depreciated, less the cost of repairs, or the insured value of the vessel," as well as the opinions of marine surveyors and engineers. *In re Board of Commissioners,* 575 F.Supp.3d at 679. Defendants plan to have their corporate representative testify as to sales of similar vessels to the M/V DUSTIN DANOS around the time of Plaintiff's alleged accident. Alternatively, should the Court choose, the parties could be afforded a brief period prior to the limitation trial being set to each retain experts who can offer testimony as to fair market value. However, Defendants submit that it would not be appropriate to restrict the evidence to only the vessel's insured value.

**D.** **The Limitation of Liability Act is applicable because the jury's verdict exceeds the value of Defendants' interest in the M/V DUSTIN DANOS**

Although Plaintiff does not necessarily argue to the contrary, Defendants wish to clarify that they are both entitled to rely on the Limitation of Liability Act. The benefits and protections of the Act may be invoked by a vessel's record owner, as well as what the law refers to as an owner *pro hac vice*. Courts have held that the term "owner," which is not defined in the Act, should be given a broad construction so as to achieve Congress' purpose of inducing and encouraging investment in shipping. *In re Shell Oil Co.*, 780 F.Supp. 1086, 1089 (E.D. La. 1991). An "owner" for purposes of limitation of liability includes "one who is subjected to a shipowner's liability because of his exercises of dominion over [i.e., relationship to] the vessel." *Archer Daniels Midland, Co. v. M/T American Liberty*, 2021 WL 1951217, at *4 (E.D. La. 2021). "In other words, an operator with significant management and operational control over a vessel may seek exoneration from or limitation of liability when it acts as a manager of the vessel or acquires work for and dispatches the vessel." *Id.* (quoting *In re Ingram Barge Co.*, 2007 WL 2088369, at *3 (E.D. La. 2007)). In *In re Chesapeake Shipping, Inc.*, the court noted there was no dispute as to whether the registered owner of a vessel had standing to seek limitation of liability. *In re Chesapeake Shipping, Inc.*, 803 F.Supp. 872, 873, fn. 1 (S.D.N.Y. 1992). The Court further held that a company which operated and crewed the vessel was likewise entitled seek limitation, explaining that the actual owner and the operator were parties to an agreement specifically providing that the operator was responsible for manning the vessel (including employing the officers and crew), victualing the vessel, providing for navigation, as well as maintenance and repairs. *In re Chesapeake Shipping, Inc.*, 803 F.Supp. at 873-75.

The arrangement between Offshore Transport and REC Marine is essentially identical to the one between the owner and operator in *In re Chesapeake Shipping*. No party has ever contested that REC Marine operated the M/V DUSTIN DANOS and employed its crew, including the Plaintiff. In

11

fact, the Operating Agreement between Offshore Transport and REC Marine states, in pertinent part, as follows:

> [REC Marine] shall, at the cost and expense of [Offshore Transport], but in all instances as an independent contractor, man, insure, operate, victual, maintain, repair, supply, manage, and navigate the Vessel…
>
> The operation, navigation and management of the Vessel shall be under the exclusive control and command of [REC Marine] and its servants and its Master and crew…
>
> The actual performance and operation, navigation, management, and control of the Vessel shall be at all times done by [REC Marine], under its command and control and under the supervision and direction of [REC Marine] as to the details of the work.[18]

Under the circumstances, it is evident that REC Marine was an owner *pro hac vice* of the M/V DUSTIN DANOS, and thereby entitled the benefits and protections of the Limitation of Liability Act. Plaintiff argues in his Motion that the damages awarded at trial are far less than the minimum value of the M/V DUSTIN DANOS. It is unclear whether Plaintiff is referring only to the damages awarded against Offshore Transport. However, given that both Offshore Transport and REC Marine have standing to pursue limitation of liability, consideration of whether the damages awarded at trial exceed the value of the vessel, must take into account the combined damages against both parties.

Defendants anticipate that their corporate representative, Brian Harris, will testify that the M/V DUSTIN DANOS had a 2018 fair market value of approximately $1,600,000. The overall damages awarded against both parties totaled $3,036,030, broken down as follows:

- Compensatory damages[19] against REC Marine of $1,194,690

- Compensatory damages against Offshore Transport of $341,340

- Punitive damages against REC Marine of $1,500,000

---

[18] See Operating Agreement, attached hereto as Exhibit 4; The Operating Agreement was previously attached as an Exhibit to R. Doc. 85.
[19] Contained within this amount was $10,000 in maintenance benefits which the jury found Plaintiff was entitled to.

Mr. Griffin correctly notes that maintenance and cure benefits are not subject to limitation of liability. *Brister v. A.W.I., Inc.*, 946 F.2d 350, 360-61 (5th Cir. 1991). Maintenance and cure arises from a shipowners' obligation to care for a seaman who becomes ill or is injured during a voyage. *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). The rule that maintenance and cure is not subject to limitation of liability appears to be rooted in the personal contracts doctrine, which holds that personal contracts of a shipowner or bareboat charterer are not subject to limitation. *Mediterranean Shipping Co. S.A. Geneva v. POL-Atlantic,* 229 F.3d 397, 403 (2nd Cir. 2000). As the Fifth Circuit noted in *Brister*, a seaman's right to maintenance and cure is implied in the employment contract between the seaman and the shipowner. *Brister*, 946 F.2d at 360. It therefore stands to reason why maintenance and cure benefits would not be subject to limitation. However, unlike actual maintenance and cure benefits, punitive damages are not intended to care for an ill or injured seaman, but rather to punish a defendant. Although Defendants have not located any case law specifically addressing this issue, they respectfully submit that the justification for not allowing limitation for actual maintenance and cure benefits (*i.e.,* the need to care for an injured seaman) does not extend to damages meant to punish a defendant. As such, punitive damages should be considered in determining whether the damages awarded by the jury exceed the value of the M/V DUSTIN DANOS.

Even when excluding the punitive damages, Defendants' limitation of liability defense is viable. As noted above, Defendants anticipate that Brian Harris will provide testimony that the 2018 fair market value of the M/V DUSTIN DANOS was approximately $1,600,000. While the combined compensatory award against REC Marine and OTS is $1,536,030, it should be noted that the Judgment entered by the Court awarded "court costs and judicial interest from the date of

judicial demand."[20] Defendants aver that pre-judgment interest in a case such as this one is not awardable with respect to all of plaintiff's damages and reserves the right to separately brief this issue before the Court. However, even for those elements of damage for which pre-judgment interest is allowed, the accrued interest in this case could exceed the fair market value of the M/V DUSTIN DANOS.

## III.    CONCLUSION

For all of the foregoing reasons, Defendants, REC Marine Logistics, LLC and Offshore Transport Services, LLC respectfully request that Plaintiff's Motion to Exclude Evidence Related to the Value of the M/V DUSTIN DANOS be denied.

Respectfully submitted,

/s/Kyle A. Khoury
Salvador J. Pusateri, T.A. (#21036)
Kyle A. Khoury (#33216)
Kristian B. Dobard (#36997)
**PUSATERI, JOHNSTON, GUILLOT
& GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
Kristian.Dobard@pjgglaw.com
**ATTORNEYS FOR REC MARINE
LOGISTICS, LLC**

---

[20] R. Doc. 215.