UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCARTHUR GRIFFIN**<br>　　　　　　　　　　**Plaintiff**<br><br>**VERSUS**<br><br>**REC MARINE LOGISTICS, LLC, ET AL**<br>　　　　　　　　　　**Defendants** | **CIVIL ACTION NO: 3:20-cv-00092**<br><br>**DISTRICT JUDGE:**<br>**HON. BRIAN A. JACKSON**<br><br>**MAGISTRATE JUDGE:**<br>**HON. ERIN WILDER-DOOMES** |

**REPLY MEMORANDUM IN SUPPORT OF AMENDED AND SUPPLEMENTAL MOTION FOR NEW TRIAL AND/OR REMITITUR**

**MAY IT PLEASE THE COURT:**

REC Marine Logistics, LLC ("REC Marine") and Offshore Transport Services, LLC ("Offshore Transport") (hereinafter sometimes referred to as "Defendants") hereby file this Reply Memorandum in support of their Amended and Supplemental Motion for New Trial and/or Remittitur (hereinafter "Motion") pursuant to Federal Rule of Civil Procedure 59. Defendants take this opportunity to respond to the arguments made by plaintiff in his *Opposition* and will address each of those arguments in turn.

**I.   The verdict for future medicals evinces passion and prejudice and is against the great weight of the evidence.**

Plaintiff, in his *Opposition*, argues that the jury's reliance on Dr. Cowen's estimates regarding future medical treatment were not against the great weight of the evidence and should not be reduced but fails to address the unsupported treatment costs suggested, for example, for Griffin's lumbar spine. As previously argued in Defendants' *Motion*, several items of future medical treatment which Dr. Cowen and Dr. Rice included in their cost estimates are unsupported. Namely, relying on Dr. Cowen, Dr. Rice included $6,398.00 for lumbar epidural steroid injections

(ESI). The jury found by a preponderance of the evidence that Griffin **did not** injure his back as a result of the personnel basket incident onboard the M/V Dustin Danos.[1]

Also included in the damages estimates from Plaintiff's experts are the costs of two separate cervical fusion surgeries. At trial nearly two and a half years after the only time he saw Plaintiff, Dr. Ferachi confirmed that he previously offered Plaintiff three options,[2] which Plaintiff did not follow up on and further testified he no longer had specific treatment recommendations for the Plaintiff.[3] Despite this, Dr. Rice included the cost of an initial cervical fusion at C6-7 ($115,378.00) in his estimate of the present value of Griffin's future medical expenses.

Incredibly, Dr. Rice's overall figure of $590,503.00 also included $121,286.00 for a second cervical fusion at an "adjacent level."[4] This was based on Dr. Cowen's opinion that, **if** and when Plaintiff chooses to undergo a fusion at C6-7 (which is highly speculative), that he **may** need to undergo a second fusion at an adjacent level of the cervical spine "20 years down the road."[5] As noted above, Plaintiff had not returned to or even contacted Dr. Ferachi in over two years since he mentioned that a first fusion at C6-7 was an option (among others). Again, no **treating physician** has ever even alluded to the possibility of an adjacent-level fusion at some distant time in the future.

Dr. Rice, again relying on Dr. Cowen, also included costs associated with future medical treatment for the plaintiff's left shoulder. The future costs for Griffin's shoulder total $19,625.00 according to Dr. Rice's testimony. However, plaintiff's counsel made a judicial admission in closing arguments that Mr. Griffin's shoulder was at maximum medical improvement, explicitly

---

[1] *See* R. Doc. 212, pg. 2, Interrogatory No. 3.
[2] *See* testimony of Dr. David Ferachi, trial transcript for April 25, 2023, pgs. 140-141. Dr. Ferachi stated Mr. Griffin was "a candidate for more physical therapy, cervical epidural steroid injections, or [cervical fusion surgery at C6-7]."
[3] See testimony of Dr. David Ferachi, trial transcript for April 25, 2023, pg. 142.
[4] See Testimony of Dr. Randy Rice, trial transcript from April 26, 2023, pg. 194.
[5] See testimony of Dr. Todd Cowen, trial transcript from April 26, 2023, pgs. 43-44.

stating that "with respect to Mr. Griffin's shoulder . . . do you find the plaintiff has reached maximum medical cure? . . . for the shoulder yes."[6]

With regard to the *Matter of Lasala*, 2022 WL 17485951, *21 (E.D. La. 2022) Griffin argues there was no life care planner and no timeframe for when future treatment would be needed, and that the Defendants' reliance is misplaced because in this matter there was a lifecare plan. Plaintiff's interpretation and attempt to distinguish that case is misplaced. Indeed, in the *Matter of Lasala*, the Court determined that the treating physician's failure to offer an opinion as to the timeframe for any future medical procedure was speculative or purely conjectural and could not stand. That is precisely what has happened in this matter. Neither of Plaintiff's **treating physicians**, Dr. Ferachi and Dr. Greene, currently have any pending recommendations for future treatment, much less a time frame for such treatment. It would be improper to place a greater weight on a life care planner's opinion, even though they may be a medical doctor, over that of the actual **treating physicians** who saw, treated, cared for, and witnessed firsthand the plaintiff's injuries and progress. Moreover, Dr. Cowen's statement that **if** Plaintiff has a cervical fusion surgery at C6-7, he **may** need another fusion surgery at another level "20 years down the road" is far too speculative to justify awarding an additional $121,286.00. This is especially true given that Dr. Cowen is not an orthopedic surgeon or any type of surgeon and is not qualified to make surgical recommendations.

In regard to *Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co. Ltd.*, 324 F.Supp.3d 808, 833 (E.D. La.2018), Griffin argues the Defendants' reliance is again misplaced and that he established that it is more likely than not that he will pursue any potential suggested surgery in the future. The Plaintiff also suggests that Defendants omit an exchange that led to the

---

[6] *See* closing argument of Griffin's counsel, trial transcript for May 1, 2023, pg. 105-106.

Court's finding that the future medical care was speculative. Again, the plaintiff has misinterpreted the caselaw. The Plaintiff argues that unlike in *Associated Terminals of St. Bernard, LLC*, he wants to pursue the treatment recommended by Dr. Cowen only, not Dr. Ferachi as plaintiff incorrectly stated.[7] There is no mention at all in Griffin's testimony that he was interested in the treatment suggested by his **treating physicians**.[8]

Additionally, with regard to Dr. Cowen's life care plan, the Court in *Associated Terminals of St. Bernard, LLC*, stated,

> "The Court, however, may not need to opine as to whether it finds Dr. Cowen's methodology to be credible, or whether his conclusions as to the care that Ford will require in the future are reasonable and reasonably certain. This is because Dr. Cowen's life care plan, as Dr. Cowen stated at trial, "is based on the projection that [Ford] has the surgery" **that Dr. Brennan**[9] **recommends**—namely, a three-level cervical fusion.85 If the Court finds that Ford will not pursue that surgery in the future, then Dr. Cowen's life care plan is simply not relevant, as it is built on a faulty premise."[10]

Here, it was not established that plaintiff would pursue surgeries recommended by his **treating physicians** like in *Associated Terminals of St. Bernard, LLC*. In this case, nowhere in Dr. Cowen's testimony did he state that his Life Care Plan was based on surgeries and treatments the plaintiff positively indicated he would pursue as recommended by his **treating physicians**. Thus, Dr. Cowen's Life Care Plan here is likewise not relevant as it is built on faulty premises, that is suggested treatment and not treatment Griffin has specifically indicated he would pursue.

In fact, Dr. Cowen testified that "this is a summary of all the future medical care options **I believe** he more likely than not will need as a result of the injuries from this event."[11] Not that they

---

[7] See testimony of McArthur Griffin, trial transcript for April 27, 2023, pg. 170 lines 18 – 20.
[8] See generally testimony of McArthur Griffin, trial transcript for April 27, 2023.
[9] Dr. William A. Brennan, a neurosurgeon, was Ford's treating physician.
[10] *Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co. Ltd.*, 324 F.Supp.3d 808, 830–31 (E.D. La.2018).
[11] See testimony of Dr. Todd Cowen, trial transcript for April 26, 2023, pg. 35 lines 3 – 6.

were recommended by the **treating physicians** or that Griffin indicated he would pursue the suggested treatment. Therefore, those speculative costs Dr. Cowen, a non-treating physician, suggested on his own volition should not be allowed as future damages.[12]

## II. The Award of Lost Income and Loss of Earning Capacity was not Appropriate

The plaintiff argues in his *Opposition* that the jury is allowed to make upward adjustments to his lost wages and that the amount of damages awarded as maintenance is not duplicative. Plaintiff cited several cases in support of his argument. Here, with regard to past lost wages, the jury disregarded the plaintiff's expert and plaintiff's judicial admission that his lost wages are $144,995.[13] The jury likewise awarded $178,411.00 more than what was submitted into evidence with regard to future loss.

*McKissack v. Wal-Mart Stores, Inc.*, SA-02-CA-0043-RF, 2004 WL 212930, at *1 (W.D. Tex. Jan. 26, 2004) is a negligence case involving a Wal-Mart customer who was injured in the tire department and is distinguishable and non-controlling. Further, in *McKissack*, the Court reasoned, as to the plaintiff's projected retirement age, that:

> "the jury may appropriately have based its determination upon the evidence, and that evidence demonstrated that Plaintiff's father had worked well beyond the average retirement age of 65 and that Plaintiff so intended to do himself. Thus, the jury may have reasonably used additional years in its calculation. Finding that the evidence would have supported logically and reasonably an award in excess of the one stated by the jury for loss of future earning capacity, the Court finds that the jury's award was not speculative,

---

[12] Furthermore, under Louisiana law, the plaintiff must establish the amount of the award with some certainty in order to recover for future medical expenses. *Veazey v. State Farm Mut. Ins. Co.,* 587 So.2d 5 (La.App. 3 Cir.1991). An award for future medical expenses "will not be made in the absence of medical testimony that they are indicated and their probable cost." *Id.* at 8 (internal quotation marks and citation omitted). Future medical expenses, like any other damages must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. "*An award for future medical expenses cannot be based on mere speculation of the jury.* Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award." *Id.* (emphasis added). According to the Fifth Circuit, "The jury may select the highest figures that the evidence will support, however, the jury may not speculate on damages where calculation of the damages is definable." *Brunneman v. Terra Intern., Inc.,* 975 F.2d 175, 178.
[13] Closing argument of Griffin's counsel, trial transcript for May 1, 2023, pg. 104.

>nor based upon conjecture, but rather grounded in evidence properly before it."

That is absolutely not the case here – nowhere in evidence did the plaintiff indicate he intended to work past the average age of retirement. Griffin attempts a post-hoc rationalization of the jury's verdict by claiming Defendants' economist provided an arguable basis for an upward departure in future wage loss by "accounting for a longer worklife expectancy." To be clear, Defendants' economist, Mr. Cliffe, did not actually use a longer worklife expectancy for the Plaintiff. The basis for Plaintiff's argument is that Mr. Cliffe used a higher worklife expectancy in a personal injury case he was personally involved in (which by the way was completely justified given that Mr. Cliffe is still working at his age). The worklife expectancy Cliffe used for himself in another case is not evidence in this case, has no relation to Griffin, and certainly could not have served as a basis for the jury to award higher economic damages than <u>any</u> evidence showed in this case.

"[A]n award for damages cannot stand when the evidence to support it is speculative or purely conjectural." *Masinter v. Tenneco Oil Co.,* 929 F.2d 191, 194 (5th Cir. 1991). Regarding maintenance benefits, Griffin provided no evidence, not even his own testimony, as to the cost of his living expenses. As such, there was no evidentiary basis for the jury to award maintenance. In summary, at least $183,416.00 for past and future wage loss should be reduced from the verdict. Additionally, $10,000.00 for maintenance should likewise be deducted.

### III. <u>A New Trial on General Damages is Warranted and Remittitur is Necessary</u>

With regard to the general damages awarded, Griffin in his *Opposition* argues "the nature and extent of Plaintiff's injuries, pain and suffering, mental anguish, and loss of enjoyment of life is reflected in the hundreds of pages of medical records admitted during the trial along with the

testimony of witnesses."[14] However, as explained in *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 (5th Cir.2001), the Fifth Circuit concluded that

> "The symptoms of which Giles complains do not support an award of $300,000. In *Forsyth v. City of Dallas,* 91 F.3d 769, 774 (5th Cir.1996), we concluded that a jury reasonably had awarded $100,000 for emotional distress symptoms quite similar to Giles's.[15] In our view, that amount properly would compensate Giles for his emotional distress. To avoid substituting our judgment for that of the jury, however, we augment that amount by fifty percent to reach a maximum recovery. *See Dixon,* 754 F.2d at 590 (citing *Caldarera v. E. Airlines, Inc.,* 705 F.2d 778, 784–85 (5th Cir.1983)). We therefore reduce Giles' compensatory award to $150,000, with the option of a new trial if he chooses not to accept the remittitur."

As in *Giles*, the plaintiff's complaints here do not support an award of $350,000.00 and should be reduced accordingly.

### IV. Punitive Damages Award is Against the Great Weight of the Evidence

Griffin argues that the *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 506; 128 S.Ct. 2605, 2629; 171 L.Ed.2d 570 (2008) compensatory to punitive ratio does not apply. However, footnote 1 of Fifth Circuit Pattern Jury Instruction 4.9 mentions that punitive damages in the maritime context are presently available only for maintenance and cure.[16] Additionally, footnote 2 of Pattern Instruction 4.9 specifically refers to *Exxon Shipping Co. v. Baker* on the general subject of punitive damages in maritime cases and the guidelines to be considered in fashioning jury instructions.[17] Considering these footnotes together shows that at least the esteemed panel of federal judges who comprise The Committee on Pattern Jury Instructions certainly believe the *Exxon* decision (including its 1:1 compensatory to punitive damages ratio) is applicable in the maintenance and

---

[14] R. Doc. 259, page 17.
[15] *Forsyth* upheld emotional distress damages of $100,000 to one plaintiff based on her testimony that "she suffered depression, weight loss, intestinal troubles, and marital problems, that she had been sent home from work because of her depression, and that she had to consult a psychologist," and emotional distress damages of $75,000 to a second plaintiff who "testified that he suffered depression, sleeplessness, and marital problems." 91 F.3d at 774.
[16] https://www.lb5.uscourts.gov/juryinstructions/Fifth/2020civil.pdf.
[17] *Id.*

testimony of witnesses."[14] However, as explained in *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 (5th Cir.2001), the Fifth Circuit concluded that

> "The symptoms of which Giles complains do not support an award of $300,000. In *Forsyth v. City of Dallas,* 91 F.3d 769, 774 (5th Cir.1996), we concluded that a jury reasonably had awarded $100,000 for emotional distress symptoms quite similar to Giles's.[15] In our view, that amount properly would compensate Giles for his emotional distress. To avoid substituting our judgment for that of the jury, however, we augment that amount by fifty percent to reach a maximum recovery. *See Dixon,* 754 F.2d at 590 (citing *Caldarera v. E. Airlines, Inc.,* 705 F.2d 778, 784–85 (5th Cir.1983)). We therefore reduce Giles' compensatory award to $150,000, with the option of a new trial if he chooses not to accept the remittitur."

As in *Giles*, the plaintiff's complaints here do not support an award of $350,000.00 and should be reduced accordingly.

### IV. Punitive Damages Award is Against the Great Weight of the Evidence

Griffin argues that the *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 506; 128 S.Ct. 2605, 2629; 171 L.Ed.2d 570 (2008) compensatory to punitive ratio does not apply. However, footnote 1 of Fifth Circuit Pattern Jury Instruction 4.9 mentions that punitive damages in the maritime context are presently available only for maintenance and cure.[16] Additionally, footnote 2 of Pattern Instruction 4.9 specifically refers to *Exxon Shipping Co. v. Baker* on the general subject of punitive damages in maritime cases and the guidelines to be considered in fashioning jury instructions.[17] Considering these footnotes together shows that at least the esteemed panel of federal judges who comprise The Committee on Pattern Jury Instructions certainly believe the *Exxon* decision (including its 1:1 compensatory to punitive damages ratio) is applicable in the maintenance and

---

[14] R. Doc. 259, page 17.
[15] *Forsyth* upheld emotional distress damages of $100,000 to one plaintiff based on her testimony that "she suffered depression, weight loss, intestinal troubles, and marital problems, that she had been sent home from work because of her depression, and that she had to consult a psychologist," and emotional distress damages of $75,000 to a second plaintiff who "testified that he suffered depression, sleeplessness, and marital problems." 91 F.3d at 774.
[16] https://www.lb5.uscourts.gov/juryinstructions/Fifth/2020civil.pdf.
[17] *Id.*

cure context (despite plaintiff's counsel's citation to a non-binding Washington Supreme Court decision).

The plaintiff cites *Clausen v. Icicle Seafoods, Inc.*, 174 Wash.2d 70; 272 P.3d 827, 836 (2012) in support of his argument that punitive damages beyond a 1:1 ratio are necessary as a deterrent. Aside from being non-binding in this jurisdiction, *Clausen* actually supports the Defendants' argument that no more than the 1:1 ratio is proper in this case because in *Clausen* the defendant's behavior was "nearer the 'most egregious' end of the culpability scale."[18] The *Clausen* defendant's behavior included deliberately making false statements in its federal court complaint seeking to terminate Clausen's maintenance and cure; that defendant's conduct was motivated by profit; and that the size of the punitive damages award was required because defendant's needed substantial deterrence not to treat other workers in the same way. None of that is applicable herein. Griffin was paid maintenance and cure for his shoulder until he reached maximum MMI and was only denied maintenance and cure with regard to his neck because his treating physician stated those injuries were not related to the accident on the vessel. Furthermore, there is absolutely no evidence that Defendants' behavior here was motivated by profit.

Plaintiff also argues that compensatory damages of $1,536,030.00 were more than the punitive damages and so the 1:1 ratio is not violated. However, the punitive damages only apply to REC Marine and the "compensatory award" against REC Marine was $1,194,690.00, which puts the $1.5 million punitive damages award well outside the 1:1 ratio. More importantly, because punitive damages are only allowed for the maintenance and cure claim, the proper ratio requires comparing only the maintenance and cure award to the punitive damages award. The jury awarded $10,000.00 in maintenance and nothing for cure, which puts the punitive damages award

---

[18] *Clausen v. Icicle Seafoods, Inc.*, 174 Wash.2d 70; 272 P.3d 827, 836 (2012).

egregiously beyond the 1:1 ratio. Even if the Court were to assume the jury intended the entire medical expense award of $686,700.00 to be considered cure, the total amount of maintenance and cure would be $696,700.00, which is still less than half the punitive damages award of $1.5 million, and therefore constitutes a grossly out of proportion award under *Exxon*.

Lastly, it is worth noting that Plaintiff's *Opposition* doesn't even attempt to address how excessive the punitive award was in light of the other cases cited by Defendants, all of which involved significantly more egregious conduct than he claims occurred here. After extensive research, the highest punitive damages award Defendants could find in any Louisiana court (state or federal) or any federal court within the Fifth Circuit was $500,000.

### V. The Time Limits Imposed were Unfair and Prejudicial

The cases cited by Griffin to emphasize that the Court may set time limits on a trial and a limit of days even in complex cases are both distinguishable. In *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1172 (7th Cir.1983), the Court allowed the parties to brief the Court regarding how much time they would need for trial. The judge considered the briefs and placed time limits on the trial as described in the Pre-Trial Order. The Pre-Trial Order was dated November 28, 1979, and the trial commenced on February 6, 1980.[19] This allowed the parties exactly 70 days, over two months, to prepare their trial strategy.

In *United States v. Hardage*, 750 F.Supp. 1460, 1528 (W.D. Okla.1990), aff'd, 982 F.2d 1436 (10th Cir.1992), the Court imposed a 30-day trial, however the parties were given at least 114 days to prepare their trial strategy if the trial commenced on December 1, 1990. Again, in both cases cited by the Plaintiff, the parties had at least two months to prepare for the time limits to be imposed. In this case, the parties, specifically the Defendants, did not have adequate notice of the

---

[19] See *Id.* and *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1092 (7th Cir.1983).

time limits imposed to effectively present their case. Here, the limits during the Defendants' case in chief were prejudicial and detrimental to the Defendants' presentation of their case.

VI. **Jury's Improper Allocation of Liability**

Griffin argues the Defendants are not happy with the net amount of the verdict and that there is no basis to overrule the jury's allocation of fault. Simply put and as argued before, the evidence clearly established that Griffin did not conduct the basket transfer by properly maintaining the tag line rather than placing himself in danger by grabbing the basket. The accident simply would not have happened if Griffin had not physically grabbed the basket, and the jury's apportionment of only 10% fault to Griffin was wholly improper – the jury giving any weight to Griffin allegedly attempting to "save" the other men in the basket from injury is likewise improper as that was not Griffin's duty. Additionally, *Johnston v. Char-Broil, LLC*, 622 F.Supp.3d 317, 329 (N.D. Tex.2022), is likewise not binding on this Court.

VII. **Plaintiff's Closing Argument**

Griffin argues Defendants did not object to his counsel's improper statements made during closing and that absent "errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings" the award must stand. The mere fact that the plaintiff filed a lawsuit regarding a 2013 accident alleging serious injuries similar to the injuries allegedly sustained in this matter and is now denying that he ever saw the lawsuit is so shocking that it seriously affected the fundamental fairness and basic integrity of the proceedings. With regard to reporting to the Coast Guard, Griffin violated and is admitting he violated this Court's order which stated, "I want to be very clear: he cannot offer evidence that this company consistently violates those standards, unless he has evidence to prove it."[20]

---

[20] Jury Trial Day 2, page 326 lines 10 – 13.

Respectfully submitted,

*/s/ Kristian B. Dobard*
Salvador J. Pusateri, T.A. (#21036)
Kyle A. Khoury (#33216)
Kristian B. Dobard (#36997)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Salvador.Pusateri@pjgglaw.com
Kyle.Khoury@pjgglaw.com
Kristian.Dobard@pjgglaw.com
**ATTORNEYS FOR REC MARINE LOGISTICS, LLC AND OFFSHORE TRANSPORT SERVICES, LLC**