## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

MCARTHUR GRIFFIN

VERSUS

REC MARINE LOGISTICS, LLC, ET
AL.

CIVIL ACTION

NO. 20-00092-BAJ-EWD

### RULING AND ORDER

Now before the Court are numerous post-judgment motions.[1] For the reasons

that follow, Defendant REC Marine Logistics, LLC's **Renewed Motion for**

**Judgment as a Matter of Law (Doc. 228)** and **Amended and Supplemental**

**Renewed Motion for Judgment as a Matter of Law (Doc. 251)** will be denied;

Defendants REC Marine and Offshore Transport Services, LLC's **Motion for New**

**Trial and/or Remittitur (Doc. 229),** and **Amended Motion for New Trial or**

**Remittitur (Doc. 253)** will be granted in part; Plaintiff McArthur Griffin's **Motion**

**for Reconsideration of 209 Minute Entry on QBE Insurance (Europe) Ltd.'s**

**Judgment as a Matter of Law and to Alter or Amend Judgment (Doc. 227),**

**First Amended and Supplemental Motion for Reconsideration on QBE**

**Insurance (Europe) Ltd.'s Judgment as a Matter of Law and to Alter or**

**Amend Judgment (Doc. 252),** and **Motion to Exclude Evidence Related to the**

---

[1] Although the Court gave the parties leave to file their post-judgment motions within 30
days after the last trial transcript was filed to the record, (Doc. 226), "out of an abundance of
caution based on potential jurisdictional issues," the parties filed post-judgment motions
before all transcripts had been published, (Doc. 237 at 1). The parties were then granted leave
to supplement their filings if necessary, once all transcripts had been filed. (Doc. 248).

**Value of the M/V Dustin Danos (Doc. 254)** will be denied; and Plaintiff's **Motion for Attorneys' Fees Pursuant to Federal Rule of Civil Procedure 54(D) (Doc. 224)** will be denied without prejudice.

## I.    BACKGROUND

This personal injury case arises from injuries to Plaintiff's shoulder, back, and neck sustained during a personnel basket transfer incident aboard the *M/V Dustin Danos*. (Doc. 215 at 1). Plaintiff, a Jones Act seaman, sued his employer and the vessel's operator, REC Marine, for negligence and maintenance and cure; the vessel's owner, Offshore Transport, for breaching its duty of maintaining a seaworthy vessel; and QBE Insurance (Europe) Limited, the alleged insurer of the other two Defendants. (Doc. 1). Plaintiff also sought punitive damages against REC Marine for its willful failure to provide maintenance and cure. (*Id.*). The parties agreed that a jury would decide issues of liability and damages, but, if damages were awarded, the Court would decide whether Defendants could limit their liability through the Limitation of Liability Act, 46 U.S.C.A. § 30501, *et seq.* (Doc. 172). During trial, the Court granted Defendant QBE Insurance's oral Motion for Judgment as a Matter of Law. (Doc. 209). At the close of trial, the jury rendered a verdict for Plaintiff against REC Marine and Offshore Transport. (Doc. 212). The jury found that REC Marine's negligent conduct was a 70% cause of Plaintiff's injuries, Offshore Transport's unseaworthy vessel was a 20% cause of Plaintiff's injuries, and Plaintiff was 10% at fault for his own injuries. (*Id.* at 4). The jury found that Plaintiff was owed compensatory damages totaling $1,696,700.00. (*Id.* at 5–7). The jury also found that Plaintiff had reached maximum medical cure for his back injury but not his neck and

shoulder injuries, and awarded Plaintiff $10,000 in maintenance benefits and nothing for cure. Finally, the jury found that REC Marine's unreasonable, willful, wanton, and arbitrary failure to provide maintenance and cure to Plaintiff warranted $1,500,000.00 in punitive damages. (*Id.* at 8–9).

Following trial, REC Marine moved for judgment as a matter of law, REC Marine and Offshore Transport moved for a new trial or remittitur, and Plaintiff moved for reconsideration of the Court's grant of QBE Insurance's Oral Motion for Judgment as a Matter of Law. Plaintiff also moved for attorney's fees and, as the first salvo in the parties' dispute over limitation of liability, moved to exclude evidence regarding the value of the *M/V Dustin Danos*. Each of those motions was supplemented, amended, and/or renewed after the trial transcripts were published.

## II.    LAW AND ANALYSIS

### A. REC Marine's Motions for Judgment as a Matter of Law

Entry of judgment as a matter of law is appropriate if the defendant shows that a reasonable jury would not have a legally sufficient evidentiary basis to find for the plaintiff on the issue. *See* Fed. R. Civ. Proc. 50(a). "This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict." *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004). In deciding if the defendant has made such a showing, the court draws reasonable inferences in the light most favorable to the plaintiff. *See Alonso v. Westcost Corp.*, 920 F.3d 878, 882 (5th Cir. 2019).

REC Marine first asks that the jury's verdict and award of maintenance damages be vacated because the evidence did not establish that Plaintiff was injured in the personnel basket incident. (Doc. 251 at 12–13). To the contrary, substantial evidence was introduced at trial that would allow a reasonable juror to find that Plaintiff was injured while working aboard the *M/V Dustin Danos*. (*See* Doc. 261 at 15 (listing evidence)). Testimony at trial also supported a finding that Plaintiff has not reached maximum medical cure for his neck and shoulder injuries, (*See* Doc. 261 at 17–18), triggering REC Marine's ongoing obligation to pay maintenance and cure. *See Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990) ("Payments may be terminated when it is determined that the seaman has reached maximum medical cure.").

REC Marine also argues that maintenance and cure was not required because Plaintiff failed to disclose a prior neck injury suffered during a car accident, (Doc. 251 at 13–14), invoking, as it did at trial, the *McCorpen* defense. *See McCorpen v. Cent. Gulf S. S. Corp.*, 396 F.2d 547, 548 (5th Cir. 2005) (allowing employer to avoid maintenance and cure obligation if a seaman employee hides a preexisting physical disability). REC Marine admits that because it required no pre-employment physical, under *McCorpen* it must establish that Plaintiff considered his prior neck injury important and that there were no reasonable grounds to support Plaintiff's good-faith belief that he was fit for duty. (*See* Doc. 251-1 at 13). Evidence at trial, including that Plaintiff did not miss a single day of work after the car accident, (*See* Doc. 261 at 19),

supported a reasonable juror's finding that REC Marine failed to state a *McCorpen* defense.

REC Marine next asks that the jury's award of punitive damages be vacated because there was no evidence that REC Marine acted in a willful, wanton, or arbitrary way in denying maintenance and cure. (Doc. 251-1 at 15). Plaintiff responds with examples of REC Marine's conduct that could merit punitive damages, including its dilatory and half-hearted investigation and its repeated denial of maintenance and cure. (*See* Doc. 261 at 20–30).

"It is well-settled that a ship-owner who arbitrarily and capriciously denies maintenance and cure to an injured seaman is liable to him for punitive damages and attorney's fees." *Robinson v. Ergon, Inc.*, No. CV 17-6906, 2018 WL 3368883, at *3 (E.D. La. July 10, 2018) (*quoting Breese v. AWI, Inc.*, 823 F.2d 100, 103 (5th Cir. 1987)) (Vance, J.). "Examples of employer behavior that could merit punitive damages have included (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; and (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically." *Id.* (*citing Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985)). Evidence at trial supported a conclusion that REC Marine delayed investigating the incident, (Tr. III at 157:5–158:23), did not meaningfully investigate the incident, (*Id.* at 110:24–111:12; 117:3–118:3), and continued to deny maintenance and cure unreasonably, (Tr. I at 136:24–137:12). For these reasons, not necessarily exclusive,

a reasonable juror could find that the evidence at trial warranted punitive damages against REC Marine.

### B. REC Marine and Offshore Transport's Motions for a New Trial and Remittitur

A court "may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. Proc. 59(a)(1)(A). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted). But "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great not merely the greater weight of the evidence." *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980). "The decision to grant or deny a motion for new trial is within the sound discretion of the trial court." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998). That discretion extends to "overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 433 (1996).

Here, Defendants REC Marine and Offshore Transport argue that a new trial or remittitur is warranted because the verdicts for future medical expenses, past wage loss and future loss of earning capacity, past and future general damages, and punitive damages all evince passion and prejudice and are against the great weight

6

of the evidence; the "time limits imposed at trial were unfair and prejudiced Defendants"; the jury's percentage of fault attributed to Plaintiff was improper; and "[i]mproper statements" were made during closing argument. (Doc. 253-1 at 3).

### i. Future Medical Expenses

Defendants argue that the jury award of $686,700.00 for future medical expenses is excessive and against the great weight of the evidence. (Doc. 253-1 at 4). Instead, Defendants argue that the maximum award supported by Plaintiff's own experts and requested by Plaintiff's counsel at closing argument was $590,503.00. (*Id.*). Defendants further point out that $121,286.00 of that sum was allocated for a speculative second cervical fusion surgery that Plaintiff might need to undergo "20 years down the road," and therefore should not form part of Plaintiff's award. (*Id.* at 6). Plaintiff disagrees, arguing that "there was substantial evidentiary support for the jury's damage award," and cites a chart, presented at trial, that lists future medical expenses recommended by Plaintiff's doctors. (Doc. 259 at 14, 14 n.18). But that chart only lists future medical costs totaling $590,503.00. (*See* Doc. 259-9 at 4–11). Moreover, Plaintiff does not respond at all to Defendants' challenge to the sum set for a possible second cervical fusion surgery. The Court finds that there is simply no support for the jury's award in excess of what Plaintiff himself attempted to prove at trial. Additionally, the sum of $121,286.00 for a possible surgery 20 years from now is far too speculative. Accordingly, Defendants' Motion for Remittitur will be granted in part and the award for future medical expenses will be reduced to $469,217.00, which represents the maximum amount Plaintiff even attempted to support with evidence at trial less the cost of the purely speculative second surgery. *See Matter of*

*Lasala*, 644 F. Supp. 3d 245, 280 (E.D. La. 2022) (*citing Haley v. Pan American World Airways*, 746 F.2d 311 at 316 (5th Cir. 1984)) (denying request for future medical costs where "the only evidence to support it [was] speculative or purely conjectural") (Vitter, J.); *Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co. Ltd.*, 324 F.Supp.3d 808, 830-33 (E.D. La. 2018) (rejecting future medical expenses for a surgery which intervening plaintiff had not established he was "more likely than not" going to undergo) (Africk, J.). In the event Plaintiff does not accept this amount as remitted, new trial on the issue of damages will be granted. *See Foradori v. Harris*, 523 F.3d 477, 503 (5th Cir. 2008) ("[T]he court may not reduce the amount of damages without giving the plaintiff the choice of a new trial, for to do so would deprive the parties of their constitutional right to a jury.").

### ii. Past Wage Loss, Future Loss of Earning Capacity, and Maintenance

In a similar vein, Defendants argue that the jury award of $150,000.00 for past wage loss and $500,000.00 for future wage loss is excessive and against the great weight of the evidence because Plaintiff presented no support for such an award. (Doc. 253-1 at 9). Again, Defendants point out that Plaintiff's expert and counsel at closing argument only suggested a maximum award for past wage loss of $144,995.00 and for future wage loss of $321,589.00. (*Id.* at 10). Plaintiff does not dispute this point but responds that Defendants' expert opened the door for the jury to consider different figures when he called into question the general methodology for determining future

earning capacity. (Doc. 259 at 15).[2] As there is simply no support for the jury's award as to past and future wage loss that is not "speculative or purely conjectural," *Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 194 (5th Cir. 1991), the Court will grant Defendants' Motion for Remittitur in part and reduce the awards for past wage loss to $144,995.00 and for future wage loss to $321,589.00, the maximum amount supported by evidence at trial. In the event Plaintiff does not accept this amount as remitted, new trial on the issue of damages will be granted.

Defendants also argue that the award of $10,000.00 in maintenance benefits was duplicative but cite no case law and make no showing in support. (Doc. 253-1 at 10). The jury was instructed to not award maintenance benefits and lost wages or medical expenses for the same period. (*Id.*). The Court will not upset the jury's award where Defendants only speculate that the jury did not follow the Court's instructions and make no showing at all that the jury's maintenance award was duplicative.

### iii. Past and Future General Damages

Defendants next argue that the awards of $100,000.00 for past general damages and $250,000.00 for future general damages are excessive and against the great weight of the evidence because testimony supporting such damages was "meager." (Doc. 153-1 at 11). The Court disagrees. Plaintiff suffered significant injuries to his shoulder and neck, underwent multiple surgeries and requires surgeries in the future as a result, continues to be in pain, is physically limited, and can no longer enjoy the recreation he previously enjoyed. (*See* Doc. 259 at 16–17

---

[2] Neither expert found that Plaintiff had more than eleven years of expected work life remaining or earned more than $37,000 annually before the incident. (*See* Doc. 259 at 8).

(citing trial record)). Based on this and other testimony at trial and in keeping with the "strong presumption in favor of affirming a jury award of damages," *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001), the Court finds that the jury's award for past and future general damages is appropriate.

### iv. Punitive Damages

As for punitive damages, Defendants argue correctly that the jury's award of $1,500,000.00 was excessive. Pursuant to the verdict form, after awarding compensatory damages for the other claims, the jury awarded Plaintiff $10,000.00 for maintenance and nothing for cure. (Doc. 212 at 7). The jury's final step was deciding whether to award punitive damages for REC Marine's "willful, wanton, and arbitrary failure to provide maintenance and cure" and if so, how much. (*Id.* at 9). The sequence of questions on the verdict form shows that the jury intended to punish REC Marine for only its failure to provide maintenance and cure. (*Id.* at 9). The 150:1 ratio of punitive damages to maintenance damages that resulted is unconstitutionally disproportionate. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process.").

The Supreme Court has identified three "guideposts" that bear on the reasonableness of punitive damages. *BMW v. Gore,* 517 U.S. 559, 574 (1996). In addition to the ratio of punitive to compensatory damages, which is clearly excessive here, these guideposts are "the degree of reprehensibility of the tortious conduct" and "the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Id.* Additionally, "[i]t should be presumed that a plaintiff has been

made whole by compensatory damages, so punitive damages should be awarded only if the defendant's culpability is so reprehensible to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm*, 538 U.S. at 419.

With respect to the second guidepost, although the Court declines here to disturb the jury's finding that punitive damages were warranted, *see supra* Section II.A, REC Marine's conduct was hardly reprehensible enough to support such a shocking sum. Testimony adduced at trial equally supported a finding that punitive damages were not warranted. (*See* Doc. 251-1 at 15–16). Indeed, when considering REC Marine's motion for judgment as a matter of law after the close of Plaintiff's case, the issue of whether to even let the jury consider Plaintiff's claim for punitive damages was a "much closer call" for the Court than for Plaintiff's other claims. (Tr. V at 64:7).

As for the third guidepost, the discrepancy between this and other punitive damages awards for failure to provide maintenance and cure is vast. (*See* Doc. 253-1 at 15 (listing cases)). The next highest awards within the Fifth Circuit found by either party were one-fifteenth the sum chosen by the jury here. *See Weeks Marine v. Watson*, 190 F.Supp.3d 588 (E.D. La. 2016) (awarding $100,000 after bench trial); *Hodges v. Keystone Shipping Co.*, 578 F.Supp. 620 (S.D. Tex. 1983) (awarding $100,000). After awarding damages for future maintenance and cure, the *Weeks* court awarded $1,139,828 in aggregate damages, including around $67,000 for past maintenance and cure and $100,000.00 in punitive damages for willful failure to pay. *Weeks*, 190 F.Supp.3d at 598. In support of the punitive damages award, the court

noted that the employer there had "simply ignored the opinions of two treating orthopedic surgeons and multiple radiologists because [the employer] did not agree with their diagnosis and treatment recommendations." *Id.* Instead, the employer chose to rely on the advice of a non-treating doctor whose testimony the court found "incredible and biased." *Id.* Furthermore, after unilaterally terminating all maintenance and cure payments, the employer sued its employee seeking a declaratory judgment that it owed nothing further. *Id.* No such wanton behavior is present here, where at least some credible testimony supported REC Marine's decision to withhold maintenance and cure. (*See* 251-1 at 5–9).[3] In sum, because evidence cut both for and against whether to even award punitive damages, the Court finds that the extraordinary and unprecedented sum awarded is excessive.

Having determined that remittitur is appropriate here, the next question is where to peg the punitive damages. Defendants urge that Supreme Court precedent requires a ratio of 1:1 in maritime cases, (Doc. 253-1 at 14 (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513–515 (2008)), but the Fifth Circuit recently eliminated that requirement. *Kenai Ironclad Corp. v. CP Marine Servs., LLC*, 84 F.4th 600, 610 (5th Cir. 2023) (deGravelles, DJ, sitting by designation). Here, mindful of the "especially deferential" review owed to a jury's verdict, *Vetter v. McAtee*, 850 F.3d 178, 185 (5th Cir. 2017), the Court will reduce the punitive damages award to an elevated, but constitutionally tenable, ratio to the maintenance award of 9:1, or $90,000.00. In the event Plaintiff does not accept this amount as remitted, new trial on the issue of

---

[3] For example, two treating physicians determined that Plaintiff's injuries were not caused by the personnel basket injury. (*Id.*).

damages will be granted.

### v. Time Limits Imposed

Defendants next argue that the time limits imposed at trial were unfair and prejudicial but cite no case from the Fifth Circuit in support and only allege specific examples of prejudice with respect to the time limit imposed on the cross-examination of Plaintiff. (Doc. 253-1 at 17–18). But at Defendants' request, the Court granted more time to cross-examine Plaintiff, (Tr. III at 133:7–11), and Defendants did not ask for additional time when the added time had elapsed, (*Id.* at 235:20–236:8). Defendants' motion on this issue is denied.

### vi. Jury's Percentage of Fault

Defendants next argue that the jury's percentage of fault attributed to Plaintiff was not proper because there was "conflicting testimony" regarding the incident and Defendants' expert testified that Plaintiff had not followed his training. (Doc. 253 at 19). Defendants' argument is self-defeating: "Conflicting testimony is to be resolved by the jury." *Robinson v. Smith*, No. 3:19-CV-2593-C-BH, 2022 WL 17970411, at *19 (N.D. Tex. Nov. 28, 2022), *report and recommendation adopted*, No. 3:19-CV-2593-C-BH, 2022 WL 17961396 (N.D. Tex. Dec. 27, 2022) (*citing Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)). The jury here merely resolved the conflicting testimony against Defendants. Therefore, Defendants fail to establish that the jury's verdict was against the great weight of the evidence. *See Conway*, 610 F.2d at 363.

### vii. Improper Statements

Finally, Defendants argue that Plaintiff's closing argument to the jury was prejudicial because it "improperly mischaracterized witness testimony, contained

inflammatory remarks, and [counsel] made improper inferences and statements."
(Doc. 253-1 at 19). "[I]mproper comments by counsel will not warrant reversal unless
they so permeate the proceedings that, in the light of all evidence presented, manifest
injustice would result if the court allowed the verdict to stand." *Verdin v. Sea-Land
Serv.*, 8 F.3d 21 (5th Cir. 1993). The Court will not address whether Plaintiff's
statements were improper because, even if they were, nothing said would rise to the
"extreme nature" required for a new trial, *United States v. Blevins*, 555 F.2d 1236,
1240 (5th Cir. 1977), and Defendants did not object at the time, *see Nissho–Iwai Co.
v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619–20 (5th Cir. 1988) (holding that
parties waive objections to improper statements in closing arguments when they do
not object contemporaneously).

### C. Plaintiff's Motions for Reconsideration and to Alter or Amend Judgment

Plaintiff seeks reversal of the Court's grant of Defendant QBE Insurance's Rule
50 Motion for Judgment as a Matter of Law. (Docs. 227, 252). A motion to alter or
amend a judgment is "not the proper vehicle for rehashing evidence, legal theories,
or arguments that could have been offered or raised before the entry of judgment."
*Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). Reconsideration of a
judgment after its entry is an extraordinary remedy that should be used sparingly.
*Clancy v. Employers Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D. La. 2000). At trial,
the Court found that Plaintiff had completely failed to meet his burden of offering
evidence that QBE Insurance issued a policy that provided coverage for the damages
claimed by Plaintiff. (Tr. III at 244:13–247:15). No newly discovered evidence or

14

manifest error of law or fact compels a contrary conclusion now. Plaintiff simply did not introduce any evidence at trial showing that QBE Insurance provided coverage for the asserted damages, as was his burden to do. *See Zeno v. ADM Mill Co.*, No. 06-4326, 2008 WL 4974876, at *2 (E.D. La. Nov. 20, 2008) (Duval, J.) (listing the elements of a direct action against an insurer, including "that the insurer has issued a policy to the insured").

### D. Plaintiff's Motion to Exclude Evidence of the Value of the *M/V Dustin Danos*

Before trial, the parties stipulated that the issues of liability and damages would be decided by a jury, but, were the jury to find liability on the part of Defendants and award damages, the issue of Defendants' possible defense under the Limitation of Liability Act, 46 U.S.C.A. § 30501, *et seq.*, would be decided by the Court. (Doc. 172). Under the Limitation of Liability Act, a vessel owner may limit their damages for certain types of claims to the "value of the vessel and pending freight." *See SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 472 (5th Cir. 2022). Now, as a prelude to the parties' potential dispute over the value of the *M/V Dustin Danos* for limitation of liability purposes, Plaintiff moves for the Court to exclude evidence of its value because Offshore Transport did not "meaningfully respond to discovery requests that sought information related to the [vessel's value]" and because Defendants did not disclose information related to their limitation of liability defense. (Doc. 254-1). This motion will be denied. As the Court stated at trial when overruling Plaintiff's oral motion to strike the limitation defense entirely, "the Court is still entitled to receive evidence" related to the value of the *M/V Dustin*

*Danos.* (Tr. V at 67:21–22).

The Court writes further to note that Defendants suggest testimony will establish that the relevant value of the *M/V Dustin Danos* is $1,600,000.00 for limitation of liability purposes. (Doc. 264 at 12). In accordance with this Order, the remitted aggregate compensatory damages, less maintenance and cure and punitive damages, now total $1,285,801.00.[4] Before remittitur, REC Marine argued that though the combined compensatory award—then $1,536,030—against it and Offshore Transport was less than $1,600,000, with pre-judgment interest the total award "could exceed the fair market value" of the vessel. (Doc. 264 at 14). That is less likely to be the case after remittitur, because the total compensatory award now falls $300,000 short of the alleged minimum value of the vessel.[5]

### E. Plaintiff's Motion for Attorney's Fees

Under Rule 54(d), a prevailing party generally may not recover attorney's fees unless such fees and expenses are specifically provided by "statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. Proc. 54(d)(2)(B)(ii). Punitive damages and attorney's fees are available remedies for willful and wanton failure to pay maintenance and cure. *See Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 382 (5th Cir. 2012) ("Arbitrary-and-capricious denial of a seaman's request

---

[4] Damages for maintenance and cure, including punitive damages, are not subject to limitation of liability. *See In re Complaint of Trawler Shrimp Texas 18, Inc.*, No. CIV.A.G-07-557, 2008 WL 545041, at *1 (S.D. Tex. Feb. 25, 2008) (*citing Brister v. A.W.I., Inc.*, 946 F.2d 350, 360-61 (5th Cir. 1991)) ("[M]aintenance and cure claims are exempt from the limitation of liability rules in admiralty.").

[5] The parties are still entitled to avail themselves of the Court's settlement facilitation procedures to resolve any remaining issues.

for maintenance and cure can result in the employer's being liable for the seaman's attorney's fees.").

Now, Plaintiff seeks a fee award of $348,150.00, which, Plaintiff explains, "represents the lodestar calculation of fees based on the reasonable number of hours his attorneys expended in prosecuting his claim for maintenance and cure and a reasonable hourly rate for each of his attorneys." (Doc. 224 at 2). Defendant REC Marine disputes whether Plaintiff is entitled to an award in the first place, the hourly rates requested by Plaintiff, and the number of hours billed. (Doc. 230). The Court considers each of REC Marine's objections in turn.

### i.    Plaintiff's Entitlement to a Fee Award

REC Marine first argues that Plaintiff is not entitled to attorney's fees because he did not plead attorney's fees in his Original or Amended Petition. (Doc. 230 at 5). Fed. R. Civ. Proc. 9(g) provides that "[i]f an item of special damage is claimed, it must be specifically stated." "The purpose of the rule is to avoid unfair surprise by informing the parties as to the nature of the damages claimed, and to inform the court of the substance of the claims." *In re IFS Fin. Corp.*, No. 02-39553-H1-7, 2010 WL 1992579, at *3 (S.D. Tex. May 18, 2010) (*citing Great American Indemnity Co. v. Brown,* 307 F.2d 306, 308 (5th Cir. 1962)). But the failure to plead attorney's fees will not necessarily preclude a party's ability to recover attorney's fees if the party's opponent is on notice that attorney's fees are being sought. *Id.* (*citing Crosby v. Old Republic Ins. Co.*, 978 F.2d 210, 211 n.1 (5th Cir. 1992)). Here, REC Marine was put on notice that Plaintiff sought attorney's fees by Plaintiff's Rule 26 Disclosures,

served in August 2020. (Doc. 250-3 ("Plaintiff seeks recovery of . . . attorneys' fees")). *Cf. Crosby*, 978 F.2d 210 at 211 n.1 ("Because the claim [for attorney's fees] was advanced by [defendant] during pretrial conferences, the court did not err in considering the merits of the claim as though the pleadings had been amended.").

Defendant also argues that Plaintiff is not entitled to fees because the jury did not specifically award fees and fees were not listed on the verdict form. (Doc. 230 at 9). Defendant cites no case in which courts held similarly. To the contrary, because of the jury's finding that punitive damages were appropriate for REC Marine's failure to pay maintenance and cure, Plaintiff is also entitled to attorney's fees. *See Dardar v. T&C Marine, L.L.C.*, No. CV 16-13797, 2018 WL 3950396, at *2 (E.D. La. May 3, 2018), *report and recommendation adopted*, No. CV 16-13797, 2018 WL 3927501 (E.D. La. Aug. 16, 2018) (awarding fees on plaintiff's motion after jury verdict awarding punitive damages for failure to provide maintenance and cure) (Wilkinson, MJ).

### ii. Plaintiff's Hourly Rate

Defendant's next objection is to the $500.00 hourly rate that Plaintiff requests for his lead counsel, Daniel E. Sheppard, and co-counsel, P. Hogan Leatherwood. (Doc. 230 at 9). "The calculation of attorney's fees involves a well-established process." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Id.* An attorney's reasonable hourly rate should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience

and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see also Leroy v. City of Houston*, 906 F.2d 1068, 1078-79 (5th Cir. 1990) ("In evaluating an attorneys' fees award, we are guided by the overriding principles that a reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." (quotation marks and alterations omitted)). The Fifth Circuit has emphasized that "the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quotation marks omitted). The party applying for attorney's fees bears the burden of producing satisfactory evidence that the requested rate is aligned with the prevailing market rate. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

Here, Plaintiff only manages to offer support for the $500.00 rate he seeks in his reply memorandum and even then appears to have been unable to find a case in which a court awarded a comparable rate under similar circumstances. (*See* Doc. 250 at 5). Indeed, the only case Plaintiff cites in which a court awarded $500.00 an hour involved an attorney with nearly 41 years of maritime experience. *See Jefferson v. Baywater Drilling, LLC*, 2015 U.S. Dist. LEXIS 155110, at *4–5 (E.D. La. Sept. 16, 2015). Mr. Sheppard and Mr. Leatherwood have only practiced law since 2016. (*See* Docs. 224-2; 224-3). Because Plaintiff has not produced satisfactory evidence of the rate he seeks, the Court concludes, based on a review of similar cases, that an hourly rate of $300.00 is appropriate. *See Alonso v. Westcoast Corp.*, 2017 WL 4176973, at *8 (M.D. La. Sept. 21, 2017), *aff'd in part, vacated in part on other grounds, remanded,*

920 F.3d 878 (5th Cir. 2019) (awarding $300 an hour) (Jackson, J.); *REC Marine Logistics, L.L.C. v. Richard,* No. CV 19-11149, 2020 WL 1527766, at *4 (E.D. La. Mar. 27, 2020) (ordering REC Marine to pay $375 an hour to an attorney with 13 years of experience); *Jefferson,* 2015 U.S. Dist. LEXIS 155110 at *4–5 (awarding $350 to an attorney with six years of experience).

### iii.    Plaintiff's Hours Billed

Finally, REC Marine objects to the number of hours billed, arguing that Plaintiff has not demonstrated that the 704.4 hours billed is reasonable. (Doc. 230). The Court finds that Plaintiff has supported his hours assertion with sufficient evidence, including affidavits attesting to the reasonableness of the lawyers' billing practices, (Docs. 224-2; 224-3), and an itemization of hours, (224-3). *See LaBarge Pipe & Steel Co. v. First Bank*, No. CIV.A. 03-281-BAJ, 2011 WL 3841605, at *2 (M.D. La. Aug. 29, 2011) (*quoting Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) ("[C]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours, but failing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours.") (quotation marks omitted) (Jackson, J.).

Defendant also argues that Plaintiff's submission falls short when it comes to identifying which hours were spent preparing for and litigating Plaintiff's maintenance and cure claim—the only claim for which attorney's fees are available.

(Doc. 230 at 15). For this reason, Defendant asks that the "hours obviously spent on the Jones Act negligence and/or unseaworthiness claims be stricken, and that the hours not clearly limited to the prosecution of the maintenance and cure claim be reduced." (*Id.*). Plaintiff responds that his Jones Act negligence and unseaworthiness claims are intertwined with the maintenance and cure issues making differentiation difficult. (Doc. 250 at 6). The Court agrees with Defendant. The work required to successfully litigate the maintenance and cure claim here was not so inseparable from the work on the other claims, and Plaintiff must make some attempt to differentiate the hours. *Dardar*, 2018 WL 3950396 at *5 (finding that the factual overlap among plaintiff's maintenance and cure, seaworthiness, and negligence claims was "substantial, but not complete" and refusing to grant plaintiff 100% of his billed fees); *cf. Wal-Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 247 (5th Cir. 2011) (finding district court erred in not differentiating between successful and unsuccessful claims). For example, showing that REC Marine's internal investigation into the personnel basket incident was delayed or halfhearted—an important step toward winning punitive damages—required investigating and litigating issues completely unrelated to the questions of liability and damages for negligence and unseaworthiness. For this reason, Plaintiff's Motion for Attorney's Fees will be denied without prejudice. Plaintiff may resubmit his motion after differentiating the hours spent on the maintenance and cure claim. To Plaintiff's credit, some hours may indeed prove too difficult to disentangle, but Plaintiff must identify them and state why.

III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant REC Marine Logistics, LLC's **Renewed Motion for Judgment as a Matter of Law (Doc. 228)** and **Amended and Supplemental Renewed Motion for Judgment as a Matter of Law (Doc. 251)** be and are hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's **Motion for Reconsideration of 209 Minute Entry on QBE Insurance (Europe) Ltd.'s Judgment as a Matter of Law and to Alter or Amend Judgment (Doc. 227)**, **First Amended and Supplemental Motion for Reconsideration on QBE Insurance (Europe) Ltd.'s Judgment as a Matter of Law and to Alter or Amend Judgment (Doc. 252)**, and **Motion to Exclude Evidence Related to the Value of the M/V Dustin Danos (Doc. 254)** be and are hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendants REC Marine and Offshore Transport's **Motion for New Trial and/or Remittitur (Doc. 229)** and **Amended Motion for New Trial or Remittitur (Doc. 253)** be and are hereby **GRANTED IN PART**. The award for future medical expenses is remitted to $469,217.00; the award for past wage loss is remitted to $144,995.00; the award for future wage loss is remitted to $321,589.00; and the punitive damage award is remitted to $90,000.00. Plaintiff shall have 15 days from the date of this order to advise the Court whether he will accept remittitur.

**IT IS FURTHER ORDERED** that Plaintiff's **Motion for Attorneys' Fees Pursuant to Federal Rule of Civil Procedure 54(D) (Doc. 224)** be and is hereby

**DENIED WITHOUT PREJUDICE**. Plaintiff shall have 21 days to resubmit his motion after differentiating the hours spent on the maintenance and cure claim and identifying those hours which will be impossible to differentiate. Defendant REC shall have 14 days to file any response to Plaintiff's resubmitted motion.

Baton Rouge, Louisiana, this 21ˢᵗ day of December, 2023

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**